# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **ED BUTOWSKY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:18-cv-00442-ALM** |
| | § | |
| **DAVID FOLKENFLIK; NPR, INC.;** | § | |
| **NPR.ORG; JARL MOHN; STACEY** | § | |
| **FOXWELL; MICHAEL ORESKES;** | § | |
| **CHRISTOPHER TURPIN; EDITH** | § | |
| **CHAPIN; LESLIE COOK; HUGH** | § | |
| **DELLIOS; PALLAVI GOGOI; and** | § | |
| **SARAH GILBERT,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) FOR FAILURE TO STATE A CLAIM

**HAYNES AND BOONE, LLP**
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Telecopier:     (512) 867-8470

Thomas J. Williams
State Bar No. 21578500
thomas.williams@haynesboone.com
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
Telephone:     (817) 347-6600
Telecopier:     (817) 347-6650

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iv

I.     INTRODUCTION .............................................................................................. 1

II.    STATEMENT OF ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1) ........................ 3

III.   STATEMENT OF FACTS .................................................................................... 3

       A.    The Seth Rich conspiracy theory .......................................................... 4

       B.    Butowsky's role in the Seth Rich murder investigation ....................... 4

       C.    The Wheeler Complaint ........................................................................ 5

IV.    STATEMENTS AT ISSUE .................................................................................. 8

       A.    The First Report – August 1, 2017 ....................................................... 8

       B.    The Mediaite Interview – August 6, 2017 ............................................ 9

       C.    The Second Report – August 7, 2017 ................................................. 10

       D.    The Third Report – August 16, 2017 .................................................. 10

       E.    The Fourth Report – September 15, 2017 ........................................... 11

V.     APPLICABLE STANDARD ............................................................................... 12

VI.    ARGUMENT ................................................................................................... 12

       A.    Plaintiff has failed to state a plausible defamation *per se* claim. .......... 13

             1.    The Reports are privileged as a matter of law. ....................... 14

                   a.    The Reports are protected by the fair report privilege. ............... 14

                   b.    The Reports are protected by the fair comment privilege. ........... 16

             2.    The Reports truthfully report on allegations made by a third party
                   about a matter of public concern. ........................................... 17

             3.    Many of the Statements at Issue are not of and concerning
                   Butowsky. .............................................................................. 18

             4.    Many of the Statements at Issue are not capable of a defamatory
                   meaning. ................................................................................. 19

             5.    Many of the Statements at Issue are protected expressions of
                   opinion. .................................................................................. 20

             6.    Plaintiff has failed to plausibly allege Defendants acted with actual
                   malice. .................................................................................... 21

                   a.    Butowsky is a public figure required to show actual malice. ...... 22

                   b.    Butowsky fails to plausibly allege actual malice. ........................ 23

7.    Most Defendants did not publish any statements. ................................... 25

B.    Butowsky has failed to state a plausible business disparagement claim. ............ 25

C.    Butowsky has failed to state a plausible intentional infliction of emotional distress claim ....................................................................................................... 25

1.    The First Amendment bars Butowsky's IIED claim............................... 26

2.    Butowsky cannot rely on IIED as a "gap filler" tort because the gravamen of his claim is defamation. ....................................................... 27

3.    Butowsky fails to state a claim for IIED................................................. 27

D.    Plaintiff has failed to state a plausible civil conspiracy claim. ........................... 28

E.    The Defamation Mitigation Act bars Plaintiff's claims...................................... 29

VII. CONCLUSION ...................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*,
   501 F.3d 398 (5th Cir. 2007) ................................................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................3, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................3, 12

*Benningfield v. City of Houston*,
   157 F.3d 369 (5th Cir. 1998) ................................................................................27

*Bentley v. Bunton*,
   94 S.W.3d 561 (Tex. 2002)................................................................................13, 21

*Burch v. Coca-Cola Co.*,
   119 F.3d 305 (5th Cir. 1997) ................................................................................20

*Cain v. Hearst Corp.*,
   878 S.W.2d 577 (Tex. 1994)................................................................................25

*Carr v. Brasher*,
   776 S.W.2d 567 (Tex. 1989)................................................................................24

*Casso v. Brand*,
   776 S.W.2d 551 (Tex. 1989)................................................................................23, 24, 30

*Channel 4, KGBT v. Briggs*,
   759 S.W.2d 939 (Tex. 1988)................................................................................26

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................................1

*Cotton v. Weatherford Bancshares, Inc.*,
   187 S.W.3d 687 (Tex.App.–Fort Worth 2006, pet. denied) ................................................................................28

*Cox Broad. Corp. v. Cohn*,
   420 U.S. 469 (1975)................................................................................14

*Diamond Shamrock Ref. & Mktg. Co. v. Mendez*,
   844 S.W.2d 198 (Tex. 1992)................................................................................13

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013)................................................................................30

*Freedom Commc'ns, Inc. v. Sotelo,*
No. 11-05-00336-CV, 2006 WL 1644602 (Tex.App.—Eastland June 15,
2006, no pet.) ...........................................................................................................................17

*Funk v. Stryker Corp.,*
631 F.3d 777 (5th Cir. 2011) ....................................................................................................1

*Garrison v. Louisiana,*
379 U.S. 64 (1964).....................................................................................................................23

*Gertz v. Welch,*
418 U.S. 323 (1974)...................................................................................................................23

*Goss v. Houston Cmty. Newspapers,*
252 S.W.3d 652 (Tex.App.—Houston [14th Dist.] 2008, no pet.)....................................15, 16

*GTE Sw., Inc. v. Bruce,*
998 S.W.2d 605 (Tex. 1999)......................................................................................................28

*Hancock v. Variyam,*
400 S.W.3d 59 (Tex. 2013)..................................................................................................13, 20

*Hardy v. Commc'n Workers of Am. Local 6215,*
536 S.W.3d 38 (Tex.App.—Dallas 2017, pet. denied).............................................................29

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
491 U.S. 657 (1989)...................................................................................................................24

*Hawkins v. Frank Gillman Pontiac,*
102 Fed. Appx. 394 (5th Cir. 2004)...........................................................................................28

*Hearst Corp. v. Skeen,*
159 S.W.3d 633 (Tex. 2005).................................................................................................23, 24

*Hoffmann-La Roche Inc. v. Zeltwanger,*
144 S.W.3d 438 (Tex. 2004).......................................................................................................27

*Huckabee v. Time Warner Entm't Co.,*
19 S.W.3d 413 (Tex. 2000).........................................................................................................19

*Hurlbut v. Gulf Atlantic Life Ins. Co.,*
749 S.W.2d 762 (Tex. 1987).......................................................................................................21

*Hustler Magazine, Inc. v. Falwell,*
485 U.S. 46 (1988)......................................................................................................................26

*In re Lipsky,*
460 S.W.3d 579 (Tex. 2015).......................................................................................................25

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667 (Tex. 1998).................................................................................28

*Jeanmarie v. United States*,
  242 F.3d 600 (5th Cir. 2001) .............................................................................12

*Jones v. Compass Bancshares Inc.*,
  339 Fed. App'x 410 (5th Cir. 2009) ..................................................................13

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017), *cert. denied sub nom. Von Kahl v. Bureau of*
  *Nat. Affairs, Inc.*, 138 S. Ct. 366 (2017) ...........................................................30

*KBMT Operating Co., LLC v. Toledo*,
  492 S.W.3d 710 (Tex. 2016)...................................................................14, 16, 17

*Kroger Tex. Ltd. P'ship v. Suberu*,
  216 S.W.3d 788 (Tex. 2006)................................................................................27

*KTRK v. Robinson*,
  409 S.W.3d 682 (Tex.App.—Houston [1st Dist.] 2013, pet. denied)...................13

*Langston v. Eagle Printing Co.*,
  797 S.W.2d 66 (Tex.App.—Waco 1990, no writ) ...............................................15

*Langston v. Eagle Publ'g Co.*,
  719 S.W.2d 612 (Tex.App.—Waco 1986, writ ref'd n.r.e.) ................................16

*Maxwell v. Henry*,
  815 F. Supp. 213 (S.D. Tex. 1993) .....................................................................23

*McIlvain v. Jacobs*,
  794 S.W.2d 14 (Tex. 1990).................................................................................17

*Moore v. Walthrop*,
  166 S.W.3d 380 (Tex.App.—Waco 2005, no pet.).............................................13

