**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ED BUTOWSKY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **DAVID FOLKENFLIK, et al.** | § | **4:18-CV-00442-ALM** |
| **Defendants.** | § | |

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Under 28 U.S.C. §636(b)(1) and Local Rule CV-72, Defendants object to the Magistrate

Judge's Report and Recommendation ("RR") to deny Defendants' Motion to Dismiss Pursuant to

Federal Rule of Civil Procedure 12(b)(6) (the "Defendants' Motion").[1] (Dkt. 58).

## I.    INTRODUCTION

The RR relies heavily on the reasoning and holding of the Fort Worth Court of Appeals in

*Dallas Morning News, Inc. v. Hall*. (RR at 50. *See id.* at 24-25, 45, 50-53, 74.) Last week, the

Texas Supreme Court **rejected** that reasoning and **reversed** that holding. *DMN v. Hall*, No. 17-

0637, 2019 WL 2063576, at *9 (Tex. May 10, 2019). The Texas Supreme Court reaffirmed the

law that controls the proper disposition of this Motion to Dismiss:

> **"The media enjoy a privilege to report on judicial and official proceedings
> without regard to whether the information from such proceedings is actually
> true."** *Id.* at *9 (citing *KBMT Operating Co.*, 492 S.W.3d 710, 714 (Tex. 2016)];
> TEX. CIV. PRAC. & REM. CODE ("CPRC") §§73.002(a), 73.005(b)).

For this and many other reasons, the Court should not adopt the RR. Instead, for the reasons stated

in Defendants' Motion, the Court should dismiss the Complaint for failure to state a claim.

This case arises from NPR's reporting on a lawsuit and public controversy of the utmost

---

[1] Due to the significance and complexity of the issues in this case, Defendants respectfully request an oral hearing on these objections. *See* Local Rule CV-7(g).

public concern, reporting that does not give rise to a claim under well-settled Texas and First Amendment law. In 2016, Seth Rich ("Rich"), a Democratic National Committee (DNC) staffer, was killed in Washington, D.C. in what police believe was a botched robbery. Shortly afterward, Ed Butowsky ("Plaintiff") retained a private investigator, Rod Wheeler ("Wheeler"), to investigate Rich's death on behalf of the Rich family. At the same time, Plaintiff worked with Fox News to develop a news story – based in part on Wheeler's investigation – suggesting that Rich (not Russian hackers) had leaked DNC emails to WikiLeaks and may have been killed as a result. The resulting Fox story attributed to Wheeler quotes stating that he had evidence of Rich's communications with WikiLeaks and that the DNC may have been interfering with the investigation, which Wheeler denied saying. A week later, Fox News retracted the report. Wheeler sued Fox News, its reporter Malia Zimmerman ("Zimmerman") and Butowsky for defamation, alleging they misquoted him to create fake news and advance the interests of the Trump administration. NPR reported the allegations in the *Wheeler* lawsuit[2] (the "Reports")[3] Plaintiff responded by filing this suit. The Mueller Report subsequently dispelled any idea that Rich had leaked DNC emails to WikiLeaks.[4]

 This suit should be dismissed for failure to state a claim. *See* Mot. to Dismiss, Dkt. 25. Because the Reports addressed allegations in the *Wheeler* Lawsuit, those Reports are protected

---

[2] *See Wheeler v. Twenty-First Century Fox, Inc.*, No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017) (the "*Wheeler* Lawsuit"). The complaint in that case is referred to herein as the "*Wheeler* Complaint." That lawsuit, which arose out of Fox News' reporting of the Seth Rich story, was later dismissed pursuant to a Rule 12(b)(6) motion. *See* Memorandum Decision and Order, *Wheeler v. Twenty-First Century Fox*, No. 17-cv-05807-GBD (S.D.N.Y. Aug. 2, 2018). NPR reported on the dismissal as part of its ongoing coverage of this matter of public concern. David Folkenflik, *Judge Dismisses Suits Against Fox News Over Seth Rich Story*, NPR.ORG (Aug. 3, 2018), https://www.npr.org/2018/08/03/635272922/judge-dismisses-suits-against-fox-news-over-seth-rich-story.

[3] *See* Defendants' Motion at 8 (defining the "Reports" at issue in this case).

[4] In March, Special Counsel Robert Mueller issued a report on the Department of Justice's investigation into Russian interference in the 2016 presidential election. *See* Robert S. Mueller, III, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, UNITED STATES DEPT. OF JUSTICE (Mar. 2019), available at https://www.justice.gov/storage/report.pdf. The Mueller Report, of which this Court can take judicial notice, states: "The statements about Rich implied falsely that he had been the source of the stolen DNC emails." *Id*. at 48. This official government report further discredits Fox News' reporting on this issue, and undercuts Plaintiff's assertion that Defendants "knew that the Fox News Report was ... 100% correct ... [and that] Seth Rich leaked the emails to WikiLeaks." (Dkt.32 at 8).

---

under Texas law. In Defendants' Motion, Defendants established multiple independent bases requiring dismissal of Plaintiff's claims. By contorting Texas law and relying extensively on case law that has been reversed, the Magistrate incorrectly rejected every one of Defendants' arguments, recommending that this Court permit claims with no basis in Texas law to survive dismissal. The path set forth by the Magistrate is a path that would lead this Court to error.

In the RR, the Magistrate applied the wrong law and evaluated the wrong pleading to reach a result that is fundamentally at odds with well-settled Texas Supreme Court precedent. The Magistrate's errors fall into three broad buckets:

(1) The Magistrate misapplied the law regarding the applicable privileges and defenses, relying significantly on a case now reversed, on exceptions to these privileges and defenses that Texas law has never recognized, opining on privileges not asserted, and conflating and misinterpreting distinct privileges asserted by Defendants.

(2) The Magistrate failed to hold Plaintiff to the pleading standards articulated in *Iqbal/Twombly*,[5] deferring wholly to the Plaintiff's conclusory allegations and characterization of the Reports without analyzing the *Wheeler* Complaint on which the Reports are based; and

(3) The Magistrate evaluated Plaintiff's claims through the lens of a proposed amended complaint and, in doing so, analyzed legal theories currently not before this Court.

