# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| ED BUTOWSKY, | § § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. |
| DAVID FOLKENFLIK; NATIONAL PUBLIC RADIO, INC.; EDITH CHAPIN; LESLIE COOK; AND PALLAVI GOGOI, | | 4:18-CV-00442-ALM |
| Defendants. | | |

**DEFENDANTS' MOTION TO COMPEL DISCOVERY
PURSUANT TO FED. R. CIV. P. 37 [REDACTED]**

Defendants David Folkenflik, National Public Radio, Inc., Edith Chapin, Leslie Cook and Pallavi Gogoi (collectively, "Defendants" or "NPR"), by their undersigned counsel, file this motion to compel discovery from Plaintiff Ed Butowsky ("Plaintiff" or "Butowsky") pursuant to Rule 37 of the Federal Rules of Civil Procedure.[1] NPR seeks to compel the following discovery:

1. Documents responsive to the requests that Butowsky has already agreed to, either in his responses or in meet-and-confers: Request Nos. 1-9, 11-13, 19-21, 26, 28, 30, 35-37, and 39-41 in Defendants' First Requests for Production ("1st RFP"); Request Nos. 1, 3, 4, 6-8, 22, 25, 30, 32-35, 37, 39 and 44 in Defendants' Second Requests for Production ("2nd RFP"); and Request Nos. 2-4 in Defendants' Third Requests for Production ("3rd RFP");

2. Unaltered, unredacted copies of documents Plaintiff has already produced; and

3. Documents responsive to requests to which Plaintiff has lodged unfounded objections: 2nd RFP Nos. 10 and 21 and responses to Interrogatories 7, 12 and 14.[2]

NPR also seeks payment of its "reasonable expenses incurred in making the motion, including attorney's fees," pursuant to Fed. R. Civ. P. 37(a)(5)(A), and such other relief as the Court deems appropriate.

## I.
## INTRODUCTION

For the past half year, Plaintiff and his counsel have obstructed NPR's efforts to obtain discovery at every turn. With a shifting array of excuses for their delays and denials, Plaintiff and his counsel had not produced a single document until last month. Then, when they finally transmitted a tiny fraction of the discoverable documents known to exist, declaring their work "completed," Plaintiff and his counsel produced redacted and manipulated versions of documents

---

[1] NPR notes that the Amended Scheduling Order, Dkt. 70, directs the parties, after meeting, conferring and reaching an impasse, to schedule a teleconference with the Magistrate Judge to address a discovery dispute prior to filing a motion to compel. On December 12, 2019, NPR contacted chambers telephonically and received instructions to proceed with filing this Motion to Compel without first scheduling a teleconference with the Magistrate Judge.

[2] Due to space constraints, this motion outlines examples of Plaintiff's most serious violations of the discovery rules. As the accompanying documents show, however, Plaintiff has repeatedly and deliberately prevented Defendants from obtaining discovery. Accordingly, NPR seeks relief on all of the foregoing list of discovery requests.

to conceal relevant information and admissions that would undermine their case. These are not tangential matters: they go to the very heart of Plaintiff's claims and NPR's defenses. For example, despite having filed this $60 million defamation case over a year and a half ago, Plaintiff and his counsel have still not produced a single document to support their financial damages claim. Perhaps the appropriate sanction for this failure is a judicial finding that Plaintiff suffered no financial loss unless he can comply with his discovery duties by a date certain. *See* Fed. R. Civ. P. 37(b)(2) and (e). At a minimum, Plaintiff and his counsel should be ordered to produce documents and answer interrogatories forthwith, because their disrespect for the Federal Rules has denied NPR its right to prepare for depositions and upended this Court's scheduling order.

We have now learned that only two weeks ago Butowsky and his counsel in another federal case arising out of the same controversy admitted locating "*more than six thousand potentially responsive documents* that had not yet been produced." *See* Ex. 2 at 4 (*Aaron Rich v. Butowsky, et al.*, Civil Action No. 1:18-cv-00681-RJL ("*Aaron Rich* lawsuit"). Indeed, Butowsky and his counsel in that case conceded that they located over 6,000 documents *without even searching* "*a number of . . . Butowsky's devices and accounts.*" *Id.* These revelations in the District Columbia come only *after* Butowsky had been ordered to produce documents months ago, and in the context of a pending sanctions motion. While Butowsky has different lawyers in the case at bar, Plaintiff, through his counsel here, has declared a document production consisting of approximately 300 documents complete without producing any material, or a paucity at best, from several of Butowsky's known email accounts *See* Ex. 1 at ¶ 10. The consequences of Plaintiff's and his counsel's discovery delinquencies have been prejudicial to NPR and harmful to the judicial process.

