**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ED BUTOWSKY, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. |
| DAVID FOLKENFLIK, ET AL., | § § | 4:18-CV-00442-ALM |
| Defendants. | § § § § § § | |

**[REDACTED] MOTION FOR SANCTIONS PURSUANT TO RULE 11
FOR VIOLATIONS COMMITTED BY PLAINTIFF AND HIS COUNSEL**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 11, Defendants (collectively, "NPR") respectfully move this Court for sanctions against Plaintiff Ed Butowsky ("Butowsky") and his counsel. Butowsky knowingly pleaded false factual allegations in his Original Complaint (Dkt. 1), and the Court relied on them in denying NPR's Motion to Dismiss (Order, Dkt. 65). Butowsky repeated those false allegations in Butowsky's Second Amended Complaint ("SAC") (Dkt. 72). His counsel either knew these allegations were false or failed to make reasonable inquiry under the circumstances. Having recently secured third-party discovery proving Butowsky made these misrepresentations, NPR brings this motion now to comply with its obligation to inform the Court of Rule 11 violations promptly. *See, e.g.*, *Thomas v. Capital Sec. Servs.,* 836 F.2d 866, 879 (5th Cir. 1988) (confirming duty to notify offending counsel and the Court "promptly" upon discovery of such violations).

In 2017, NPR reported on a lawsuit brought by investigator Rod Wheeler ("Wheeler") claiming Butowsky was involved in a now-retracted Fox News Network ("FNN") story about a debunked conspiracy theory: namely, that murdered Democratic National Committee ("DNC") staffer, Seth Rich ("Rich"), was the source of the DNC emails released by WikiLeaks during the 2016 Presidential election, not a Russian hack of the DNC. Butowsky admits he paid Wheeler to investigate the murder on the Rich family's behalf but claims that NPR's reporting defamed him and disparaged his business. Butowsky also alleges that NPR conspired with the attorney who filed Wheeler's lawsuit, Douglas Wigdor ("Wigdor"). Butowsky pleaded three key allegations in his Original Complaint, and they continue to appear in his SAC:

(1) Butowsky was not involved in Wheeler's investigation and had little communication with Wheeler;

(2) Butowsky had never seen, and was not a party to, Wheeler's contract with the Rich family; and

(3) Chapwood Capital Investment Management, LLC ("Chapwood"), Butowsky's business, lost Sally Davis as a customer because of the alleged defamation.

Without Butowsky's material misrepresentations, the Court could have ruled differently on NPR's Motion to Dismiss.[1] **Indeed, discovery recently obtained from third parties proves all three of these allegations to be false.** The Appendix ("App.") to this Motion outlines the attached evidence demonstrating that each of these pleaded allegations is false.

These misrepresentations are factual matters within Butowsky's personal knowledge, and his repeated inclusion of them in his pleadings is not innocent error. *See, e.g.*, *Carona v. Falcon Servs. Co., Inc.*, 72 F.Supp.2d 731, 734–35 (S.D. Tex. 1999) (sanctioning party for misrepresenting "certain facts known better to Defendants than any other entity"). Moreover, Butowsky's counsel had a duty to investigate their factual allegations *before* pleading them, and they either failed to investigate or knew the allegations to be false. Both Butowsky's lawyers have checkered disciplinary histories spanning multiple jurisdictions, so this is not an isolated incident of lack of candor. In fact, even after this very Court reminded Mr. Clevenger of his duty of candor, Plaintiff's counsel refuses to correct these misstatements in Butowsky's pleadings. *See* Order, *Butowsky v. Gottlieb*, No. 4:19-cv-180 (E.D. Tex. Oct. 9, 2019), Dkt. 159 ("*Gottlieb*") (warning Mr. Clevenger "that a lack of respect for the duty of candor may result in sanctions."); Certificate of Conference (confirming Plaintiff's counsel's refusal to correct misrepresentations).

The Court relied upon Butowsky's misrepresentations about his involvement with Wheeler's investigation in denying NPR's Motion to Dismiss. *See Walker v. Beaumont Indep.*

---

[1] *Compare* Report and Recommendation (the "R&R"), Dkt. 58 at 7, 81 ("Plaintiff's role and involvement in the investigation of Seth Rich was limited, and he had 'very little communication with Wheeler.'"); Order, Dkt. 65, at 35 ("Plaintiff's involvement in the Seth Rich investigation and Plaintiff's communications with Wheeler were both limited."); R&R at 2, 34 n. 13 (relying on Plaintiff's damages allegations to find Plaintiff stated a claim for business disparagement and defamation *per quod*, which both require pleading special damages); Order at 2 (same), *with* Ex. A (establishing Butowsky's involvement in Wheeler's investigation and the creation of the retracted Zimmerman Report); Ex. B (affidavit from Sally Davis that she never left Chapwood). *See also* Dkt. 80 (Order Denying Mot. to Compel FBI) at 2 (reciting facts that Plaintiff's involvement in the investigation was limited).

*Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (requiring acceptance of plaintiff's allegations in Rule 12(b)(6) ruling). As the Court has noted, Butowsky views his involvement in the murder investigation as the central issue in this case. Dkt. 80 at 31. As noted above, the Court could have ruled differently on NPR's Motion to Dismiss without Butowsky's misrepresentations. As such, sanctions are warranted under Rule 11 and the Court's inherent power, including dismissal, monetary sanctions or both. *See, e.g.*, *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007) (sanctioning plaintiff's counsel for misrepresentations in brief that could have altered the outcome of the case).

## II. PROCEDURAL HISTORY

Through costly litigation, Butowsky has tried to silence anyone who does not parrot his narrative about what he calls the "Russian Collusion Hoax," with demands for damages ranging from $57 million to $118 million.[2] His rhetoric and claimed injuries escalate with each lawsuit, but they all derive from the same debunked conspiracy theory – that Rich was the source of the DNC emails released by WikiLeaks during the 2016 Presidential election.[3]

Butowsky, who had no previous connection to the Rich family, paid Wheeler as the family's private investigator purportedly to solve their son's murder. Butowsky and an FNN reporter, Malia Zimmerman ("Zimmerman"), then used statements allegedly from Wheeler to bolster an FNN article claiming that Rich had contacts with WikiLeaks, the group that published the hacked DNC emails. *See* Dkt. 58 at 7-8. FNN ultimately retracted the article,[4] and Wheeler's relationship with Butowsky deteriorated. Wheeler sued Butowsky and others for defamation,

---

[2] Plaintiff also violated L.R. CV 42 by failing to advise the Court of related cases he filed in this district. *See* Defendants' Motion for Leave to Designate Responsible Third Parties, Dkt. 81, p. 3-5, incorporated herein (outlining other cases filed by Butowsky arising out of the same facts and claiming damages ranging from $60 million to $118 million).

[3] Media outlets that reported Rich was the source of the DNC leak have consistently had to retract their reports due to a lack of evidence to support this theory. *See* Exs. C, D, and E.

[4] *See* Ex. C.

alleging that Butowsky was heavily involved in the FNN article and that Butowsky and Zimmerman had fabricated quotes from Wheeler for the FNN story. The Southern District of New York described the whole affair as "a collective effort [by Wheeler, Butowsky and his co-defendants] to support a sensational claim regarding Seth Rich's murder … perpetuating a politically motivated story not having any basis in fact." *Wheeler v. Twenty-First Century Fox*, 322 F.Supp.3d 445, 457 (S.D.N.Y. 2018). Shortly after Wheeler filed suit, Rich's parents also sued Butowsky (and others) for intentional infliction of emotional distress. The Second Circuit had "no trouble concluding that … **the Riches plausibly alleged what amounted to a campaign of emotional torture**" perpetrated by Butowsky and his co-defendants. *Rich v. Fox News*, 939 F.3d 112, 123 (2d Cir. 2019) (emphasis added).

After Wheeler and Rich's parents' cases were (initially) dismissed, Butowsky publicly vowed revenge, saying:

> **Anybody who did anything negative to me as a result of the [Wheeler] lawsuit will pay ... I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves and go through the same crap I had to go through.[5]**

Butowsky made good on his threat, filing a series of lawsuits in this District[6] and going to great lengths—including misrepresentations in his pleadings—to keep his claims alive.

### III. LEGAL STANDARD FOR APPLYING RULE 11 SANCTIONS

By "presenting to the court a pleading, written motion, or other paper … an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity

---

[5] Jeff Benjamin, *Exonerated in defamation suits, Ed Butowsky is out for blood*, INVESTMENT NEWS (Aug. 6, 2018), https://www.investmentnews.com/article/20180806/FREE/180809955/exonerated-in-defamation-suits-ed-butowsky-is-out-for-blood; *see also After Dismissal of Lawsuits Against Him, Butowsky Vows Vengeance*, FINANCIAL ADVISOR IQ (Aug. 8, 2018), https://financialadvisoriq.com/c/2056353/236533/facebook_your_business.
[6] *See* n. 2, *supra*.

for further investigation or discovery…" FRCP 11(b)(3). As the Fifth Circuit has recognized, Rule 11 provides for sanctions against the attorneys, firms *and* parties who violate its commands. *See Skidmore Energy, Inc. v. KPMG,* 455 F.3d 564, 567 (5th Cir. 2006) (recognizing court's ability to sanction "*the attorney, the party* the signing attorney represents, *or both*") (quoting FRCP 11 Advisory Comm. Notes on 1983 amendments) (emphasis in original); *see also SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, Case No. 2:15-CV-00247-JRG-RSP, 2018 WL 6788033, *5 (E.D. Tex. Dec. 26, 2018) (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992)); *see infra* at 11-15.

