# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| **Edward Butowsky,** | |
| Plaintiff, | |
| **v.** | **Case No. 4:18-cv-442-ALM** |
| **David Folkenflik, et al.,** | |
| Defendants | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to the MOTION FOR SANCTIONS PURSUANT TO RULE 11 FOR VIOLATIONS BY PLAINTIFF AND HIS COUNSEL ("MOTION FOR SANCTIONS")(Doc. No. 100) as follows:

### Introduction

The Defendants' Motion for Sanctions reeks of bad faith, and it is a sign of the Defendants' desperation. Unable to defend their clients on the merits, Laura Lee Prather and her colleagues decided they would try to "poison the well" by making personal attacks on Plaintiff's Counsel, dredging up disciplinary cases from years past that are wholly unrelated to this case. The motion relies on disputed facts that would not even be grounds for summary judgment, yet the Defendants want the Court to resolve those disputed facts in her clients' favor and then sanction the Plaintiff and his attorneys for not accepting their interpretation of the facts. As set forth below, the Plaintiff offered to amend his pleadings in order to address some of the Defendants' purported concerns, but

the Defendants opposed any such amendment despite the clear language of the "safe harbor provision" in Rule 11, *i.e.*, a motion for sanctions should not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service…" Fed. R. Civ. P. 11(c)(2). This is perhaps the clearest evidence that the Defendants, Ms. Prather, and her colleagues are acting in bad faith. Rather than allow the Plaintiff to address their purported concerns, they forged ahead with their motion and demanded the most draconian and absurd of remedies, *i.e.*, death-penalty sanctions.

One must wonder if Ms. Prather's focus on unrelated disciplinary matters is an attempt to distract from her own bad faith and lack of civility in <u>this</u> case.  For example, the Defendants served subpoenas on the Plaintiff's company (Chapwood) and his business partner (Kim Sams) in the Eastern District of Texas, then multiplied proceedings by filing two separate cases in the Northern District of Texas in order to enforce subopenas that were served on respondents located in the Eastern District. *See David Folkenflik, et al. v. Chapwood Capital Investment Management, Inc.*, Case No. 3:20-MC-007-N (N.D. Tex.) and *David Folkenflik, et al. v. Kim Sams*, Case No. 3:20-MC-005-N (N.D. Tex.). When Mr. Clevenger attempted to negotiate a solution on behalf of Ms. Sams, Ms. Prather insisted that Ms. Sams could only be represented by someone who is admitted in the Northern District (Mr. Clevenger is not admitted in the Northern District). *See* January 31, 2020 email exchange between Ty Clevenger and Laura Lee Prather (Exhibit 1). This forced Chapwood and Ms. Sams to hire separate counsel to appear in the Northern District. *See* Notices of Appearance by John Leslie in Case No. 3:20-MC-

007-N (N.D. Tex.)(Exhibit 2) and Case No. 3:20-MC-005-N (N.D. Tex.)(Exhibit 3). Fortunately, the Northern District asked *sua sponte* why the Defendants did not issue the Chapwood subpoena from the Eastern District, where the case is pending and where both respondents are located.  The Defendants were unable to give a satisfactory answer, and the Chapwood case was transferred.  *See* March 6, 2020 Order, Case No. 3:20-MC-007-N (N.D. Tex.)(Exhibit 4).  The Plaintiff is informed that Ms. Sams is likewise seeking a transfer to the Eastern District.

Even in smaller matters, the Defendants' attorneys have demonstrated needless animosity. Mr. Clevenger requested electronic copies of the exhibits to the Motion for Sanctions, for example, because the Defendants had only provided hard copies. *See* February 11, 2020 email exchange between Ty Clevenger and Laura Prather (Exhibit 5). Mr. Clevenger was traveling and hoped to avoid carrying several extra pounds. *Id*. Inexplicably, the Defendants' attorneys ignored that request. *Id*. Rather than sling mud about disciplinary matters from years past, Ms. Prather and her colleagues would do well to clean up their own act in the here and now.

## **Legal Standard**

Not surprisingly, the MOTION omits any substantive discussion of the limits of Rule 11 sanctions, and that's because courts have consistently rejected its use as a tactical weapon.

> We will take this opportunity... to warn appellees' counsel that we look with disfavor on a party's use of Rule 11 or the ethical rules as combative tools. The rules governing the ethical conduct of lawyers are far too important to be trivialized and used in baseless mud-slinging such as this. We will not tolerate attempts to use the ethical rules in a way contrary to the spirit of those very rules.

