# Exhibit 7

**STEVEN S. BISS**
Attorney At Law
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: 804-501-8272
Fax: 202-318-4098
EMAIL: stevenbiss@earthlink.net
ssbiss@yahoo.com
www.linkedin.com/in/steven-s-biss-6517037

Matter No.

181-003

February 16, 2020

**VIA EMAIL AND REGULAR MAIL**

Laura Lee Prather, Esquire
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701

**RE:** **Butowsky v. Folkenflik et al.**
**Case 4:18-cv-442-ALM-CMC**

Dear Laura:

This letter responds to your proposed motion for sanctions ("Motion"), which was served on me as counsel for Plaintiff, Ed Butowsky ("Plaintiff"), on January 24, 2020.

In your Motion, you represent that "three key allegations" in Plaintiff's original complaint that continue to appear in Plaintiff's second amended complaint ("SAC") violate Rule 11(b)(3)[1] of the Federal Rules of Civil Procedure (the "Rules"). Those "three key allegations", according to you, are:

1. "Butowsky was not involved in Wheeler's investigation and had little conversation with Wheeler".
   ***Compare SAC, ¶¶ 68, 74***

---

[1] Rule 11(b)(3) states that by presenting to the court a pleading, an attorney certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: "(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery".

    2.    "Butowsky had never seen, and was not a party to, Wheeler's contract with the Rich family".
**Compare SAC, ¶ 73**

    3.    "Chapwood …, Butowsky's business, lost Sally Davis as a customer because of the alleged defamation".
**Compare SAC, ¶ 11, fn. 4**

You further represent that Plaintiff's counsel "either knew the allegations were false or failed to make reasonable inquiry under the circumstances". [*Motion, p. 1*].[2]

As a preliminary matter, the entire premise of your Motion – that NPR and Folkenflik were only reporting on a "lawsuit" and that the Fox News story is "about a debunked conspiracy theory" – is flawed and inaccurate. Your arguments completely disregard the factual allegations in the SAC.[3] Plaintiff fundamentally rejects your arguments for the reasons set forth in his memorandum in opposition to Defendants' motion to dismiss, and already litigated.

Your Motion misrepresents (a) many of the allegations in Plaintiff's SAC, (b) Plaintiff's purpose in filing this case, and (c) the contents of Court Orders and other papers that you reference. For instance:

- Plaintiff did **not** hire Wheeler, and the SAC does not allege that he did. [*SAC, ¶ 72*]

- Plaintiff does **not** "view[] his involvement in the murder investigation as the central issue in this case", and the Court did not note that in its Order denying Plaintiff's motion to compel documents from the FBI. [*ECF No. 80, p. 31*]

---

    [2]    Your insinuation that my disciplinary history (2009 and 2010) somehow shows that the allegations in the SAC are "not an isolated lack of candor" is, itself, a violation of Rule 11(b)(1). You interject a decade old suspension for an improper purpose: to harass and to inflame passion and prejudice the Court. Indeed, the entire Motion is an effort to prejudice the Court with irrelevant references to rulings in unrelated lawsuits and other wholly impertinent observations.

    [3]    [*Compare, e.g., SAC, ¶ 6 ("Rather than report on a lawsuit, in his articles and tweets Folkenflik chose to attack and personally and professionally disparage Butowsky, repeatedly highlighting the fact that Butowsky was a 'wealthy Dallas investor', an 'investment advisor', 'financial talking head', 'money manager', 'Dallas investment manager', and 'Dallas investor, who lied and engaged in dishonest, deceitful, fraudulent, fake and unethical business practices."*)].

- You claim that this lawsuit is part of an effort by Plaintiff to "silence anyone who does not parrot his narrative about what he calls the 'Russian Collusion Hoax'", but this tired narrative spun by main stream media, including NPR, is without any evidentiary support at all.

  **In truth, Plaintiff seeks damages for the injury to his reputation caused by Defendants' defamation and conspiracy**.

- You claim that "Butowsky has self-identified as a public figure on his Facebook page", but, in truth, Facebook pre-determines and applies titles to business Facebook pages. That's what happened here. Plaintiff did not choose the title "public figure". Indeed, you know he does not admit that he is a "public figure" for purposes of his claim of defamation.

The allegations that are the subject of your Motion are **not** "key" allegations. We have carefully reviewed the SAC, documents produced in discovery, and the relevant exhibits attached to your Motion. We do not agree that Plaintiff made any intentional misrepresentations or that the three allegations you identify, which must be viewed in context and as part of the entire SAC, had any material impact on the Court's decision to deny Defendants' motion to dismiss.

