# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| ED BUTOWSKY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:18-cv-00442-ALM |
| | § | |
| DAVID FOLKENFLIK; NPR, INC.; | § | |
| EDITH CHAPIN; LESLIE COOK; and | § | |
| PALLAVI GOGOI, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## [REDACTED] DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiff's Motion to Amend is not a matter of fixing a "mistake;" rather, it tries to camouflage his misrepresentations and his counsel's failure to properly investigate them. Neither constitute "good cause" for amending a pleading outside the twice-amended Scheduling Order.

Plaintiff fails at the outset to show the necessary good cause to amend the Scheduling Order.[1] Further, he ignores NPR's authority, including this Court's opinion that courts can "*infer bad faith* in seeking amendment where the party seeking leave to amend *knew of the facts underlying the claim at the time the party filed the original pleading* yet delayed in amending." *Priester v. Deutsche Bank Nat'l Trust Co.*, No. 4:16-CV-449, 2017 WL 2821715, *7 (E.D. Tex. Jun. 30, 2017) (Mazzant, J.) (emphasis added). Unable to deny that he knew the underlying facts when he filed his original Complaint, Butowsky instead argues that "Plaintiff did not learn about the Defendants' purported concerns until January of this year[.]" Reply [Dkt. 114] at 3. When he learned of NPR's concerns, of course, is not the issue, but rather whether he knew, and his counsel properly investigated, the underlying facts before Plaintiff filed the original pleading.

Plaintiff's conduct is not in good faith. He twice previously amended his Complaint, continuing to make allegations that he knew to be untrue when he filed his lawsuit. Now, Plaintiff's proposed "fixes" continue to misrepresent essential facts. Documents NPR recently obtained from the *Aaron Rich* case—over Plaintiff's attempts to block NPR's access to them[2]—further show why the Court should deny leave to amend.

---

[1] Courts in this district routinely deny amendment for failure to show good cause after the amendment deadline. *See, e.g., Gresham v. Wells Fargo Bank*, N.A., 4:13-CV-711, 2015 WL 1966721, at *2 (E.D. Tex. Apr. 29, 2015), *aff'd*, 642 Fed. App'x 355 (5th Cir. 2016); Order, *Gilbert v. Outback Steakhouse of Florida, Inc.*, No. 5:06-cv-00007-DE (E.D. Tex. Dec. 13, 2006) (Craven, M.J.).

[2] Last week NPR received approximately 1,400 pages of Butowsky's documents in response to NPR's subpoena to Aaron Rich. But NPR still does not have the remaining 30,000 pages found by a forensic examination in the *Aaron Rich* case because Plaintiff has now marked them all "Attorneys Eyes Only." Yet, Plaintiff still disingenuously claims to "have already produced everything" in this case.

## II. ARGUMENT

Plaintiff asserts, without citing any authority, that there is "good cause *per se*" to amend because he is attempting to correct a pleading. Reply at 3. The applicable standard is exactly the opposite. Under well-established authority of this Court and the Fifth Circuit, leave to amend should be denied when the party seeking to amend was aware of the allegations sought to be added before filing his original complaint. *See Priester*, 2017 WL 2821715 at *7; *In re Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996). Recently-obtained discovery provides additional evidence that he knew when he filed his Complaint that his allegations were false.

### A.     Plaintiff's Involvement in Investigation and with the Contract

Plaintiff tries to create an artificial distinction between Wheeler's investigation and the retracted Fox News article. However, both were an integral part of Butowsky's larger goal to prove (and publicize) that Seth Rich hacked the DNC emails. In fact, rather than pursuing discovery relating to his claims, he inappropriately continues to seek evidence for this debunked theory through discovery in this and other lawsuits.[3] His third attempt to amend must be denied.

#### 1.     Butowsky *hired and paid* Wheeler *before* the Riches signed a contract.

Each of Butowsky's Complaints have unequivocally said: "He has never seen the contract" with the Rich family. Now, he admits he lied. In his February 16, 2020 letter, he states he did not see the contract "*until around May 16-17, 2017*, when he found it in his spam." [Dkt. 105, Ex. 5]. He filed his original Complaint on June 21, 2018 – more than a year after he allegedly "found" the document. Still, he kept this lie in the record almost two years.

---

[3] *See, e.g.* Plaintiff's counsel's June 11, 2018 blog, encouraging the *Washington Times* lawyer "to stand firm *at least until we get to the evidence... if* Seth Rich was sending DNC records to Wikileaks." Ex. A-1. *See also* Clevenger's email to Kirk Wiebe, Bill Binney and Butowsky indicating his interest in sending subpoenas to the FBI (and others) "regarding illegal surveillance of Trump," so long as he can "show a connection to Ed's case." Ex. A-2.

His proposed amendment cannot cure this Rule 11 violation.  It merely adds a different lie in an attempt to minimize his involvement. He proposes changing paragraph 73 to state:

> Butowsky was not a party to the contract between Wheeler and the Rich family. He was not involved in any discussions between Wheeler and the Riches over the terms of a contract. He only agreed to pay for Wheeler's services. Butowsky first saw the contract between Wheeler and the Riches in May 2017 months after it was signed.

Documents *from Butowsky's own files* show: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Exs. A-5-10.  Given these facts, this proposed amendment is itself a lie.

