# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| ED BUTOWSKY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. |
| DAVID FOLKENFLIK, ET AL., | § § § § § | 4:18-CV-00442-ALM |
| Defendants. | § § | |

## [REDACTED] REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 FOR VIOLATIONS COMMITTED BY PLAINTIFF AND HIS COUNSEL

**I.     INTRODUCTION**

For nearly two years, Plaintiff's pleadings have included falsehoods that are *central to his lawsuit* that Plaintiff knew were false *before* he filed the original Complaint. Nevertheless, Plaintiff and his counsel sat idly by as this Court relied on those falsehoods in ruling on Defendants' Motion to Dismiss. (Dkt. 58, 65). In fact, they made no attempt to advise the Court of their false allegations until *after* they failed to remedy them during Rule 11's 21-day cure period and *after* Defendants filed their Rule 11 Motion. (Dkt. 96) ("Rule 11 Motion"). Nothing contained in Plaintiff's Response (Dkt. 110) (the "Response") refutes either the severity of Plaintiff's and his lawyers' Rule 11 violations or the need for sanctions to remedy their abuses.

Plaintiff's false allegations first appeared in his initial Complaint in June 2018, a second time in March 2019 (when Plaintiff filed his proposed First Amended Complaint), and a third time in September 2019, 15 months after Butowsky commenced this action (when he filed his Second Amended Complaint) (Dkt. 72) ("SAC"). When Defendants filed the Rule 11 Motion, they did not do so lightly, but as the evidence required. Only then did Plaintiff try to address some of these falsehoods by moving to file a *fourth* pleading that perpetuates Plaintiff's false statements in his serial pleadings over the past two years and adds new false statements.

In the Rule 11 Motion, Defendants identified three key falsehoods in *all* of Plaintiff's pleadings: (1) Butowsky's supposedly limited involvement in the Wheeler investigation; (2) Butowsky's supposedly never seeing or being involved in Wheeler's contract with the Rich family; and (3) the alleged loss of Sally Davis as a client of Butowsky's investment company. Defendants' Rule 11 Motion demonstrated that all three of these essential allegations were false. Although Plaintiff has not produced *his* copies of the relevant documents, third-party discovery has recently yielded more evidence that further disproves these allegations in his SAC and shows that Butowsky knew his statements to the Court were false.

Plaintiff's Response fails to rebut these three key misrepresentations. Instead, Plaintiff misstates the record, mischaracterizes his knowing falsehoods as "disputed facts," and brazenly accuses *Defendants* of bad faith for bringing his misdeeds to light. In fact, Plaintiff's Response contains admissions that further prove his SAC is premised on knowing falsehoods. Plaintiff now concedes, though he has tried to conceal it before, that he: (1) was *directly* involved in Wheeler's investigation (e.g., by relaying tips to Wheeler); (2) played an integral role in the creation of Zimmerman's Fox News article; (3) facilitated and, in fact, saw the contract between the Rich family and Wheeler; and (4) lied about losing Sally Davis as a client (thus failing to plead the required special damages). The recently obtained documents also show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff even concedes he brought this suit for improper motives: to prove a debunked conspiracy theory. Resp. at 18.

Plaintiff's attempt to invoke Rule 11(c)(2)'s safe harbor provision to avoid sanctions is unavailing. His proposed Third Amended Complaint (Dkt. 99) ("TAC") fails to correct the falsehoods that have suffused his pleadings since he filed his action two years ago, and his attempt to amend is untimely under Rule 11(c)(2). In sum, Plaintiff and his lawyers' Rule 11 violations are serious, and they should result in meaningful sanctions – including dismissal of this action with prejudice.

II. **PLAINTIFF'S RESPONSE FAILS TO REBUT THAT HE KNOWINGLY MADE FALSE STATEMENTS TO THE COURT AND MAKES ADDITIONAL ADMISSIONS THAT REINFORCE THE PROPRIETY OF RULE 11 RELIEF.**

Defendants' Rule 11 Motion identified three falsehoods that Plaintiff has perpetuated for nearly two years, over three pleadings, each of which is crucial to Plaintiff's claims:

(1) Butowsky's role in Wheeler's investigation was "limited," that he was not "feeding tips" to Wheeler, and that he had "very little communication" with Wheeler;

(2) Butowsky had never seen, and was not involved with, Wheeler's contract with the Rich family; and

(3) Chapwood Capital Investment Management, LLC ("Chapwood"), Butowsky's business, lost Sally Davis as a customer because of the alleged defamation.

