# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

**Edward Butowsky,**

   Plaintiff,

**v.**

**David Folkenflik, et al.,**

   Defendants

**Case No. 4:18-cv-442-ALM**

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

NOW COMES Edward Butowsky, the Plaintiff, sur-replying in opposition to the REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 FOR VIOLATIONS COMMITTED BY PLAINTIFF AND HIS COUNSEL ("REPLY") (Doc. No. 122) as follows:

### Introduction

The underhanded, say-anything-to-win tactics of Defendants' Counsel continue unabated in the REPLY. They write, for example, that "Plaintiff even concedes he brought this suit for improper motives: to prove a debunked conspiracy theory." REPLY 2, citing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS ("RESPONSE") 18 (Doc. No. 110). Obviously, they assume that the Court will not check their citations, because a quick look at the RESPONSE reveals that the Plaintiff never conceded anything of the sort. The Defendants also attempt to introduce new evidence and new arguments on reply, then they implicitly argue that the Court must construe all disputed facts in their favor. As before, the Defendants could not even obtain summary

judgment based on the new evidence, *see* RESPONSE 1, 11-12,  yet they want this Court to sanction the Plaintiff and his attorneys and then enter the equivalent of summary judgment by dismissing all of the Plaintiff's claims with prejudice.

## Objection

In the REPLY, the Defendants proffer numerous new evidentiary exhibits and argue an entirely new basis for sanctions, namely that the Plaintiff (supposedly) misrepresented the extent of his involvement in the *Fox News* story about Seth Rich. REPLY 2.  The Plaintiff objects to the new evidence and the new arguments.  As a general matter, courts do not consider new evidence or new arguments raised in reply briefs.  *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 633 (N.D. Tex. 2010) ("The Court will not consider arguments or evidence raised for the first time in a reply brief")(citing cases); *see also Najarro v. First Fed. Sav. & Loan Ass'n of Nacogdoches, Tex.*, 918 F.2d 513, 516 (5th Cir. 1990)("In the absence of manifest injustice, this court will not consider arguments belatedly raised after appellees have filed their brief"). A court may, however, consider new evidence introduced in a reply brief if the non-movant is given an adequate opportunity to respond. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir.2004). None of the foregoing decisions deal with a motion for sanctions, and indeed the Plaintiff could not find any such cases in the Fifth Circuit. Regardless, the "safe harbor" provision of Fed. R. Civ. P. 11(c)(2) implicitly forbids the introduction of new arguments and new evidence in a reply.

Although the Defendants complied with Rule 11's safe harbor provision when filing their original motion, they failed to comply when submitting their supplemental evidence. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must

be made separately from any other motion and must describe the specific conduct
that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it
must not be filed or be presented to the court if the challenged paper, claim,
defense, contention, or denial is withdrawn or appropriately corrected within 21
days after service or within another time the court sets."). "The purpose of the safe
harbor provision is to allow the party against whom sanctions are sought to
withdraw the challenged document(s)." *Mirabilis Ventures, Inc. v. Palaxar Grp.*,
LLC, No. 07–cv–1788, 2010 WL 5582878, at *8 (M.D.Fla. Dec. 15, 2010). Courts
generally strictly construe Rule 11's procedural requirements. *See Miller v.
RelationServe, Inc.*, No. 05–61944–civ, 2006 WL 5849318, at *5 (S.D.Fla. Dec. 1,
2006) (Torres, Mag. J.); *In re Kirk–Murphy Holding, Inc.*, 313 B.R. 918, 920–21
(N.D.Fla.2004).

*Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1309 (S.D. Fla. 2016)(emphasis

added).[1] All of the Defendants new evidence should be disregarded or stricken, as should

the new arguments about the Plaintiff's involvement in the *Fox News* story.  If the Court

chooses to consider the new exhibits and arguments anyway, then the Plaintiff requests a

hearing insofar as he does not have sufficient opportunity to respond in a ten-page sur-

reply.

## **Argument**

The Defendants continue to ignore the evidentiary burden before them, *i.e.*, that

they must prove conclusively that the Plaintiff's allegations were false. *See* RESPONSE 5

(citing cases). They cannot rely on dueling declarations and contradictory evidence, as

they have thus far, and expect the Court to construe all inferences in their favor. *See*

*Lawrence v. City of New York*, 15CV8947, 2018 WL 3611963, at *4 (S.D.N.Y. July 27,

---

[1] The new arguments and new evidence are particularly prejudicial to the Plaintiff and the
undersigned.  Originally, the undersigned was supposed to serve as local counsel for the sole
purpose of getting lead counsel admitted *pro hac vice*. *See* Declaration of Ty Clevenger (Exhibit
1). After the draft motion for sanctions was served, however, the undersigned suddenly had to
take full responsibility for the case, and even now he has not finished reviewing everything in the
file. *Id*. Furthermore, the Plaintiff was hospitalized for severe medical problems for most of the
first three months of this year, complicating counsel's efforts to represent him. *Id*.