*Musser v. Smith Protective Servs., Inc.*,
  723 S.W.2d 653 (Tex. 1987)...............................................................................19

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976)............................................................................................14

*New Times, Inc. v. Isaacks*,
  146 S.W.3d 144 (Tex. 2004)..........................................................................21, 24

*New York Times, Co. v. Sullivan*,
  376 U.S. 254 (1964)......................................................................................22, 23

*Newspapers, Inc. v. Matthews*,
    339 S.W.2d 890 (Tex. 1960)..............................................................................19

*Obey v. Frisco Med. Ctr., L.L.P.*,
    No. 4:13-CV-656, 2015 WL 417509 (E.D. Tex. Jan. 30, 2015) (Mazzant, J.)........................20

*Provencio v. Paradigm Media, Inc.*,
    44 S.W.3d 677 (Tex.App.—El Paso 2001, no pet.).........................................................25, 26

*Scott v. Weber Aircraft*,
    609 Fed. Appx. 788 (5th Cir. 2015)....................................................................20

*Snyder v. Phelps*,
    562 U.S. 443 (2011)......................................................................................26

*Teel v. Deloitte & Touche LLP*,
    No. 3:15-cv-2593-G, 2015 WL 9478187 (N.D. Tex. 2015)....................................................20

*Texas Monthly, Inc. v. Transamerican Nat. Gas Corp.*,
    7 S.W.3d 801 (Tex.App.—Houston [1st Dist.] 1999, no pet.) .............................................16

*Tubbs v. Nicol*,
    675 F. App'x 437 (5th Cir. 2017) (unpublished) .....................................................29

*Tyson v. Austin Eating Disorders Partners, LLC*,
    No. A-13-CA-180-SS, 2013 WL 4774757 (W.D. Tex. Aug. 30, 2013)................................24

*Walker v. Beaumont Indep. Sch. Dist.*,
    No. 1:15-CV-379, 2016 WL 1156852 (E.D. Tex. Mar. 24, 2016) .........................................14

*Warner Bros. Entm't v. Jones*,
    538 S.W.3d 781 (Tex.App.—Austin 2017, pet. filed)...........................................29

*WFAA-TV, Inc. v. McLemore*,
    978 S.W.2d 568 (Tex. 1998)..............................................................13, 20, 22, 23

*Williams v. First Tennessee Nat'l Corp.*,
    97 S.W.3d 798 (Tex.App.—Dallas 2003, no pet.)..................................................28

*Zoanni v. Hogan*,
    2018 WL 3468883, ___ S.W.3d ___ (Tex.App.—Houston [1st Dist.] 2018,
    pet. filed) ..............................................................................................29

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 73.002 .............................................2, 14, 15, 16, 17, 21

TEX. CIV. PRAC. & REM. CODE § 73.005 ...................................................2, 17, 18, 29

Tex. Civ. Prac. & Rem. Code § 73.054 ........................................................................................29

**Other Authorities**

Fed. R. Civ. P. 8.....................................................................................................................3

Fed. R. Civ. P. 12...................................................................................................................3

Fed. R. Evid. 201...................................................................................................................5

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants National Public Radio, Inc.[1] ("NPR"), David Folkenflik, Jarl Mohn, Stacey Foxwell, Michael Oreskes, Christopher Turpin, Edith Chapin, Leslie Cook, Hugh Dellios, Pallavi Gogoi, and Sarah Gilbert (collectively, "Defendants") file this Motion to Dismiss for Failure to State a Claim,[2] and state as follows:

## I.
## <u>INTRODUCTION</u>

The fundamental premise of Plaintiff's complaint—that Defendants reported on a lawsuit before it was actually filed—is wrong. In fact, Plaintiff Ed Butowsky ("Butowsky") is suing Defendants for accurately reporting on a publicly filed lawsuit, which was itself a matter of significant public concern. For the reasons set forth herein, this case should be dismissed.

On August 1, 2017, Defendant NPR and its correspondent, Defendant David Folkenflik ("Folkenflik"), published reports of a lawsuit filed earlier that day in which former Fox News contributor Rod Wheeler ("Wheeler") alleged that Butowsky, Fox News, and Fox News reporter Malia Zimmerman ("Zimmerman") defamed him by knowingly misquoting him in an effort to advance a political agenda.[3] Following this initial August 1, 2017 article, public interest grew,[4] and Folkenflik and others continued to report on the Wheeler Lawsuit[5] as the story developed.

---

[1] Plaintiff incorrectly names National Public Radio, Inc. as NPR, Inc. and NPR.org. NPR.org is a website maintained by National Public Radio, Inc., but it is not itself a legal entity.

[2] Defendants Mohn, Foxwell, Oreskes, Turpin, Dellios, and Gilbert have separately moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and file this motion subject to and without waiving their pending challenge to personal jurisdiction. *See* Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 23 (Oct. 16, 2018).

[3] *See* Complaint, *Wheeler v. Twenty-First Century Fox, Inc.*, Case No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017) (the "Wheeler Complaint"), a copy of which is attached as Exhibit A to the Declaration of Olga Marshall ("Marshall Decl.") accompanying Defendants' motion and attached hereto as Exhibit 1. Documents attached to a motion to dismiss are considered part of the pleadings that may properly be considered on a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims or are subject to judicial notice as public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000). The Wheeler Complaint meets these criteria.

[4] *See* Plaintiff's Complaint, Dkt. No. 1 ("Compl."), at ¶ 33 (compiling reporting related to Wheeler's lawsuit).

[5] Herein, "Wheeler Lawsuit" refers to the litigation generally; "Wheeler Complaint" refers to the pleading filed on August 1, 2017.

---

In the Wheeler Complaint, Wheeler alleged that Butowsky deliberately orchestrated the creation of a false news story for President Trump's political benefit, coordinating with administration officials to distract the public with conspiracy theories. The Wheeler Complaint described Butowsky's political maneuvering and his alleged efforts to sensationalize the murder of Seth Rich to achieve his political ends. Wheeler Compl. ¶ 4.

Butowsky took exception to these allegations, but he went beyond responding to the Wheeler Complaint in that lawsuit. Butowsky went on the offensive against the press, filing this lawsuit claiming that NPR's *truthful* coverage of the Wheeler Lawsuit defamed him. However, of the 23 statements that Butowsky alleges are defamatory, all but one simply repeated, restated, or commented on allegations contained in the Wheeler Complaint or the issues of significant public concern the Wheeler Lawsuit implicates. The one statement that does not (the statement that the Wheeler Lawsuit had already been filed) is demonstrably true.

Butowsky's Complaint fails to state a plausible claim for relief for two primary reasons. First, both Texas law and the First Amendment to the United States Constitution protect Defendants' reporting on judicial proceedings and about matters of public concern. Virtually every statement identified in the Complaint is subject to statutory and common-law privileges and defenses that preclude civil liability—namely, the fair report and fair comment privileges and the "third-party allegation" rule.[6] Second, beyond the privileges and defenses that preclude civil liability, several of the statements are not of and concerning Butowsky, are not defamatory *per se* or capable of a defamatory meaning, or are protected expressions of opinion. Because NPR's statements do not constitute defamation *per se* but rather are accurate reports on a judicial proceeding, Butowsky's claim must be dismissed.

---

[6] TEX. CIV. PRAC. & REM. CODE §§ 73.002(b)(1), (b)(2) (fair report and fair comment privileges); TEX. CIV. PRAC. & REM. CODE § 73.005(b) (codifying the third-party allegation rule in Texas).

Butowsky brought this lawsuit against NPR in response to truthful but unwanted press about a lawsuit that had been filed against him. None of Butowsky's allegations state a plausible claim for relief, and Defendants are therefore entitled to dismissal of this lawsuit under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.
## STATEMENT OF ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1)

1.  <u>Whether applicable statutory or common-law privileges and defenses bar Plaintiff's claims</u>. Several privileges and defenses, including the fair report and fair comment privileges and the third-party allegation rule, preclude Plaintiff's claim as a matter of law, and dismissal is therefore appropriate.