<u>First</u>, the RR incorrectly interprets Texas law regarding the privileges and defenses afforded to media defendants by relying extensively on the lower-court decision in *Hall*, which the Texas Supreme Court reversed, rejecting the very reasoning the RR recommends this Court adopt. The RR also confuses the privileges Defendants assert, including the statutory fair-report privilege, the statutory fair-comment privilege, and their common-law counterparts. It recommends against application of the fair-report privilege by relying extensively on the Restatement (Second) of Torts ("Rstmt. 2d Torts") (and its commentary), proposing that this Court adopt a conspiracy exception to the fair-report privilege that has **never before** been recognized in

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Texas. The RR invites this Court to become the *first court ever* to deny the fair-report privilege to a media defendant under that exception. It improperly relies on the Rstmt. 2d Torts to limit Texas' statutory fair-report privilege and fair-comment privileges (codified at CPRC §73.002(b)), ignoring the fact that Restatements only seek to distill general principles of common law and have no bearing on the applicability of *statutory* privileges. The result is inconsistent with controlling Texas law protecting the reporting on judicial proceedings at issue. *See KBMT*, 492 S.W.3d at 710.

Second, the RR incorrectly defers to Plaintiff's conclusory and speculative allegations, contrary to the *Iqbal/Twombly* pleading requirements. To support his theory, Plaintiff relies on unsupported and conclusory allegations that Defendants' reporting was the product of a collusive arrangement between Wheeler's counsel and Defendants without alleging any *facts* to support his claims. Even if Texas law recognized the conspiracy exception Butowsky advances (it does not), these conclusory assertions of collusion fail to nudge Plaintiff's claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. This Court need only consult the *Wheeler* Complaint to hold that the Reports are not actionable and that Plaintiff's claims lack merit.

Third, the RR erred in relying on supplemental allegations in Plaintiff's Response to Defendants' Motion ("Plaintiff's Response" Dkt. 32) and the Proposed Amended Complaint (Dkt. 54). Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 53) remains pending, and the operative pleading in this case, the Complaint, alleges defamation *per se*, not *per quod*. Nevertheless, the RR considers factual allegations not included in the Complaint and proposes that this Court rule on unpleaded causes of action, including defamation *per quod*.

The RR contains serious errors, relies on reversed precedent, and is contrary to well-settled Texas law that the Texas Legislature and Texas Supreme Court have crafted to give the media freedom and not chill reporting on suits like the *Wheeler* Lawsuit and other matters of public

concern. This Court should decline to accept the RR and grant Defendants' Motion.

## II.   OBJECTION TO THE RR'S STATEMENT OF FACTS

The factual background set forth in the RR describing the allegations in Plaintiff's Complaint (RR at 6-9) is largely correct, but its description of the allegations in the *Wheeler* Complaint (RR at 9-11) omit significant accusations made against Butowksy (Plaintiff herein but the defendant in the *Wheeler* Lawsuit). This is relevant to Defendants' Motion because the Court must compare the Reports to the *Wheeler* Complaint to determine if the articles are privileged or covered by the third-party allegation rule, which entitles media defendants to rely on the defense of truth when accurately reporting allegations made by a third-party regarding a matter of public concern. Whole sections of the *Wheeler* Complaint are devoted to Butowsky's role in allegedly defaming Wheeler, placing Butowsky at the center of the controversy over the retracted Fox News Report that reported conspiracy theories about Seth Rich's murder (§§V-X, XIII). The RR ignores these allegations. For example, the *Wheeler* Complaint alleges:

- On May 15, 2017, Butowsky sent an email regarding Zimmerman's reporting to various individuals at Fox News claiming to be the one "who's been putting this together" and suggesting that the story debunks the theory that Russian hackers leaked DNC emails and establishes there was no collusion between Trump and Russia. (*Wheeler* Compl. ¶78; *see also* ¶15).

- Shortly after the Fox News Report was published, Butowsky explained to Wheeler that the false statements contained therein were attributed to him "because that is the way the President wanted the article." (*Id.* at ¶84).

The *Wheeler* Complaint portrays Plaintiff as someone who worked extensively behind the scenes to manufacture fake news to further a political cause with which he sympathized. Specifically, the *Wheeler* Complaint included allegations that Butowsky bragged about having: "a great history of getting things … out there without people knowing I'm the one who did it," and that by surreptitiously promoting the Rich murder conspiracy he would "solve the problem about"

the Russians hacking and the questions about Trump's legitimacy. (*Wheeler* Compl. at ¶¶54-57).

The *Wheeler* Complaint further alleges:

- In February 2017, Plaintiff "offered to bankroll" an investigation into Rich's murder, introducing Wheeler to the Rich family (*id.* at ¶¶7, 50-51) and ultimately funding Wheeler's investigation, purportedly on their behalf. (*Id.* at ¶¶60-62).

- Butowsky had a significant role in the creation of the alleged "fake news." He introduced Wheeler to Fox News reporter Zimmerman (*id.* at ¶59), introduced Wheeler to White House Press Secretary, Sean Spicer (*id.* at ¶66; *see also* ¶12) and communicated with the Department of Justice about the Seth Rich murder investigation (*id.* at. ¶67).

- Butowsky coordinated with Wheeler and Zimmerman regularly in the days leading up to publication of the Fox News Report, telling Wheeler that they had secured an FBI source to confirm that emails were sent between Seth Rich and Wikileaks (*id.* at ¶70), that the White House wanted Fox News to publish the report immediately (*id.* at ¶¶72, 74), and instructing Wheeler on the narrative to use when being interviewed about the findings of his investigation (*id.* at 79; *see also* ¶¶15, 83).

None of these allegations – the very claims on which Defendants reported—was addressed in the RR's analysis of the privileges or the third-party allegation rule. In addition, the RR omits the conclusions drawn about and asserted against Butowsky in the *Wheeler* Complaint:

- ¶8 – "As it turned out Butowsky and Zimmerman were not simply Good Samaritans attempting to solve a murder. Rather, they were interested in advancing a political agenda for the Trump Administration."

- ¶82 – "In falsely quoting Mr. Wheeler, Butowksy and Zimmerman attempted – through the publication of fake news – to accomplish what they had set out to do from the start: 'solve the problem about Russians are the ones that gave the emails' and establish that 'there was no collusion like trump [sic] with the Russians.'" (*See also* ¶¶3, 4)

The allegations in the *Wheeler* Complaint paint a clear picture: Butowsky allegedly acted dishonestly, misled the Rich family and manipulated Wheeler to create fake news to help the Trump administration. The RR determined that readers could come away from Defendants' reporting with the negative impression that Butowsky did these things. But that is *exactly* what the

*Wheeler* Complaint alleged.[6] That is the very purpose of the privileges and defenses at issue here: to protect the media when they report on allegations such as these.