The attempts by Plaintiff and his counsel to thwart discovery extend to Plaintiff's active

2

interference with NPR's efforts to subpoena third parties, including an entity owned by Butowsky. Accordingly, as this Motion will show, it is essential that Plaintiff and his counsel be ordered to produce documents (in native format, where possible), answer interrogatories and be held to account for their actions, all pursuant to Rule 37.

## II.
## FACTUAL BACKGROUND

On June 21, 2018, Plaintiff filed his Complaint, *see* Dkt. 1, alleging that NPR defamed him when it published five news articles (the "News Articles") regarding Plaintiff's involvement in propagating conspiracy theories related to the murder of Democratic National Committee ("DNC") staffer Seth Rich, and his involvement in a discredited and retracted Fox News Network ("FNN") story. Plaintiff also alleged that NPR acted in concert with Douglas Wigdor ("Wigdor") purposely to injure Plaintiff, and that publishing the News Articles constituted business disparagement. Plaintiff's live pleading, Dkt. 72, seeks $60 million in compensatory and punitive damages. In its Answer, Dkt. 79, NPR denied Plaintiff's allegations and raised multiple adequate and independent defenses, including truth, fair comment and fair reporting, and various other statutory privileges. NPR contends the evidence will show that Plaintiff's action is entirely without merit.

Since August 2019, Plaintiff has deliberately stymied NPR's efforts to obtain written and documentary discovery by making false promises of production, followed by evasive and incomplete responses, resulting in significant delays and prejudice to NPR's ability to defend against Plaintiff's claims. A chronology of pertinent events follows.

**A.** **Plaintiff Has Repeatedly Failed to Produce Responsive, Non-Privileged Documents.**

On July 5, 2019, NPR served its 1st RFP. *See* Ex. 3. In his responses, Plaintiff agreed to produce documents. *See* Ex. 4. Plaintiff's counsel, Steven Biss ("Biss"), represented that Plaintiff had given him documents on a mobile drive, and that he would produce the documents to NPR via

HighTail, a file-sharing program. Ex. 5, Aug. 5, 2019 Email from Biss to Laura Prather (Prather"), NPR's counsel. *However, Plaintiff's counsel failed to deliver the documents to NPR.*[3] On September 13, 2019, NPR identified deficiencies in Plaintiff's discovery responses and requested an update on the promised production. Ex. 6, Letter from Prather to Biss. On September 30, 2019, NPR served its 2nd RFP and its First Set of Interrogatories ("1st Roggs"). *See* Exs. 7 and 8.

On October 18, 2019, NPR served its 3rd RFP and its Second Set of Interrogatories ("2nd Roggs"). *See* Ex. 9 and 10. Plaintiff continued to assure NPR he would produce documents, this time by October 23, 2019. *See* Ex. 11, Oct. 20, 2019 Email from Biss to Prather. *Again, Plaintiff failed to produce the requested documents.* On November 9, 2019, Plaintiff promised to produce documents by the morning of November 10, 2019. Ex. 12, Email from Biss to Prather. *Yet again, he failed to do so.* On November 21, 2019, NPR sent another letter demanding the requested and long-promised documents and identifying several additional deficiencies in Plaintiff's responses to Defendants' 2nd RFP. *See* Ex. 13, Letter from NPR's counsel, David Bodney ("Bodney") to Biss. On December 4, 2019, the parties met and conferred telephonically to discuss the pending discovery disputes. Plaintiff represented that he would produce the requested documents on December 5, 2019 and would supplement Plaintiff's responses to written discovery by December 8, 2019. *Yet again, Plaintiff failed to honor his promise and produce documents*.