Upon finding a violation of Rule 11, sanctions should be sufficient to deter repetition of similar conduct. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877-78 (5th Cir. 1988); FRCP 11(c) (2). The Court can sanction "a client as well as his attorney, because both have a duty 'to conduct a reasonable inquiry into the facts or law before filing the lawsuit.'" *Skidmore Energy*, 455 F.3d at 567. The Fifth Circuit recognizes "the importance of prompt action by litigants in Rule 11 cases" and has cautioned that neither litigants nor courts should "remain idle in the face of possible violations." *Thomas*, 836 F.2d at 879, 881.

## IV. **BUTOWSKY PLEADED FALSE ALLEGATIONS AND SHOULD BE SANCTIONED**

Butowsky has twice amended his complaint, but both the Original (relied upon by the Court in denying NPR's Motion to Dismiss) and the Second Amended (currently, the live pleading) contain at least three deliberate, material misrepresentations.

First, Butowsky alleges that his involvement in Wheeler's investigation was limited. Second, and relatedly, Butowsky alleges that he had never seen Wheeler's contract with the Rich family. Both representations, purportedly based on Butowsky's own personal knowledge, have

been indisputably disproven by documents produced by ▇▇▇▇▇▇▇▇▇▇▇▇.[7] Third, Butowsky alleges that his company lost clients and tens of millions of dollars in damages due to NPR's defamation and disparagement, and cites as proof a single email from Sally Davis. But Davis swore in the attached declaration that Chapwood *continues to manage her portfolio*. *See* Ex. B. The Court relied on each misrepresentation in denying NPR's Rule 12(b)(6) motion.

### A. Butowsky's Involvement in the Rich Investigation Was Extensive, Not "Limited" as Alleged in His Complaint and as Relied on by the Court.

Butowsky's most pervasive misrepresentation is that his involvement in the investigation of Rich's murder was "limited." Compl. at ¶57; SAC at ¶68 ("Butowsky's role and involvement in the investigation of Seth Rich's murder was limited."). Butowsky alleges that "[he] did not participate in Wheeler's investigation and had very little communication with Wheeler." Compl. at ¶62; SAC at ¶74; *see also* Compl. at ¶¶63-64; SAC at ¶¶75-76. The Court relied on these statements in its analysis of NPR's arguments regarding lack of falsity, whether Butowsky is a public figure and NPR's defenses.[8]

But Butowsky knew these allegations were false. Butowsky coordinated at least six in-person or Zoom meetings with Wheeler and Zimmerman about the investigation, directed Wheeler to several witnesses for the investigation and exchanged more than 100 pages of text messages and several hundred emails about the investigation with Wheeler, Zimmerman and

---

[7] Courts can consider record evidence in deciding whether Butowsky and his counsel's conduct is sanctionable. *See Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 806 (5th Cir. 2003) (affirming Rule 11 sanctions, relying on attorney's statements in letter and to the media to demonstrate improper purpose in obtaining writ of execution); *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F.Supp.3d 867, 871 (E.D. Mich. 2017) (relying on emails and pdf documents to establish that plaintiff submitted fraudulent documents with complaint).

[8] *See* R&R at 68, 71-74; 81 (finding in falsity analysis that "[a]ccording to the allegations in the Complaint ... Plaintiff's role and involvement in the investigation of Seth Rich was limited" and therefore holding Butowsky was not a limited-purpose public figure). In fact, despite previously admitting to Plaintiff's public figure status in related litigation (*see* Pl.'s Opp'n to Mot. to Dismiss at 10, *Butowsky v. Susman Godfrey, LLP*, Cause No. 416-01222-2019, Collin County, Texas (May 20, 2019)), Plaintiff's counsel is now alleging in the *Gottlieb* case that this Court "determined" Butowsky not to be a public figure in its R&R and Order. Putting aside that the Court's ruling was limited to the record before it at the Rule 12(b)(6) stage, the Court's public figure analysis was based upon Butowsky's overt misrepresentations, and those misrepresentations cannot be used to further infect other lawsuits. Additionally, Butowsky is designated as a public figure on his Facebook page. *See* Ex. F.