*Autrey v. United States*, 889 F.2d 973, 986 (11th Cir. 1989); *see also Park v. Seoul Broad. Sys. Co.*, 05 CV 8956 BSJ DFE, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances"), citing *Morristown Daily Record, Inc. v. Graphic Commc'ns*, 832 F.2d 31, 32 n. 1 (3d Cir.1987). "The standard for imposing Rule 11 sanctions... is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), aff'd, 753 Fed. Appx. 3 (2d Cir. 2018); *see also Brown v. Nationwide Mut. Ins. Co.*, 634 F. Supp. 72, 73 (S.D. Miss. 1986)(same), aff'd as modified, 805 F.2d 1242 (5th Cir. 1986).  "A sanction under Rule 11 is 'an extraordinary remedy, one to be exercised with extreme caution.'" *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 498 (N.D. Tex. 2016), objections overruled sub nom. *Orchestratehr, Inc. v. Trombetta*, 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016), citing *Laughlin v. Perot*, No. 3:95–cv–2577–R, 1997 WL 135676, at *8 (N.D.Tex. Mar. 12, 1997); *see also Stanley v. Univ. of Tex. Med. Branch*, 296 F. Supp. 2d 736, 740 (S.D. Tex. 2003)("The Court does not take the imposition of sanctions lightly, and very rarely assesses them").

## Argument

### 1. Most of the "false" allegations in the complaint are not false, and the Plaintiff attempted to correct the ones that were inaccurate.

The Defendants contend that the Plaintiff made three false allegations in his complaint: (1) that his role in the Rod Wheeler investigation was "limited"; (2) that he had never seen Mr. Wheeler's contract with the Rich family; and (3) that an email from

Sally Davis was an example of his damages.  As explained below, those allegations are not false.  Even if they were, none of those allegations would have changed the Court's ruling on the Defendants' motion to dismiss, because none of those allegations are central to the Plaintiff's claims.  Ms. Prather and her colleagues offered evidence that *seems* to contradict some of those sidebar allegations, yet nearly all of that evidence is disputed or inconclusive.

As noted above, a Rule 11 motion for sanctions is unwarranted where the evidence is contradictory or disputed. "As we see it, Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment."  *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990)(emphasis in original), quoted with approval in *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1323 (Fed. Cir. 2010) and *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). In *Card v. State Farm Fire & Cas. Co.*, 126 F.R.D. 654, 656 (N.D. Miss. 1989), for example, the court held that sanctions were not warranted even though "counsel may have discounted or ignored some of the evidence which went against their position." All of the Plaintiff's allegations in this case were made in good faith and all of them are supported by evidence – regardless of whether the Defendants like that evidence – thus there is no basis for sanctions.

### A.  Mr. Butowsky's involvement in the Rod Wheeler investigation was indeed limited.

The Defendants point to three paragraphs in the Second Amended Complaint ("SAC") as proof that the Plaintiff misrepresented his role in the Rod Wheeler

investigation. Those paragraphs read as follows:

> 68.  Before he wrote his First Article, Folkenflik knew that Butowsky's role and involvement in the investigation of Seth Rich's murder was limited.
>
> ….
>
> 74. Although Folkenflik made it appear that Butowsky orchestrated and directed Wheeler's murder investigation, in truth Butowsky did not participate in Wheeler's investigation and had very little communication with Wheeler. Folkenflik knew that Butowsky's involvement was limited.
>
> 75. Wheeler publicly confirmed Butowsky's limited involvement in the investigation. On May 16, 2017, Wheeler represented to Sean Hannity that "I was hired by the family, Joel and Mary Rich. They signed the contract. Now, the financial benefit, if there were any financial benefit and by the way there wasn't much, that was actually paid for by a third party [Butowsky] that I have had very little        communication        with        at        all,        Sean". [https://www.youtube.com/watch?v=CuRJDKEVxHY (emphasis added)].
>
> 76. Folkenflik misrepresented Butowsky's actual involvement in Wheeler's investigation. Folkenflik made it appear as of Butowsky was at the center of the investigation, directing Wheeler, feeding him "tips", and telling him what to do. Folkenflik falsely portrayed Butowsky as a puppet master "behind the scenes", feeding "tips" to Wheeler and telling Fox what to do. Far from the truth.