However, in light of the evidence that has been produced in discovery and as part of a good faith effort to resolve the Motion and avoid controversy, Plaintiff agrees to make the following clarifications and corrections to the three allegations that you identify in your Motion.

   1.   *Plaintiff's Involvement In Wheeler's Investigation*

Counsel's pre-filing investigation included a thorough review of all available material information concerning Wheeler's investigation into the murder of Seth Rich.[4] Paragraphs 68-76, 79-82, 95-98 and 101-103 of the SAC include hyperlinks to numerous primary sources that we carefully considered, most particularly Wheeler's own public representations.

---

[4] *See Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 874-875 (5th Cir. 1988) ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken – when the signature is placed on the document … Rule 11 is restricted to the signing of pleadings, motions, and other papers imposing upon attorneys and litigants its affirmative duties as of the date a document was signed."). When we filed the SAC, we did not have the luxury of the "documents produced by FNN and Rod Wheeler" referenced in your Motion. Indeed, Fox News Network, LLC ("FNN") produced a mere two documents in response to our Rule 45 subpoena and you only recently produced documents that you, apparently, obtained from Wheeler in response to your subpoena.

As you know, Wheeler told *FetchYourNews* that he was engaged by the Rich family. Wheeler told Sean Hannity that:

"I was hired by the family, Joel and Mary Rich. They signed the contract. Now, the financial benefit, if there were any financial benefit and by the way there wasn't much, that was actually paid for by **a third party [Butowsky] that I have had <u>very little communication with at all</u>**, Sean".

[https://www.youtube.com/watch?v=CuRJDKEVxHY (emphasis added)]. Wheeler also made the following on-air representations to Marina Marraco of Fox 5 DC:

"MARINA MARROCO: New information from the family's private investigator suggests there is tangible evidence on Seth Rich's laptop that confirms he was communicating with Wikileaks prior to his death. Now the question is why has DC police as the lead agency on the investigation for the past 10 months insisted this was a botched robbery when until this day there is no evidence to suggest that. The Rich family hired Rod Wheeler a former MPD homicide detective to run a parallel investigation into their son's death. Wheeler says he believes there is a cover up and the police department has been told to back down from the investigation."

WHEELER: Neither the police department nor the FBI have been forthcoming. They haven't been cooperating at all. I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or at the FBI. I've been told both.[5]

MARINA MARRACO: But <u>you</u> have sources at the FBI saying that there is information …

WHEELER: For sure …

MARINA MARRACO: That could link Seth Rich to Wikileaks?

WHEELER: Absolutely, yeah, and that's confirmed. Actually, I have a source in the police department that has looked at me straight in the eye and said 'Rod we were told to stand down in this case and I can't share any information with you'. Now that is highly unusual for a murder investigation, especially from a police department. Again, I don't think it comes from the Chief's office, but I do believe there is a correlation between the Mayor's office and the DNC, and that's the information that is going to come out tomorrow."

---

[5] Actually, Wheeler had been told that Aaron Rich had the computer. [https://twitter.com/wikileaks/status/892494677823434753?lang=en].

4

(Emphasis added).  When asked by a Fox 5 DC anchor whether there would be "evidence" to prove the statements made by Wheeler, Marraco stated as follows:

> "MARINA MARRACO:   … Rod Wheeler, the investigator, assures us Fox 5 and assures Fox News that there's a full report that contains information that will show how many times Seth Rich made contact with Wikileaks and will show exactly when this communication took place."

[*SAC, ¶ 103*].  Plaintiff had absolutely nothing to do with Wheeler's decision to be interviewed by Marraco or the statements that Wheeler voluntarily made to Marraco based on Wheeler's first-hand knowledge and investigation of the murder of Seth Rich. [*Id., ¶ 102*].

The SAC contains detailed factual allegations with specific references to evidence that will be offered at trial to support Plaintiff's position concerning his involvement in Wheeler's investigation.  In these circumstances, there is no violation of Rule 11(b)(3). *Compare Marchman v. Crawford*, 2018 WL 3545321, at * 6 (W.D. La. 2018) ("In the present action, Marchman's factual allegations in her petition are so detailed that the Court concludes there would have been evidentiary support offered later in the litigation. Although the factual allegations do not bring Marchman's claims within the ambit of a First Amendment retaliation claim, the Court is not persuaded that Marchman's factual allegations lacked evidentiary support.").