### 2. Butowsky's involvement in the Seth Rich controversy included Wheeler's investigation and the retracted Fox News article and continues today.

Forced to admit in his Opposition to the Rule 11 Motion that he was "assisting Ms. Zimmerman on the story," Butowsky now tries to distinguish the Wheeler investigation from the Fox News article. [Dkt. 110 at 10-11.] But this red herring ignores documents showing how interwoven the two were.  In March, 2017, Plaintiff commanded a four-way zoom meeting with Zimmerman, Wheeler, and Adam Housley (Zimmerman's producer) stating: **"We are on the 1 yard line and we need to take it over the goal line and in order to do that we all need to be on a video conference as a starting point."** (Ex. A-11).  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[4] Butowsky's own documents ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Compare* Ex. A-3 *to* Ex. A-4.

**DEFENDANTS' SUR-REPLY**  **PAGE 3**

Documents disprove his claims to have not "directed" either the Wheeler investigation or the Fox News reporting. For instance, █████████████████████████████ (Ex. A-14) and ████████████████████████████████ (Exs. A-15-16).[5] ████████████████████████████████████████████████████████████████████ (Exs. A-19-22). ████████████████████████████████ ████████████████████████████████ (Ex. A-23; *see also* NPR's Rule 11 [Dkt. 96] Exs. A-17-22); ████████████████████████████ (Ex. A-24); and promoting the story to Fox News executives, producers and on-air talent claiming to "***actually [be] the one who's been putting this together.***" (Ex. A-25)[6] ████████████



Even after the Fox News article was retracted, Butowsky continued to try to control the narrative, ████████████████████████████ (Ex. A-29) and disseminating an unauthorized response from Wheeler to the Rich family's complaint about the article (Ex. A-30).

While trying to conceal his involvement,[8] Butowsky continues to try to prove his theory that Seth Rich was the source of the DNC email leak.[9] Once again, Plaintiff's proposed amendment that he "never interviewed witnesses, prepared a single draft of any report or story," is belied by

---

[5] ████████████████████████████████████████████ Exs. A-17-18).
[6] ████████████████████████████████████████████████████████ (Ex. A-26).
[7] Butowsky has sworn that on April 28, 2017 he talked with "a friend who at that time worked in a high level intelligence position for the executive branch" who told him that he "personally viewed records that were downloaded from Seth Rich's electronic devices by the FBI." (Ex. A-28).
[8] *See, e.g.,* Exs. A-31-34. ████████████████████████████████████████████
████████████████████████████████
[9] *See, e.g.,* Ex. A-35 ████████████████████████████████████████

his own documents.

### 3. Sally Davis is still a Chapwood client, and Butowsky knew that when he filed each of his Complaints.

Like the Wheeler contract, Butowsky *knew before* filing his lawsuit that Sally Davis was still a Chapwood[10] client but still relied on her misleading email as his sole source of special damages. Plaintiff cannot erase his intentional misrepresentations through a late amendment, and in any event the amendment should be denied as in bad faith. Indeed, the proposed amendment compounds his misrepresentation. After admitting that Chapwood did not lose Davis as a client, he proposes amending his complaint to state: "Nonetheless, Chapwood lost millions of dollars in investments from this customer and Plaintiff lost income as a direct result." This too is a falsehood. In response, Davis has now confirmed that "[n]o money was removed from [her investment] account" because of NPR's reporting, and that she has "directed no change at all in the amount of [her] investments or deposits with Chapwood." Ex. B, Davis Decl. at ¶¶ 2, 4.

The Davis footnote is the *only* allegation of special damages. Without it, Plaintiff has not pled a defamation *per quod* or business disparagement claim. Unless Plaintiff's proposal to strike the footnote also includes dismissal of those claims, this proposed amendment must be denied as futile. Regardless, Plaintiff should not be allowed to make further misrepresentations.

### III. CONCLUSION

Based upon his own documents and admissions, Plaintiff's Motion for Leave should be denied.

---

[10] *See* NPR's Rule 11 [Dkt. 96], Ex. B (Davis Decl.).

Respectfully submitted,

**HAYNES AND BOONE, LLP**

By:*/s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Telecopier: (512) 867-8470

David H. Harper
State Bar No. 09025540
david.harper@haynesboone.com
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

David J. Bodney
*admitted pro hac vice*
bodneyd@ballardspahr.com
Ian O. Bucon
*admitted pro hac vice*
buconi@ballardspahr.com
BALLARD SPAHR LLP
1 E. Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400
Fax: 602.798.5595

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 23, 2020, a true and correct copy of the foregoing document was forwarded via e-email to the following counsel of record:

| | |
|---|---|
| Ty Odell Clevenger | Steven S. Biss |
| P.O. Box 20753 | 300 West Main Street, Suite 102 |
| Brooklyn, NY 11202-0753 | Charlottesville, VA 22903 |
| 979-985-5289 (phone) | 804-501-8272 (phone) |
| 979-530-9523 (fax) | 202-318-4098 (fax) |
| tyclevenger@yahoo.com | stevenbiss@earthlink.net |

*/s/ Laura Lee Prather*
Laura Lee Prather

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), Defendants certify that a motion to seal the document has been filed separately and immediately prior to this Sur-Reply.

*/s/ Laura Lee Prather*
Laura Lee Prather