Rule 11 Motion at 1-2. That Motion showed, through undisputed evidence, that each of these allegations was false. *See* Rule 11 Motion at 6–9. Plaintiff's Response, far from rebutting Defendants' Rule 11 Motion, makes key admissions that support imposing sanctions.

### A. Plaintiff Admits He Played a Vital Role in the Seth Rich Investigation.

Plaintiff's SAC alleges that NPR's reporting that "Butowsky helped to orchestrate the Fox News story" and "fed tips to Wheeler and Zimmerman" was false and defamatory. SAC at 7. Yet, Plaintiff's Response admits these very facts. *See* Resp. at 11–12 ("Clearly, the Plaintiff was assisting Ms. Zimmerman on the story, and clearly he shared tips and facilitated the exchange of information between Ms. Zimmerman *and Mr. Wheeler*.") (emphasis added); *id*. at 7 (Plaintiff concedes that he "indeed relayed tips to Mr. Wheeler."). Plaintiff even admits in his proposed TAC that "Wheeler regularly updated Butowsky on his findings." TAC ¶ 74. Such admissions, which contradict allegations that have remained central to Plaintiff's pleadings for almost two years, provide further evidence that Plaintiff and his counsel violated Rule 11.

In a failed effort to defend his characterization of his involvement as limited, Plaintiff makes essentially three contentions. *First,* he claims that "Wheeler is a hostile witness," but nonetheless relies on an alleged comment by Wheeler that he "had very little communication" with the Plaintiff. Resp. at 10–11. But Defendants' Rule 11 Motion does not rest on Wheeler's characterizations or mischaracterizations, but on *Butowsky's own admissions* (Rule 11 Motion at 6-8), which now include that "Wheeler regularly updated Butowsky on his findings." TAC ¶ 74.

*Second*, while not disputing Plaintiff and Wheeler exchanged "hundreds of pages of texts" and that at least some of them "discuss the investigation," Butowsky claims that those that "discuss

the investigation do not show the Plaintiff directing or managing the investigation." Resp. at 11. That is false. Documents Wheeler and Butowsky produced in *Aaron Rich v. Butowsky*, No. 1:18-cv-000681 (D.D.C. 2018) (the "Aaron Rich Case"), recently obtained by Defendants through a subpoena to Aaron Rich, show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For example:

➢ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. A-1.

➢ Text messages Butowsky sent in late April and early May 2017 to Wheeler and Kash Patel, then a staff member on the House Intelligence Committee, directed Wheeler and Patel to meet. *See* Ex. ▮▮ A-3.

➢ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exs. A-4 to A-8.

Further, an email message from Wheeler to Butowsky dated May 20, 2017, shows that *Butowsky issued a response to Zimmerman's article in Wheeler's name* that Wheeler did not draft and was not aware of. *See* Ex. A-9; Ex. A-10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is hard to imagine clearer evidence that Butowsky directed and managed Wheeler's investigation than the issuance of a public statement about the investigation on Wheeler's behalf. And, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. A-11. Such documents, unavailable to Defendants when they filed their Rule 11 Motion, further show that Butowsky played a key role in Wheeler's investigation and the Zimmerman article.

*Third*, forced to admit that he was "assisting Ms. Zimmerman on the story," Butowsky now tries to decouple the Wheeler investigation from the Fox News article, claiming he was involved only in the Zimmerman investigation. Resp. at 10-11. Butowsky's own SAC, which cites Zimmerman and her story *114 times*, dooms his effort to divide the Seth Rich investigation into two wholly separate endeavors. For example, in asserting a libel claim, Butowsky alleges:

> In his reporting, Folkenflik deliberately misrepresented and concealed known facts, including the fact (a) that Fox reporter, Malia Zimmerman ("Zimmerman") had shared drafts of her article with Rod Wheeler ("Wheeler") on May 15, 2017, and (b) Wheeler had approved the exact quotations that appeared in Zimmerman's article.