2018), appeal dismissed, 18-2542, 2019 WL 4127603 (2d Cir. Jan. 16, 2019) ("submission of inconsistent statements alone is insufficient to establish that a statement was false, or was filed for an improper purpose") citing *Brown v. Artus*, 647 F. Supp. 2d 190, 206 (N.D.N.Y. 2009); *see also Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 253, 261 (S.D. Ohio 1987), aff'd, 857 F.2d 1475 (6th Cir. 1988)(sanctions cannot be based on equivocal evidence).

1. **The Defendants are quibbling about the meaning of "direct" and "limited".**

The Defendants offer eleven new exhibits in an absurd, bad-faith attempt to prove that the Plaintiff "controlled access to witnesses and sources," ergo his role in the Wheeler investigation was not "limited" as alleged in the SAC. Even if the new evidence was properly before the Court, it would not prove the Defendants' point. For starters, the Defendants *still* try to conflate the Plaintiff's involvement in the *Fox News* story with his involvement in the Wheeler investigation. They are not the same thing, and only the Wheeler investigation was cited as a basis for sanctions. With respect to the latter, the Defendants quibble about (1) whether the Plaintiff's role in the Wheeler investigation was "limited," as both the Plaintiff and Mr. Wheeler himself have said, *see* SECOND AMENDED COMPLAINT ¶75, and (2) whether the Plaintiff played a "direct" role in the investigation.

As evidence of the bad faith of the Defendants and their attorneys, note how deceptive the bullet points are on page 4 of the REPLY, *e.g.*, "Butowsky himself spoke directly to sources as well." If one actually examines the supporting exhibits, the only "sources" are Sy Hersh and him alone. The Plaintiff has, however, openly disclosed his

communications with Mr. Hersh since the very outset of this case. *See, e.g.,* ORIGINAL COMPLAINT (Doc. No. 1) 14-15, 19-20, 57-58. In fact, the Plaintiff had spoken with Mr. Hersh *before* Mr. Wheeler started his investigation, ergo the Plaintiff could not have been directing or acting as part of Mr. Wheeler's investigation. *See* Declaration of Edward Butowsky (Exhibit 2). In another bullet point, the Defendants allege that "Butowsky's email messages to Wheeler and Zimmerman instruct them not to approach Sy Hersh at that time." The three-word phrase "Cannot call sy" does not, however, show that the Plaintiff was directing either the *Fox News* story or the Wheeler investigation. The Plaintiff simply thought he had established a rapport with Mr. Hersh, and he did not want Ms. Zimmerman or Mr. Wheeler mucking that up. *See* Declaration of Edward Butowsky (Exhibit 2). He had no authority to prevent either one of them from calling Mr. Hersh. *Id.* In the final bullet point, the Defendants tout text messages "Butowsky sent in late April and early May 2017 to Wheeler and Kash Patel, then a staff member on the House Intelligence Committee, [that] directed Wheeler and Patel to meet." If one actually looks at the exhibits (as one always must with these Defendants), the Plaintiff was simply encouraging two people to meet each other. He did not and indeed could not "direct" either of them to do anything. As the Plaintiff explains in his declaration, the purpose of the introduction was completely benign. *See* Declaration of Edward Butowsky (Exhibit 2).

Out of hundreds of text messages, emails, and other documents, the Defendants cherry-pick a handful, misrepresent them, and then tout them as undisputed evidence in support of their sham motion for sanctions. The Defendants' attorneys should be ashamed

of themselves, but their REPLY leads one to wonder if they are capable of experiencing any shame.

**2.   The Plaintiff did not "facilitate" Mr. Wheeler's contract, and he certainly did not "admit" to facilitating the contract.**

In his RESPONSE, the Plaintiff made it very clear and very obvious that the Defendants were conflating two different contracts.  The Plaintiff sent Mr. Wheeler's standard contract to the Riches early on, but he did not see the actual contract between the Riches and Mr. Wheeler until much later. *See* Declaration of Edward Butowsky (Exhibit 2). Furthermore, the actual negotiation of that contract took place between Mr. Wheeler and Molly Rich, an attorney who is married to Aaron Rich. *Id*.  It is facially evident that Mrs. Rich made major modifications to Mr. Wheeler's standard contract, *compare* Defendants' Ex. A-14 *with* Defendants' Ex. A-17, and the Plaintiff attests that he played no role whatsoever in those negotiations. Declaration of Edward Butowsky (Exhibit 2). Thus the fact remains that the Plaintiff never saw the final contract until months later. So what *exactly* is the basis for the Defendants' breathless hysteria about when the Plaintiff saw the actual contract?  That fact has nothing to do with the Plaintiff's claims, nor could it. Although the Defendants claim their evidence "shows that Butowsky was fundamentally involved in the formation of Wheeler's contract with the Rich family," RESPONSE 6, as if that is something to crow about, the Plaintiff disclosed from the outset that he had agreed to pay for Mr. Wheeler's services. *See* ORIGINAL COMPLAINT 39, ¶58. So if that's what it means to be "fundamentally involved," then the Plaintiff has never misrepresented that fact. Furthermore, the executed contract severely

undercuts the Defendants' argument that the Plaintiff controlled Mr. Wheeler's investigation, because it includes the following paragraph, presumably added by Mrs. Rich:

> Capitol Investigations will not retain any additional clients in relation to the murder of Seth Rich. Capitol investigations will not perform additional services (outside the scope of this agreement) that are related to the murder of Seth Rich.