2.  <u>Failure to state a claim upon which relief can be granted</u>. This suit alleges defamation *per se*, business disparagement, intentional infliction of emotional distress, and civil conspiracy. Defendants contend that Plaintiff's allegations, taken as true, do not state a plausible claim for relief. *See* Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III.
## STATEMENT OF FACTS

At 5:43 a.m. on August 1, 2017, Wheeler, a former Washington, D.C. homicide detective and Fox News contributor, filed a lawsuit alleging that Fox News collaborated with Butowsky and others to manufacture and promote a false news story to advance the interests of the Trump administration. Wheeler alleged that, as part of that false narrative, Fox News, Butowsky, and Zimmerman deliberately misquoted him to lend credibility to a false story about Seth Rich, a Democratic National Committee ("DNC") staff member who had been murdered near his home in Washington, D.C. Wheeler argued that his credibility was permanently tarnished due to Fox News' and Butowsky's deliberate creation of this false story.

A.    **The Seth Rich conspiracy theory**

The alleged "fake news" story at the center of the Wheeler Lawsuit involved the murder of Seth Rich, a DNC staff member who was shot and killed on July 10, 2016 near his home in Washington, D.C. Police believed that the shooting was likely a street robbery gone wrong, but the crime has never been solved.

Shortly after Rich's murder, groups within far-right political circles began propagating conspiracy theories speculating about the reason for it. Because Rich was a DNC staffer, the theories suggested, it was unlikely that his murder was simply a random robbery gone wrong. Instead, some speculated that the DNC (or perhaps even Hillary Clinton, then the Democratic nominee for President) orchestrated Rich's murder upon discovering that Rich had provided stolen DNC emails to WikiLeaks. These theories gained traction and media outlets such as Fox News and Breitbart reported extensively on this purported conspiracy.

B.    **Butowsky's role in the Seth Rich murder investigation**

In early 2017, Butowsky approached Seth Rich's family, ostensibly with an offer to help them investigate Rich's unsolved murder. Compl. ¶ 58. Butowsky offered to pay for a private investigator, and he recruited Wheeler to investigate the murder on behalf of Rich's family at Butowsky's expense. *Id.* at ¶¶ 58-60. Butowsky also introduced Wheeler to Fox reporter Zimmerman. Wheeler Compl. ¶ 59.

Soon thereafter, Wheeler began publicizing his investigation, giving two separate interviews on Washington, D.C.'s local Fox affiliate station. Compl. at ¶¶ 67-69, 87-89. Additionally, on April 20, 2017, Wheeler and Butowsky met with then White House Press Secretary Sean Spicer. During that meeting, according to Butowsky's Complaint in this case,

Butowsky and Wheeler told Spicer that "they were working on a story about Seth Rich and wanted Spicer to be aware of it." *Id.* at ¶¶ 76-79.

In May 2017, Wheeler, Butowsky, and Zimmerman began working to develop a story for Fox News regarding Wheeler's investigation, *id.* at ¶¶ 93-126, and on May 16, 2017, Fox News published an article written by Zimmerman entitled *Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources* (the "Zimmerman Report").[7] *Id.* at ¶ 130.

Shortly after the Zimmerman Report was published, Wheeler claimed that he had been quoted inaccurately. *Id.* at ¶ 158. A week later, Fox News retracted the Zimmerman Report, stating that "the article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed." *Id.*

On August 1, 2017, Wheeler filed the Wheeler Lawsuit, asserting defamation claims against Fox News, Butowsky, and Zimmerman, and a separate employment discrimination claim against Fox News. His attorney, Douglas Wigdor, filed the Complaint *via* ECF at 5:43 a.m.[8]

## C.    **The Wheeler Complaint**

The Wheeler Complaint alleged that Butowsky, Fox News, and Zimmerman "issued, approved, endorsed, and/or ratified defamatory statements about [Wheeler]." Wheeler Compl. ¶ 115. Wheeler alleged that Fox News, Butowsky, and Zimmerman knowingly misattributed two statements to him in the Zimmerman Report:

- "'My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks,' said Wheeler."

---

[7] Malia Zimmerman, *Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources*, FOX NEWS (May 16, 2017).
[8] *See* Exhibit 2 (ECF notification indicating time of filing as 5:43 a.m.). Pursuant to Federal Rule of Evidence 201, Defendants request that this Court take judicial notice of the time of filing. FED. R. EVID. 201.

- "'My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward,' Wheeler said. 'That is unfortunate. Seth Rich's murder is unsolved as a result of that.'"

*Id.* The Complaint further alleged that, after Fox News retracted the Zimmerman Report, Butowsky published defamatory tweets about Wheeler, questioning his credibility and chastising him for undermining the Zimmerman Report. *See id.* at ¶¶ 118-19.

The Wheeler Complaint focused on the publication of the Zimmerman Report within the context of a larger political effort to distract from bad press regarding the Trump White House. The Zimmerman Report was published one week after President Trump fired James Comey as FBI Director amid allegations that Russian operatives interfered in the 2016 presidential election. *See id* at ¶¶ 16-20. Wheeler alleged that Butowsky and Zimmerman hoped that "if Mr. Wheeler could confirm that Seth Rich leaked the DNC emails to WikiLeaks, that would debunk reports the Russians were responsible for the DNC hacks." *Id.* at ¶¶ 53, 57-58.

The Wheeler Complaint also alleged that Butowsky played a key role in the events leading up to the Zimmerman Report. In addition to introducing Wheeler to Zimmerman, introducing Wheeler to the Rich family and paying for his services as their private investigator, *id.* at ¶¶ 59, 60-62, in the days leading up to the publication of the Zimmerman Report, Butowsky allegedly exerted significant pressure on Wheeler to complete his investigation of the Rich murder, conform his findings to Butowsky's predetermined narrative, and publicize them. *Id.* at ¶ 71. For example, the Wheeler Complaint cites a May 14, 2017 text message from Butowsky informing Wheeler that President Trump wanted Zimmerman's report published immediately. *See id.* at ¶ 19. On May 15, 2017, Butowsky sent an email to several Fox News employees, stating: "I'm actually the one who's been putting [the Zimmerman Report] together, but as you know I keep my name out of things because I have no credibility," and that "one of

the big conclusions we need to draw…is that the Russians did not hack our computer system…and there was no collusion like [T]rump with the Russians." *Id.* at ¶ 78. Butowsky also sent Wheeler a text message suggesting that in his interviews he should attempt to discredit claims of Russian interference in the 2016 election. *Id.* at ¶ 79.

On May 16, 2017, Fox News published the Zimmerman Report with, as the Wheeler Complaint alleges, "false quotations from Mr. Wheeler that were clearly fabricated to lend support to the claim that Seth Rich, and not the Russians, was the source for the DNC emails released on WikiLeaks." *Id.* at ¶ 20. Wheeler further alleged that Zimmerman herself had later "admitted that the parts of the story regarding 'the emails' and 'the connection to WikiLeaks' had not, in fact, come from Mr. Wheeler." *Id.*

After Fox News published the Zimmerman Report and Wheeler confronted Butowsky about what he believed to be the invented quotes, Butowsky responded that "the quotes were included because that is the way the President wanted the article." *Id.* at ¶ 84. The Wheeler Complaint also alleges that after Fox News' retraction on May 23, 2017, Zimmerman ultimately admitted that Wheeler did not provide the quotes attributed to him, but that Zimmerman and Butowsky nevertheless continued to push Wheeler to support Fox News and the Zimmerman Report. *Id.* at ¶¶ 89-92.

The Wheeler Complaint claims that Fox News executives failed to address his concerns about being misquoted, *id.* at ¶¶ 22, 95-102, because Fox "was contriving with Butowsky and members of the Trump Administration to publish and disseminate fake news to affect politics in America," in furtherance of an "alliance" between Trump and Fox News. *Id.* at ¶¶ 25, 27.

Shortly after the Wheeler Complaint was filed, Folkenflik published a report on NPR

detailing these allegations.[9] In the following weeks, Folkenflik published several additional articles on NPR regarding the Wheeler Lawsuit, and he also participated in an interview with Mediaite.com columnist and podcaster John Ziegler. Compl. ¶ 47.

## IV.
## STATEMENTS AT ISSUE

Butowsky identifies five reports that he alleges contain defamatory statements, four of which Folkenflik authored (and NPR published), and one interview, published on Mediaite.com, in which Folkenflik discussed his reporting on the Wheeler Lawsuit (collectively, the "Reports"). For the Court's convenience, Defendants have provided a chart, attached hereto as Appendix A, which lists each statement challenged by Butowsky (each, a "Statement at Issue"), provides quotes from the Wheeler Complaint where appropriate, and states the applicable bases for dismissal for each.