### III.   OBJECTIONS TO THE RR'S CONCLUSIONS OF LAW

The RR makes several errors in its analysis of Defendants' Motion. <u>First</u>, the RR errs in its application of the privileges and defenses asserted. It recommends that this Court adopt the reasoning of a now-reversed intermediate appellate court ruling in *Hall* relating to the third-party allegation rule. It recommends adoption of a novel exception to the common-law and statutory fair-report and fair-comment privileges that has no basis in Texas law and has never been applied in any jurisdiction to preclude application of the fair-report privilege to a media defendant. <u>Second</u>, the RR misapplies the pleading standards articulated in *Iqbal/Twombly* that require a court to disregard conclusory allegations and demand that a plaintiff state a plausible (not merely a conceivable) entitlement to relief. <u>Third</u>, rather than limiting itself to the pleadings and allegations in Plaintiff's Complaint, the RR relies on factual allegations and claims presented for the first time in Plaintiff's Response, or in the Proposed Amended Complaint. <u>Fourth</u>, the RR errs in evaluating the sufficiency of Plaintiff's allegations on the merits of his defamation *per se*, business disparagement, and conspiracy claims, despite the applicable privileges and defenses.

**A.   Objections to the RR's application of the third-party allegation rule: the RR relies on reversed precedent and misapplies the rule. (RR 23-25, 45-53, 74)**

"Media outlets that accurately report allegations made by a third party about matters of public concern can assert the truth as a defense." *Hall*, 2019 WL 2063576, at *8; CPRC §73.005(b). The RR (at 24) relies upon *Neely v. Wilson,* 418 S.W.3d 52 (Tex. 2013*)* for the principle that one is liable for republishing another's defamatory statement, but ignores the fact that since that decision, the Texas Legislature and Supreme Court have both reaffirmed the third-

---

[6] The RR references Plaintiff's Complaint as filed on October 16, 2018 (RR at 11), rather than June 21, 2018 (Dkt. 1).

party allegation rule's status as an exception to the *Neely* republication rule. *See KBMT*, 492 S.W.3d at 717; CPRC §73.005(b). In fact, when *Neely* questioned the longstanding third-party allegation defense[7] first recognized in *McIlvain v. Jacobs*,[8] the Texas Legislature codified the defense in CPRC §73.005(b), allowing the media to assert the defense of truth for "accurate reporting of allegations made by a third party regarding a matter of public concern." *Id.*

Here, virtually every statement made in the Reports falls within the ambit of the third-party allegation rule because they report on allegations made by Wheeler against Butowsky concerning matters of public concern: media bias and questions of Russian interference in the 2016 presidential election. However, the RR finds otherwise by relying on the now reversed intermediate appellate court decision in *Hall*.[9] This Court should follow the precedent reiterated by the Texas Supreme Court in *Hall*, 2019 WL 2063576, at *1, as well as the plain language of the statutory protection cited therein. CPRC §73.005(b).

## B.    Objections to the RR's privilege analysis. (RR 23-30, 41-51)

When discussing an article reporting on lawsuits, the Texas Supreme Court proclaimed:

> **These lawsuits involved assertions…that are certainly not flattering…But not flattering is not defamatory – especially in the face of the third-party allegation rule and the official proceeding privilege.**

*Hall*, 2019 WL 2063576, at *8 (Tex. May 10, 2019) (emphasis added). *Hall* is directly on point and outcome determinative of this case.

As the RR correctly notes, Defendants' Motion "ties almost every complained-of statement to the allegations in the *Wheeler* Complaint." (RR at 64). The *Wheeler* Complaint accused Butowsky of serious misconduct, stating that he manipulated and deceived a grieving family to

---

[7] 418 S.W.3d at 65 (Tex. 2013).
[8] 794 S.W.3d 14, 15 (Tex. 1990).
[9] *Dallas Morning News, Inc. v. Hall*, 524 S.W.3d 369 (Tex. App.—Fort Worth 2017), *rev'd*, 17-0637, 2019 WL 2063576 (Tex. May 10, 2019).

create a "fake news" story to mislead the American people in furtherance of President Trump's agenda. Many of the allegedly defamatory statements at issue are near-verbatim recitations of allegations in the *Wheeler* Complaint. *See* Dkt. 25, App'x A. The RR fails to adequately compare the Reports to the *Wheeler* Complaint, as is necessary in a fair-report analysis,[10] and misinterprets the privileges and defenses that protect Defendants' reporting here. The chart below reflects the distinct common law and statutory privileges recognized under Texas law:



The RR conflates these privileges and mistakenly relies on the Restatement and its interpretation of a privilege that Defendants have not asserted.[11] As reflected in the above chart, the RR only addresses a fraction of the grounds for dismissal urged by Defendants.

1. **The Rstmt. 2d Torts is a restatement of common law, not a guide for interpreting Texas's statutory privileges.**

---

[10] *KBMT*, 492 S.W.3d at 715.
[11] Defendants never asserted the public-interest privilege.

When analyzing the statutory fair-report and fair-comment privileges, the analysis should begin and end with the statute itself; this Court should reject the RR's suggestion to consider an exception from the Rstmt. 2d Torts – which has not been adopted by Texas courts – because doing so would invade the legislative field. The RR erroneously invokes the Rstmt. 2d Torts to interpret the statutory fair-report privilege. (RR at 45), but Restatements are a distillation of common-law principles, not guides for statutory interpretation. As the ALI Director explains:

> Traditionally, Restatements dealt with areas of state common law. Of course, they recognized the existence of state statutes, but those statutes were generally treated as *constraints that displaced discrete common law rules in particular jurisdictions*.[12]

Courts regularly look to the Restatements as persuasive guides to assess the state of the *common law,* but Restatements are not relevant to interpretation of statutes. *See Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 462 (Tex. 1980) (Supreme Court's adoption of Rstmt. 2d Torts provision does not impact pre-existing statutory provisions, "as such would be an invasion of the legislative field"); *Panozzo v. Oliveira*, 13-00-529-CV, 2002 WL 188405, at *5 (Tex. App.—Corpus Christi Feb. 7, 2002, pet. denied) (finding Rstmt. 2d Torts addressing state common law inapposite when addressing analogous statutory cause of action).

Thus, the Restatement is inapplicable to the *statutory* fair-report and fair-comment privileges. At most, its analysis is germane only to the common-law fair-report privilege. *See* Chart, *supra*, at 9. The RR erred when it recommended that this Court adopt Restatement exceptions to bar application of statutory privileges. (RR at 25-30, 42-46).

> **2. The RR recommends this Court apply comments to the Restatement that have not been adopted in Texas, and there is ample reason to believe that the Texas Supreme Court would reject the Restatement approach.**

The Magistrate further erred in recommending that this Court adopt a novel exception to

---

[12] Richard Revesz, *Restatements and Federal Statutes*, THE AMERICAN LAW INSTITUTE (Mar. 10, 2016), https://www.ali.org/news/articles/restatements-and-federal-statutes/ (emphasis added).