NPR sent a third letter to Plaintiff on December 9, 2019 regarding Plaintiff's continued discovery deficiencies and his insufficient responses to Defendants' 2nd Roggs and 3rd RFP. *See* Ex. 14, Letter from Bodney to Biss. On December 13, 2019, the parties met and conferred telephonically to discuss the discovery issues addressed in NPR's December 9, 2019 letter.

---

[3] An Agreed Protective Order was entered in this case on August 8, 2019 (Dkt. 67).

According to Plaintiff's counsel, Butowsky had uploaded all documents to a thumb drive and sent them to Biss via FedEx.

On December 16, 2019, over five months *after* NPR's first request for documents (and four months after the current Scheduling Order was filed),[4] Plaintiff finally produced a tiny fraction (characterized by Plaintiff as a "grouping") of the long-promised documents – *a total of 115 pages, consisting almost entirely of* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 1 at ¶ 6. By the time Plaintiff notified NPR on December 8, 2019 that "Plaintiff's document production was completed," Plaintiff had produced only 200 emails (many of which contain only a subject line or a single hyperlink), 78 screenshots of text messages (many incomplete and not in native format) and social media posts, 9 audio recordings (4 of which were duplicates), and 161 pages of other documents. *See id.* Plaintiff's production is replete with selected excerpts of responsive communications and documents that have been redacted or otherwise manipulated. *See* Ex. 15, Dec. 19, 2019 Email from Prather to Biss and Ty Clevenger.

This pattern of broken promises, missed deadlines and attendant delays and deficiencies cries out for judicial correction, especially recognizing that Plaintiff and his counsel have played down the clock to only a few remaining months of discovery in this case.

## III.
## ARGUMENT

**A.    Plaintiff Has Failed to Comply with Relevant and Reasonable Discovery Requests.**

Rule 37 of the Federal Rules of Civil Procedure ("FRCP") enables a party seeking discovery to compel production when another party has failed to respond to interrogatories under Rule 33 or produce documents requested under Rule 34. FRCP 37(a)(3)(B), (c)(2).

Here, Plaintiff and his counsel have engaged in a deliberate pattern of conduct designed to

---

[4] The current Scheduling Order was filed on August 21, 2019 (Dkt. 70).

delay and deny Defendants' discovery rights. Their practices have prevented NPR from preparing adequately for depositions, thereby prejudicing not only NPR's right to defend itself but also the litigation schedule in this case. It is no small matter that Plaintiff and his counsel have failed to provide thousands emails and other documents at the core of Plaintiff's claims concerning his involvement in Rod Wheeler's investigation and the retracted FNN story, and that they have failed to identify *any* customers who were lost as a result of the News Articles. For that reason, there may be no choice but to call upon the Court to extend fact discovery deadlines. But to ensure a fair and efficient process, and to allow Defendants to prepare for depositions adequately, NPR moves to compel (1) responsive documents that Butowsky has already agreed to produce, (2) unredacted, unaltered copies of the documents Butowsky has partially produced, and (3) responses to requests for production and interrogatories to which Butowsky has *not* adequately objected.

### 1. **Plaintiff Has Failed to Produce Documents He Promised to Produce.**

Plaintiff has already agreed to produce documents responsive to 1st RFP Nos. 1-9, 11-13, 19- 21, 26, 28, 30, 35-37, and 39-41. Ex. 4; Ex. 16, Pl.'s Suppl. Resps. to Defs.' First Disc. Reqs. Plaintiff has also promised to produce documents responsive to 2nd RFP Nos. 1, 3, 4, 6-8, 25, 30, 33, 34, 37 and 44. *See* Ex. 7, Defs.' 2nd RFP; Ex. 17, Pl.'s Objs., Answers and Resps. to Defs.' Sec. Disc. Reqs. Furthermore, following counsel's December 4, 2019 meet-and-confer, Plaintiff promised to produce documents pursuant to 2nd RFP Nos. 22, 32, 35 and 39. Ex. 18, Pl.'s (Second) Suppl. Resps. to Defs.' Disc. Reqs. (dated December 8, 2019). And, during the parties' December 13, 2019 meet-and-confer, Plaintiff promised to produce documents responsive to 3rd RFP Nos. 2-4. Ex. 9; Ex. 19, Pl.'s Objects. and Resps. to Defs.' 2nd Roggs and 3rd RFP.