others. *See* Ex. A-1. Further, contrary to the allegations in his pleadings here, Butowsky has admitted his role in developing the story in other forums.[9] Butowsky's communications with Wheeler also make abundantly clear that Plaintiff's role in the Rich investigation and his communications with Wheeler were extensive. At a minimum, Butowsky's correspondence with Wheeler establishes:

- ***Butowsky*** found Wheeler and connected him to the Rich family;

- Before introducing Wheeler to the Rich family, ***Butowsky*** connected Wheeler to Zimmerman and told him to "downplay Fox News" and not mention he knows Zimmerman to the Rich family;

- ***Butowsky*** paid Wheeler ***<u>before the Rich family engaged Wheeler.</u>*** When the Riches had not signed the Wheeler contract after a week, ***Butowsky*** became anxious and threatened to send Joel Rich an "uncomfortable message" to "kickstart" him;

- ***Butowsky*** and Zimmerman were interested in Wheeler being able to access additional information because he was "working on behalf of the Rich family;"

- Once the contract was signed, ***Butowsky***, Wheeler and Zimmerman worked together; ***Butowsky referred to it as "our" investigation***, discussed what "we" need to do to get the story over the "goal line," and took actions to direct the investigation and the narrative;

- ***Butowsky*** called multiple in-person and Zoom meetings with Wheeler and Zimmerman and directed parts of the FNN investigation by, among other things, putting Wheeler in contact with witnesses;

- Wheeler and Zimmerman copied ***Butowsky*** on information they were obtaining throughout the investigation;

- ***Butowsky*** repeatedly asked for and obtained copies of Wheeler's investigation notes ▌[10] and asked for status reports at least 9 times;

- ▌;[11]

---

[9] *See, e.g.,* https://www.dallasnews.com/news/2017/05/19/how-a-dallas-financier-got-tangled-up-in-conspiracy-theories-about-slaying-of-dnc-staffer-seth-rich/; https://www.wnd.com/2017/05/thats-patently-false-seth-rich-family-spokesman-denies-dnc-is-paying-him/ (last visited December 11, 2019); Ex. A-9, ▌

[10] ▌

[11] *See* Ex. A-3 ▌

- *Butowsky* reviewed multiple drafts of the (now retracted) FNN article prior to publication and was involved in its development;

- *Butowsky* put pressure on Wheeler to make or confirm statements about Rich's involvement in the DNC hack, claiming the pressure came from the White House;

- *Butowsky* instructed Wheeler on the narrative for his interviews about the FNN article.

*See* App. and Ex. A (list of these citations) and supporting documents attached thereto.

The impact of Plaintiff's misrepresentations is demonstrated by the Court's finding that:

> As noted by the R&R, Plaintiff's involvement in the Seth Rich investigation and Plaintiff's communications with Wheeler were both **limited**. … Overall, at this stage of the proceedings, the facts do not show Plaintiff had anything more than a **tangential** role in the controversy surrounding the Seth Rich investigation. Order, Dkt. 65, at 35 (emphasis added).[12]

**B.  Butowsky Encouraged the Riches to Hire Wheeler and Sent Them the Contract for Wheeler's Services, Promising to Pay for Wheeler.**

Butowsky pleads that he has never seen a copy of the contract between Wheeler and the Rich family. Compl. at ¶61; SAC at ¶73. However, third-party discovery shows



Butowsky also recently produced [13] [14]

Butowsky's claim that he never saw the contract is manifestly false.

---

) *But see* the Court's conclusion that Plaintiff plausibly pleaded defamation by implication, relying on Plaintiff's misrepresentations "According to Plaintiff, by stating 'the FBI had, in fact, informed Plaintiff 'that the agency [was] not assisting the Washington D.C. police on the investigation,' Folkenflik implied Plaintiff fabricated the story about Seth Rich and Wikileaks." Dkt. 58, p. 67.

[12] *See also* R&R, Dkt. 58, at 81 (According to the allegations in the Complaint … "Plaintiff's role and involvement in the investigation of Seth Rich was limited, and he had 'very little communication with Wheeler.' These allegations do not support a finding that Plaintiff 'thrust [himself] to the forefront' of that 'particular public controvers[y] in order to influence the resolution of the issues involved…").

[13] *See also* Ex. A-1 at 131 (March 14, 2017 text message from Joel Rich to Wheeler indicating that he had just sent the agreement to Wheeler and Ed.)