SAC ¶¶68, 74-76. On February 12, 2020, pursuant to the safe harbor provision found in Fed. R. Civ. P. 11(c)(2), Mr. Clevenger informed the Defendants that the Plaintiff wished to amend his complaint to make corrections. *See* February 12-13, 2020 email exchange between Ty Clevenger and Laura Prather (Exhibit 6). Ms. Prather responded that the Defendants would oppose a motion to amend the complaint. *Id*. On February 16, 2020, Plaintiff's Counsel Steven Biss sent a letter to Ms. Prather explaining why the motion for sanctions was unwarranted, and the Plaintiff incorporates that letter herein by reference. *See* February 16, 2020 letter from Steve Biss to Laura Prather (Exhibit 7).  Mr. Biss informed Ms. Prather of the exact changes that the Plaintiff intended to make to his

complaint, *id.*, and the Plaintiff subsequently filed a motion seeking permission seeking to substitute a Third Amended Complaint for the Second Amended Complaint. *See* Motion for Leave to File Amended Complaint (Doc. No. 190). The foregoing paragraphs flagged by the Defendants were changed as follows:

> 68. Before he wrote his First Article, Folkenflik knew that Butowsky's role and involvement in the investigation of Seth Rich's murder was limited.
> …
> 74. Although Folkenflik made it appear that Butowsky orchestrated and directed Wheeler's murder investigation, in truth Butowsky did not personally participate and was not directly involved in Wheeler's investigation. He left the investigating to Wheeler. Butowsky and Wheeler occasionally communicated about Wheeler's investigation. Wheeler regularly updated Butowsky on his findings. Folkenflik knew that Butowsky's involvement was limited.
>
> 75. Wheeler publicly confirmed Butowsky's limited involvement in the investigation. On May 16, 2017, Wheeler represented to Sean Hannity that "I was hired by the family, Joel and Mary Rich. They signed the contract. Now, the financial benefit, if there were any financial benefit and by the way there wasn't much, that was actually paid for by a third party [Butowsky] that I have had very little communication with at all, Sean". [https://www.youtube.com/watch?v=CuRJDKEVxHY (emphasis added)].
>
> 76. Folkenflik misrepresented Butowsky's actual involvement in Wheeler's investigation. Folkenflik made it appear as if Butowsky was at the center of the investigation, directing Wheeler, telling him what to do (and telling Fox what to report). In reality, Butowsky did not direct either Wheeler's investigation or the Fox News reporting. Butowsky shared some tips that he received and asked for updates, but he never interviewed witnesses, prepared a single draft of any report or story, etc. Butowsky was not the puppet master that Folkenflik accused him of being.

*See* Proposed Third Amended Compaint (Doc. No. 190-1). As the Court can see, the Plaintiff corrected his complaint to acknowledge that he had indeed relayed tips to Mr. Wheeler, but that he was not directing Mr. Wheeler's investigation. In that sense, the Plaintiff's involvement in the Wheeler investigation was, in fact, "limited." Furthermore,

the changes do not affect the substance of the Plaintiff's defamation claims against the Defendants. All versions of the complaint quote Mr. Wheeler's statement that he "had very little communication… at all" with the person paying for the investigation, *i.e.*, the Plaintiff. *See, e.g.*, Original Complaint 40, ¶63 (Doc. No. 1).

The Plaintiff's efforts to correct his allegations about relaying tips should have put an end to the matter.

> Under Rule 11, a motion for sanctions may not be filed until at least 21 days after service of the motion on the offending party. *See* Fed. R. Civ. P. 11(c)(2). If, during this period, the alleged violation is withdrawn or appropriately corrected, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to remedy the improper paper, claim, defense, contention, or denial. *See id.; see also Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995). The safe-harbor provision is strictly construed, and substantial compliance and informal notice and opportunity to withdraw are not sufficient. *See Reyes v. Kroger Texas, LP*. No. 3:10–cv–922–B, 2010 WL 4316084, at *4 (N.D.Tex. Oct. 2, 2010) (citing *In re Pratt*, 524 F.3d 580, 586–88 (5th Cir.2008)), rec. adopted, 2010 WL 4321585 (N.D.Tex. Oct. 25, 2010). A Rule 11 motion for sanctions is properly denied when the movant fails to comply with the safe-harbor provision. *See Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir.2000). The movant has the burden to show compliance. *See Reyes*, 2010 WL 4316084, at *4 (citing *Harris v. Auxilium Pharms., Inc.*, 664 F.Supp.2d 711, 724 (S.D.Tex.2009)).