We made a reasonable factual inquiry.  We did not rely exclusively on Plaintiff to support the allegations in the SAC.  We considered available evidence in Plaintiff's possession, including text messages and emails, and a whole host of other evidence. Plaintiff's allegations are not based on his "speculation". *But compare Seawright v. Charter Furniture Rental, Inc.*, 39 F.Supp.2d 795, 806-807 (N.D. Tex. 1999) ("Johnson clearly filed this lawsuit based on nothing more than her client's speculation and their presumption that there is a lot of 'talk' in a small office.").  As is demonstrated by the sheer number of subpoenas issued by the parties, it is clear that development of facts related to Plaintiff's role and involvement in Wheeler's investigation required discovery.

Contrary to your Motion, we have **never** alleged that "Butowsky was not involved in Wheeler's investigation".

Rather, we alleged that Plaintiff's role and involvement in Wheeler's investigation was "limited".  This is a true statement.  Wheeler's YouTube videos, Wheeler's independent statements to Fox (Marraco and Hannity), Wheeler's text messages and email updates to Plaintiff and Zimmerman, Wheeler's investigative reports shared with Plaintiff, and other documents provide substantial evidentiary support for Plaintiff's contention that "Butowsky's role and involvement in the investigation of Seth Rich's murder was limited." [*SAC, ¶ 68*].

5

The fact that you have developed some evidence in discovery to impeach Plaintiff's contention or to support a closing argument that Plaintiff's role and involvement in Wheeler's investigation was something other than "limited" does not change the fact that there *was*, at the time we filed the SAC, substantial evidentiary support for Plaintiff's position. *See, e.g., Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) (under the "snapshot" rule, sanctions under Rule 11 may not be imposed "merely for the eventual failure of a claim; rather, sanctions are to be applied only where, **at the time of the filing**, the position advocated is unwarranted.") (emphasis added); *see id., Bynum v. Am. Airlines, Inc.*, 166 F.App'x 730, 734 (5th Cir. 2006) ("the standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, **not that the party will prevail with respect to its contention**.") (emphasis added).

There is no better evidentiary support for the allegations in Plaintiff's complaint than the admissions of the person (Wheeler) hired by the Rich family to conduct the investigation. When we alleged that Plaintiff's role in Wheeler's investigation was "limited", it was reasonable for us to rely on Wheeler's videos, his representations to Marraco, Hannity and *FetchYourNews*, his voice recordings, and his updates to Plaintiff. *See G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1934004, at * 12-13 (S.D.N.Y. 2002) (plaintiff, who made allegations based on a single non-party witness after a reasonable investigation of that source's statements without further corroboration did not violate Rule 11).

We understand that you may not like Wheeler's admissions concerning Plaintiff's participation in the investigation. However, the existence of issues of fact concerning the nature and scope of Plaintiff's involvement in Wheeler's investigation – issues which are for the Jury to decide – completely undercuts your argument that Plaintiff's allegations violate Rule 11(b)(3).

In paragraph 74 of the SAC, Plaintiff alleges that he "did not participate in Wheeler's investigation and had very little communication with Wheeler". You state that "Butowsky knew these allegations were false" because he arranged "in-person or Zoom meetings with Wheeler and Zimmerman about the investigation, directed Wheeler to several witnesses for investigation and exchanged more than 100 pages of text messages[6] and several hundred emails about the investigation with Wheeler, Zimmerman and others." [*Motion, pp. 6-7*].

As support for your argument, you rely on a declaration you prepared for Wheeler – the same Wheeler who represented on national television that "**I have had very little communication with**" **Plaintiff**. (emphasis added).

---

[6] The majority of the text message communications occurred *after* the Fox Story ran. You grossly exaggerate the number of text messages and emails between Plaintiff and Wheeler about Wheeler's investigation prior to May 16, 2017.

6

Just as Wheeler disputed your contention, we completely disagree with your subjective characterization that Plaintiff's contacts with Wheeler about his investigation were "extensive". The text messages and emails largely consist of chit-chat, pleasantries, pictures, and investigative updates *by Wheeler*. The substantive communications about Wheeler's investigation came *from Wheeler*, and many of the updates are actually contained or referred to in the SAC. [*See, e.g., SAC, ¶¶ 77, 81-82, 86-87*]. Plaintiff simply helped facilitate some conversations between Wheeler and Zimmerman. From time to time, either Wheeler or Zimmerman would say they had a need to talk, so Plaintiff would send out a Zoom invitation. However, Plaintiff believes that a Zoom meeting only happened once. Most of the time, the Zoom conference notifications were just ignored. Plaintiff may have tried to put Wheeler in touch with potential witnesses, and, to this limited extent, he did "participate" in Wheeler's investigation, but Plaintiff was not involved in the actual investigation and did no investigating himself. [*See, e.g., SAC, ¶ 80 ("Butowsky did not arrange the interview with Fox 5 DC. Butowsky did not provide a script or prompt Wheeler in any way,"); ¶ 102 ("Butowsky had absolutely nothing to do with Wheeler's decision to be interviewed by Marraco or the statements that Wheeler voluntarily made to Marraco based on Wheeler's first-hand knowledge and investigation of the murder of Seth Rich.")*]. That was all Wheeler. Wheeler told Plaintiff that he (Wheeler) took great investigative notes and kept a journal of his work. Wheeler's investigative notes are either referred to in the SAC or were produced to you in discovery. [*See, e.g., SAC, ¶¶ 95-98; PX 121-132*]. Wheeler's investigative notes fully support our allegation that Plaintiff did not participate in Wheeler's actual investigation. Wheeler advised Plaintiff that he (Wheeler) would update Plaintiff concerning his investigation, and the text messages reflect just that: updates from the investigator.