SAC ¶ 24. He similarly alleges that Wheeler texted Butowsky and Zimmerman, communicating the progress of Wheeler's investigation and his purported theories regarding Seth Rich's murder, the Democratic National Committee and Aaron Rich. *Id.* at ¶ 38 n.9.[1]

Plaintiff's admissions and this recently discovered evidence show that he was "the man behind the scenes," although his libel allegations in the SAC hinge on the opposite premise. *E.g.*, SAC at 5. In light of evidence demonstrating his substantial involvement in both the Wheeler and Zimmerman aspects of the Seth Rich investigation, Plaintiff now attempts to reframe his lawsuit entirely, asserting this case is "about whether Seth Rich leaked DNC emails to Wikileaks, as the Plaintiff claims, or whether he did not, as the defendants claim." Resp. at 18. As such, Plaintiff concedes his case is about proving a political conspiracy theory, not about remedying an alleged reputational injury. This is an improper motive for litigation that suggests an incentive for Plaintiff to lie and his counsel not to investigate his claims. The Court should sanction him and his counsel and dismiss, especially since Plaintiff admits his case is *not* about any *false* statement about *him*.

### B. Plaintiff Admits He Facilitated Wheeler's Contract with the Rich Family.

After being confronted with evidence that he had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the time he filed the original Complaint, and that his SAC allegation that he had "never seen the contract" was thus false, Plaintiff now claims he was simply "mistaken". Resp. at 12. In other words, Plaintiff perpetuated a blatantly false allegation in his pleadings for

---

[1] Further, recently obtained documents show how the Wheeler investigation and Zimmerman story were part of an integrated, overarching effort by Butowsky to show that Seth Rich was the source of the DNC email leaks. *See* Defs.' Surreply in Opposition to Pl.'s Mot. to Amend (Dkt. 118) at 3-4, Exs. A-10–A-30.

nearly two years but failed to admit it until Defendants received proof of its falsity and called him on it. *See* SAC ¶ 73; First Am. Compl. (Dkt. 54) ¶ 73; Compl. (Dkt. 1) ¶ 62. The issue is not a technical one: rather, it reflects Plaintiff's admission of a Rule 11 violation.

Far from being a "cynical 'gotcha' stunt," Response at 13, Defendants' evidence shows that Butowsky was fundamentally involved in the formation of Wheeler's contract with the Rich family and that his proposed amendment is likewise false. Forced by Defendants' evidence to admit that he sent "'the basic agreement for Rod [Wheeler]'" to the Riches, Response at 13, Plaintiff *still* asserts that "[h]e was not involved in any discussions between Wheeler and the Riches over the terms of a contract" (TAC ¶ 73) because "[t]wo different contracts are under consideration." Resp. at 13; ███████████████ Butowsky's statement that he was "not involved" in such discussions is false whether there was one contract or two: his Response admits he sent what he now characterizes as "Wheeler's standard contract" to Joel Rich, which constitutes *direct* communication regarding contract terms.² In addition to his admission that he knew the executed contract was in his possession at the time he filed his initial Complaint, *see* Response at 12, Ex. 11 (Dkt. 110-11), these facts show that Butowsky lied and his counsel failed to conduct a reasonable investigation of the Complaint's allegations before its filing.

Finally, additional evidence shows that Plaintiff's role in Wheeler's contract with the Riches goes much deeper than his false SAC allegations indicate. Through recent third-party discovery produced in the Aaron Rich Case, Defendants have uncovered ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ *See* Ex. A-12.

---

² Further, Butowsky's insinuation that the contract ultimately signed was a completely different contract is likewise false. Documents Plaintiff produced in the Aaron Rich Case show ██ ██████████████████████████████████████████████████████ *Compare* Ex. A-14 *with* Ex. A-17.

Notably, too, ███████████████████████████████████████████

███████████████████████████████████ *See* Ex. A-13. Defendants have further learned that Butowsky appears to have changed the date shown on the contract between Wheeler and the Rich family, which suggests Plaintiff's apparent attempt to conceal the fact that he had hired Wheeler before the Riches even met Wheeler.[3]

### C. Plaintiff Concedes He Lied About Suffering Special Damages by Acknowledging that Sally Davis Is Still a Chapwood Client.

Near the two-year anniversary of this lawsuit, Plaintiff concedes that he falsely represented that his investment advisory firm, Chapwood, lost a specific client, Sally Davis, as a result of NPR's reporting. *See* SAC ¶ 11 n.4; Am. Compl. (Dkt. 54) ¶ 11 n.4; Compl. (Dkt. 1) ¶ 11 n.4. Ms. Davis is the only supposed "lost" customer that he has identified since commencing this action in 2018. He now admits that Sally Davis is *still* a Chapwood client, but he does so only after Defendants proved that this allegation, in all three of his successive pleadings, including the SAC, was false. This is yet another admission of a Rule 11 violation by Plaintiff.