Defendants' Ex. A-14.   If the Plaintiff was somehow responsible for the contract negotiations, and if he was trying to control Mr. Wheeler's investigation, then he would not have inserted that into the contract.

The treachery and shamelessness of Defendants' Counsel is particularly evident in the paragraph that begins at the bottom of Page 6 and continues to Page 7, as well as the supporting footnotes. The Defendants and their attorneys like to accuse the Plaintiff of promoting "baseless conspiracy theories," but they've created a whopper of a baseless conspiracy theory themselves.   Relying on nothing more than wild assumptions, they accuse the Plaintiff of altering a date on a contract. They also accuse the Plaintiff of hiring Mr. Wheeler "as early as March 3, 2017 – before the Rich family event met Wheeler" [gasp!]. On the first point, Plaintiff did not alter a date on any contract, and he does not even know whether the date was altered at all. *See* Declaration of Edward Butowsky (Exhibit 2).   Even if the date was altered, why would anyone assume that a date on a document *sent by Ms. Zimmerman* was altered by the Plaintiff?   On the second point, the Plaintiff did not hire Mr. Wheeler on March 3, 2017 *because he did not hire Mr. Wheeler at all*. *Id*. Even so, what difference would it make if Mr. Wheeler was hired on March 3, 2017 versus some later date?

**3.  The Plaintiff did not "lie," much less concede that he lied.**

The Defendants and their attorneys are a case study in psychological projection. Given their history of deception and dirty tricks, they should be a lot more circumspect about calling anyone else a liar.  At most, the Defendants have offered testimony from Ms. Davis that contradicts testimony from the Plaintiff.  As explained above, disputed facts cannot be the basis for Rule 11 sanctions. The Defendants also contend that because the Plaintiff did not specify *from whom* he lost revenue, that somehow means he "failed to plead special damages." REPLY 8. In support of this ridiculous argument, they cite two cases that say nothing of the sort. *Id*. n.4, citing *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) and *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 n.7 (Tex. 2014).  *Lipsky* and *Waste Mgmt.* stand for the unremarkable proposition that a plaintiff must prove "actual monetary damages" in order to establish special damages. Does the Court need to explain to Defendants' Counsel that there is a difference between pleading and proving?  At the risk of stating the obvious, Rule 11 concerns itself with pleadings.  To the limited extent that their argument is comprehensible, the Defendants seem to be arguing that because the Plaintiff has not yet marshaled all of his *proof* of special damages, that means his *pleadings* are false. If the Plaintiff fails to provide such proof when discovery ends, then the Defendants might have an argument. For now, they're just grasping at straws.

**4. The Plaintiff *at least* made a good-faith attempt to comply with the safe harbor provision, and the Defendants impeded his efforts.**

The undersigned overlooked Laura Prather's email response to Steve Biss's attempt to confer about a motion to amend the pleadings, and he apologizes to Ms. Prather and the Court for that oversight.   Even so, Ms. Prather's email response was inadequate.   "Meet and confer" requirements are taken very seriously in this Court, and counsel must have the equivalent of a telephone conversation in order to satisfy the requirements of Local Rule 7(h).   After Mr. Biss sent the proposed THIRD AMENDED COMPLAINT to Ms. Prather, she merely emailed back that her clients would oppose, *see* February 17, 2020 Email from Laura Prather to Steve Biss (Exhibit 3), then she abruptly filed the motion for sanctions the following morning. Her entire email reads as follows: "We oppose the filing of the Motion for Leave." *Id*. That does not remotely satisfy Local Rule 7(h), thus it was not unreasonable for Plaintiff's Counsel to wait for an opportunity to meet and confer by telephone, as required by that rule.   In the Plaintiff's RESPONSE, he noted that courts have refused to award sanctions where respondents made a good-faith attempt to meet the safe harbor provisions. RESPONSE 10 (citing cases). That should be all the more true where, as here, the respondent's good faith was met with bad faith.

## Conclusion

Like the Defendants' motion for sanctions, the REPLY is frivolous, it was filed in

bad faith, and it was filed for an improper purpose. It should be denied in its entirety.

Respectfully submitted,

**/s/ Ty Clevenger**_____
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
*stevenbiss@earthlink.net*

**Attorney for Plaintiff Edward Butowsky**


## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF
system on April 3, 2020, which should result in automatic notification to all counsel of
record.

**/s/ Ty Clevenger**_____
Ty Clevenger