(As a preliminary matter, Butowsky does not allege that *any* Defendant other than NPR and Folkenflik published the Statements at Issue in the Reports. As discussed *infra*, for that reason alone this suit must be dismissed against all Defendants other than NPR and Folkenflik.)

## A.     The First Report – August 1, 2017

NPR published the first Report about the Wheeler lawsuit, *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*, at 7:23 AM on August 1, 2017, *after* the Wheeler Complaint was filed. Butowsky claims that the August 1 Report contains the following allegedly defamatory statements:

- Fox News' May 16, 2017 story, entitled "Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources," was "baseless";

---

[9] Contrary to Butowsky's allegations, (Compl. ¶ 31), NPR published this report *after* the lawsuit had been electronically filed. For the Court's convenience, Defendants have included a notice of electronic filing indicating the time of filing as 5:43 a.m. *See* Ex. 2. The NPR Article was not published until 7:23 AM. *See* David Folkenflik, *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*, NPR.ORG (Aug. 1, 2017 7:23 AM), https://www.npr.org/2017/08/01/540783715/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story (the "August 1 Report"). A copy of the August 1 Report is attached to the Marshall Declaration as Exhibit B.

- Fox and Butowsky "worked in concert under the watchful eye of the White House to concoct a story" about the death of Seth Rich;

- The Fox News story was a "fake news story";

- The Fox News story was a "deceptive story";

- Wheeler did "not make great headway" in his investigation of the murder of Seth Rich. "The FBI informs Butowsky, Wheeler and Zimmerman that the agency is not assisting the Washington, D.C., police on the investigation – undercutting claims about an FBI report";

- On May 11, 2017, Fox News reporter, Malia Zimmerman, "sends Wheeler a draft of her story… It includes no quotes from Wheeler";

- "Zimmerman's online story … cites Wheeler, incorporating two key quotations from Wheeler that do not appear on video. In each, the private investigator seemingly takes ownership of the accusations";

- "Zimmerman issues instructions for Wheeler's appearance on Sean Hannity's show later that evening. 'Reread the story we sent you last night [that contained the invented quotes] and stick to the script,' she texts Wheeler";

- "Despite his misgivings, Wheeler plays along" with the fake news promoted by Butowsky and Zimmerman;

- Quoting attorney Douglas Wigdor: "Rod Wheeler unfortunately was used as a pawn by Ed Butowsky, Fox News and the Trump administration to try and steer away the attention that was being given about the Russian hacking of the DNC emails."

Compl. ¶¶ 29-30.[10]

## B.   The Mediaite Interview – August 6, 2017

Second, Butowsky alleges that statements Folkenflik made during an August 6, 2017

interview on Mediaite.com (the "Mediaite Interview"),[11] which reference the Wheeler lawsuit,

are defamatory:

---

[10] *See* August 1 Report, Marshall Decl. at Ex. B. Butowsky selectively quotes or takes out of context some of the alleged "statements" in the Complaint. *See* App'x A, pp. 1-7.

[11] *See* Ken Meyer, *David Folkenflik: 'Very Hard to Rule Out' White House Involvement in Seth Rich Conspiracy*, MEDIAITE.COM (Aug. 7, 2017 9:53 AM), https://www.mediaite.com/online/ david-folkenflik-very-hard-to-rule-out-

- Folkenflik stated that "Butowsky's narrative is 'inconsistent,'" and that "collaboration" between Butowsky and the President "is still a plausible assumption with the current evidence." Compl. ¶ 47.

Butowsky mischaracterizes Folkenflik's statements by quoting Ken Meyer's article, which paraphrases Folkenflik's interview statements but significantly departs at times from what Folkenflik actually said.[12]

## C.   The Second Report – August 7, 2017

Also on August 7, 2017, NPR published an article, written by Folkenflik, *Fox News' Seth Rich Story Echoes Previous Problems For Owner Rupert Murdoch* (the "August 7 Report") that references the Wheeler lawsuit.[13] Butowsky complains of the following allegedly defamatory statements therein:

- "Revelations about Fox News' role in concocting a baseless story on the death of a young Democratic staffer has problematic echoes for the network's controlling owner, Rupert Murdoch";

- Fox was involved in a "journalistic scandal" over the Seth Rich story;

- Fox "concocted" the story "in order to help President Trump."

## D.   The Third Report – August 16, 2017

Fourth, on August 16, 2017, NPR published a report referencing the Wheeler lawsuit entitled *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story* (the "August 16 Report"),[14] which Butowsky claims contained the following allegedly defamatory statements:

- Ed Butowsky was the "Man Behind The Scenes In Fox News' Discredited Seth Rich Story";

---

white-house-involvement-in-seth-rich-conspiracy/. A copy of the Ken Meyer article is attached to the Marshall Declaration as Exhibit C-1, and the Mediaite Interview is attached thereto as Exhibit C-2.

[12] *See* App'x A, p. 8 (outlining discrepancies between alleged and actual statements).

[13] *See* David Folkenflik, *Fox News' Seth Rich Story Echoes Previous Problems For Owner Rupert Murdoch*, NPR.ORG (Aug. 7, 2017 4:16 PM), https://www.npr.org/2017/08/07/542087047/fox-news-seth-rich-story-echoes-previous-problems-for-owner-rupert-murdoch. A copy of the August 7 Report is attached to the Marshall Declaration as Exhibit D.

[14] David Folkenflik, *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story*, NPR.ORG (Aug. 16, 2017 5:04 AM), https://www.npr.org/2017/08/16/543830392/the-role-of-ed-butowsky-in-advancing-retracted-seth-rich-story. A copy of the August 16 Report is attached to the Marshall Declaration as Exhibit E.

---

- "Butowsky displays no curiosity about the way Fox's reporting and his activities affected the very people [the Rich Family] he says he sought to help."

## E.     The Fourth Report – September 15, 2017

On September 15, 2017, NPR published a report by Folkenflik referencing the Wheeler lawsuit entitled *No Apology, No Explanation: Fox News And The Seth Rich Story* (the "September 15 Report").[15] Butowsky complains of the following allegedly defamatory statements in this article:

- "Fox News was compelled to retract the story, which involved presidential politics, international intrigue and a man's murder. When a story of this scale crumbles, most news organizations feel obligated to explain what happened and why. Not so far at Fox … In the four months since its retraction, Fox News has not apologized for what it reported. Nor has it explained what went wrong";

- "Lesson No. 1: Investigative reports should be ironclad" – the Fox story was "groundless";

- "Lesson No. 2: Make sure your sources are saying what you think they're saying" – "Before the story ran, Zimmerman sent Wheeler a draft with quotes she intended to attribute to him. NPR has seen a transcript of the texts from Zimmerman calling his attention to that email. But there's zero evidence Wheeler ever said those words or gave permission for her to use them. And if Zimmerman did invent the quotes, that's a big problem – regardless of whether Wheeler gave her the green light. 'It's very easy to lead a witness,' Bettag says. 'It's a dirty rotten thing to do'";

- "Lesson No. 3: Make sure each of your sources can stand on its own" – "Butowsky fed tips to Wheeler and Zimmerman, the Fox reporter, as he sought to link the dead man to the leaked emails instead of hackers working on behalf of the Russians";

- "And that leads us to lesson No. 4" – Transparency and Trust – "Fox withheld Butowsky's various roles in the story from its audiences – he blurred lines between benefactor, source, player and, possibly, even reporter."

---

[15] David Folkenflik, *No Apology, No Explanation: Fox News And The Seth Rich Story*, NPR.ORG (Sept. 15, 2017 5:06 AM), https://www.npr.org/2017/09/15/551163406/fox-news-has-yet-to-explain-what-what-wrong-in-seth-rich-story. A copy of the September 15 Report is attached to the Marshall Declaration as Exhibit F.

# V.
## APPLICABLE STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible if its contents allow a court to draw a reasonable inference that the defendant is liable for the misconduct that is alleged. *Id*. Where the pleaded facts, accepted as true, do not permit the court to infer more than a mere possibility of misconduct, a plaintiff has failed to satisfy his burden of establishing a plausible entitlement to relief, and the complaint should be dismissed accordingly. *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. In assessing the merits of a plaintiff's claims, courts do not rely on "conclusional allegations or legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001).