"the common-law fair-report privilege *embodied* in the Texas Civil Practice and Remedies Code…" found in Rstmt. 2d Torts §611, cmt. C. (RR at 42). Describing the common-law fair-report privilege as "embodied" in statute equates the common-law privilege with the statutory privilege, to which the Restatement does not apply. This is directly contrary to Texas law. CPRC §73.006; *Express Pub. Co. v. Wilkins*, 218 S.W. 614, 617 (Tex. Civ. App.—San Antonio 1920, no writ) (statutory privileges do not replace their pre-existing common-law counterparts). The RR notes that no Texas case has cited this exception, but speculates that, given the opportunity, Texas courts would adopt it. (RR at 42-44). This Court should not make this assumption.

Although the RR notes that Plaintiff characterizes Comment C as an "important exception" to the fair-report privilege, case law adopting it is sparse. The out-of-state cases relied on in the RR are distinguishable, since most involve situations in which a party attempted to self-confer the privilege by filing a lawsuit and then discussing it.[13] The most factually analogous case the RR cites (at 29, 43) is *Butler v. Hearst-Argyle Television, Inc.*, but it supports the conclusion *opposite* from the one the RR draws. 345 Ark. 462, 49 S.W.3d 116 (2001). In *Butler*, a former prosecutor filed a defamation lawsuit after a television station broadcast a portion of a videotaped affidavit. Relying on Comment C, Butler claimed that the journalist "colluded in the creation" of the affidavit. The Arkansas Supreme Court rejected that theory, holding that the television station *was entitled to the fair-report privilege*. *Id.* at 430-471. Plaintiff has cited no case, and Defendants are aware of none, adopting Comment C to vitiate the common-law fair-report privilege where a media defendant reported on a lawsuit. The RR recommends that this Court become the first court ever

---

[13] *See ZS Assocs., Inc. v. Syngy, Inc.*, 2011 WL 2038513 (E.D. Pa. 2011) (applying exception where plaintiff attempted to self-confer privilege by filing a complaint containing allegedly defamatory statements and issued a press release repeating the statements); *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 732 (7th Cir. 2004) (addressing self-conferral of privilege); *Burrill v. Nair*, 217 Cal. App. 4th 357, 398, 158 Cal. Rptr. 3d 332, 363 (2013), *disapproved of by Baral v. Schnitt*, 1 Cal. 5th 376, 376 P.3d 604 (2016) (complainant cannot self-confer privilege by filing pretextual criminal complaint); *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 252 Ill. Dec. 175, 742 N.E.2d 425, 442-43 (2000) (holding fair-reporting privilege did not allow an individual to self-confer privilege).

to do so. (RR at 27-28, 41-44). The Court should decline this invitation to commit such an error.

Similarly, no Texas case has adopted Comment E to the Restatement, nor is there any indication that the Texas Supreme Court would do so. Comment E states that reports are not subject to a qualified privilege, or that pleadings are not part of a judicial proceeding within the meaning of common-law privilege rules, until they have been acted on by a court. Decades ago some jurisdictions considered and adopted this exception, but the "weight of modern authority" applies the privilege to a pleading as soon as it is filed. *Salzano v. North Jersey Media Group Inc.*, 201 N.J. 500, 993 A.2d 778 (2010), *cert. denied*, 2011 WL 197662 (U.S. 2011) (collecting cases). Texas courts have traditionally taken the same approach when construing the applicability of judicial privileges in other contexts, such as the judicial-proceedings privilege. *See James v. Brown,* 637 S.W.2d 914, 916-17 (Tex. 1982) (the judicial-proceedings privilege "extends to ... all aspects of the proceedings, including ... *any of the pleadings or other papers in the case*"). This Court should reject the RR's recommendation that this Court presume these exceptions apply despite a lack of authority in Texas to support that conclusion. (RR at 28, 44).

### 3. The RR conflates the constitutional, common law, and statutory privileges and fails to distinguish them in its analysis.

Texas statutory libel law "does not affect the existence of common law, statutory law, or other defenses to libel." CPRC §73.006; *see also Weaks v. White*, 479 S.W.3d 432, 438 (Tex. App.—Tyler 2015, pet. denied) (same); *Express Pub. Co. v. Wilkins*, 218 S.W. at 617 (media "can interpose any defenses to a civil cause for libel as existed at common law or otherwise, *in addition to* the defenses enumerated in the statute" (emphasis added)). The RR incorrectly treats the statutory fair-report and fair-comment privileges as identical to their common-law counterparts, when they are separate privileges that can be, and were, asserted independently.

The RR further erred when it did not consider the statutory fair-report and fair-comment

privileges separately. (RR at 49). The Texas Civil Practice & Remedies Code recognizes two distinct privileges, the fair-report privilege in §73.002(b)(1) and the fair-comment privilege in §73.002(b)(2). When assessing the statutory fair-report privilege, "a private individual who sues a media defendant for defamation over a report on official proceedings of public concern has the burden of proving that the gist of the report was not substantially true – that is, that the report was not a fair, true, and impartial account of the proceedings." *KBMT*, 492 S.W.3d at 715. Significantly, "the burden is not met with proof that the report was not a substantially true account of the actual facts outside the proceedings." *Id.*

By contrast, the fair-comment privilege protects journalists who engage in commentary or criticism on matters of public concern. Unlike the fair-report privilege, under which a report must be "fair, true, and impartial," the fair-comment privilege protects journalists from liability for "reasonable and fair-commentary or criticism." *See* CPRC §§73.002(b)(1) and (b)(2). While the RR appears to recognize this separate standard (RR at 27), it fails to address Defendants' argument that the fair-comment privilege applies to the complained-of statements. Instead, the RR discusses the fair-report privilege at length and summarily concludes that neither the fair-report nor the fair-comment privilege is applicable without analyzing Defendants' fair-comment defense. *See* RR at 49. Defendants object to the RR's analysis of the applicable privileges because it fails to differentiate these distinct privileges. *See* RR at 41-51; *see* Chart, *supra*, at 9.