*Glaring omissions in Plaintiff's discovery responses* - Despite admitting to over 6,000 responsive documents in related litigation, Plaintiff wasted nearly five months before producing a mere fraction of that number in this case. *See* Ex. 2. Consequently, even after Plaintiff's purported

"completed" production, many of NPR's requests that go to the most fundamental issues in this case, liability and damages, remain unanswered. For instance, Butowsky's production still has not identified a single lost customer, glaringly omits documents (produced by others) evidencing his involvement with the Wheeler investigation and the retracted FNN story and fails to produce any documents *at all* from his email accounts: Butowsky32@gmail.com, and googie18@aol.com. *See* Ex. 1 at ¶ 10.

**_Plaintiff's demonstrably incomplete discovery responses_** – Plaintiff's responses to other requests are plainly incomplete. Several third-party productions revealed some (but certainly not all) responsive communications in which Butowsky participated that are absent from Plaintiff's production – such as Plaintiff's text and email communications with Wheeler, FNN employees or public officials regarding the death of Seth Rich, Wheeler's investigation and the retracted FNN report. Still others contain hyperlinks or references to responsive audio or video files that are unavailable to Defendants and presumably available to plaintiff. It cannot be disputed that Plaintiff's production here is intentionally incomplete when he has produced 536 documents in the *Aaron Rich* lawsuit, a case whose facts substantially overlap with this one, and his counsel in that has case has admitted to another 6,000 discoverable documents– without even examining many of his email accounts. *See* Exhibit 2 at 4. Curiously, Butowsky has refused to grant NPR access to the documents produced in the *Aaron Rich* lawsuit, as well. *See infra* at 13.

Plaintiff's production is surprisingly small, and noticeably smaller than the number of documents received from Wheeler and FNN – third parties with whom Plaintiff was in frequent communications.[5] This is particularly true given that that Butowsky has been litigating these underlying facts since August 2017 and has an ongoing obligation to preserve relevant documents

---

[5] *See id.* at ¶ 8.


and communications.



Given these representations, it is highly unlikely that Plaintiff's minimal production represents the entire universe of documents responsive to NPR's requests.

Furthermore, third-party productions from FNN, Aaron Rich ("Rich") and Wheeler show that Plaintiff has omitted responsive documents from his document production to NPR. For example, Wheeler produced 148 emails that include Plaintiff, 91 pages of text messages between Plaintiff and Wheeler, and several other group text message chains that also included Plaintiff. By contrast, Plaintiff has provided selective (and likely intentionally misleading) excerpted screenshots of text messages that collectively constitute only 16 pages of the 91-page conversation between Wheeler and Plaintiff. *See* Ex. 1 at ¶ 9. Similarly, Rich produced 261 documents that Plaintiff sent or received that would be responsive to NPR's RFP, which by itself exceeds Plaintiff's meager production of only 200 emails.[6] Although a percentage of the documents produced by Rich, Wheeler and FNN are likely duplicative, the total number of communications with Plaintiff produced by these third parties alone is greater than Plaintiff's entire production, and

---

[6] Furthermore, Defendants understand that Plaintiff controls multiple email accounts, including, but not necessarily limited to, ebutowsky@gmail.com, Butowsky32@gmail.com, ed@chapwoodinvestments.com, and googie18@aol.com. Without any explanation, Plaintiff has failed to produce *any* communications from a number of those accounts and instead only appears to have produced a fraction of the emails from ebutowsky@gmail.com and a very limited number of emails from ed@chapwoodinvestments.com.

the total number of text messages with Plaintiff produced by Wheeler far exceeds the total number of text messages produced by Plaintiff. *See id.* at ¶¶ 8-9. Plaintiff has chosen to conceal these many responsive communications that go to the heart of the case and his involvement with the Wheeler investigation and the retracted FNN story.

Plaintiff agreed to produce these documents and has failed to do so. NPR respectfully requests this Court order him to honor that commitment forthwith.