[14] After the FNN article was retracted, Butowsky tried to distance himself from the debacle, asking Wheeler "If you send a copy of the contract between you and Joel out, please delete my name from it." *See* Ex. A-1 at 77.

### C. **Butowsky's Allegedly Lost Client Did *Not* Cancel Her Investment Account.**

Butowsky alleged that NPR's publications caused him specific damages, including "enormous" loss of business for his investment management company, Chapwood. *See* Compl. at ¶3; SAC at ¶11. Butowsky's pleadings identified the cancellation of a single customer account to support his allegations of millions of dollars in special damages, *but he misrepresented that cancellation*. Each of his Complaints alleged that the "loss and damages caused to Butowsky by Folkenflik's defamation is evidenced by the following email from one of Butowsky's clients," referring to an email screenshot where Sally Davis wrote: "I have asked Schwab to remove Chapwood Investments as the advisor on my Schwab Account...after reading news articles about Ed's involvement with a false news story." Compl. at ¶3, n.2; SAC at ¶11, n.4.

What Butowsky intentionally failed to tell the Court is that **Ms. Davis *never* closed her account, and *Butowsky's* company, Chapwood, still manages her money.** *See* Ex. B (Davis Decl.). After receiving Davis's email, Chapwood convinced Davis to stay on as a customer with a different financial advisor. *Id.* In other words, Butowsky's reliance on the Davis screenshot as proof of "loss of clients" is deliberately false.

Without Butowsky's misrepresentations about Sally Davis, NPR could have obtained dismissal of his business disparagement and defamation *per quod* claims, both of which require pleading special damages. *See Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013). Other than Davis's email, Butowsky's damage assertions are the same vague and conclusory allegations he made in at least five other lawsuits – that the conduct of numerous, unrelated defendants over a period of several months caused him to lose unidentified clients and unspecified business opportunities, resulting in tens of millions of dollars in damages.[15]

---

[15] *See* Dkt.81. *See also Trudell v. Carrington Mortg. Servs.*, L.L.C., No. 1:16-cv-10441-TLL-PTM, 2016 WL 6080822, at *9 (E.D. Mich. Sept. 27, 2016), R&R adopted, Case No. 16-cv-10441, 2016 WL 6070124 (E.D. Mich.

If, after false statements are removed, all that is left are legal conclusions couched as factual allegations, courts are not bound to accept them as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)) ("[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Walker*, 938 F.3d at 735. But for the insertion of the misleading Davis email by Butowsky and his lawyers, the Court could have dismissed Plaintiff's remaining assertions devoid of factual support under *Iqbal/Twombly*.

### V. BUTOWSKY'S COUNSEL SHOULD BE SANCTIONED

The facts above further demonstrate that Butowsky's counsel failed to conduct the requisite factual investigation before filing. In assessing whether counsel made a reasonable factual inquiry, the Court considers the following factors: (1) the time available to counsel for investigation; (2) the extent to which counsel relied on his client for the factual support of the allegations; (3) the feasibility of prefiling investigation; (4) the complexity of the factual and legal issues; and (5) the extent to which the development of factual circumstances underlying the claim required discovery. *SyncPoint Imaging*, 2018 WL 6788033, *5.

(1) On the first factor (time for investigation), Plaintiff's counsel has had more than three years to investigate his client's claims and has amended Butowsky's Complaint twice. He has had ample time and opportunity to investigate his own client's claims[16] – especially when the misrepresentations are plain from a review of his client's own written communications.

(2-3) On the second and third factors (reliance and feasibility), the texts and emails sprinkled throughout their 98-page SAC portray half-truths. The communications between **Butowsky** and

---

Oct. 17, 2016) (finding implausible independent actors engaging in different conduct over several months creating same alleged business loss).

[16] The NPR articles at issue were published in August and September 2017. Plaintiff filed suit nearly a year later (June 21, 2018) and filed his FAC on March 5, 2019 (Dkt. 54) and his SAC on September 30, 2019 (Dkt. 72).

Wheeler – including payment of Wheeler by **Butowsky *before* the Rich family even signed a contract** for Wheeler's services – show the rest of the story about Butowsky's involvement. *See* Ex. A. Butowsky's counsel should have investigated these preexisting materials and faithfully portrayed them in their pleadings.

(4) Under the fourth factor (complexity), though keeping up with Butowsky's varying stories in his multiple lawsuits and media appearances can be arduous (*see* n.2 *supra*), his involvement in the Rich investigation and the retracted FNN article is *not* a complex issue.

(5) Under the fifth factor (required factual discovery), NPR had to conduct discovery to learn of these falsehoods. But Butowsky's counsel were uniquely situated to know all about Butowsky's communications, conduct and potential damages without any discovery.