*Orchestrate HR*, 178 F. Supp. 3d at 498. The Defendants might argue that the Plaintiff's motion to amend was untimely because it occurred more than 21 days after the Motion for Sanctions was served, but the Defendants agreed to give the Plaintiff more time to respond to their draft motion. *See* February 14, 2020 email exchange between Ty Clevenger and Laura Prather (Exhibit 8). In their response in opposition to the Plaintiff's motion to amend his complaint (Doc. No. 107), the Defendants make a particularly cynical argument that the motion to amend was outside the safe-harbor period because it

was filed after the Motion for Sanctions.   True enough, the Motion for Sanctions was filed at 9:15 a.m. on February 18, 2020 and the motion to amend was filed at 4:29 p.m. on the same day, but the Defendants fail to mention the following email that was sent by Mr. Biss to Ms. Prather the day before, on February 17, 2020:

> Laura,
>
> Attached in RTF is our Motion for Leave to File Third Amended Complaint and a proposed Order.
>
> We would like to file today, but will await to hear from you.
>
> Please call me to discuss or let me know via email if you oppose the motion and, if so, why, so I can complete the certificate.  Thank you.
>
> Steven S. Biss

*See* February 17, 2020 email exchange between Steve Biss and Laura Prather (Exhibit 9). Ms. Prather did not respond to that email, but instead she preemptively filed the motion for sanctions the following morning. Likewise, the Defendants failed to mention a February 14, 2020 email wherein Plaintiff's Counsel asked Defendants' Counsel about scheduling a telephone conference to discuss the proposed motion to amend. *See* February 14, 2020 email exchange between Ty Clevenger and Laura Prather (Exhibit 10). The local rules require a telephone discussion before filing an opposed motion, *see* Local Rule CV-7(h), but Defendants' Counsel never responded.  In other words, the Plaintiff was prohibited by the local rule from filing an amended pleading sooner. And while the Plaintiff was attempting to address the Defendants' purported concerns in good faith, as required by the local rules, Ms. Prather showed that she had no interest in that. No, she was more interested in muddying the waters with cheap shots at opposing counsel.

In *In re Sony Corp. SXRD*, the Second Circuit vacated a Rule 11 sanction even though the offending allegations were withdrawn outside the safe-harbor period, in part because the respondent was acting in good faith. 448 Fed. Appx. 85, 87–88 (2011). In this case, the Plaintiff told the Defendants that he was willing to amend his complaint, the Defendants gave the Plaintiff additional time (*i.e.*, beyond 21 days) to respond to their motion, the Plaintiff did respond to their motion via letter, and he asked whether they would oppose his motion to amend, but then the Defendants preemptively filed their motion for sanctions. Contrast that with the following:

> Appellants claim that they offered to dismiss the Kunimotos' complaints without prejudice within the 21 day safe harbor period, and that appellees ignored the offer. But the district court was within its discretion in finding that appellants' alleged offers were not sincere proposals but rather disingenuous attempts to force settlement. Appellants proposed only a withdrawal without prejudice; they then failed to file any withdrawal motion with the court or send any proposed withdrawal documents to the bank, though they continued to speak equivocally about the possibility of withdrawing after the safe harbor period ended. In addition, the alleged offer was made only to the bank and therefore has no bearing on the motion for sanctions brought by the trustee.

*Kunimoto v. Fidell*, 26 Fed. Appx. 630, 633 (9th Cir. 2001).  There has been no such bad faith on the part of the Plaintiff, because (among other things) he followed through with his motion to amend the complaint. All of the bad faith in this sanctions fiasco rests entirely with the Defendants and their counsel.