To clarify the allegations in paragraph 74, we are willing to amend that paragraph to state that "Butowsky did not personally participate and was not directly involved in Wheeler's investigation. He left the investigating to Wheeler."

Although Wheeler represented that he had "**very little communication**" with Plaintiff about the investigation – which is born out by the text messages – we are willing to amend paragraph 74 to state that "Butowsky and Wheeler occasionally communicated about Wheeler's investigation. Wheeler regularly updated Butowsky on his findings."

We also agree to clarify and supplement paragraph 76 as follows:

> "76.   Folkenflik misrepresented Butowsky's actual involvement in Wheeler's investigation. Folkenflik made it appear as if Butowsky was at the center of the investigation, directing Wheeler, telling him what to do (and telling Fox what to report). In reality, Butowsky did not direct either Wheeler's investigation or the Fox News reporting. Butowsky shared some tips that he received and asked for updates, but he never interviewed witnesses, prepared a single draft of any report or story, etc. Butowsky was not the puppet master that Folkenflik accused him of being."

7

We had and have substantial evidentiary support and more than a reasonable good faith basis for our allegations concerning Plaintiff's involvement in Wheeler's independent investigation for the Rich family. We do not believe that Wheeler's constant updates regarding his investigation and his conversations with the Rich family and others means that Plaintiff "participated" in Wheeler's investigation. Even if the SAC contained an erroneous statement of fact, however – and it does not – such error can give rise to the imposition of sanctions only when the "particular allegation is **utterly lacking in support**." *Kiobel v. Millson*, 592 F.3d 78, 81 (2nd Cir. 2010) (emphasis added); *id. In re BankAtlantic Bancorp, Inc. Securities Litigation*, 851 F.Supp.2d 1299, 1317 (S.D. Fla. 2011) ("Under Rule 11, a claim is factually frivolous only when it is supported by **no evidence or only by 'patently frivolous' evidence**.") (emphasis added).

Here, it is certainly not the case that Plaintiff's allegations are "utterly lacking in support". Wheeler representations to Hannity alone supply evidentiary support for our allegations.

It appears to me that you are attempting to try your case prior to the parties engaging in any depositions and prior to a single document being received in evidence. This is improper, especially in the guise of a motion for sanctions.

    2.    <u>*When Plaintiff First Saw Wheeler's Contract With The Rich's*</u>

In paragraph 73 of the SAC, Plaintiff alleges that "Butowsky was not a party to the contract between Wheeler and the Rich family. He has never seen the contract."

After interviewing 5 to 6 other private detectives, Plaintiff introduced Wheeler to Joel Rich ("Joel"). Joel was excited to talk to Wheeler since he had seen the reporting Wheeler had done on the case. Sadly, many people have a predisposition about Fox News, so Plaintiff told Wheeler that in order to get hired by the Riches he might want to minimize the "Fox News" angle, since the Rich family were huge supporters of the left and Bernie Sanders and had told Plaintiff how much they couldn't stand President Trump.

Wheeler spoke with Joel, Mary and Aaron Rich for approximately two weeks and finally came to an agreement. Plaintiff was not involved in the interview process between Wheeler and the Riches or the negotiations over the terms of a contract. Plaintiff never saw the contract until around May 16-17, 2017, when he found it in his spam. At the time the Fox News story was published, Plaintiff received a phone call from a reporter at MSNBC claiming that Plaintiff was the person agreeing to pay Wheeler's bill. Plaintiff had no idea where this reporter got that information. The reporter stated that it was on the contract. Plaintiff then looked for the contract in his emails and found it in spam. This was the first time he saw it.

Plaintiff acknowledges that part of the paragraph 73 should be corrected, as it should have included the qualifier that Plaintiff never saw the contract *before its execution* by the Riches and Wheeler.