Plaintiff offers two meritless excuses for this lie. *First*, he says that there is:

> nothing ambiguous about the Plaintiff's claim that "Chapwood lost millions of dollars in investments from this customer and Plaintiff lost income as a direct result." It is a plain and clear statement of damages, the Plaintiff has now attested to it under oath[.]

Resp. at 16. Yet this statement is false. In response to that statement, Ms. Davis attested in the attached declaration that "[n]o money was removed from [her investment] account" as a result of NPR's reporting, and that she has "directed no change at all in the amount of [her] investments or deposits with Chapwood." Decl. of Sally Davis, at ¶¶ 2, 4, attached as Ex. B. Plaintiff's assertion

---

[3] *See* Ex. A-14 (Wheeler/Rich contract showing March 14, 2017 date); Ex. A-15 ███████████████████
█████████████████████████████████████████████████████████████████████████ Ex. A-16 (email from Butowsky to Wheeler dated May 16, 2017 suggesting to Wheeler, "You might print off and sign your name then take a picture of it and send it to wherever it needs to be. I think that would be a very smart idea.").

that "Chapwood has lost millions of dollars in investments from [Sally Davis]," Response at 16, is yet another example of his perpetuation of this falsehood to evade sanctions. Such conduct has needlessly prolonged, and increased the costs of defending against, an action that relies on misrepresentations. The Court should put a stop to such misconduct.

*Second*, Plaintiff also suggests that the Sally Davis email cited in footnote 4 of the SAC "clearly illustrates the *kind* of damage that the Defendants inflicted on Mr. Butowsky's *reputation*." Resp. at 16 (first emphasis added). In so characterizing his revised representation about Ms. Davis, Plaintiff concedes that he has failed to plead special damages, which in turn requires dismissal of his defamation per quod and business disparagement claims.[4] The absence of evidence of *any* special damages, though long promised but never delivered, further supports the conclusion that this lawsuit was brought for the improper purpose of proving a debunked conspiracy theory, not remedying alleged damages to Plaintiff.

### D. The Three False Allegations in Plaintiff's Pleadings Are Central to His Claims.

As the Rule 11 Motion notes, the Magistrate Judge explicitly premised the Report and Recommendation ("R&R") on the allegations that are at issue in this Motion. Rule 11 Motion at 2 & n.1.[5] The Court agreed with the R&R by relying on these same untrue allegations.[6] Among other things, as noted above, the Sally Davis allegation is Plaintiff's *only* substantive allegation about special damages, and special damages are *essential* to Plaintiff's business disparagement

---

[4] *See, e.g.*, *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (enumerating special damages as an element of a business disparagement claim); *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 n.7 (Tex. 2014) (noting defamation per quod requires proof of "actual monetary damages").

[5] R&R (Dkt. 58) at 7, 81 ("Plaintiff's role and involvement in the investigation of Seth Rich was limited, and he had 'very little communication with Wheeler.'"); *id.* at 2, 34 n.13 (relying on Plaintiff's damages allegations to find he stated a claim for business disparagement and defamation per quod, which both require pleading special damages).

[6] Order (Dkt. 65) at 35 ("Plaintiff's involvement in the Seth Rich investigation and Plaintiff's communications with Wheeler were both limited."); *id.* at 36 (accepting R&R's analysis of Plaintiff's defamation and business disparagement claims).

and defamation per quod claims. To root out Plaintiff's false statements, Defendants had to get the *facts* from *Ms. Davis herself*, with no cooperation from or persuasive rebuttal by this Plaintiff. Dismissal is therefore appropriate.[7]

### III. PLAINTIFF FAILED TO COMPLY WITH THE SAFE HARBOR PROVISION.

Plaintiff is not entitled to the benefit of the safe harbor provision for at least three reasons. *First,* as established above, his proposed TAC amendments fail to cure the persistent falsehoods that infect his pleadings, and thus do not fall within the ambit of the safe harbor. *See* Defs.' Resp. to Pl.'s Mot. to Amend (Dkt. 105) at 7-11. *See, e.g.*, *Marceaux v. Lafayette City-Parish Consol. Gov't*, 614 Fed. Appx. 705, 709 (5th Cir. 2015) (affirming sanctions when plaintiff "reasserted the same impertinent, immaterial, and scandalous allegations" in amended complaint and filed "complaints replete with obviously deficient claims").