# VI.
## ARGUMENT

Butowsky alleges four causes of action: defamation *per se*, business disparagement, civil conspiracy, and intentional infliction of emotional distress. Butowsky has failed to state a plausible claim for relief under any of these asserted causes of action, and dismissal is appropriate as to all Defendants. Defendants address each cause of action in turn.

A.    **Plaintiff has failed to state a plausible defamation *per se* claim.**

In Texas, "the defamation action has been narrowly tailored to limit free speech as little as possible." *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 210 (Tex. 1992). "To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement."[16] *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Statements that cannot reasonably be interpreted as stating verifiable facts cannot serve as the basis for a defamation claim. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). Neither can vague, subjective, or indefinite expressions of opinion. *See Jones v. Compass Bancshares Inc.*, 339 Fed. App'x 410, 412 (5th Cir. 2009).

Butowsky's defamation claim fails for several independent reasons. First and foremost, virtually all of the statements that Butowsky alleges are defamatory are privileged, either as a fair, true, and impartial account of a judicial proceeding or as a fair comment or criticism on a matter of public concern. Similarly, the Reports are protected by the third-party allegation rule, which protects accurate republication of third-party allegations regarding matters of public

---

[16] Plaintiff's failure to adequately allege that the Statements at Issue are defamatory *per se* is grounds for dismissal alone. Butowsky superficially alleges that the Statements at Issue "accuse and impute to [him] the commission of crimes involving moral turpitude" and impute to Butowsky "an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment." Compl. ¶ 164. However, as the Texas Supreme Court has made clear, "disparagement of a general character, equally discreditable to all persons, is not enough [to qualify as defamation *per se*] unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Hancock v. Variyam*, 400 S.W.3d 59, 66-67 (Tex. 2013) (statements regarding the truthfulness of a physician are not defamatory *per se*). As in *Hancock*, the Statements at Issue do not call into question specific traits that are peculiar to Butowsky's business as an expert in the wealth management industry but instead are "equally discreditable to all persons." *Id*. Furthermore, the Statements at Issue do not accuse Butowsky of commission of a crime. *Moore v. Walthrop*, 166 S.W.3d 380, 386 (Tex.App.—Waco 2005, no pet.) (to be defamatory *per se*, the defamatory nature of the challenged statement must be apparent on its face without reference to extrinsic facts or "innuendo."); *see also KTRK v. Robinson*, 409 S.W.3d 682, 692 (Tex.App.—Houston [1st Dist.] 2013, pet. denied) (dismissing claim for defamation *per se* where complained-of statements did not unambiguously charge plaintiff with commission of a crime or injure her in her professional capacity). Because Butowsky sued for defamation *per se* but fails to establish that any of the Statements at Issue are defamatory *per se*, his claim should be dismissed, *KTRK*, 409 S.W.3d at 692, as should his tag-along claims arising from the same speech. *See* §§ VI.B–D, *supra*.

concern. Next, Plaintiff has failed to establish any of the required elements of defamation: many of the Statements at Issue are not of and concerning Butowsky, others are not capable of defamatory meaning, and many are protected expressions of opinion. Furthermore, Butowsky has failed to plausibly allege that Defendants acted with actual malice or—in the case of many Defendants—that Defendants acted at all. Defendants address each basis for dismissal in turn.

### 1.     The Reports are privileged as a matter of law.

The United States Supreme Court has long recognized "[t]he special protected nature of accurate reports of judicial proceedings." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). Truthful reports of judicial proceedings are "afforded special protection" under the First Amendment. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559-60 (1976). In Texas, that special protection is reflected in Section 73.002 of the Texas Civil Practice & Remedies Code, which establishes privileges for journalists' truthful reporting on matters of public concern.[17]

These protections are particularly relevant here, where Butowsky has placed at issue NPR reports focused squarely on the Wheeler Lawsuit and the Wheeler Complaint. In fact, 22 of the 23 statements of which Butowsky complains merely repeat or restate allegations in the Wheeler Complaint or comment on the controversy at the center of the Wheeler Lawsuit. *See* App'x A. Thus, even if Butowsky were able to show that the statements were otherwise actionable, the fair report and fair comment privileges immunize Defendants from any liability arising from those statements. TEX. CIV. PRAC. & REM. CODE §§ 73.002(b)(1), 73.002(b)(2).

### a.     The Reports are protected by the fair report privilege.

This is a quintessential fair report case. A comparison of the Wheeler Complaint to the

---

[17] These privileges apply to publications by "a newspaper or other periodical," TEX. CIV. PRAC. & REM. CODE § 73.002(a), which the Supreme Court of Texas has interpreted to include broadcasters and online publishers. *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714 n.21 (Tex. 2016); *Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 1156852, at *2 (E.D. Tex. Mar. 24, 2016) (applying § 73.002 privileges to online publications).

Statements at Issue shows the Reports, in large part recounted the allegations in the Wheeler Lawsuit.[18] For example, Butowsky alleges that Folkenflik and NPR defamed him in the August 1 Report by claiming that the Zimmerman Report was "fake news," or by stating that Zimmerman's first draft of the story did not contain the misattributed quotes. *See* Compl. ¶ 29. But that is precisely what the Wheeler Complaint alleged. *Compare* Compl. ¶ 29 (complaining of the August 1 Report as a "fake news story"), *with* Wheeler Compl. ¶ 4 ("Zimmerman, Butowsky and Fox had created fake news to advance President Trump's agenda."); *compare* Compl. ¶ 29 (complaining of statement that the draft of the Zimmerman Report Wheeler reviewed did not contain quotes from him), *with* Wheeler Compl. ¶¶ 18, 71 (same). *See* App'x A (comparing allegedly defamatory statements identified in the Complaint with allegations in the Wheeler Complaint). Thus, The Reports are at the heart of what the privilege—and the First Amendment—is intended to protect because they focus squarely on the allegations in the Wheeler Complaint and seek to expose potential media bias, attempts to deceive the public, and potential government complicity in those efforts—all matters of significant public concern.

Texas common law and Texas Civil Practice & Remedies Code Section 73.002(b)(1) protect such fair, true, and impartial accounts of a judicial proceeding. Texas also recognizes a fair report privilege arising under the common law and the First Amendment. *See, e.g.*, *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex.App.—Houston [14th Dist.] 2008, no pet.) (common law); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 70 (Tex.App.—Waco 1990, no writ) (fair report privilege arises under the First Amendment). The fair report privilege applies to substantially true accounts of pleadings in a lawsuit, such as the Complaint that formed

---

[18] In a separate defamation lawsuit in which he is also a plaintiff, and which is also pending before this Court, Butowsky concedes that many of the allegedly defamatory Statements at Issue were contained in the Wheeler Complaint itself. *See* Complaint at ¶ 15(b), *Chapwood Capital Investment Management, LLC v. Charles Schwab Corp.*, Case No. 4:18-cv-00548-ALM-KPJ (E.D. Tex. Aug. 3, 2018) (alleging statements in the Wheeler Complaint were defamatory). A copy of the *Schwab* Complaint is attached to the Marshall Declaration as Exhibit G.

the basis of NPR's reporting at issue in this case. *See, e.g., Langston v. Eagle Publ'g Co.*, 719 S.W.2d 612 (Tex.App.—Waco 1986, writ ref'd n.r.e.) (fair report privilege applies to allegations in pleading). Whether a statement is privileged is a question of law. *Id.*

Further, in a defamation suit arising out of a report of a judicial proceeding, a "defendant asserting the statutory privilege is not required to prove the truth of the allegations that it repeats to its readers." *Texas Monthly, Inc. v. Transamerican Nat. Gas Corp.*, 7 S.W.3d 801, 806 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Instead, Defendants must only show "the statements in the article are a 'fair, true, and impartial' account" of the proceeding itself. *Id.*

Defendants' statements are privileged because they provided a fair and accurate description of a judicial proceeding—namely, the Wheeler Lawsuit and the allegations contained in the Wheeler Complaint. Butowsky has not met his burden of demonstrating, or even alleging, that the Reports are not a fair, true and impartial account of the Wheeler Lawsuit. Rather, Butowsky focuses instead on his claims concerning the accuracy of the underlying facts alleged in the Wheeler Complaint. But when, as here, a report is based on an official document or proceeding, the accuracy of the underlying facts is irrelevant. *See KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 715 (Tex. 2016); *Goss*, 252 S.W.3d at 656. Accordingly, Butowsky's claims are barred under the fair report privilege.

   b. <u>The Reports are protected by the fair comment privilege.</u>

The Reports are also privileged under Texas Civil Practice & Remedies Code Section 73.002(b)(2), the "fair comment privilege," which protects a media entity's "reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information." TEX. CIV. PRAC. & REM. CODE § 73.002(b)(2). Matters covered by the fair comment privilege cannot be grounds for a libel action. *Id.* Even if not quoting directly from the Wheeler Complaint, all but one of the Statements at Issue

commented on the allegations in the Wheeler Lawsuit—allegations that were of significant public concern to the American public.