### 4. The RR adopts the wrong standard for assessing the common-law fair-report and fair-comment privileges.

The RR discusses the showing needed to overcome the public-interest privilege, a common-law privilege that is not even at issue in this case. Neither *Writt v. Shell Oil Co.*, 409 S.W.3d 59 (Tex. App.—Houston [1st Dist.] 2013), *rev'd on other grounds*, 464 S.W.3d 650 (Tex. 2015), nor *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762 (Tex. 1987), addresses the fair-report

privilege; they interpret the public-interest privilege, on which Defendants do not rely. *Writt*, 409 S.W.3d at 69; *Hurlbut*, 749 S.W.2d at 768. Moreover, the RR relies on authority interpreting the public-interest privilege when it states that a conditional privilege is defeated when it is abused, and abuse may be found when the defendant "knows the matter to be false or does not act for the purpose of protecting the interest for which the privilege exists," (Rstmt. 2d Torts, §§601 and 603). However, Defendants never invoked the public interest privilege.[14]

By relying on the public interest privilege, the RR mistakenly adopts the wrong standard and mistakenly applies this standard to *both* the fair-report and fair-comment privileges whether based on common law, statute or constitutional authority. This Court should reject the portions of the RR (RR at 25-30, 42-46), that adopt the standard for assessing the public-interest privilege and instead rely on the Texas fair-report standard articulated in *Goss v. Houston Community Newspapers*, which establishes that the privilege applies "so long as the publication fairly and accurately reports" on the proceeding, "even if the underlying facts being reported on are untrue or defamatory." *Goss*, 252 S.W.3d 652, 655 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

## C.      The RR incorrectly applies the *Iqbal/Twombly* pleading standard allegations in the Complaint.

The RR sets forth the proper standard of review of a Rule 12(b)(6) motion under *Iqbal/Twombly* (RR at 4-6) but improperly applies that framework. *See, e.g.*, RR at 49, 76, 78, 81, 86-87. The Supreme Court requires a two-step process: first, the court must "identify and disregard conclusory allegations," because they are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 664; second, looking only to the remaining factual allegations in the Complaint, a court must "determine if they plausibly suggest an entitlement to relief." *Id*. The RR incorrectly defers to

---

[14] Comment C of the Rstmt. 2d Torts, §599 expressly states the circumstances under which a privilege can be defeated (outlined in §§600-605A) do not apply to privileges set forth in §611 (fair-report privilege).

Plaintiff's conclusory assertions as if they were statements of fact. This Court should decline to adopt that approach.[15]

   Many of Plaintiff's allegations are simply "naked assertions," *Iqbal* at 678, that do not satisfy the pleading requirements of *Iqbal/Twombly*. While observing that conclusory allegations are not entitled to a presumption of truth and must be identified and disregarded (RR at 5), the RR recites conclusory allegations and assumes their truth, even though those conclusory allegations must be disregarded. (*See* Sections III.E.5 (objections to R&R's actual malice recommendations) and III.H (objections to R&R's conspiracy recommendations), *supra*.)

   Under *Iqbal/Twombly*, the Court must use its "judicial experience and common sense" in evaluating a complaint. Here, the conclusory statements in Plaintiff's Complaint defy common sense. In this case, a journalist reported the newsworthy allegations in a lawsuit. Butowsky's naked assertions of "collusion" and "conspiracy" are simply not entitled to a presumption of truth. Plaintiff alleges that Folkenflik, a well-known and respected journalist, "conspired" with a source to manufacture false allegations about Plaintiff, yet he fails to allege a single *fact* in support of that claim. The bald speculation of "collusion" and "conspiracy," without any factual support, is simply not credible and not entitled to a presumption of truth, even at the Motion to Dismiss stage. The RR should have disregarded these conclusory assertions.

**D.    The RR improperly relies on and evaluates allegations and claims first introduced in Plaintiff's Response and his Proposed Amended Complaint.**

   The RR relies on allegations that Plaintiff does not make in his Complaint. Although the RR states that Plaintiff asserts a defamation *per se* claim (RR at 3, 31), it analyzes a defamation *per quod* claim introduced in the Proposed Amended Complaint (RR at 34 n.13). The RR also

---

[15] *See, e.g.*, *Cheatam v. JCPenney Co, Inc*, 1:16-CV-00072-MAC, 2016 WL 4718959, at *4 (E.D. Tex. July 13, 2016), *R&R adopted*, 2016 WL 4703844 (E.D. Tex. Sept. 8, 2016) (recommending dismissal of defamation claims on 12(b)(6) motion where plaintiff's conclusory allegations failed to plausibly allege entitlement to relief).

relies on Plaintiff's Response and its assertion therein of defamation-by-implication.[16] Ultimately, the RR's entire analysis of whether Plaintiff failed to state a claim is evaluated through the lens of an unpleaded claim. (RR at 51-71).

The Complaint alleges defamation *per se*. In evaluating a *per se* claim, a court cannot look beyond the four corners of the pleadings. *See Main v. Royall*, 348 S.W.3d 381, 390 (Tex. App.— Dallas 2011, no pet.); *KTRK v. Robinson*, 409 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The defamatory nature of the challenged statement must be apparent on its face without reference to extrinsic facts or "innuendo."[17] If the court must resort to innuendo or extrinsic evidence to determine whether a statement is defamatory, then it is defamation *per quod* and requires proof of injury and damages. *Main*, 348 S.W.3d at 390. In allowing Plaintiff's *per se* claim to survive, the RR improperly looked outside the four corners of the pleadings and to Plaintiff's Response to discern factual allegations not included in the Complaint.[18] (RR 34 n.13; 72 n.26; 73 n.27). This Court should not make the same mistake.

Rather than confine itself to Plaintiff's defamation *per se* claim, the RR inferred a defamation-by-implication claim and found that "Plaintiff has sufficiently alleged the gist of the publications was not substantially true." (RR at 51). The RR's reliance on an unpleaded libel-by-implication claim is particularly troubling considering the Texas Supreme Court's recent caution about the chilling effect of such claims:

> Although [*New York Times v.*] *Sullivan* emphasized the "actual malice" requirement that applies when the plaintiff, defendant, or subject matter are sufficiently "public," *see generally* 376 U.S. 254 ... (1964), we recognize that its reasoning extends to the

---

[16] *See also* RR, p. 73, n.27 and p. 26, n.26 (referring to new (time-barred) defamatory statements).

[17] *Moore v. Walthrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.) (noting that "the very definition of 'per se,' 'in and of itself,' precludes the use of innuendo").

[18] Plaintiff may not rely on new facts in his response to the Motion to Dismiss to defeat the motion. *Coach, Inc. v. Angela's Boutique*, CIV.A. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011); *see also Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (court may not look to additional facts alleged in opposition to 12(b)(6) motion); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (plaintiff may not present new allegations in response to dispositive motion).

First Amendment concerns that defamation by implication raises.