## 2. **<u>Plaintiff's Wholly Inadequate Production Is Improperly Redacted or Altered.</u>**

Many of the documents that have been produced appear to be redacted or otherwise altered to eliminate non-privileged information that would be damaging to Plaintiff. For example, Plaintiff produced ███████ ███████ ███████ ███████ Defendants know the contents of the redaction only because Wheeler, in response to a subpoena, did *not* redact such relevant information. In other words, Plaintiff has removed ███████ ███████ ███████ ███████

Likewise, Plaintiff appears to have altered recordings responsive to NPR's document requests. For example, Plaintiff produced ███████ ███████ ███████ ███████

9

### 3. Plaintiff Has Made Unfounded Objections and Refused to Adequately Respond to Relevant Discovery Requests, Many of which go to the Heart of the Case.

Plaintiff has refused to produce other documents responsive to two requests and provide responses to four interrogatories. The relevance of each is discussed individually below. In light of Plaintiff's 197-paragraph Second Amended Complaint, which alleges innumerable facts about several individuals and entities and seeks $60 million in damages, NPR's requests are proportional to the needs of the case. Plaintiff has failed to make any legitimate objection to these requests.

"The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 463 (N.D. Tex. 2015). To object to a discovery request, a party must demonstrate "how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Carr*, 312 F.R.D. at 463. As courts have noted:

> Boilerplate or unsupported objections – even when asserted in response to a specific discovery request . . . – are likewise improper and ineffective and may rise (or fall) to the level of what the Fifth Circuit has described as "an all-too-common example of the sort of 'Rambo tactics' that have brought disrepute upon attorneys and the legal system."

*Heller v. City of Dallas*, 303 F.R.D. 466, 483-84 (N.D. Tex. 2014) (quoting *McLeod, Alexander, Powel & Apffel, P.C.*, 894 F.2d 1482, 1484-86 (5th Cir. 1990). A failure to particularize objections indicates that a party lacked the factual basis to assert such objections in violation of Rule 26(g), or instead conducted a factual investigation, made a legitimate objection but waived such objection for failure to specify. *Id.* at 484.

2nd Roggs No. 14: Interrogatory No. 14 goes directly to the core of Plaintiff's claim for $60 million in damages, asking Plaintiff to "[i]dentify all special damages, including any realized or liquidated direct pecuniary loss, that you incurred as a result of the Defendants' alleged business

disparagement." *See* Ex. 10. When responding to Interrogatory No. 14, aside from citing legal authority defining special damages, Plaintiff failed to "identify" *any* alleged loss and responded instead with inexact, conclusory statements claiming that Defendants' alleged business disparagement caused:

- Loss of specific clientele (to be identified);
- Loss of specific prospective economic advantage in the amount of $30,000,000 (name of specific customer to be identified);
- Loss of income and profits from Chapwood (in a sum certain to be determined);
- Loss of business reasonably expected and historically achieved as a result of appearances on television and radio (in a sum certain to be determined);
- Injury to business, professional and trade reputation in the amount of $10,000,000.00.

Ex. 19. Plaintiff sued NPR over 18 months ago, and he should have identified which clientele he allegedly lost, the "specific customer" related to his loss of "prospective economic advantage," the amount of lost income and profits from Chapwood to date, and the loss of business through television and radio appearances up to the present date. During counsel's December 13, 2019 meet-and-confer, Plaintiff's counsel represented that Plaintiff was still "putting together a list" of his damages evidence, but NPR has not yet received such a list.

2nd RFP No. 21: Request for Production No. 21 requests "[a]ll FINRA documents, records, or communications related to your registration as a broker/dealer since December 1987." *See* Ex. 7. Plaintiff objected to this Request based on "relevance and proportionality; overbroad; unduly burdensome." *See* Ex. 17. During the December 4, 2019 meet-and-confer, counsel for Plaintiff refused to produce any FINRA documents, asserting that such requests were irrelevant, lacked proportional utility and were unreliable. Plaintiff's objections do not pass muster. The FINRA-related Central Registration Depository compiles information about customer complaints lodged against brokers, such as Butowsky. These complaints, which Butowsky has previously filed suit

to have expunged[7], are *directly* relevant to Plaintiff's professional reputation—the same reputation that Butowsky alleges NPR harmed—as well as the question of Plaintiff's alleged $60 million in damages. Having placed his professional reputation at issue, he must produce documents that shed light on his allegations.