## VI. DISMISSAL AND MONETARY SANCTIONS ARE NECESSARY TO DETER BUTOWSKY AND HIS COUNSEL FOR THEIR MISREPRESENTATIONS

It is difficult to imagine a more appropriate case for severe sanctions than this one involving a litigant who knowingly misrepresented facts to this Court and his lawyers whose improper conduct has led to suspension and public reprimand[17] and who are making similar

---

[17] Both of Butowsky's counsel have had their law licenses suspended and have been publicly reprimanded on multiple occasions. In fact, on January 14, 2020, Ty Clevenger's California Bar license was suspended (his D.C. license had previously been suspended) for, among other things, filing frivolous litigation causing significant harm to the administration of justice. *See In the Matter of Ty Odell Clevenger,* Case Nos. 16-J-17320 (17-J-00289)-CV (St. Bar Court of Cal.) (Ex. I); *see also Hughes v. Twenty-First Century Fox, Inc.,* No. 17-cv-7093, Mem. Order at 2 (S.D.N.Y. June 25, 2018) (listing multiple sanctions against Clevenger for "lack of respect for the judicial process" and "lack of candor") (Ex. J); *Robertson v. Cartinhour*, 883 F.Supp.2d 121, 123, 128 (D.D.C. 2012), *aff'd*, 554 F. App'x 3 (D.C. Cir. 2014) (sanctioning Clevenger for "vexatious and abusive litigation tactics" and noting previous sanctions) (Ex. K). Clevenger was previously sanctioned for multiplying proceedings and unnecessarily increasing litigation burdens. *See* Ex. L, Sec. Am. Disciplinary Pet., *Tex. Comm'n for Lawyer Discipline v. Clevenger*, Cause No. 380-01407-2013, Collin County; Ex. M, Agreed Judgment of Public Reprimand, *Commissions for Lawyer Discipline v. Ty Odell Clevenger*, Cause No. 380-01407-2013; Ex. N, Notice of Disciplinary Charges, *In the matter of Ty Odell Clevenger*, Nos. 16-J-17320, 17-J-00289, State Bar Ct. of Cal.; Ex. O, Resignation with Charges Pending, *In the matter of Ty Odell Clevenger*, No. SBC-19-Q-30424, St. Bar Court of Cal.

Steven Biss has also had his law license suspended and been disciplined several times, including for assisting his client in "conduct he should have known was criminal or fraudulent." Ex. P, Mem. Order, *Va. St. Bar, ex rel Third Dist. Comm. v. Biss*, Case No. CL07-1846, Cir. Ct. of the Cnty. of Chesterfield (suspending Biss one year and one day); Ex. Q, Order of Suspension, *In the Matter of Steven Scott Biss*, VSB Docket No. 09-032-078962 (suspension for "conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law" by holding himself out as an attorney while his license was suspended); Ex. R,

misrepresentations in another lawsuit before this Court. *See Butowsky v. Wigdor*, No. 4:19-cv-577-ALM (E.D. Tex. July 31, 2019) ¶35 ("Butowsky did not participate in Wheeler's investigation and had very little communication with Wheeler.").

In deciding whether to impose a sanction and what form of sanction to impose, the Court may consider numerous factors: (1) whether the conduct was willful or negligent; (2) whether the activity was isolated or part of a pattern; (3) whether the conduct affected the entire litigation; (4) any previous similar conduct by the attorney; (5) whether the conduct was intended to cause injury; (6) the effect of the conduct on the litigation in terms of time and expense; (7) whether the responsible party was trained in the law; (8) the amount, given the financial resources of the responsible person, needed to deter that person from repetition in this case; and (9) the amount needed to deter similar activity by other litigants. *Jabary, v. McCullough,* 325 F.R.D. 175, 199-200 (E.D. Tex. 2018) (Mazzant, J.) (citing RULE 11, Adv. Cmt. Note to 1993 amendment)*; SyncPoint Imaging*, 2018 WL 6788033, \*6 (*citing Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996)).