Now, back to the real issue, *i.e.*, whether there is at least some evidence to support the Plaintiff's allegation that his role in the Wheeler investigation was "limited."  Let's begin with the fact that Mr. Wheeler is a hostile witness who filed suit a frivolous lawsuit against the Plaintiff that was later dismissed. *See Wheeler v. Twenty-First Century Fox*,

322 F. Supp. 3d 445 (S.D.N.Y. 2018). Clearly, Mr. Wheeler has credibility problems. Even so, Mr. Wheeler admitted on national television that he "had very little communication… at all" with the Plaintiff. *See* https://www.youtube.com/watch?v=CuRJDKEVxHY, cited in SAC ¶75. By itself, that is at least some evidence supporting the Plaintiff's allegation. The Defendants clutch their pearls and feign indignation about emails and "hundreds of pages of texts" between the Plaintiff and Mr. Wheeler, but those texts and emails do not undermine the Plaintiff's allegation that his role was limited. As Mr. Biss noted in his letter to Ms. Prather (Exhibit 7), many of those texts and emails have nothing to do with Mr. Wheeler's investigation, and the ones that discuss the investigation do not show the Plaintiff directing or managing the investigation. Likewise, Mr. Wheeler's investigative notes do not support the Defendants' argument that the Plaintiff controlled and orchestrated the Wheeler investigation. Nowhere do those notes suggest that Mr. Butowsky was "directly involved" in Mr. Wheeler's investigation, *e.g.*, nowhere does Mr. Butowsky accompany Mr. Wheeler to an interview or tell Mr. Wheeler what to do. If there are inconsistencies in Mr. Wheeler's statements (and there usually are inconsistencies in his statements), then it is the jury's domain to resolve those inconsistencies. Such disputes cannot be resolved at the summary judgment stage, much less in response to a motion for sanctions.

In another example of their cynicism, the Defendants try to conflate the Plaintiff's involvement with Malia Zimmerman and her Fox News story with involvement in the Wheeler investigation. *See, generally*, Appendix to Defendant's Rule 11 Motion (hereinafter "Appendix"). Clearly, the Plaintiff was assisting Ms. Zimmerman on the

story, and clearly he shared tips and facilitated the exchange of information between Ms. Zimmerman and Mr. Wheeler (among others), but his role was <u>limited</u> to that. The Plaintiff was not interviewing witnesses, telling Mr. Wheeler what to do, or otherwise controlling Mr. Wheeler's investigation. *See* Declaration of Edward Butowsky (Exhibit 11). The paragraphs in the SAC that the Defendants complain about, *i.e.*, Paragraphs 68, 74, 75, 76, clearly are talking about the Wheeler investigation, not the Fox News story, and it is disingenuous for the Defendants to conflate the two.   Whereas Defendant Folkenflik's broadcasts made it sound as if the Plaintiff hired Mr. Wheeler so he could control Mr. Wheeler's investigation, the Motion for Sanctions fails to cite any plausible evidence – much less *conclusive* evidence – that the Plaintiff did that.   Accordingly, a jury can reasonably conclude that Defendant Folkenflik's broadcasts were false and defamatory. The Defendants know that they cannot prevail on this issue on summary judgment, thus they should know that they have no basis for seeking sanctions.

**B. The Plaintiff did not see Mr. Wheeler's contract with the Rich family until after it was executed.**

The Defendants next complain about Paragraph 73 of the SAC, which reads as follows:

> 73. Butowsky was not a party to the contract between Wheeler and the Rich family. He has never seen the contract.

The Plaintiff was mistaken about the last part of that sentence. As explained, in Mr. Biss's letter to Ms. Prather (Exhibit 7), the Plaintiff did not see the contract until after it was executed, and he had no role in drafting that contract. *See* Declaration of Edward Butowsky (Exhibit 11). In response to the Defendants' objections, the Plaintiff offered to

amend his complaint to read as follows:

> 73. Butowsky was not a party to the contract between Wheeler and the Rich family. He was not involved in any discussions between Wheeler and the Riches over the terms of a contract. He only agreed to pay for Wheeler's services. Butowsky first saw the contract between Wheeler and the Riches in May 2017 months after it was signed.

*See* Proposed Third Amended Complaint (Doc. No. 190-1). In their response in opposition to the Plaintiff's motion to amend, the Defendants argue that even the amended version is deceptive. They point to the following excerpt from a March 3, 2017 email from the Plaintiff to Joel Rich:

> Attached is the basic agreement for Rod [Wheeler]. With this, he can and will aggressively get you a lot of pertinent information. I said from the beginning, I will do whatever I can to help get you and your family the knowledge of what happened. After reading and 'running it by' whomever you feel needs to see it, please sign and back to me.