8

Importantly, whether and when Butowsky first saw the contract between Wheeler and the Riches is largely immaterial and inconsequential.

We agree to amend paragraph 73 of the SAC to state as follows: "Butowsky was not a party to the contract between Wheeler and the Rich family.  He was not involved in any discussions between Wheeler and the Riches over the terms of a contract.  He only agreed to pay for Wheeler's services.  Butowsky first saw the contract between Wheeler and the Riches in May 2017 months after it was signed."

    3.    *Sally Davis*

Footnote 4 on page 11 of the SAC reads as follows:

"The loss and damage caused to Butowsky by Folkenflik's defamation is evidenced by the following email from one of Butowsky's clients:

> On 8/3/17, 5:29 PM, "Sally Davis" <sallyhi-d@comcast.net> wrote:
>
> Hello Ed and Kim,
>
> I'm really sad to write this email.
>
> I have to let you know I asked Schwab to remove Chapwood Investments as the advisor on my Schwab Account.  I will follow up with a phone call tomorrow, August 4.
>
> I made this decision after reading news articles about Ed's involvement with a false news story. For me, this is not a question of politics. It's a question of ethics.
>
> I very much appreciate all your help and guidance through the past twenty-five years or so. I'm heartbroken to end our relationship.

Sally Davis had been a client of Plaintiff's for fourteen (14) years.  At the moment the NPR article came out, Ms. Davis ceased talking to Plaintiff and to this day will not speak to him because, as her email demonstrates, she believes the story manufactured by Folkenflik.

Although Ms. Davis decided to keep her business at Chapwood, many others left, many decided not to do business with Plaintiff and Chapwood because of NPR's publications, and many would not even respond to calls.  Plaintiff suffered special damages.  He lost clients and many relationships.

Plaintiff is again in the hospital.  Once he is well, he will complete the list itemizing his pecuniary losses.  Don't worry.  It is coming and you will have it well before the time we eventually schedule depositions.

We agree to amend footnote 4 to read as follows:

"The loss and damage caused to Butowsky's reputation by Folkenflik's defamation is evidenced by the following email received from one of Butowsky's high net worth clients:

> On 8/3/17, 5:29 PM, "Sally Davis" <sallyhi-d@comcast.net> wrote:
>
> Hello Ed and Kim,
>
> I'm really sad to write this email.
>
> I have to let you know I asked Schwab to remove Chapwood Investments as the advisor on my Schwab Account. I will follow up with a phone call tomorrow, August 4.
>
> I made this decision after reading news articles about Ed's involvement with a false news story. For me, this is not a question of politics. It's a question of ethics.
>
> I very much appreciate all your help and guidance through the past twenty-five years or so. I'm heartbroken to end our relationship.

Fortunately, Chapwood was able to persuade the client to stay on as a customer with a different financial advisor. Nonetheless, Chapwood lost millions of dollars in investments from this customer and Plaintiff lost income as a direct result. Further, Plaintiff's reputation as a registered investment advisor has been destroyed. He is unable to develop new business. He has lost the ability to get referrals from Major League Baseball, NBA, etc. He can't even tell people his last name without hesitating, since he knows they will Google him and see all the fake stories."

## **Your Violations Of Rule 11(b)(1)**

Your motion for sanctions is deeply troubling to me because of the unprofessional attacks on counsel, patently false statements, and your direct violations of Rule 11(b)(1). In section VI of your motion, you allege matters that are completely irrelevant, immaterial, scandalous, egregious and impertinent. You bring up disciplinary and other matters for the sole purpose of poisoning the well of the Court and harassing Plaintiff's counsel.

I have never had this happen before. It is dirty, despicable, undignified, and you should be ashamed as a practitioner. I greatly respect you. You are a leader of the Bar. You of all people should know better.

**If you proceed with your motion, and include these scandalous and impertinent matters in this pleading, we will file a Cross-Motion For Sanctions And Attorney's Fees Under Rule 11 and 28 U.S.C. § 1927.**

**I will also be forced to refer this immediately to the Texas State Bar for investigation.**

      I expected more from you than gutter litigation.  I understand that there is a lot at stake in any case, but that is no excuse to resort to dirty tricks.  Life is far too short for this nonsense.

      In conclusion, as noted above, Plaintiff agrees to clarify and correct certain allegations in the SAC.  I propose to do this on Monday, February 17, 2020 via a motion to amend pursuant to Rule 15(a)(2).  Please let me know if you will oppose our motion for leave to file a third amended complaint.

      Call or email me if you have any questions.

Yours very truly,

*/s/ Steven S. Biss*

Steven S. Biss

cc.    Ed Butowsky
       Ty Odell Clevenger, Esq.