*Second,* the proposed TAC was made in bad faith. A motion to amend should *not* be granted here to add facts that Plaintiff was aware of before filing the original Complaint. *See, e.g.*, *In re Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996); *Priester v. Deutsche Bank Nat'l Trust Co.*, No. 4:16-CV-449, 2017 WL 2821715 at *7 (E.D. Tex. Jun. 30, 2017) (Mazzant, J.) (inferring bad faith when amending party knew facts at time of filing but delayed amending).

*Third,* Plaintiff's proposed TAC was untimely. *See* Defs.' Resp. to Pl.'s Mot. to Amend (Dkt. 105) at 11-13. Defendants served Plaintiff with their Rule 11 Motion on January 24, 2020. Defendants filed their Rule 11 Motion on February 18, 2020, after Rule 11's 21-day safe harbor period had expired. Plaintiff did not move to file his TAC until *after* Defendants filed their Rule 11 Motion, and the amended pleading he offered was insufficient to withdraw or correct his

---

[7] *See, e.g., Miller v. Bridgeport Bd. of Educ.*, No. 3:12-cv-1287, 2014 WL 3738057 at *10 (D. Conn. July 30, 2014) (dismissing case because it was the "most appropriate sanction" to deprive plaintiff "of the benefit that she wrongfully sought to achieve with her sweepingly false allegations" in amended complaint); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656–57 (7th Cir.2003) (same); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir.1992) (same).

challenged pleading. *See, e.g.*, *Grynberg v. Ivanhoe Energy, In*c., 663 F. Supp.2d 1022, 1026 (D. Colo. 2009) (holding that filing amended complaint outside of safe harbor period "did not cure the Rule 11 violations" in the original complaint).

In light of the SAC's uncured misrepresentations, Plaintiff proposes striking the paragraphs infected with falsity. *See* Resp. at 18. Plaintiff's false allegations are not mere appendages to be amputated – they go to the heart of his claims. As such, they require dismissal of this lawsuit, which was filed for an improper purpose, based on knowing falsehoods.

### IV. PLAINTIFF'S RESPONSE MISCHARACTERIZES THE RECORD.

Plaintiff accuses Defendants of bad faith and lack of civility. But Defendants have offered professional courtesies generously and complied strictly with the procedures for third-party subpoenas duces tecum under Rule 45.[8] Moreover, prior professional discipline demonstrates that Plaintiff's counsel's misconduct is not an isolated event, but rather is characteristic of repeated conduct and relevant to the imposition of sanctions here.[9] The Response's additional misrepresentations to the Court corroborate this pattern.

### V. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Rule 11 Motion, strike Plaintiff's pleadings, dismiss Plaintiff's case with prejudice, and order Plaintiff and his two lawyers to pay the reasonable attorneys' fees Defendants incurred in bringing a Rule 11 Motion.

---

[8] Contrary to Plaintiff's false statement in the Response, Laura Prather replied to Mr. Biss's email on February 17, 2020 in less than three hours after receipt. Ms. Prather further attempted to engage Plaintiff's counsel in a conference call on February 13 and placed a call to Plaintiff's counsel on February 14, all to no avail. Ex. A ¶ 9.

[9] Indeed, the Fifth Circuit has noted the overlap between disciplinary proceedings and Rule 11 sanctions. *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808 (5th Cir. 2003).

Respectfully submitted,

By: */s/ Ian O. Bucon*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Wesley D. Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

David H. Harper
State Bar No. 09025540
david.harper@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

David J. Bodney
*admitted pro hac vice*
bodneyd@ballardspahr.com
Ian O. Bucon
*admitted pro hac vice*
buconi@ballardspahr.com
BALLARD SPAHR LLP
1 E. Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 26, 2020, a true and correct copy of the foregoing document was forwarded via email to the following counsel of record:

Ty Odell Clevenger  
P.O. Box 20753  
Brooklyn, NY 11202-0753  
979-985-5289 (phone)  
979-530-9523 (fax)  
tyclevenger@yahoo.com  

Steven S. Biss  
300 West Main Street, Suite 102  
Charlottesville, VA 22903  
804-501-8272 (phone)  
202-318-4098 (fax)  
stevenbiss@earthlink.net  

*/s/ Ian O. Bucon*  
Ian O. Bucon

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), Defendants certify that a motion to seal the document has been filed separately and immediately prior to this Reply.

*/s/ Ian O. Bucon*  
Ian O. Bucon