The Wheeler Complaint alleged that Fox News was creating "fake news" in order to advance President Trump's political agenda. These allegations, in turn reported on by NPR, were undoubtedly about a matter of significant public concern. As to whether a comment on a matter of public concern is "reasonable and fair," the inquiry mirrors the fair report analysis: "under Section 73.002(b)(2), the proper comparison should be between a news report or broadcast and an otherwise unprivileged record of the state or federal government." *Freedom Commc'ns, Inc. v. Sotelo*, No. 11-05-00336-CV, 2006 WL 1644602 (Tex.App.—Eastland June 15, 2006, no pet.). Here, the majority of the Statements at Issue were either taken directly from the Wheeler Complaint or are reasonable and fair comments on or criticism of the allegations therein. *See* App'x A (identifying statements subject to fair comment privilege). Regardless of whether the allegations in the Wheeler Complaint are actually true, the fair comment privilege bars Butowsky's defamation claim as a matter of law.

2.      **The Reports truthfully report on allegations made by a third party about a matter of public concern.**

Texas also recognizes a defense to defamation actions where a media defendant reports accurately on third-party allegations regarding a matter of public concern. *See* Tex. Civ. Prac. & Rem. Code § 73.005(b). In addition to being protected by the fair report or fair comment privilege, the bulk of the Statements at Issue are undoubtedly based on such third-party allegations about a matter of public concern and, as such, are not actionable.

The Texas Supreme Court has long recognized that a libel plaintiff cannot establish falsity if a claim is based on accurate reporting of third-party allegations about a matter of public concern. *See, e.g., McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990); *KBMT v. Toledo*, 492

S.W.3d 710, 711 (Tex. 2016). The Texas Legislature codified this principle in 2015 in Texas Civil Practice & Remedies Code Section 73.005(b). Under this rule, a libel defendant need only prove that the third-party allegation was in fact made; the media defendant need not establish the truth of the underlying allegations.

Because the Reports accurately describe the nature of Wheeler's allegations, they are substantially true under the third-party allegation rule and cannot serve as a basis for liability. *See* App'x A (comparing Reports to allegations in Wheeler Complaint). For example, Butowsky complains that Defendants republished a quote from Douglas Wigdor, Wheeler's attorney, regarding the Wheeler Lawsuit in the August 1 Report. *See* Compl. ¶ 29. However, rather than contesting that this statement was made, Butowsky instead takes issue with the underlying content of the quote. Defendants' accurate restatement of others' allegations fall squarely within the scope of the third-party allegation rule, and because the third-party allegation rule protects Defendants' statements as a matter of law, Butowsky's claims should be dismissed.

### 3.    <u>Many of the Statements at Issue are not of and concerning Butowsky.</u>

All but one of the 23 Statements at Issue are either taken from the Wheeler Complaint or comment on the allegations in the Wheeler Lawsuit; therefore, they qualify for protection under the fair report and fair comment privileges and the third-party allegation rule. The only remaining claim—regarding the time of filing of the Wheeler Complaint—is not "of and concerning" Butowsky and, therefore, cannot serve as the basis for Butowsky's defamation claim.[19] Several of the privileged Statements at Issue are similarly not of and concerning Butowsky, and as a result, could not be defamatory with regard to Butowsky even if they were not privileged.

---

[19] It is also demonstrably true. *See* fn.9, *supra.*

To prevail on a defamation claim, a plaintiff must establish that the allegedly defamatory statement is "of and concerning" the plaintiff. *See Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 429 (Tex. 2000); *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960). Among the statements about which Butowsky complains, the following are plainly not "of and concerning" him:

- Fox News' statement was "baseless."

- "On May 11, 2017, Fox News reporter, Malia Zimmerman, 'sends Wheeler a draft of her story … It includes no quotes from Wheeler.'"

- "Zimmerman's online story … cites Wheeler, incorporating two key quotations from Wheeler that do not appear on video. In each, the private investigator seemingly takes ownership of the accusations."

- "Zimmerman issues instructions for Wheeler's appearance on Sean Hannity's show later that evening. 'Reread the story we sent you last night [that contained the invested quotes] and stick to the script, she texts Wheeler.'"

- Fox was involved in a "journalistic scandal" over the Seth Rich story.

Compl. ¶ 29; *see also* App'x A. Because these statements are not of and concerning Butowsky, they cannot serve as the basis for his defamation claim. *Huckabee*, 19 S.W.3d at 429.

### 4.   <u>Many of the Statements at Issue are not capable of a defamatory meaning.</u>

Many of the Statements at Issue are not capable of a defamatory meaning. For example, Butowsky complains of the statement in the August 1 Report that Wheeler "did not make great headway" in his investigation. Compl. ¶ 29; *see also* App'x A (identifying similar statements). Not only is this statement not of and concerning Butowsky, it is not capable of being defamatory even if it were about him.

"Whether the words used are reasonably capable of a defamatory meaning is a question of law." *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 n.1 (Tex. 1987). Showing that a statement is false is not enough to be actionable; a false statement must also be

defamatory. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Not all unpleasant statements are actionable as defamation. "A statement may be false, abusive, unpleasant, or objectionable without being defamatory in light of the surrounding circumstances." *Obey v. Frisco Med. Ctr., L.L.P.*, No. 4:13-CV-656, 2015 WL 417509, at *3 (E.D. Tex. Jan. 30, 2015) (Mazzant, J.). A defamatory statement is one that harms a person's reputation and "exposes the person to public hatred, contempt or ridicule." *See Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013). A statement is not defamatory where it is vague and general under the circumstances. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 326 (5th Cir. 1997).

The following Statements at Issue are examples of those not capable of a defamatory meaning as to Butowsky because they do not injure his reputation and expose him to "public hatred, contempt or ridicule." *See* App'x A (identifying statements not capable of defamatory meaning):

- Wheeler did "not make great headway" in his investigation of the murder of Seth Rich. Compl. ¶ 29.

- "On May 11, 2017, Fox News reporter, Malia Zimmerman, "sends Wheeler a draft of her story … It includes no quotes from Wheeler." *Id.*

To the extent that these statements are even about Butowsky at all, they do not defame him. *See Scott v. Weber Aircraft*, 609 Fed. Appx. 788, 792 (5th Cir. 2015) ("To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace."). Accordingly, Butowsky is unable to establish a plausible defamation claim on the basis of these statements.

### 5.     Many of the Statements at Issue are protected expressions of opinion.

Additionally, many of the Statements at Issue are not capable of being defamatory because they are protected opinion. "To be actionable, a statement must be a factual assertion; expressions of opinion are not actionable." *Teel v. Deloitte & Touche LLP*, No. 3:15-cv-2593-G,

2015 WL 9478187, at *4 (N.D. Tex. 2015). Statements that cannot reasonably be interpreted as stating verifiable facts are constitutionally protected. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). Challenged statements are construed as a whole based upon a reasonable person's perception of them. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004).

Several of the Statements at Issue are not statements of fact. For example, Butowsky complains of Folkenflik's characterization of Butowsky's narrative as "inconsistent," *id.* at ¶ 47, his conclusion that the fact that Butowsky coordinated with the White House on the Seth Rich story "is still a plausible assumption," *id.*, and his view that "Butowsky displays no curiosity about the way Fox's reporting and his activities affected the very people [the Rich Family] he says he sought to help," *id.* at ¶ 51. These statements are all statements of opinion, not verifiable facts. Similarly, the Statements at Issue in the September 15 Report, which described the aftermath of the Zimmerman Report, included several statements of opinion, including the four "lessons," such as "Investigative reports should be ironclad." *See* App'x A (identifying 8 Statements at Issue that are expressions of opinion).