*Dallas Morning News v. Tatum,* 554 S.W. 3d 614, 633 (Tex. 2018), *cert. denied,* 139 S. Ct. 1216

(2019). The RR erred by creating an unpleaded defamation-by-implication claim (despite their

disfavored status) and then applying the wrong standard to keep the claim alive.

E.   **Objections to the RR's analysis of Plaintiff's defamation *per se* claim (RR Section VI., pp. 31-95)**

As demonstrated above, the RR improperly analyzes an unpleaded defamation *per quod*/

libel by implication claim. (RR 51-89). The Texas Supreme Court recently ratified the distinction

between "defamation *per se*" and "*per quod*"[19] and reiterated its approach to *per se* claims:

> To begin, 'textual defamation' refers to the common-law concept of defamation *per se*, … defamation that arises from the statement's text without reference to any extrinsic evidence …. [P]laintiffs relying on extrinsic defamation must assert as much in their petitions to present the theory at trial." *See Billington v. Hous. Fire & Cas. Ins.,* 226 S.W.2dd 494, 497 (Tex. Civ. App.—Fort Worth 1950, no writ).

*Id.* Importantly, the accusation Butowsky complains of—that he is portrayed as a liar – is not

defamatory *per se*: the Texas Supreme Court has expressly held that general allegations of

untruthfulness do not accuse a professional of lacking a peculiar skill necessary for the proper

conduct of the profession and are therefore not defamatory *per se. Id.,* at 67-68.

**1.   The Reports are substantially true. (RR 52-74)**

The third-party allegation rule discussed in Section II.A. *supra*, is not a privilege, it speaks

to the Plaintiff's burden to establish falsity of a complained-of report. In *KBMT v. Toledo,*[20]

decided after *Neely v. Wilson*, the Texas Supreme Court reiterated that *McIlvain v. Jacobs*

controls.[21] In *McIlvain*, a television station reported on an investigation of city employees doing

private work on city time. The employees sued, alleging that the report was false because the

---

[19] *Id.* at 626, *citing Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013).
[20] 492 S.W.3d at 717.
[21] 794 S.W.2d 14 (Tex. 1990).

underlying charges were false. The Texas Supreme Court explained that "the truth of a report is to be measured by the scope of the investigation, not by whether the misconduct being investigated could ultimately be proven." *Id.* Similarly, in *KBMT*, the truth of a report on a Texas State Medical Board proceeding was to be measured against what the official report said, not whether the underlying facts were true. And, just last week in *Hall*, in analyzing a media report on allegations in a lawsuit, the court reiterated a plaintiff cannot meet its burden of establishing that a report is materially false "with proof that the report was not a substantially true account of the actual facts outside the proceedings." 2019 WL 2063576, at *8, citing *KBMT*, 492 S.W. 3d at 715. Thus, the R&R's incorrect analysis of the third-party allegation rule yields an incorrect analysis of the Report's substantial truth.

To the extent the RR analyzes the unpleaded defamation *per quod* claim and concludes that the alleged gist of the publications was not substantially true, the RR's analysis is also faulty. The gist of the *Wheeler* Complaint is that Butowsky, a Dallas financial advisor who often appeared as a contributor on Fox News,[22] and Fox News knowingly manufactured and promoted "fake news" in a deliberate effort to deceive the American people to advance a political agenda in support of the Trump Administration.[23] Plaintiff's characterization of the gist of Defendants' reporting is substantively identical: "Plaintiff, a Dallas investment manager and financial talking head, concocted, spearheaded and actively participated with Fox News and the White House in a concerted scheme to promote 'fake news.'" (RR at 64). Comparing Plaintiff's alleged gist to the *Wheeler* Complaint, NPR's reporting is no more damaging to Butowsky's reputation than the nearly identical allegations contained in the *Wheeler* Complaint itself. *Compare, e.g., Wheeler* Compl. ¶¶115-16 (alleging Butowsky knowingly made false statements), and *Wheeler* Compl.

---

[22] *Wheeler* Complaint, ¶¶ 5, 37-38.
[23] *See, e.g., Wheeler* Compl., ¶¶ 3, 4, 8, and 82.

¶¶3-4, 82 (stating Butowsky attempted to publish fake news to further a political objective), *with* RR at 67 (noting Plaintiff's alleged gist of the Reports was that Plaintiff "fabricated the story"); *Wheeler* Compl. ¶¶8, 52 (alleging Butowsky had ulterior political motives) with RR at 67 (observing that, according to Plaintiff, Folkenflik implied Butowsky had ulterior political motives beyond helping the Rich family).

## 2.   The RR's "of and concerning" analysis is wrong. (RR 74-76)

The RR incorrectly concludes that all of the Reports could be understood to refer to Plaintiff, but many of the allegedly defamatory statements in a several of the articles are not actionable because they are not "of and concerning" Butowsky. *See* Dkt. 25, App'x A at 1, 3-7, 9, 11-12. For example, the August 7 Report makes no reference to Butowsky at all. The RR's determination that the Reports could collectively refer to Plaintiff relies on an overbroad conception of the group libel doctrine; the RR concludes that Butowsky may have plausibly alleged that he is a "readily identifiable member" of "a journalistic scandal." (RR at 75-76). Although a statement need not mention an individual by name to be defamatory, it must be clear to those who know and are acquainted with him that the defamatory statement is directed to him. *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Whether a plaintiff is referenced in a statement is a question of law. *See id.* The entirety of the August 7 Report is about *Fox News* and cannot be understood by a reasonable reader as being about Butowsky.[24] The RR should be rejected on this issue.

---

[24] *See Huckabee v. Time Warner Entm't Co.*, L.P., 19 S.W.3d 413, 429–30 (Tex. 2000) (statement about family courts was not reasonably capable of a defamatory meaning as to the specific family-court judge); *Durckel v. St. Joseph Hosp.*, 78 S.W.3d 576, 584 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *McBride v. Crowell–Collier Publ'g Co.*, 196 F.2d 187, 189 (5th Cir.1952) (stockholder cannot recover for allegedly defamatory statements about business); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[A] false disparaging statement about IBM…would not…ordinarily be a defamatory statement 'of and concerning' all of IBM's suppliers, employees and dealers, however much they may be injured as a result"); *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir.1990) (affirming dismissal of defamation claims by individual investors not mentioned in broadcast about enterprise in which they invested).