1st Roggs No. 12: Interrogatory No. 12 asks Plaintiff to "[i]dentify all lawsuits in which [he has] been a party since January 1, 2010." Ex. 8. Plaintiff objected on relevance grounds, stating that NPR could obtain such information from PACER. *See* Exs. 17 and 18.[8] Plaintiff's involvement in litigation, however, is relevant to his reputation, and he is uniquely able to disclose this material comprehensively. His compliance with this discovery request is essential.

2nd RFP No. 10: Request for Production No. 10 requests "[a]ll documents, including correspondence, electronically stored information, emails, video and audio recordings, voicemail, and text messages, relating to any actual or proposed book publishing or movie deals to which You are a party from December 1987 to present." *See* Ex. 7. Documents related to any actual or proposed book publishing or movie deals may demonstrate Plaintiff's motive for developing and eventually monetizing conspiracy theories related to Seth Rich's murder, which is relevant to Plaintiff's reputation and damages claims, as well as to NPR's defenses.

Plaintiff's entire objection reads "relevance; overbroad." *See* Ex. 17. Following counsel's December 4, 2019 meet-and-confer, Plaintiff supplemented his response, stating "Documents

---

[7] *See* Ex. 25, Plaintiff's Original Petition in *Butowsky v. FINRA,* Cause No. 11-06638, Dallas Co., in which Butowsky seeks to have the Court order FINRA to declare disputes against him were erroneous and that he was not "involved in the alleged investment-related sales practice violation(s), foregery(ies), theft(s), misappropriation(s), or conversion(s) of funds," and order certain complaints against him expunged from his BrokerCheckReport. Butowsky's case was removed to federal court, and U.S. District Judge Jane Boyle declined Plaintiff's requests. *See* Ex. 26, Order of Dismissal with Prejudice.

[8] PACER costs money to access, does not include all federal court filings, is limited in time and provides no access to state court filings. PACER also does not include court records from state courts. Therefore, it is inappropriate for Plaintiff to merely cite to PACER when the requested facts are more readily, and completely, accessed from his records.

relating to Plaintiff's book publishing are identified on his Twitter and Facebook pages, and generally on the Internet," and linked to an Amazon.com webpage. *See* Ex. 18. His response is still insufficient and ignores the request for *all documents* (such as correspondence) related to movie deals and book proposals. Plaintiff bears the burden of demonstrating "how the requested discovery was overly broad, burdensome, or oppressive," *Carr*, 312 F.R.D. at 463, but he has not met, and cannot meet, this burden.

To defend adequately against Plaintiff's prolix pleadings, NPR *needs* the information requested by these RFP and Interrogatories now. NPR requests that this Court order Plaintiff to provide such information immediately.

B. **Plaintiff's Discovery Abuses Are in Bad Faith, and NPR Should be Awarded Expenses and Attorneys' Fees.**

Plaintiff's refusal to respond to even the most basic discovery reflects bad faith. First, he failed to produce *promised* documents for nearly *six months*. Then, when he finally produced any documents, they were altered, redacted, edited and incomplete. Rule 37 requires that Plaintiff, or his counsel, or both, "must" pay the reasonable expenses incurred by such behavior. This is especially so in light of their efforts to thwart third-party discovery and Butowsky's repeated efforts to dodge discovery in the many other lawsuits in which he is currently involved.

1. **Plaintiff Has Obstructed NPR's Efforts to Obtain Third-Party Discovery.**

Plaintiff has blocked almost all discovery in this matter and has actively prevented NPR from obtaining discovery from third parties. As further evidence of Plaintiff's bad-faith efforts to prevent NPR from obtaining any discovery, Plaintiff objected to NPR's request for documents produced by Butowsky in the related *Aaron Rich* lawsuit. *See* Ex. 22, Nov. 25, 2019 Email from C. Houdre to Prather.

Nor has NPR been able to obtain discovery from Chapwood Investments ("Chapwood"),

13

which is owned by Plaintiff, or from Plaintiff's business partner, Kim Sams ("Sams"). Chapwood was served with a subpoena on November 18, 2019, and Sams was served with a subpoena on November 27, 2019. *See* Exs. 23 and 24. *Both subpoenas have been completely ignored. See* Ex. 1 at ¶ 13. Documents from Chapwood and Sams are relevant to Plaintiff's claims of business disparagement and alleged damages to his professional reputation.