(1) Plaintiff's conduct was obviously willful. The evidence proving Butowsky's involvement in the underlying litigation, his receipt of the Wheeler contract and his alleged damages are all within his possession. He has produced a fraction of the responsive records and information requested by NPR much of which has been altered, cut and spliced, or are merely screenshots rather than original complete documents. *See* Defendants' Motion to Compel Discovery (Dkt. 85). He has failed to comply with a subpoena served on Chapwood (inquiring about his alleged millions in damages), served on November 18, 2019. *See* Ex. T. And, until

---

Mem. Order, *In the Matter of Steven Scott Biss*, VSB Docket No. 07-033-070921 (publicly reprimanding Biss). Earlier this year, Biss was admonished for taunting a *pro se* litigant in pleadings. *Steele v. Goodman*, 2019 WL 3367983 (E.D. Va. July 25, 2019). And, a sanctions motion is pending against Biss in *Lokhova v. Halper* for, among other things, misusing the litigation process to launch politically-motivated attacks and advance an agenda beyond the courthouse. Cause No. 1:19-cv-00632-LMB-JFA, Dkt. 85-1, attached hereto as Ex. S.

recently, Butowsky had refused to allow third-party Aaron Rich to provide NPR with Butowsky's prior document productions.[18] So, it was not until Defendants obtained more, and more complete, documents from Wheeler that Plaintiff's falsehoods could be proven.

(2) Butowsky's actions are plainly part of a pattern. Plaintiff has made these same false allegations in the *Butowsky v. Wigdor* case before this Court. *See supra* at 11-12.

(3) Butowsky's conduct affected the entire litigation. Indeed, he misrepresented his involvement, his knowledge and access, and his damages. And the Court relied upon Butowsky's allegedly minimal involvement in denying NPR's Motion to Dismiss.

(4) Butowsky's selected counsel has a history of misconduct spanning several states and several years. Together, they have been suspended from the Bars of Virginia, D.C., California and have been sanctioned and/or publicly reprimanded by several others, including New York and Texas. The basis for these sanctions include filing of frivolous litigation causing harm to the administration of justice, delay tactics serving solely to harass or maliciously injure another, and conduct involving dishonesty, fraud, deceit or misrepresentation reflecting adversely on the lawyer's fitness to practice law. *See* n.17, *supra*. Simply put, this is how they operate.

(5) Based upon Butowsky and his counsel's course of conduct, one can conclude the conduct was intended to cause injury.[19] Butowsky's statements to *Investment News* betray a vindictive motive and willingness to use the courts to exact revenge. *See* p. 4, n. 5, *supra*.

---

[18] *See* Ex. U (correspondence from Bois Schiller regarding Butowsky objecting to document production). *See also* Ex. V, *Aaron Rich's Motion for Sanctions against Butowsky*, Dkt. 93, p. 4, indicating Butowsky produced 536 documents in the *Aaron Rich* case (over twice produced herein), and his counsel recently represented that he had located "more than six thousand potentially responsive documents that had not been produced" and that he had "not yet even searched a number of … Butowsky's devices and accounts." *Id.* at Ex. 7.

[19] *See* n. 17, *supra. See also* Ex. I (California Bar Order of Suspension for Clevenger for interfering with the administration of justice; engaging in frivolous litigation and "unnecessarily proliferating" litigation and using delay tactics to serve solely to harass or maliciously injure another); Ex. W, [Proposed] Def. Halper's Supp. Mem. in Support of Sanctions against Biss, *Lokhova v. Halper*, No. 1:19-cv-00632-LMB-JFA (E.D. Va. Dec. 11, 2019), Dkt. 85-1, at 6-13, n.9 (outlining cases in which, like here, Plaintiff's counsel has targeted media seeking to deter further reporting of differing views).

(6) Plaintiff's misrepresentations have wasted both NPR's and this Court's resources.

(7) Plaintiff's counsel are trained in the law and their client is a serial litigant, so both should be familiar with the need to be truthful and have candor toward the tribunal.

(8) Given Butowsky's financial resources and his propensity to sue, he and his counsel should be held responsible at a minimum for NPR's fees incurred in this matter. Due to Plaintiff's obfuscation of facts and attempts to keep NPR (and this Court) from learning the truth, Plaintiff's pleadings should be stricken and his case dismissed with prejudice.

Lastly, especially considering Plaintiff's counsel's habit of filing litigation to silence opposing viewpoints,[20] a significant sanction is needed to deter similar activity.

In Rule 11 analysis, courts consider the importance of a litigant's misrepresentation, and those upon which the court might rely are more likely to warrant sanctions. *See Jenkins,* 478 F.3d 225, 266 (5th Cir. 2007) (upholding sanctions where "the error was glaring and could have had a serious impact on [the court's] summary judgment decision"); *Carona,* 72 F.Supp.2d 731, 733 (S.D. Tex. 1999) (monetary sanctions appropriate for misrepresentation of "a fact highly relevant to the Court's analysis" in summary judgment). Plaintiff's misrepresentations are central to the case, and he himself possesses the facts. Hence, significant sanctions should be imposed.