*See* Defendant's Response in Opposition to Plaintiff's Motion for Leave to file Third Amended Complaint, p. 7 (Doc. No. 105). This is yet another cynical "gotcha" stunt by the Defendants.  Two different contracts are under consideration, as reflected in the very documents cited by the Defendants.  As an attachment to the March 3, 2017 email – and prior to the execution of any contract – the Plaintiff sent Mr. Rich a copy of Mr. Wheeler's standard contract. *See* Declaration of Edward Butowsky (Exhibit 11).  So far as the Plaintiff knows, that contract was never executed. *Id.*  Instead, the contract between Mr. Wheeler and the Rich family was drafted by Aaron Rich's wife Molly, who is an attorney.  This is reflected in the March 13, 2017 email from Mr. Wheeler that is *quoted at the bottom of the first page of the Defendant's Appendix*:

> Just an update. I talked with Aaron Rich last evening. He told me that I should

have the signed agreement no later than today, Monday. I suspect however that there will be a lot of "legal mumbo-jumbo" contained in the agreement, as he said that Molly (wife and attorney of Aaron) was drafting a *different agreement, other than the one I initially sent them*. We will see."

Appendix 1-2 (emphasis added).  As attested by his attached declaration, the Plaintiff did not see the executed agreement until some time around May 16, 2017. *See* Declaration of Edward Butowsky (Exhibit 11).  He had absolutely no role in drafting that agreement, *id.*, and the Defendants have not produced any evidence to the contrary. The Defendants know they are beating a dead horse, and that adds to the evidence of their bad faith. Furthermore, it is utterly irrelevant to the Plaintiff's claims that he did or did not see the contract between Mr. Wheeler and the Riches, and it is ludicrous to suggest that a mistake on that issue would merit death-penalty sanctions.

### C.  The Plaintiff did not misrepresent his damages.

In another example of malicious hair-splitting, the Defendants allege that the Plaintiff made a misrepresentation in a footnote. Paragraph 11 in the Second Amended Complaint reads as follows:

11. Prior to Folkenflik and Wigdor's global smear campaign, Butowsky enjoyed an untarnished personal and professional reputation in the community in which he lived and worked, with clients, with colleagues in business, and with his many friends. As was known and intended, Folkenflik's defamation spread like wildfire throughout mass media, social media and over the Internet, causing Butowsky to be ostracized, causing enormous loss of business (including, without limitation, the termination and loss of Chapwood's Investment Manager Service Agreement with Charles Schwab and loss of clients),[4] and causing Butowsky substantial personal injury, fear, and mental and physical pain and suffering. Butowsky has received death threats to his family, damage to his home in Plano, and thousands of ad hominem attacks.

SAC 11, ¶11. The Defendants object to Footnote 4 in that Paragraph, which reads as

follows:

> The loss and damage caused to Butowsky by Folkenflik's defamation is evidenced by the following email from one of Butowsky's clients:

> > On 8/3/17, 5:29 PM, "Sally Davis" <sallyhi-d@comcast.net> wrote:
> >
> > Hello Ed and Kim,
> >
> > I'm really sad to write this email.
> >
> > I have to let you know I asked Schwab to remove Chapwood Investments as the advisor on my Schwab Account.  I will follow up with a phone call tomorrow, August 4.
> >
> > I made this decision after reading news articles about Ed's involvement with a false news story. For me, this is not a question of politics. It's a question of ethics.
> >
> > I very much appreciate all your help and guidance through the past twenty-five years or so. I'm heartbroken to end our relationship.

The Plaintiff offered to amend Footnote 4 to read as follows:

> The loss and damage caused to Butowsky's reputation by Folkenflik's defamation is evidenced by the following email received from one of Butowsky's high net worth clients:

> > On 8/3/17, 5:29 PM, "Sally Davis" <sallyhi-d@comcast.net> wrote:
> >
> > Hello Ed and Kim,
> >
> > I'm really sad to write this email.
> >
> > I have to let you know I asked Schwab to remove Chapwood Investments as the advisor on my Schwab Account.  I will follow up with a phone call tomorrow, August 4.
> >
> > I made this decision after reading news articles about Ed's involvement with a false news story. For me, this is not a question of politics. It's a question of ethics.
> >
> > I very much appreciate all your help and guidance through the past twenty-five years or so. I'm heartbroken to end our relationship.