These are not statements of fact that are in any way verifiable, and to the extent Butowsky is attempting to rely on them for his claim, he has failed to state a plausible claim for relief. *See New Times*, 146 S.W.3d at 157.

### 6.    Plaintiff has failed to plausibly allege Defendants acted with actual malice.

Plaintiff has not adequately pled facts that would establish that Defendants acted with the requisite level of fault to establish liability for defamation. Because Butowsky is a public figure and, independently, because the Statements at Issue are privileged,[20] he must prove that Defendants acted with actual malice when they published the allegedly defamatory statements.

---

[20] *See* TEX. CIV. PRAC. & REM. CODE § 73.002(a); *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987) (observing that a plaintiff must establish actual malice to overcome privileges).

The "heavy burden" imposed on public figures to establish this element of a defamation claim is purposeful; it is a burden intended to provide essential "breathing space" for free expression and a free and vigorous press. *New York Times, Co. v. Sullivan*, 376 U.S. 254, 272 (1964). This is a high bar—one that Butowsky cannot clear.

> a.    <u>Butowsky is a public figure required to show actual malice.</u>

A person may become a public figure under two circumstances: (1) if that person achieves a high level of fame or notoriety and becomes a public figure for all purposes and in all contexts (a "general purpose" public figure), or (2) if he voluntarily injects himself, or is drawn, into a particular controversy and becomes a public figure for a limited range of issues (a "limited purpose" public figure). *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citing *Gertz v. Welch*, 418 U.S. 323, 351 (1974)).

By his own admission, Butowsky is "internationally recognized" in the wealth management industry, and he has been "prominently featured" in films and media coverage as a result of his high-profile work with professional athletes. Compl. ¶ 1. Butowsky has also admitted that he has appeared hundreds of times on national television and is "regularly heard on radio shows around the country."[21] *Id.* at ¶ 2. In addition to being a high-profile figure generally, Butowsky injected himself into the Seth Rich murder conspiracy such that he is a limited purpose public figure for the purpose of this lawsuit. In Texas, a plaintiff is a limited purpose public figure if: (1) the controversy at issue into which the plaintiff injected himself is public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff has more than a

---

[21] These recitations suggest that Butowsky may in fact be a general-purpose public figure. However, because he has injected himself into the public controversy at issue in this lawsuit, Defendants need only establish that he is a limited-purpose public figure.

trivial or tangential role in the controversy; and (3) the alleged defamation is germane to the plaintiff's participation in the controversy. *See WFAA-TV, Inc.*, 978 S.W.2d at 571.

Each of those factors is satisfied here. First, the controversy surrounding Seth Rich's murder, the media's coverage of it, and the conspiracy theories that emerged was of great interest to the public. *See* Compl. ¶ 33 (gathering reports on subject). Second, Butowsky had more than a tangential role in the controversy; indeed, he was a named defendant in the lawsuit on which Folkenflik based his reporting and credited himself as being "the one who's been putting this [Zimmerman Report] together." Wheeler Compl. ¶ 15. Finally, the alleged defamation—NPR's reporting on the Wheeler Lawsuit—is certainly germane to plaintiff's participation in the controversy, given the numerous statements in the Wheeler Complaint detailing Butowsky's role in the controversy. Accordingly, Butowsky is a "limited purpose" public figure and must demonstrate actual malice.

b.    Butowsky fails to plausibly allege actual malice.

A public figure plaintiff, such as Butowsky, cannot prevail in a defamation action unless he plausibly alleges and proves that the challenged statements were published with "actual malice"—that is, knowledge of their falsity or a "high degree of awareness" of their "probable falsity." *See, e.g., Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964) (public figures may recover damages only for publication of "calculated falsehood[s]"); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (dismissing limited purpose public figure's defamation claim because he did not plead actual malice). "Actual malice" does not simply mean "ill will," but rather publication of a false statement knowing the statement was false or with reckless disregard as to the truth of the statement. *See Gertz v. Welch*, 418 U.S. 323, 349 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005); *Casso v. Brand*, 776 S.W.2d 551, 554 (Tex. 1989). "Reckless disregard" is a subjective standard

that focuses on the state of mind of the defendant at the time the statement was published. *See Skeen,* 159 S.W.3d at 637; *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 162 (Tex. 2004). It means that the publisher, in fact, entertained serious doubts about the truth of the statement. *Casso*, 776 S.W.2d at 558. Even failure to investigate the facts before they are published is insufficient to show actual malice. *Skeen*, 159 S.W.3d at 637.

To plausibly plead actual malice, the complaint must contain facts that show the defendant made the false publication with a *high degree of awareness of probable falsity* or entertained serious doubts as to the truth of the publication at the time the statements were made. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989); *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989).

Here, Butowsky has not adequately alleged that Defendants acted with actual malice. In fact, the vast majority of the allegations contained in the Complaint make the conclusory allegation that Folkenflik knew that the allegations contained in the Wheeler Complaint were false because he *could* have accessed information online that would have cast doubt upon Wheeler's claims. *See, e.g.*, Compl. ¶ 66 (stating that Folkenflik had access to text messages because they were available on Twitter); Compl. ¶¶ 83-86 (arguing that Folkenflik knew that Wheeler interviewed Detective Joseph Dellacamera based availability of purported interview notes online). Butowsky's belief about Folkenflik's ability to access information, without more, is insufficient to plead that Folkenflik *subjectively* entertained serious doubts about the truth of the statement. *Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CA-180-SS, 2013 WL 4774757, at *3 (W.D. Tex. Aug. 30, 2013) (dismissal appropriate where complaint failed to plead that defendant subjectively had significant doubt about the truth of his statement); *Casso*, 776 S.W.2d at 558; *Skeen*, 159 S.W.3d at 637 (failure to investigate the facts before they are

published is insufficient to show actual malice). Accordingly, Butowsky has failed to adequately plead actual malice and therefore has not stated a plausible claim for defamation.

### 7. <u>Most Defendants did not publish any statements.</u>

The *sine qua non* of defamation is the publication of a false statement. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994). As noted above, Butowsky has failed to allege that any Defendant other than NPR and Folkenflik made any of the allegedly defamatory statements identified in the Complaint or engaged in *any* conduct relevant to the publication of the Statements at Issue. Thus, Defendants Mohn, Foxwell, Oreskes, Turpin, Chapin, Cook, Dellios, Gogoi, and Gilbert are entitled to dismissal because Butowsky has failed to allege that they published any statement that could give rise to a defamation claim.

### B. <u>Butowsky has failed to state a plausible business disparagement claim.</u>

To prevail on a business disparagement claim, "a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *See In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015).

Texas courts have found Defendants are entitled to the same protections and defenses for a business disparagement claim as for a claim of defamation. "[T]he same protections which the First Amendment affords defendants from libel claims also protect them from non-libel claims that are based on the same defamatory publication." *See Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 682-83 (Tex.App.—El Paso 2001, no pet.). Thus, Butowsky's business disparagement claim fails for the same reason his defamation claim fails.

### C. <u>Butowsky has failed to state a plausible intentional infliction of emotional distress claim.</u>

Butowsky also asserts a claim for intentional infliction of emotional distress ("IIED")—

again, ostensibly only against NPR and Folkenflik—claiming that Folkenflik and NPR's publication of the Reports "offend against generally accepted standards of decency and morality," which "caused Butowsky to suffer severe emotional distress, fear, and panic." *See* Compl. at ¶¶ 182-83. However, these conclusory allegations are insufficient to avoid dismissal.

### 1.   The First Amendment bars Butowsky's IIED claim.

Butowsky's IIED claim is barred by the First Amendment because Defendants' speech was a matter of public concern. *See, e.g., Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (speech condemning homosexuality outside funeral of plaintiff's son, even if otherwise offensive, was protected under the First Amendment because it was speech on a matter of public concern). When speech is, as it is here, on a matter of public concern "[s]uch speech cannot be restricted simply because it is upsetting or arouses contempt." *See Snyder*, 562 U.S. at 458.