---

### 3.  Statements of verifiable fact and opinion. (RR 76-78)

The RR concludes that the allegedly defamatory statements were offered as statements of facts and not protected opinion. (RR at 76-78). In doing so, the RR misinterprets *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17–21 (1990) and disregards the Texas Supreme Court's "directive to analyze the 'entire context in which [a statement] was made" to determine whether a *verifiable statement of fact* is nonetheless an opinion for purposes of defamation." *Tatum*, 554 S.W.3d at 639–40 (even if newspaper column is "reasonably capable of casting any moral aspersions on ... [plaintiffs], it casts them as opinions").

Since *Milkovich*, courts have recognized that what may appear to be a statement of objective fact may be protected opinion. *See id.* at 624. Thus, even though a statement that a plaintiff "lied" under oath is "in principle, provable as false," *Milkovich* and its progeny have consistently held that a defamation claim cannot be based on statements where "it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise." *Riley v. Harr*, 292 F.3d 282, 291 (1st Cir. 2002). When writing about "inherently ambiguous" subjects, such as the *Wheeler* Lawsuit, an author who "fairly describes the general events involved and offers his personal perspective about some of [the] ambiguities and disputed facts" is not subject to a defamation claim. *Id.* at 290 (1st Cir. 2002). In *Riley*, the Court held that a book regarding:

> a controversial lawsuit and the disputed events underlying it – is one about which there could easily be a number of varying rational interpretations. … Otherwise, authors would hesitate to venture beyond "dry, colorless descriptions of facts, bereft of analysis or insight," and the threat of defamation lawsuits would discourage "expressions of opinion by commentators, ... or others whose perspectives might be of interest to the public."

*Id.* at 290-91. When viewing Folkenflik's statements that Butowsky's narrative was "inconsistent;" that Butowsky "displays no curiosity about the way ... his activities affected [the Rich family];" or the "lessons" to be learned from the Fox News Report, it is clear that such statements are offering

a subjective view, [25] and the RR's recommendation that they be treated as statements of objective fact is inconsistent with settled First Amendment and Texas law.

### 4.    Objections to the RR's public figure analysis. (RR 80-82)

Despite the RR's acknowledgement that Plaintiff is an "internationally recognized expert in the investment wealth management industry" and "has made hundreds of appearances on national and radio shows" (RR 6, *citing* Dkt. 1, at 7-8), the RR concludes that the allegations do not support a finding that Plaintiff is a public figure "at this stage of the proceedings" (RR at 81), suggesting that the public figure determination "is more appropriate for resolution at the summary judgment stage on the basis of evidentiary facts." (RR at 82). However, courts routinely grant motions to dismiss where a plaintiff is held to be a public figure based on the pleadings and fails to sufficiently plead actual malice. *See Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (granting Rule 12 motion for failure to plead actual malice when plaintiff was a limited-purpose public figure and the reporting was privileged under fair-report and fair-comment privileges); *see also Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 Fed. Appx. 67 (2d Cir. 2015) (holding that plaintiff was a limited-purpose public figure and granting Rule 12 motions); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (holding "whether an individual is a public figure ... is a question of law for the court to decide") (citing *Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1247 (5th Cir. 1980)).

Based on the materials this Court may consider at this stage, Butowsky is a limited-purpose public figure who actively engaged in conversations about politics and had ready access to the media. (*See* Dkt. 25 at 22-23.) As Butowsky admits, he is a frequent television news contributor,

---

[25] In fact, members of the Rich family have filed at least two lawsuits against Butowsky for his actions in conjunction with the Fox News Report. *See Rich v. Butowsky*, No. 1:18-cv-00681-RJL (D.D.C. filed Mar. 26, 2018); *Rich v. Fox News Network, LLC, et. al.,* No. 18-cv-2223 (S.D.N.Y. filed Mar. 14, 2018).

"was a frequent guest on CNN, ABC, CBS, NBC, CNBC, Fox Business News, Fox News Channel, Bloomberg TV, and China TV" (Compl. ¶2.) and has "made hundreds of appearances on national television." *Id.* The Complaint portrays Plaintiff as someone who actively used his political connections and his connections with Fox News to inject himself into the controversy of the Rich murder conspiracy and the retracted Fox News Report. Butowsky alleges that he requested (and received) a meeting with the White House Press Secretary and brought Wheeler to share the findings of his investigation. (Compl. ¶78.) The Complaint also alleges that Butowsky used his connections at Fox News to create what became the retracted Fox News Report, texting Wheeler: "If you're up for it *let's do a story*." (Compl. at 44.) Butowsky's actions as alleged in the Complaint demonstrate that he had easy access to the media and voluntarily injected himself into the controversy at issue in this case and is therefore a limited-purpose public figure. This Court should decline the RR's recommendation that this issue be deferred.

### 5.   Objections to the RR's actual malice analysis. (RR 78-88)

Plaintiff must plead actual malice for two independent reasons: first, to overcome the privileges asserted;[26] and second, because Butowsky, a limited-purpose public figure, cannot recover absent a showing of actual malice. *See* II.B and II.E.4, *supra*. The RR found Plaintiff's allegations sufficient to create a "plausible inference" that Folkenflik and NPR published the reports with actual malice (RR at 86), but actual malice must be plausibly alleged to avoid dismissal.[27] The hurdles to doing so are "significant given the First Amendment interests at stake." *Biro*, 807 F.3d at 546. Indeed, since *Iqbal/Twombly*, no libel complaint filed by a public figure that

---

[26] Plaintiff has failed to allege that the Reports had ceased to be a public concern when they were published, which is also required to defeat the statutory privileges. (MTD Reply Br. at 4.). The third-party allegation rule is a defense, not a privilege; this Court need not address the issue of actual malice to assess its applicability. (*Id.* at 6.)

[27] *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016) ("[A] public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice."); *Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 Fed. Appx. 87, 88 (2d Cir. 2018).

---

has reached a Court of Appeals has succeeded in plausibly pleading actual malice.[28]

Plaintiff has not met his burden of plausibly alleging actual malice. He attempts to satisfy his burden by alleging bias or a failure to investigate,[29] which courts have consistently held do not establish actual malice. Nevertheless, the RR recommends finding that Plaintiff has plausibly alleged actual malice (RR at 86), noting that "[a]lthough the failure to investigate does not, on its own, demonstrate actual malice, a purposeful avoidance of the truth does." *Lane v. Phares*, 554 S.W.3d 881, 891 (Tex. App.—Fort Worth 2018, no pet.). However, Plaintiff has offered no *facts* that would give rise to a plausible inference of purposeful avoidance of truth that would establish actual malice. Instead, the only allegations that Plaintiff makes regarding Defendants' subjective state of mind are pure conjecture or "threadbare recitals" of the legal standard for actual malice; they are not worthy of the presumption of truth, and not sufficient to open the doors to discovery. *Iqbal*, 556 U.S. at 678-79. As articulated by the Eleventh Circuit in *Michel*,

> the actual malice standard was designed to allow publishers the 'breathing space' needed to ensure robust reporting on public figures and events. Forcing publishers to defend inappropriate suits through expensive discovery…would constrict that breathing space in exactly the manner the actual malice standard intended to prevent.