Plaintiff's obstruction of third-party discovery has suffocated NPR's discovery efforts, heightening NPR's need for judicial relief by compelling Plaintiff's participation in discovery.

### 2. **Plaintiff's Discovery Deficiencies Have Been Documented in Related Litigation.**

Plaintiff is involved in related litigation in the District of Columbia (*Aaron Rich* lawsuit), where he was sued by Aaron Rich, the brother of Seth Rich, based on claims stemming from Butowsky's involvement in politically motivated conspiracy theories surrounding Rich's death. Counsel for Aaron Rich moved to sanction Butowsky on December 30, 2019, documenting Butowsky's "wholly inadequate" document production despite the court's entry of an order compelling Butowsky to comply with Aaron Rich's discovery requests on July 31, 2019. *See* Ex. 2. Following the court's order, Butowsky produced 536 documents (more than twice the number of documents produced here), but failed to produce "audio records, phone records, social media information, video recordings (beyond a few selective snapshots of messages incidentally attached to some emails), messaging on platforms that ... Butowsky is known to have used ..., or emails from accounts other than a limited and deficient production from one Gmail account." Ex. 2 at 2.

On December 23, 2019, almost five months *after* the court's order, Butowsky's counsel advised counsel for Aaron Rich that he would not be able to meet his discovery obligations, noting that he had located "*more than six thousand potentially responsive documents* that had not yet been produced," and reporting that he had "*not yet even searched* a number of ... Butowsky's devices

14

and accounts." Ex. 2 at 4. If Butowsky has represented that there are more than 6,000 potentially responsive documents to discovery requests in the *Rich* case—a case whose facts substantially overlap with this one—it is likely that Butowsky has a similar number of documents responsive to the discovery requests in this case and certainly substantially more than the minimal production here.

Plaintiff's conduct in the *Aaron Rich* lawsuit reveals his *modus operandi* of evading discovery, and demonstrates that a court order and the threat of sanctions are necessary, if not always enough, to compel Butowsky's to obey his Rule 26 discovery duties. But they are certainly appropriate here.

## CONCLUSION

For the foregoing reasons, the Court should grant NPR's Motion to Compel Discovery, overrule Plaintiff's objections to Defendants' discovery requests, order Plaintiff and his counsel to produce responsive documents, supplement interrogatory answers, reimburse Defendants the expenses reasonably incurred in making this Motion and issue such other and further relief as may be appropriate in the circumstances.

Respectfully submitted,

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:  (512) 867-8400
Telecopier:  (512) 867-8470

>David J. Bodney
>*admitted pro hac vice*
>bodneyd@ballardspahr.com
>Ian O. Bucon
>*admitted pro hac vice*
>buconi@ballardspahr.com
>BALLARD SPAHR LLP
>1 E. Washington Street, Suite 2300
>Phoenix, Arizona 85004-2555
>Telephone: 602.798.5400
>Fax: 602.798.5595
>
>*Attorneys for Defendants*

**CERTIFICATE OF CONFERENCE**

The undersigned Counsel for Defendants certifies that on December 4, 2019 and December 13, 2019, she conferred with Steven Biss, one of the attorneys for Plaintiff, concerning this motion, who advised that Plaintiff is opposed to this motion, and therefore agreement on the motion could not be reached.

>*/s/ Laura Lee Prather*
>Laura Lee Prather

**CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL**

The undersigned certifies that on January 13, 2020, contemporaneously with this Motion to Compel, Defendants filed a Motion seeking leave to file this Motion under seal because it references and attaches documents marked confidential pursuant to the Stipulated Protective Order (Dkt. 67) in this case.

>*/s/ Laura Lee Prather*
>Laura Lee Prather

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 13, 2020, a true and correct copy of the foregoing document was forwarded via e-mail to the following counsel of record:

| | |
|---|---|
| Ty Odell Clevenger | Steven S. Biss |
| P.O. Box 20753 | 300 West Main Street, Suite 102 |
| Brooklyn, NY 11202-0753 | Charlottesville, VA 22903 |
| 979-985-5289 (phone) | 804-501-8272 (phone) |
| 979-530-9523 (fax) | 202-318-4098 (fax) |
| tyclevenger@yahoo.com | stevenbiss@earthlink.net |

*/s/ Laura Lee Prather*
Laura Lee Prather