### 1. <u>Monetary Sanctions Are Warranted Against Plaintiff and His Counsel.</u>

Rule 11 expressly allows the Court to award attorney's fees and reasonable costs. The Fifth Circuit has held that both the attorney and client can be jointly and severally liable if the client is responsible for the misrepresentation. *See Jennings v. Joshua Indep. School Dist.*, 948 F.2d 194, 196 (5th Cir. 1991); *Skidmore*, 455 F.3d at 567 (finding Rule 11 sanctions appropriate "against a client as well as his attorney, because both have a duty 'to conduct a reasonable inquiry into the facts or law before filing the lawsuit.'"). A client is responsible for a Rule 11

---

[20] *See* Dkt. 81 at 5 n.7; *see also* Ex. W at 16 n.22.

violation if the client "know[s] that the filing and signing [of a pleading, motion, or other paper] is wrongful." *SyncPoint Imaging*, 2018 WL 6788033, at *6. Sanctions against a party are particularly appropriate for factual misrepresentations. *Marlin v. Moody Nat. Bank*, N.A., 533 F.3d 374, 380 (5th Cir. 2008); *see also Donaldson v. Clark*, 819 F.2d 1551, 1557 (5th Cir. 1987) (financial penalties are perhaps "the most effective way to deter a powerful and wealthy party from bringing frivolous or vexatious litigation"). Accordingly, the imposition of joint and several sanctions against Plaintiff and his counsel is appropriate here.

### 2. Dismissal Is Warranted.

The Court can dismiss a case under Rule 11. When deciding whether to dismiss, the Court should consider whether the misrepresentations "infect" the entire pleading, or just portions of it. *Martin v. Frail*, Case No. SA-09-CA-695-OG, 2011 WL 13175090, *10 (W.D. Tex. Aug. 26, 2011). Where, as here, a party has misrepresented key facts to the court, dismissal is appropriate. *Plastech*, 257 F.Supp.3d at 879 (case dismissed because plaintiff fabricated signed agreement); *see also Bus. Guides v. Chromatic Comm'ns Enters., Inc.*, 121 F.R.D. 402, 405 (N. D. Cal. 1988), *aff'd*, 498 U.S. 533, 544 (1991) (case dismissed after two years of litigation because plaintiff falsified claims of copyright infringement). Here, Plaintiff's misrepresentations infected the entire case – causing the Court to "assume as true" what Plaintiff knew was false. Accordingly, dismissal of Plaintiff's claims is an appropriate sanction.

## VI. CONCLUSION AND PRAYER

Three of Plaintiff's core factual allegations are demonstrably false. Plaintiff knowingly and repeatedly misrepresented them to the Court in his pleadings. Plaintiff's actions caused this Court to waste judicial resources and Defendants to incur significant legal expenses to uncover and rebut them. Plaintiff's pleadings should be stricken, his case dismissed with prejudice, and monetary sanctions awarded against Plaintiff and his counsel.

Respectfully submitted,

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Telecopier: (512) 867-8470

David J. Bodney
*admitted pro hac vice*
bodneyd@ballardspahr.com
Ian O. Bucon
*admitted pro hac vice*
buconi@ballardspahr.com
BALLARD SPAHR LLP
1 E. Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400
Fax: 602.798.5595

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE WITH RULE 11

The undersigned Counsel for Defendants certifies that on January 23, 2020, she caused a draft of this motion to be served under Rule 5 upon Plaintiff's counsel. The undersigned also certifies that Defendants have complied with the requirements of Rule 11(c)(2). On Sunday, February 16, 2020, after the expiration of the 21-day safe harbor period, Plaintiff responded to the draft Motion served on them with proposed modifications that do not sufficiently "withdraw[] or appropriately correct[]" the challenged contentions in Plaintiff's Second Amended Complaint or remedy the Rule 11 violations.[21]

*/s/ Laura Lee Prather*
Laura Lee Prather

---

[21] A copy of that correspondence is attached to this Motion as Exhibit X.

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 18, 2020, a true and correct copy of the foregoing document was served via e-mail and U.S. Mail to the following counsel of record:

| | |
|---|---|
| Ty Odell Clevenger | Steven S. Biss |
| P.O. Box 20753 | 300 West Main Street, Suite 102 |
| Brooklyn, NY 11202-0753 | Charlottesville, VA 22903 |
| 979-985-5289 (phone) | 804-501-8272 (phone) |
| 979-530-9523 (fax) | 202-318-4098 (fax) |
| tyclevenger@yahoo.com | stevenbiss@earthlink.net |

                                               */s/ Laura Lee Prather*
                                               Laura Lee Prather