> Fortunately, Chapwood was able to persuade the client to stay on as a customer with a different financial advisor. Nonetheless, Chapwood lost millions of dollars in investments from this customer and Plaintiff lost income as a direct result. Further, Plaintiff's reputation as a registered investment advisor has been destroyed. He is unable to develop new business. He has lost the ability to get referrals from Major League Baseball, NBA, etc. He can't even tell people his last name without hesitating, since he knows they will Google him and see all the fake stories.

*See* Proposed Third Amended Complaint (Doc. No. 190-1). In their response to the

motion to amend, the Defendants argue that the foregoing amendment would be futile,

Case 4:18-cv-00442-ALM-CMC   Document 110   Filed 03/10/20   Page 16 of 21 PageID #:  5529

but their argument is incoherent. There is nothing ambiguous about the Plaintiff's claim that "Chapwood lost millions of dollars in investments from this customer and Plaintiff lost income as a direct result." It is a plain and clear statement of damages, the Plaintiff has now attested to it under oath, *see* Declaration of Edward Butowsky (Exhibit 11), and the Defendants have not offered any contrary evidence (because it does not exist). Even in its original form, Footnote 4 is accurate.  Regardless of what Sally Davis did or did not do with her investment, her email clearly illustrates the kind of damage that the Defendants inflicted on Mr. Butowsky's *reputation*. Yet the Defendants want this Court to adopt their "spin" as fact and conclude not only that they suffered grave harm from Footnote 4, but that the harm is so grave that it merits death-penalty sanctions. Somebody needs to be sanctioned alright, and it's Ms. Prather and her colleagues.

## 2.  Counsel's disciplinary history is irrelevant to this case.

The Defendants' *ad hominem* attacks against opposing counsel is evidence of both their malice and their desperation.  True to form, they make material misrepresentations in their personal attacks on Plaintiff's Counsel.  Mr. Clevenger has not been suspended from the California Bar, as the "order" they attached is not an order, nor is it final.  The Plaintiff has attached a February 11, 2020 letter that he sent to the Texas Board of Disciplinary Appeals (Exhibit 12), and he declares under penalty of perjury that the contents of that letter are true and correct. As set forth in the letter, the California prosecution represents the third time that the Plaintiff has been prosecuted for the same events, and the "order" itself notes that those events occurred in 2012 or earlier. *Id*. If the recommendation is adopted by the California Supreme Court, it will represent the third

- 16 -

time that Mr. Clevenger has been punished for the same events. *Id*. The U.S. Court of

Appeals for the Fifth Circuit has already informed the Plaintiff that even if the California

Supreme Court adopts the recommendation, the Fifth Circuit will not reciprocate.

Meanwhile, the Texas Bar *cannot* reciprocate because in 2014 it settled all of the same

matters for a reprimand. In contrast, the sleazy personal attacks by Defendants' Counsel

in <u>this</u> case could be grounds for professional discipline in Texas. *See* Tex. Disc. R. Prof.

Conduct 3.04(c)(2) and 4.04(a).

### 3.  Sanctions are not warranted against the Plaintiff or his attorneys.

By requesting death-penalty sanctions so casually, the Defendants gravely

undercut their own credibility. Any sanction under Rule 11 is "an extraordinary remedy,

one to be exercised with extreme caution," *Orchestrate HR*, 178 F. Supp. 3d at 498, but

death-penalty sanctions require something even more extraordinary:

> The Fifth Circuit has held that involuntary dismissal is a drastic remedy to which a
> Court may resort only in extreme circumstances. *Hepperle v. Johnston*, 590 F.2d
> 609 (5th Cir. 1979). Moreover, the Fifth Circuit has "consistently emphasized that
> the district court should consider lesser sanctions before dismissing a case with
> prejudice." *Webb v. Morella*, 457 Fed.Appx. 448, 454 (5th Cir. 2012) (citing
> *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980)).