Furthermore, when non-libel claims are grounded on the same speech that allegedly justifies a libel claim, a plaintiff must prove the falsity of the alleged defamatory speech and, in the case of a public figure, that the defendant acted with actual malice. "To hold otherwise would permit litigants to circumvent constitutional defenses against the tort of libel by pleading torts that do not require falsity or actual malice." *See Provencio*, 44 S.W.3d at 682-83 (quoting *Evans v. Dolcefino*, 986 S.W.2d 69, 79 (Tex.App.—Houston [1st Dist.] 1999, no pet.)). The same protections that the First Amendment affords defendants from libel claims also protect them from non-libel claims that are based on the same allegedly defamatory publications. *See Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 942 (Tex. 1988); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988) (The First Amendment can serve as defense to IIED claim).

### 2.      Butowsky cannot rely on IIED as a "gap filler" tort because the gravamen of his claim is defamation.

Plaintiff's IIED claim is also barred because other remedies are available to him. In Texas, IIED is a "gap filler" and is available only when the defendant intentionally inflicts emotional distress in such an outrageous manner that the victim has no other theory of redress. *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). To maintain an IIED claim, Butowsky would have to establish that there are no alternate causes of action that would provide a remedy for the severe emotional distress allegedly caused by NPR's publication of the Reports. *See, e.g., Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). If the gravamen of a plaintiff's IIED claim is in another tort, such as defamation, the plaintiff cannot maintain the claim, regardless of whether the plaintiff chooses to bring or succeeds on the other tort claim. *See Hoffmann-La Roche*, 144 S.W.3d at 447-48. Here, Butowsky's entire claim arises out of what he claims is false speech; thus, his IIED claim must be dismissed.

### 3.      Butowsky fails to state a claim for IIED.

Furthermore, Plaintiff fails to adequately plead facts sufficient to establish an IIED claim. To prevail on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: (1) the defendant acted either intentionally or recklessly; (2) the conduct was extreme or outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *See Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). Plaintiff fails to adequately plead facts sufficient for an IIED claim under these elements.

First, Butowsky did not allege conduct that was extreme or outrageous. In fact, the Texas Supreme Court has clarified that there can be no liability under a claim of IIED for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See Hoffmann-La Roche*,

144 S.W.3d at 445. Here, Butowsky has failed to establish any facts that would suggest that any of Defendants' conduct was so outside the bounds of acceptable behavior that it would constitute "extreme or outrageous" conduct of the type necessary to establish an IIED claim.

Additionally, Butowsky has not plausibly alleged that the publication of the statements at issue caused him emotional distress of the severity required to establish an IIED claim. To recover on an IIED claim requires "more than mere worry, anxiety, vexation, embarrassment, or anger." *See Hawkins v. Frank Gillman Pontiac*, 102 Fed. Appx. 394, 400 (5th Cir. 2004). Instead, this element requires distress "so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering." *Williams v. First Tennessee Nat'l Corp.*, 97 S.W.3d 798, 805 (Tex.App.—Dallas 2003, no pet.); *see also GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). Butowsky's vague and conclusory claims of "severe emotional distress, fear and panic" do not suffice to plead emotional distress of the type necessary to prevail on an IIED claim.

## D. <u>Plaintiff has failed to state a plausible civil conspiracy claim.</u>

Because Plaintiff has failed to establish a plausible claim for relief under any of his other causes of action, his civil conspiracy claim also fails. To state a claim for civil conspiracy, a plaintiff must allege: (1) a combination of two or more persons; (2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). A defendant's liability for conspiracy depends on "participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Cotton v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 701 (Tex.App.–Fort Worth 2006, pet. denied). "Civil conspiracy is a derivative tort; therefore, liability for a civil conspiracy depends on

participation in an underlying tort." *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 414 (5th Cir. 2007). Consequently, if a plaintiff fails to state a claim for the tort underlying their civil conspiracy claim, the civil conspiracy claim must be dismissed, too. *Id.* Here, Butowsky has failed to plausibly allege the existence of any underlying tort to serve as the basis for his conspiracy claim. Because Butowsky has failed to plausibly state a claim for defamation *per se*, business disparagement, IIED, or civil conspiracy—which is dependent on an agreement and action in furtherance of an underlying tort—his lawsuit must be dismissed as a matter of law.

## E.     The Defamation Mitigation Act bars Plaintiff's claims

Under the plain language of Texas' Defamation Mitigation Act, "[a] person may maintain an action for defamation *only if* … [he] has made a timely and sufficient request for a correction, clarification, or retraction." TEX. CIV. PRAC. & REM. CODE § 73.005(a)(1) (emphasis added). Plaintiff has failed to plead that he has satisfied the requirements of the Defamation Mitigation Act nor did he issue a timely or sufficient request for a retraction before suing; dismissal is required. *See Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017) (unpublished) (plaintiff's claim fails as a matter of law under the Texas DMA because plaintiff failed to request a modification or retraction).[22] As the Fifth Circuit held in *Tubbs*, because Butowsky never requested that Defendants correct, clarify or retract their Reports, the DMA bars Butowsky's claims,[23] or, at a minimum precludes him from recovering exemplary damages.

---

[22] There is currently a split of authority in the Texas intermediate appellate courts as to whether failure to make a timely and sufficient retraction request pre-suit is a complete bar to litigation or just a preclusion of recovery of exemplary damages. *Compare Zoanni v. Hogan*, 2018 WL 3468883, ___ S.W.3d ___ (Tex.App.—Houston [1st Dist.] 2018, pet. filed) (dismissal was warranted for defamation claims that did not comply with DMA) with *Warner Bros. Entm't v. Jones*, 538 S.W.3d 781, 812 (Tex.App.—Austin 2017, pet. filed) and *Hardy v. Commc'n Workers of Am. Local 6215*, 536 S.W.3d 38 (Tex.App.—Dallas 2017, pet. denied) (consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damages). The Texas Supreme Court has yet to rule on the issue, but as noted above petitions for review have been filed in two cases and the Supreme Court has requested briefing on the merits in the *Warner Bros. Entm't v. Jones* case.

[23] The DMA applies to "a claim for relief, *however characterized*, from damages arising out of harm to personal reputation caused by the false content of a publication." TEX. CIV. PRAC. & REM. CODE § 73.054(a) (emphasis added).

**VII.**

<u>**CONCLUSION**</u>

"The threat of being put to the defense of a lawsuit, however frivolous, in order to vindicate rights of free speech has a chilling effect on the principle that debate on public issues . . . be uninhibited, robust, and wide-open." *Casso v. Brand*, 776 S.W.2d 551, 563-64 (Tex. 1989). Thus, "[t]o preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017), *cert. denied sub nom. Von Kahl v. Bureau of Nat. Affairs, Inc.*, 138 S. Ct. 366 (2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "[S]ummary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)).

In Section VI(A), above, Defendants have established multiple adequate and independent grounds for dismissal as to each of the allegedly defamatory Statements at Issue. Plaintiff's defamation claim fails if, as to each Statement at Issue, the Court finds for Defendant on *any* of these grounds. Plaintiff's tag-along claims for business disparagement, intentional infliction of emotional distress, and civil conspiracy fail for the reasons articulated in Section VI, (B)(C) and (D), above. And, as demonstrated in Section VI(E), above, Plaintiff's claims are barred in their entirety due to his failure to comply with the Defamation Mitigation Act, or, at a minimum, he is precluded from recovering exemplary damages. Accordingly, Defendants respectfully request that this Court dismiss this action with prejudice as to all Defendants.

Respectfully submitted,

By:  */s/ Laura Lee Prather*  _____
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:    (512) 867-8400
Telecopier:    (512) 867-8470

Thomas J. Williams
State Bar No. 21578500
thomas.williams@haynesboone.com
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
Telephone:    (817) 347-6600
Telecopier:    (817) 347-6650

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 16th day of October, 2018, a true and correct copy of the foregoing document was forwarded via e-filing and/or facsimile to the following counsel of record:

Ty Odell Clevenger                          Steven S. Biss
P.O. Box 20753                              300 West Main Street, Suite 102
Brooklyn, NY 11202-0753                     Charlottesville, VA 22903
979-985-5289 (phone)                        804-501-8272 (phone)
979-530-9523 (fax)                          202-318-4098 (fax)
tyclevenger@yahoo.com                       stevenbiss@earthlink.net

*/s/ Laura Lee Prather*  _____
Laura Lee Prather