816 F.3d at 702. Thus, this Court should not accept the RR's recommendation on actual malice.

**F.    Objections to the RR's Defamation Mitigation Act analysis. (RR 88-95)**

It is undisputed that Plaintiff failed to comply with the Texas Defamation Mitigation Act ("DMA"). (Dkt. 32 at 29). The only question is whether this failure creates a bar to litigation or

---

[28] *See Michel,* 816 F.3d at 702 ; *Biro*, 807 F.3d at 544–45; *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012); *Schatz v. Republican State L'ship Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).

[29] Defendants' alleged republication of biased sources or failure to consider the contrary narrative that Butowsky himself espoused online is not probative of actual malice. In *Cox Texas Newspapers, L.P. v. Penick*, the Austin Court of Appeals addressed a substantially similar argument and held that defendants' no-evidence summary judgment motion should have been granted on actual malice grounds. 219 S.W.3d 425, 445 (Tex. App.—Austin 2007, pet. denied). In so holding, the Court found that publication of information from a biased source was not evidence of actual malice. *Id.* at 440-41. The Court also held failure to seek plaintiff or associated individuals' opinions was not evidence of actual malice where there was no evidence that the defendant doubted the veracity of the claims. *Id.* at 444-45.

---

whether the consequence for failing to request a retraction is preclusion of exemplary damages.[30]

Defendants object to the RR's conclusion that failure to comply with the DMA is not a bar to

litigation and, in the alternative, object to the RR's failure to bar exemplary damages.

G.   **The RR's business disparagement analysis fails to evaluate whether the elements were adequately pleaded. (RR 95-96)**

The same protections and defenses applicable to a defamation claim apply to a business

disparagement claim.[31]   The RR recommends denying dismissal of Plaintiff's business

disparagement claim for the same reasons as his defamation claims. (RR at 95-96). Because the

RR's defamation analysis is faulty, so too is its recommendation concerning the business

disparagement claim. The RR also erred in failing to recognize that recovering for business

disparagement requires a plaintiff plead special damages. *Forbes Inc. v. Granada Biosciences,*

*Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). The RR did not address Plaintiff's failure to plead special

damages and erred in recommending the claim survive.[32] The Court should decline to adopt the

RR's recommendation.

H.   **Defendants object to the RR's civil conspiracy analysis. (RR 96-97)**

The RR correctly identifies the applicable law as it relates to Plaintiff's civil conspiracy

claim but fails to apply that law to the facts. (RR at 96-97). The Complaint does not allege any

facts that would give rise to a plausible claim for relief for a conspiracy. Although the RR

ostensibly recognizes that some "meeting of the minds" is required, it does not identify any

---

[30] *Compare Tubbs v. Nichols,* 675 Fed. Appx. 437, 439 (5th Cir. 2017) (holding failure to comply with the DMA is a bar to litigation) *with Nguyen v. Hoang,* 318 F. Supp. 3d 983, 1018-19 (S.D. Tex. 2018) (holding failure to comply with the DMA is a bar to exemplary damages).
[31] *See Provencio v. Paradigm Media, Inc.,* 44 S.W.3d 677, 682-83 (Tex. App.—El Paso 2001, no pet.) (First Amendment protections applied to a libel claim also protect against non-libel claims based on the same publication).
[32] *See Teel v. Deloitte & Touche LLP,* 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015) (pleading special damages "in conclusory terms" renders business disparagement claim deficient and subject to dismissal).

allegations that, if true, would satisfy that required element and a joint intent to defame.[33] Instead, the Complaint alleges that Defendants "harbored bias and animus" toward Fox and its Chairman (Dkt. 1, ¶11), but does not allege any facts that would suggest any joint purpose to defame. The Complaint alleges that Defendants "were guided by *their own* extreme bias," but nowhere does it allege any meeting of the minds to defame. (Dkt. 1, ¶166(f)). Instead, the only allegations of a joint scheme come in the form of the recitation of the elements of the civil conspiracy cause of action (Dkt. At 176), but such conclusory statements should be disregarded when determining the adequacy of Plaintiff's pleadings. *Twombly*, 550 U.S. at 554-55. Plaintiff does not adequately state a claim for relief for conspiracy.

## IV.   <u>CONCLUSION</u>

Defendants' Motion is a straightforward request that this Court apply well-settled Texas law to dismiss Plaintiff's legally deficient claims. The Motion makes clear that Plaintiff has failed to state a claim upon which relief can be granted and that Texas law does not recognize a basis for recovery against defendants, like Folkenflik and NPR, who report on matters of public concern. A holding in favor of Defendants on any one of the adequate and independent grounds for dismissal Defendants assert requires that this Court dismiss this case.

This Court is required to conduct a *de novo* review. *See* 28 U.S.C. §636(b)(1)(C). Considering the serious and pervasive errors contained in the RR, after its review, the Court should reject the RR and enter an order granting the Motion and dismissing Plaintiff's claims.

---

[33] *See* Dkt. 42 at 8-9 (*citing Dowd v. Calabrese*, 589 F. Supp. 1206, 1214 (D.D.C. 1984) (a "joint purpose to defame" is required to satisfy the "meeting of the minds" requirement of a claim of civil conspiracy to defame); *Downey v. Coal. Against Rape & Abuse, Inc.*, CIV.99-3370(JBS), 2005 WL 984394, at *8 (D.N.J. Apr. 27, 2005) (contacts between news reporter and sources alone insufficient to state a conspiracy claim)).

Respectfully submitted,

By: */s/ Laura Lee Prather*

Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Telecopier:    (512) 867-8470

Thomas J. Williams
State Bar No. 21578500
thomas.williams@haynesboone.com
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
Telephone:     (817) 347-6600
Telecopier:    (817) 347-6650

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 15, 2019, a true and correct copy of the foregoing document was forwarded via e-filing to the following counsel of record:

Ty Odell Clevenger                    Steven S. Biss
P.O. Box 20753                        300 West Main Street, Suite 102
Brooklyn, NY 11202-0753               Charlottesville, VA 22903
979-985-5289 (phone)                  804-501-8272 (phone)
979-530-9523 (fax)                    202-318-4098 (fax)
tyclevenger@yahoo.com                 stevenbiss@earthlink.net

*/s/ Laura Lee Prather*
Laura Lee Prather