*Ortiz v. Apache Corp.*, CV G-13-324, 2015 WL 12837582, at *3 (S.D. Tex. Feb. 18,

2015). The Defendants do not suggest that the Plaintiff's claims against them are

frivolous, and indeed they are not. Instead, the Defendants attack tertiary allegations that

are not even necessary for the Plaintiff's claims, they make *ad hominem* attacks against

Plaintiff's Counsel, and then they ask the Court to throw the whole case out.  Lest the

Defendants object to the Plaintiff's characterization of the disputed allegations as

"tertiary," consider what happens when one strikes all of the allegations that the Defendants deem objectionable. Better yet, strike the entire paragraphs where the contested allegations are found, *i.e.*, Paragraphs 68, 73, 74, 75, and Footnote 4.  The heart of the Plaintiff's defamation claims would remain unfazed, because this is a case about whether, as Defendant Folkenflik alleged in his broadcast, the Plaintiff engineered a "fake news" story for Fox News. Specifically, this is a case about whether Seth Rich leaked DNC emails to Wikileaks, as the Plaintiff claims, or whether he did not, as the Defendants claim. This is <u>not</u> a case about (1) the extent of the Plaintiff's participation in the Wheeler investigation; (2) when or whether the Plaintiff saw the contract between Mr. Wheeler and the Rich family; or (3) how much business the Plaintiff lost from Sally Davis. The Plaintiff does not make light of any errors in his complaint (that is why he sought to amend it), but none of them alter the Plaintiff's claims against the Defendants.

The Appendix to the Motion for Sanctions, meanwhile, is a case study in the dangers of trying to "spin" disputed facts in support of a Rule 11 motion. As noted above, the Defendants conflated two different contracts in order to "prove" that the Plaintiff had seen the contract between Mr. Wheeler and the Rich family prior to the time of its execution. Another example of the Defendants' spin can be found on the first page of the Appendix, where they point to a March 3, 2017 email sent at 10:02 a.m.:

> Ed asks Rod to send him something for Mr. Rich to sign. He also tells Rod: "Expect a direct call from Joel Rich. Please call me prior to give you a few data points. **Make sure to downplay Fox News, don't mention you know Malia**." Exhibit A-1 at 29-30 (WHEELER-00000900-01).

Appendix 1 (emphasis in original). The Defendants want to portray this as something

nefarious, *e.g.*, evidence of a conspiracy against the Riches. In reality, the Plaintiff suggested Mr. Wheeler downplay Fox News because the channel is widely perceived as being conservative / Republican, whereas the Rich family is very liberal / Democratic. *See* Declaration of Edward Butowsky (Exhibit 11). In other words, the Plaintiff thought Mr. Wheeler would alienate himself from the Rich family if he played up his Fox News connections.

There are many other examples of the Defendants' malicious and bad-faith fault-finding. Consider the following paragraph:

> On the second and third factors (reliance and feasibility), the texts and emails sprinkled throughout their 98-page SAC portray half-truths. The communications between **Butowsky** and Wheeler – including payment of Wheeler by **Butowsky *before* the Rich family even signed a contract** for Wheeler's services – show the rest of the story about Butowksy's involvement. See Ex. A. Butowsky's counsel should have investigated these preexisting materials and faithfully portrayed them in their pleadings.

Motion for Sanctions 10-11.  The Plaintiff has never tried to conceal the fact that he paid for Mr. Wheeler's services. Absolutely never. All the way back to his original complaint, the Plaintiff plainly disclosed the fact that he paid for Wheeler's services. *See* Original Complaint 40, ¶63 (Doc. No. 1). So what exactly did Plaintiff's Counsel fail to investigate or disclose? And where exactly are the "half-truths"? They are in the Defendants' Motion for Sanctions, which is chock full of them.

The Defendants and their attorneys will have every opportunity to spin their version of the evidence at trial, and the Plaintiff will have an opportunity to respond. The Defendants will be able to cross-examine the Plaintiff, and he will be able to cross-examine them. That's how litigation works, and the Defendants and their counsel should

know that. Here, however, they ask the Court to bypass the jury, interpret all of the evidence and pleadings in a light most favorable to them, and then throw the whole case out as a "sanction."  The Defendants and their counsel should take a long, hard look in the mirror before seeking sanctions against anyone else. It took a lot of time to respond to all of the cheap shots in the Motion for Sanctions, and the Plaintiff seriously considered filing his own motion for sanctions under Rule 11 and 28 U.S.C. § 1927.  The Plaintiff decided not to file such a motion, however, because he does not want this case to degenerate any further into a game of tit-for-tat.

## Conclusion

The Motion for Sanctions is frivolous, it was filed in bad faith, and it was filed for an improper purpose. It should be denied in its entirety.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
*stevenbiss@earthlink.net*

**Attorney for Plaintiff Edward Butowsky**

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on March 10, 2020, which should result in automatic notification to all counsel of record.

**/s/ Ty Clevenger**
Ty Clevenger