# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **ED BUTOWSKY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No.  4:18CV442** |
| | § | **Judge Mazzant/Magistrate Judge Craven** |
| **DAVID FOLKENFLIK, ET AL.,** | § | |
| **Defendants.** | § | |

## ORDER

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636.  The following pending motion is before the Court:

**Defendants' Motion for Leave to Designate Responsible Third Parties (Docket Entry # 81).**

The Court, having carefully considered the relevant briefing, is of the opinion the motion should be **GRANTED IN PART and DENIED IN PART** as specifically stated herein.

## I. BACKGROUND

This is an action for defamation *per se*, business disparagement, and civil conspiracy filed by Plaintiff Ed Butowsky ("Plaintiff" or "Butowsky"), a Dallas investment advisor, against National Public Radio, Inc. ("NPR"), its senior media correspondent, David Folkenflik ("Folkenflik"), and three individual officers, editors, producers, or publishers at NPR (collectively, "NPR Defendants"). Plaintiff filed his original complaint on October 16, 2018. Docket Entry # 1. According to Plaintiff, NPR Defendants published false and defamatory statements about Plaintiff online and via Twitter between August 2017 and March 2018 – statements Plaintiff alleges injured his business and

reputation. Specifically, Plaintiff claims Folkenflik knowingly and intentionally conspired with Douglas H. Wigdor ("Wigdor") to promote, publish, and republish a demonstrably false and defamatory narrative about Plaintiff. Joint Report of Attorney Conference (Docket Entry # 52) at p. 2. Plaintiff alleges Folkenflik actively colluded with Wigdor, Folkenflik knew he was part of Wigdor's "press strategy" to extort money from Fox, and Folkenflik willingly assumed the role of "firecracker" in the scheme. *Id*. Plaintiff seeks money damages for alleged loss and injury to his business, insult, pain and mental suffering, humiliation, embarrassment, and injury to his reputation sustained as a result of NPR Defendants' publication of allegedly false and defamatory statements. *Id.*

NPR Defendants contend Plaintiff filed suit against them for accurately reporting on a publicly filed lawsuit on a matter of public concern.  Specifically, NPR Defendants assert Plaintiff filed suit following NPR's reporting on a 2017 lawsuit filed by Fox News contributor Rod Wheeler against Fox News.[1] *See* Complaint, *Wheeler v. Twenty-First Century Fox, Inc., et al.*, Case No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017).  Docket Entry # 65 at p. 2, n. 3. On October 16, 2018, NPR Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting Plaintiff's complaint failed to state a plausible claim for relief for two primary reasons.[2]

---

[1] Rod Wheeler brought a cause of action in the Southern District of New York, asserting claims for defamation *per se* and, in the alternative, defamation and libel *per quod*, against Fox News Network LLC ("Fox News") and its parent company, Zimmerman, and Butowsky. *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 449 (S.D.N.Y. 2018). Wheeler's allegations principally arose out of Fox News's coverage of his investigation into the murder of Seth Rich, "a former Democratic National Committee ('DNC') employee who was rumored to have leaked sensitive, private emails from DNC servers to WikiLeaks." *Id.* On August 2, 2018, the court granted the defendants' motions to dismiss for failure to state a claim.  *Id.*

[2] First, NPR Defendants argued both Texas law and the First Amendment to the United States Constitution protect NPR Defendants' reporting on judicial proceedings and about matters of public concern. NPR Defendants argued the statements in the NPR articles at issue in this case are subject to statutory and common law privileges and defenses that preclude civil liability – namely the fair report privilege, the fair comment privilege, and the "third-party allegation"

Plaintiff filed an amended complaint on March 5, 2019. Docket Entry # 54. On April 17, 2019, the undersigned entered a 98-page Report and Recommendation ("R&R") regarding proposed findings of fact and recommendations that NPR Defendants' motion to dismiss be denied. Docket Entry # 58. NPR Defendants filed objections to the R&R, and District Judge Mazzant conducted a *de novo* review of the undersigned's findings and conclusions.

On August 7, 2019, Judge Mazzant entered an Order Adopting Report and Recommendation of the United States Magistrate Judge, finding NPR Defendants' objections without merit and adopting the R&R as the findings and conclusions of the Court. Docket Entry # 65 at p. 37. Judge Mazzant also granted Plaintiff leave to file an amended complaint. *Id.* Plaintiff filed his current Second Amended Complaint on September 30, 2019.[3] Docket Entry # 72.

The final pretrial conference is scheduled April 1, 2021 before District Judge Mazzant, with trial between May 3, 2021 and June 4, 2021. Docket Entry # 92 at p. 3.

## II. NPR DEFENDANTS' MOTION

On December 13, 2019, NPR Defendants filed their current motion, seeking leave pursuant to Texas Civil Practice and Remedies Code § 33.004(a), to designate fifty-one responsible third parties – forty-six of which Plaintiff has also sued for defamation in other cases and five of which NPR Defendants assert enabled Plaintiff's role in the retracted article, which led to the alleged defamatory reporting Plaintiff complains of in this lawsuit. In response, Plaintiff challenges the

_____

rule. Second, NPR Defendants argued many of the statements are not "of and concerning" Plaintiff, are not defamatory or capable of a defamatory meaning, or are protected expressions of opinion and should be dismissed for these reasons as well.

[3] The Court notes Plaintiff filed an opposed Motion for Leave to File Third Amended Complaint on February 18, 2020, which is pending before the Court. Docket Entry # 98.

applicability of § 33.004 but agrees, to the extent § 33.004 applies, NPR Defendants can designate Wigdor as a responsible third party. For various reasons, Plaintiff objects to NPR Defendants' designation of the remaining fifty persons and entities as responsible third parties. In their reply, NPR Defendants assert they have "properly and timely requested leave to designate the remaining 50 responsible third parties," and their request should be granted. Docket Entry # 83 at p. 1.

### III.  APPLICABLE LAW

Federal courts apply state substantive law "when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Under Chapter 33 of the Texas Civil Practice and Remedies Code, a defendant who is sued in tort or under the Texas Deceptive Trade Practices-Consumer Protection Act [ ] may reduce his liability by a percentage of responsibility attributed to a responsible third party." *Oliva v. USA Truck, Inc.*, No. 3:18-CV-2814-E, 2019 WL 7756355, at *6 (N.D. Tex. Nov. 15, 2019), *report and recommendation adopted*, No. 3:18-CV-02814-E, 2020 WL 418890 (N.D. Tex. Jan. 27, 2020) (quoting *Mavuninu-Jean v. Reyes*, No. 3:19-cv-1571-B, 2019 WL 5963886, at *1 (N.D. Tex. Nov. 13, 2019) (citing TEX. CIV. PRAC. & REM. CODE § 33.002)).

Texas Civil Practices and Remedies Code § 33.004 provides "[a] defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party." TEX. CIV. PRAC. & REM. CODE § 33.004(a). However, a "defendant may not designate a person as a responsible third party with respect to a claimant's cause of action after the applicable limitations period on the cause of action has expired with respect to the responsible third party if the defendant has failed to comply with its obligations, if any, to timely

disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE § 33.004(d). "This limitation seeks to address a defendant's interest in identifying nonparties who may have some culpability while recognizing that a plaintiff has time limitations on pursuing its claims against parties not already included in its suit." *Ranolls v. Dewling*, No. 1:15-CV-111, 2016 WL 7356809, at *3 (E.D. Tex. Mar. 7, 2016). "This inquiry is complicated in the instant case—a federal diversity action—where discovery is generally governed by the Federal, rather than Texas Rules of Civil Procedure."[4] *Withers v. Schneider Nat'l Carriers, Inc*., 13 F. Supp. 3d 686, 690 (E.D. Tex. 2014).

Leave to designate the named person as a responsible third party should be granted unless another party files an objection to the designation. TEX. CIV. PRAC. & REM. CODE § 33.004(f). If an objection is filed, the court should allow the designation unless the objecting party establishes:

> (1) the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and (2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM. CODE § 33.004(g).

---

[4] "Significantly, the federal rules provide for automatic disclosures; however, they do not require the disclosure of responsible third parties." *Switzer v. Beach*, No. 1:18-CV-66, 2018 WL 9869730, at *2 (E.D. Tex. July 16, 2018) (citing FED. R. CIV. P. 26(a)(1)(A)). Conversely, the Texas rules do not require automatic disclosures. *Id.* (citing TEX. R. CIV. P. 194.2). Instead, a party must request information, which includes the names of potentially responsible third parties. *Id.* (citing TEX. R. CIV. P. 194.2(l)). "This disparity of obligations has led one district court to hold that a defendant has no obligation to disclose a responsible third party, and, if it does, the obligation does not arise until a plaintiff explicitly requests such information." *Id.* (citing *Webber, LLC v. Symons Corp*., No. 4:12-CV-181, 2013 WL 3356291, at *2-3 (N.D. Tex. July 3, 2013). Such interpretation, however, would render § 33.004(d) meaningless when a case is brought in federal court. *Id.* (citing *Withers v. Schneider Nat'l Carriers, Inc*., 13 F. Supp. 3d 686, 691 (E.D. Tex. 2014)).

As held by courts in this district, "§ 33.004(d) must be applied in those circumstances as the facts of each case require. Timeliness is determined in every trial court on a case by case basis." *Switzer*, 2018 WL 9869730, at *3 (quoting *Withers*, 13 F. Supp. at 691).

"By granting a motion for leave to designate a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of this chapter without further action by the court or any party." *Oliva*, 2019 WL 7756355, at *7 (quoting TEX. CIV. PRAC. & REM. CODE § 33.004(h)). When a responsible third party is designated, the apportioning of responsibility can affect "the amount of recovery available to a plaintiff from the named parties." *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (quoting *In re CVR Energy, Inc.*, 500 S.W.3d 67, 77 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding)). Such a designation enables a defendant "to introduce evidence regarding a responsible third party's fault and to have the jury apportion responsibility to the third party even if that person has not been joined as a party to the lawsuit." *Withers*, 13 F. Supp. 3d at 688. A plaintiff has the option to counter the impact of a responsible third party's designation by joining the "party as an additional defendant." *Id.* In this way, all potentially culpable parties appear before the court, defend themselves, and face potential liability for their portion of responsibility. *Id.*

But, as noted above, a plaintiff may not join a "designated responsible third part[y] outside the limitations period." *In re Dawson*, 550 S.W.3d at 628 (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 416 (Tex. 2011). When a plaintiff is so barred, "an imbalance in the proportionate[-]responsibility framework" may arise. *Id.* "[W]hile the defendant may potentially cut down liability by blaming the third party, the plaintiff is precluded by limitations from seeking recovery on the basis of that third party's fault." *In re Dawson*, 550 S.W.3d at 628 (quoting *Withers*, 13 F. Supp. 3d at 689).

"Chapter 33 allows a defendant liberally to designate responsible third parties, including parties not subject to the court's jurisdiction, immune from suit, or who are unknown." *Viceroy*

*Petroleum, L.P. v. Tadlock Pipe & Rentals, Inc.*, 2014 WL 5488422, at *2 (W.D. Tex. Oct. 29, 2014)

(citing *Fisher v. Halliburton*, 2009 WL 1098457, at *1 (S.D. Tex. Apr.23, 2009)). "The burden for

designation is relatively low because, once the parties have engaged in discovery, a party can move

to strike the designation based on insufficient evidence of liability." *Spencer v. BMW of N. Am.,*

*L.L.C.*, 2015 WL 1529773, at *2 (W.D. Tex. Apr. 2, 2015) (citing § 33.004(l)).[5]

## IV. PLAINTIFF'S LAWSUITS

### A.    Plaintiff's current lawsuit

In this case, Plaintiff alleges defamation, business disparagement, and conspiracy claims

against NPR Defendants. *See* Docket Entry # 72. Among other things, Plaintiff alleges NPR

Defendants defamed him and injured his business by publishing a false narrative about his

involvement in the now-retracted Fox News article about Seth Rich's murder. *Id.*, ¶¶ 5-6 (alleging

NPR Defendants published false and defamatory statements about Plaintiff online and via Twitter

between August 2017 and March 2018).  Because of this allegedly false narrative, Plaintiff claims

he was "ostracized, causing enormous loss of business (including, without limitation, the termination

and loss of [his investment firm's] Investment Manager Service Agreement with Charles Schwab

and loss of clients), and causing Butowsky substantial personal injury, fear, and mental and physical

pain and suffering." *Id.*, ¶ 11.

---

[5] Under Texas Civil Practice and Remedies Code § 33.004(l), "[a]fter adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage." *Oliva*, 2019 WL 7756355, at *7. "Once a person or entity is designated as a responsible third party, the factfinder determines its responsibility for the plaintiff's injury or damages, unless the trial court strikes the designation or no legally sufficient evidence of its fault is produced at trial." *Id.* (quoting *Gutierrez v. Tractor Supply Co.*, Civ. A. No. H-15-778, 2018 WL 3055752, at *2 (S.D. Tex. June 20, 2018) (citing TEX. CIV. PRAC. & REM. CODE § 33.003(b))).

The Second Amended Complaint alleges as follows. In early 2017, Plaintiff contacted the family of Seth Rich to help the family investigate their son's unsolved murder.[6]  *Id.*, ¶ 70.  Plaintiff offered to pay for a private investigator.  *Id.* On February 23, 2017, Plaintiff contacted Rod Wheeler via text message to see if Wheeler would be interested in investigating the murder. *Id.*, ¶ 71. Plaintiff did not know Wheeler, but he had seen him on television and Wheeler appeared to be a competent investigator. *Id.*

Plaintiff alleges the family of Seth Rich (specifically Aaron Rich, Joel Rich, and Mary Rich) entered into a contract with Wheeler to investigate the murder of Seth Rich.  *Id.*, ¶ 72. Plaintiff was not a party to the contract between Wheeler and the Rich family, and his role and involvement in the investigation of Seth's murder were limited.  *Id.*, ¶¶ 73-75. According to Plaintiff, Wheeler investigated the matter and came up with the theory that Rich's murder was not the result of a botched robbery.  *Id*. at p. 20, n. 7.

On March 31, 2017, Wheeler appeared on Fox 5 DC and claimed he had been investigating Rich's murder over the "past three weeks."  *Id*., ¶¶ 79-81. According to the Second Amended Complaint, after Wheeler appeared on Fox 5 DC, he updated Malia Zimmerman, an "award-winning investigative reporter" employed by FoxNews.com, concerning his investigation.  *Id*., ¶¶ 83-85. In one of his texts to Zimmerman, Wheeler advised Zimmerman that he was prepared to say Seth Rich's murder was not the result of a "botched street robbery." *Id.*, ¶ 86.  Plaintiff alleges Wheeler further offered to Zimmerman that his investigation revealed a "coverup within the D.C. Govt" related to Rich's death.  *Id.*  Zimmerman, who knew Wheeler worked for the Rich family, asked

---

[6] Seth Rich was a DNC staffer who was murdered on July 10, 2016.  Docket Entry # 72, ¶ 5.

Wheeler if the family was letting him talk.  *Id.*, ¶ 87. Zimmerman expressed interest in doing a story on the murder investigation, if Wheeler was "up to it."  *Id.*

As part of the murder investigation, Wheeler was also in direct contact with the "lead detective," Joseph Dellacamera, and information Wheeler obtained from Detective Dellacamera supported Wheeler's belief and his public statements to Zimmerman and others that Seth Rich had been in contact with WikiLeaks and had sent emails to WikiLeaks.  *Id.*, ¶¶ 95-96.  On May 15, 2017, Wheeler told Fox 5 DC reporter, Marina Marraco, on camera that he had sources at the FBI who said there was information that could link Seth Rich to WikiLeaks. ("Absolutely, yeah, and that's confirmed.").  *Id.*, ¶¶ 99-103.

On May 15, 2017, Wheeler was in contact with Zimmerman multiple times about an article Zimmerman was writing.  *Id.*, ¶ 106. Zimmerman provided Wheeler several "drafts" containing quotes attributed to Wheeler. *Id.*, ¶¶ 108-129. At no point in time did Wheeler ever deny making the statements quoted by Zimmerman; instead he offered further quotations.  *Id.*

On May 16, 2017, in the early morning, Fox published Zimmerman's story entitled, "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources*."  *Id.*, ¶ 143.  The article included statements Wheeler had made and approved.  *Id.*  On May 16, 2017, after publication of Zimmerman's article, Wheeler appeared on Fox News and was interviewed by Sean Hannity, where Wheeler again confirmed Rich had communicated with WikiLeaks. *Id.*, ¶¶ 145-148.  On May 16, 2017, Wheeler appeared on Fox Business with Lou Dobbs to discuss the Seth Rich murder investigation. *Id.*, ¶ 151.

On May 16 or May 17, 2017, one or more members of the Rich family, or a spokesman for the Rich family (Bauman), threatened to sue Wheeler for violating the terms of his contract with the

Rich family by speaking with Marraco, Zimmerman, Hannity, and Dobbs.  *Id.*, ¶ 153.  Plaintiff

alleges Bauman, a DNC crisis operations, strategic planning, digital engagement, rapid response, and

media relations "political consultant" deployed to represent the Rich family after the murder of Seth

Rich, also issued a public statement.[7]  *Id.*, ¶ 155.  "Bauman discouraged the investigation of Seth

Rich's murder, upon information and belief, because he was assisting the DNC in a cover-up of Seth

Rich's leak of emails to WikiLeaks."  *Id.*

According to Plaintiff, the threats from the Rich family provided Wheeler with a motive to

lie, backtrack, and distance himself from the quotes and statements he had made to Marraco,

Zimmerman, Hannity, and Dobbs.  *Id.*, ¶ 156.  Wheeler then "flip-flopped on virtually all the

essential facts."  *Id.*, ¶ 161.

On May 23, 2017, Fox retracted Zimmerman's article with the following explanation:

On May 16, a story was posted on the Fox News website on the investigation into the
2016 murder of DNC Staffer Seth Rich.  The article was not initially subjected to the
high degree of editorial scrutiny we require for all our reporting.  Upon appropriate
review, the article was found not to meet those standards and has since been
removed.

We will continue to investigate this story and will provide updates as warranted.

*Id.*, ¶ 170.

Between August 2017 and March 2018, Folkenflik and NPR published and republished the

following online articles: (1) *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*,

NPR.ORG (Aug. 1, 2017); (2) *Fox News' Seth Rich Story Echoes Previous Problems For Owner*

---

[7] Plaintiff further alleges in a footnote as follows: "Bauman is the former Executive Director of the Democratic Congressional Progressive Caucus, the largest caucus within the House Democratic Caucus. . . . He is currently an agent working for the 'Pastorum Group', a full-service communications and political strategy firm founded by Bauman and dedicated to promoting Democratic candidates, causes and coalitions." Docket Entry # 72 at p. 69, n. 26.

*Rupert Murdoch*, NPR.ORG (Aug. 7, 2017); (3) *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story*, NPR.ORG (Aug. 16, 2017); (4) *No Apology, No Explanation: Fox News And The Seth Rich Story*, NPR.ORG (Sept. 15, 2017); and (5) *Fox News Fights Back On Lawsuit Filled Over Seth Rich Story*, NPR.ORG (Sept. 19, 2017).  Among other things, Plaintiff alleges Folkenflik and NPR relied on a primary source – Wheeler – that Folkenflik and NPR knew to be wholly debunked and unreliable. Docket Entry # 72, ¶ 181. According to Plaintiff, based on information known and available to Folkenflik, Folkenflik "harbored serious doubt as to the veracity of Wheeler's statements about Butowsky. Indeed, the statements were knowingly false, with not a shred of supporting evidence, and Folkenflik knew that before he wrote the Articles published by NPR." *Id.*

According to the Second Amended Complaint, in the articles Folkenflik misrepresented Plaintiff's involvement in the murder investigation; misrepresented Wheeler's contracts with Zimmerman; knew the President was not involved in any way; knew Wheeler had interviewed Detective Dellacamera; disregarded Wheeler's public statements to Marraco; knew Fox had accurately quoted Wheeler; disregarded Seymour Hersh's July 11, 2017 recorded statement; knew about Wheeler's appearances on Hannity and Dobbs when Wheeler again confirmed Seth Rich had communicated with WikiLeaks; knew about Wheeler's motive to lie (the Rich family's threats to sue Wheeler for violating the terms of his contract by speaking with Marraco, Zimmerman, Hannity and Dobbs); and knew about Wheeler's statement to FetchYourNews. *Id.*, ¶¶ 68-172.

Under his defamation claim, Plaintiff alleges as follows:

As a direct result of Folkenflik and NPR's defamation, Butowsky suffered substantial presumed and actual damages and loss, including, but not limited to, pain and suffering, emotional distress and trauma, insult, anguish, stress and anxiety, public

ridicule, humiliation, embarrassment, indignity, damage and injury to his personal and professional reputations, loss of business and income, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $60,000,000.00.

*Id.*, ¶ 183.

In his civil conspiracy claim, Plaintiff claims Folkenflik knowingly and intentionally conspired with Douglas H. Wigdor to promote, publish, and republish a demonstrably false and defamatory narrative about Plaintiff. *Id.*, ¶¶ 190-197; *see also* Joint Report of Attorney Conference (Docket Entry # 52) at p. 2. According to Plaintiff, Wigdor is an attorney who has represented over twenty employees at Fox News in their claims against the network. Docket Entry # 72, ¶ 17. Wigdor also represented Wheeler in a lawsuit alleging defamation in connection with the Fox News story published about murdered DNC staffer Seth Rich. *Id.* According to the Second Amended Complaint, "Wigdor often grants in-depth access to a single reporter from a prominent news outlet, on the condition that the story be embargoed until the day a suit is filed, when it can be set off like a firecracker." *Id.*, ¶ 18. Plaintiff alleges Folkenflik gladly accepted the "scoop" from Wigdor and published "fake news with reckless indifference to the consequences of his actions as a 'journalist.'" *Id.*, ¶ 19.

Plaintiff alleges Wigdor, in conjunction with Folkenflik and NPR's defamatory attacks on Butowsky and in furtherance of the conspiracy, "launched his own wehrmacht and published numerous false and defamatory statements about Butowsky." *Id.*, ¶ 192. According to the Second Amended Complaint, Wigdor scheduled an interview with Ari Melber with MSNBC, wherein Wheeler stated as follows:

That's right well I was asked to get involved in conducting an investigation, a murder investigation of Seth Rich and that why I got involved, so I could try and find out

who killed this guy. During the course of my investigation, there was a lot of things that came up uh there was a lot of suspicious information that I was learning about possibly the DNC being involved to some degree, I don't know. What I decided to do was to take all my information and give it to the police department like you should do in any case and go from there. But halfway through the investigation and up [to] the point this article was released by Fox, there were these quotes in there from me supposedly saying that I knew for a fact that Seth Rich the decedent had been in contact with WikiLeaks emailing them emails, that was not true.

…

I think uh well I know for a fact Ed Butowsky, who was the individual that was funding the investigation, he had been in contact with people from the White House and he was the one that was pushing this Russian hacking narrative, by the way that I didn't know a whole lot about because I wasn't you know trying to debunk a narrative or support a narrative I was trying to find a murderer.

*Id.*, ¶ 192a.

According to Plaintiff, on August 3, 2017, Wigdor's partner Jeanne Christensen appeared with Wheeler on CNN with Chris Cuomo, and Wheeler published false and defamatory statements about Plaintiff. *Id.*, ¶ 192c. Plaintiff alleges Christensen's words demonstrate that Wigdor published false statements without evidentiary support. *Id.* According to Plaintiff, on September 19, 2017, Wigdor spoke with CNN Media's Oliver Darcy ("Darcy"), and Wigdor made false and defamatory statements to Darcy. *Id.*, ¶ 192f.

Plaintiff alleges Folkenflik and NPR are liable for both their acts of defamation committed in furtherance of and during the course of the conspiracy and the defamatory statements published by Wigdor. *Id.*, ¶ 195.  Plaintiff alleges he has received death threats to his family, damage to his home in Plano, and thousands of ad hominem attacks. *Id.*, ¶ 197.

**B.    Plaintiff's other lawsuits**

Since April 23, 2018, Plaintiff and his investment firm, Chapwood Capital Investment

Management, LLC ("Chapwood"), have filed six other lawsuits against forty-six other defendants:

(1) *Chapwood Capital Investment Management, LLC v. Charles Schwab Corporation*, No. 4:18-cv-00287-RAS (E.D. Tex. April 23, 2018) ("*Schwab I*") (notice of voluntary dismissal filed and case refiled); (2) *Chapwood Capital Investment Management, LLC v. Charles Schwab Corporation*, No. 4:18-cv-00548-ALM-KPJ (E.D. Tex. Aug. 3, 2018) ("*Schwab II*") (referred to arbitration); (3) *Butowsky v. Susman & Godfrey, LLP*, No. 416-01222-2019 (416th Dist. Ct., Collin County, Tex. March 6, 2019) ("*Susman Godfrey*") (dismissed under the Texas Citizens Participation Act); (4) *Butowsky v. Gottlieb*, No. 4:19-cv-00180-ALM-KPJ (E.D. Tex. July 31, 2019) ("*Gottlieb*"); (5) *Butowsky v. Wigdor*, No. 4:19-cv-00577-ALM (E.D. Tex. July 31, 2019) ("*Wigdor*"); and (6) *Butowsky v. Democratic National Committee, CrowdStrike, Inc., and Perkins Coie LLP*, No. 4:19-cv-582-ALM (E.D. Tex. Aug. 1, 2019) ("*CrowdStrike*") (voluntarily dismissed).

## V. DISCUSSION

### A.    NPR Defendants' assertions

### 1.    Forty-six "other defamation defendants"

Although NPR Defendants deny Plaintiff was damaged or that any party is liable to Plaintiff (or that Plaintiff in fact suffered any damages at all), NPR Defendants identify forty-six other "defamation defendants" as responsible third parties and seek leave to designate them as such under § 33.004.[8] NPR Defendants assert all of Plaintiff's lawsuits are about his role in a now-retracted Fox

---

[8] Specifically, NPR Defendants move for leave to designate the following "other defamation defendants as responsible third parties:" (1) Douglas Wigdor; (2) Jeanne Christensen; (3) Michael Willemin; (4) David Gottlieb; (5) Lawrence Pearson; (6) Wigdor LLP; (7) Rod Wheeler; (8)  Susman Godfrey, LLP; (9) Michael Gottlieb; (10) Meryl Governski; (11) Boies Schiller Flexner LLP; (12) Brad Bauman; (13) The Pastorum Group; (14) Leonard A. Gail; (15) Eli J. Kay-Oliphant; (16) Suyash Agrawal; (17) Massey & Gail LLP; (18) Arun Subramanian; (19) Elisha Barron; (20) Gloria Park; (21) Gregory Y. Porter; (22) Michael L. Murphy; (23) Bailey & Glasser LLP; (24) Turner Broadcasting System, Inc.; (25) Anderson Cooper; (26) Gary Tuchman; (27) Oliver Darcy; (28) Tom Kludt; (29) The New York Times Company; (30) Alan Feuer; (31) Vox Media, Inc.; (32)  Jane Coaston; (33) The Democratic National Committee; (34)

News story speculating that DNC staffer Seth Rich was murdered for leaking hacked DNC emails to Wikileaks and all claim the defendants defamed him through their public statements about Rich's death. According to NPR Defendants, under Plaintiff's own theory of the case, NPR Defendants allegedly caused the very same harm as the forty-six other defendants he has sued[9] or included in allegations in his lawsuits.

In their motion, NPR Defendants address the other five lawsuits, with particular focus on the *Gottlieb* case (and the *CrowdStrike* case because it incorporates the *Gottlieb* complaint). Docket Entry # 81 at pp. 10-13. According to NPR Defendants, the *Gottlieb* Second Amended Complaint begins with the following statement: "Some of the events in this case overlap with those in *Edward Butowsky v. David Folkenflik, et. al.*, which is presently pending before this Court as Case No. 4:18-cv-442-ALM. The *Folkenflik* complaint is attached as Exhibit 1 and incorporated herein by reference."[10] Docket Entry # 81, Ex. C, ¶ 1. According to NPR Defendants, Plaintiff "then incorporates his *Gottlieb* Complaint—and therefore his NPR Complaint—by reference in the *Wigdor* and *CrowdStrike* complaints." Docket Entry # 81, Ex. N, ¶ 3 (*Wigdor* Am. Compl.); Ex. O, ¶¶ 1, 8 (*CrowdStrike* Compl.).

NPR Defendants further assert Plaintiff claims related (and duplicative) damages in all of the

---

CrowdStrike, Inc.; (35) Charles Schwab Corp.; (36) Charles Schwab & Co., Inc.; (37) Schwab Institutional Enterprise; (38) Charles R. Schwab; (39) Walter W. Bettinger, II; (40) Bernard J. Clark; (41) Jonathan M. Craig; (42) Joseph R. Martinetto; (43) Nigel J. Murtagh; (44) William Bell; (45) Kevin Lewis; and (46) Perkins Coie LLP. Docket Entry # 81 at p. 8.

[9] According to NPR Defendants, Plaintiff has released his right to sue Wheeler and Wheeler's lawyer Doug Wigdor. Docket Entry # 81 at p. 8; *see also* Docket Entry # 81, Ex. S (Fox News Agreement).

[10] Additionally, in a July 26, 2019 *Touhy* letter to the United States Attorney, Plaintiff's counsel explained how the requested documents related to the immediate lawsuit and the related case of *Butowsky v. Gottlieb*, Cause No. 4:18-cv-18-ALM-KPJ (E.D. Tex.). According to Plaintiff, both cases "are centered on the same key question: whether the Rich brothers were responsible for transferring emails to Wikileaks." Docket Entry # 75-4 at p. 1.

cases.[11] Docket Entry # 81 at p. 4. Specifically, NPR Defendants contend Plaintiff alleges "similar, ever-increasing damages in each lawsuit—that he lost a third of his . . . business clients, his reputation was injured, and he suffered insult, pain, humiliation, embarrassment, and mental suffering" *Id.* at p. 1.

## 2. Five persons or entities who allegedly "enabled" Plaintiff's involvement in the Rich controversy

Again, although NPR Defendants deny Plaintiff was damaged or that any party is liable to Plaintiff, NPR Defendants also seek leave to designate five other persons or entities (Fox News Network, Malia Zimmerman, Seymour Hersh, Julian Assange, and Ellen Ratner) "who enabled Butowsky's involvement in the Rich controversy as responsible third parties under § 33.004." Docket Entry # 81 at p. 8. According to NPR Defendants, Plaintiff's various complaints allege these parties enabled his involvement in the now-retracted Fox News story: "Fox News Network itself; the retracted article's author, Malia Zimmerman; and Seymour Hersh, Julian Assange, and Ellen Ratner, all of whom encouraged [Plaintiff's] conspiracy." *Id.* at p. 2.  Even though Plaintiff has not yet sued them, NPR Defendants argue, by encouraging or contributing to Plaintiff's theories, "Fox, Zimmerman, Hersh, Assange, and Ratner participated in the creation of the retracted article that led to Wheeler's lawsuit and to NPR's reporting." *Id.*  According to NPR Defendants, "[n]one of the allegedly defamatory reporting would have been done, and therefore none of the alleged damages incurred, if Fox News, Zimmerman, Hersh, Assange, and Ratner had not encouraged or contributed

---

[11] In addition to the $60 million he seeks here, Plaintiff also claims $100 million in *Schwab II*, Cause No. 4:18-cv-548-ALM-KPJ (E.D. Tex.) and $118 million in *Wigdor*, Cause No. 4:19-cv-577-ALM (E.D. Tex.). In *Gottlieb*, Cause No. 4:19-cv-180-ALM (E.D. Tex.), Plaintiff does not allege an amount of damages but instead argues generally that the defendants' actions resulted in harassment, loss of clients, and lost business opportunities. Docket Entry # 81 at p. 1, n. 1.

to Butowsky's theories." *Id*. at p. 15.

## B.      Plaintiff's assertions

Plaintiff opposes Defendants' motion, first asserting § 33.004 is not applicable to this federal

diversity cause of action. Docket Entry # 82 at pp. 2-3.To the extent the Court finds § 33.004 is

applicable, Plaintiff agrees the NPR Defendants can designate Douglas Wigdor as a responsible third

party because "Plaintiff alleges in this action that Wigdor acted in concert with" the NPR

Defendants. *Id.* at p. 3 n. 5. However, with regard to the remaining fifty alleged "responsible third

parties," Plaintiff asserts the following three reasons why the Court should deny NPR Defendants

leave to designate: (1) NPR Defendants fail to allege any facts concerning the specific responsibility

of each putative "responsible third party," none of which Plaintiff has alleged in this case have

caused or contributed to causing the harm for which recovery of damages is sought; (2) NPR

Defendants had an obligation to disclose them earlier and failed to do so, noting NPR Defendants'

Rule 26(a)(1) disclosures did not mention § 33.004; and (3) the statute of limitations has expired

with respect to the alleged "responsible" third parties. *See* TEX. CIV. PRAC. & REM. CODE §

33.004(d) ("A defendant may not designate a person as a responsible third party with respect to a

claimant's cause of action after the applicable limitations period on the cause of action has expired

with respect to the responsible third party if the defendant has failed to comply with its obligations,

if any, to timely disclose that the person may be designated as a responsible third party under the

Texas Rules of Civil Procedure.").

## C.      Whether § 33.004 is applicable in this case

Similar to the plaintiff in *Withers v. Schneider,* 13 F. Supp. 3d 686, 688 (E.D. Tex. 2014),

Plaintiff first disputes the applicability of § 33.004 in this diversity action, arguing third-party

practice in federal courts should instead be governed by Rule 14 of the Federal Rules of Civil Procedure. *See* Docket Entry # 82 at p. 2. Noting no controlling authority exists from the Fifth Circuit concerning the issue, Judge Gilstrap, now Chief Judge Gilstrap, noted "various other district courts within this circuit, however, have concluded that the designation of a responsible third party under § 33.004 does not conflict with Rule 14." *Withers,* 13 F. Supp. 3d at 688. According to Chief Judge Gilstrap, "§ 33.004 exists to allow proper allocation of fault among both the named defendants and those persons designated as responsible third parties, rather than to govern the procedures by which third-parties may be brought into the case as Rule 14 does." *Id.* "Finding no conflict between Rule 14 and § 33.004, the Court [was] not persuaded that Rule 14 forecloses the applicability of § 33.004 in federal diversity actions and [held] accordingly that § 33.004 is substantive law and applie[d] in the [*Withers*] case." *Id.*

Another district court in the Fifth Circuit recently noted "[d]istrict courts in the Fifth Circuit have found that Texas's proportionate responsibility statute, TEX. CIV. PRAC. & REM. CODE § 33.004, is not in conflict with the Federal Rules of Civil Procedure and can therefore apply substantively in a diversity case." *Oliva v. USA Truck, Inc*., No. 3:18-CV-2814-E, 2019 WL 7756355, at *7 (N.D. Tex. Nov. 15, 2019)*, report and recommendation adopted*, No. 3:18-CV-02814-E, 2020 WL 418890 (N.D. Tex. Jan. 27, 2020) (quoting *Vecron Exim Ltd. v. XPO Logistics, Inc*., Civ. A. No. H-18-2394, 2019 WL 2025206, at *4 (S.D. Tex. May 8, 2019); accord *Gutierrez* [*v. Tractor Supply Co.*], 2018 WL 3055752, at *1 [(S.D. Tex. June 20, 2018)]; *Ramos v. Beltran*, No. 5:15-CV-1042-RP, 2016 WL 8234983, at *1 (W.D. Tex. Dec. 20, 2016); *Parker v. Bill Melton Trucking, Inc*., No. 3:15-CV-2528-G, 2016 WL 5341224, at *1 (N.D. Tex. Sept. 23, 2016)). However, the court noted that in addition to various "concerns regarding Section 33.004's deadline

for filing a motion,[12] '[f]ederal district courts in the Fifth Circuit have varying approaches to the disclosure requirement of Section 33.004(d) and the Texas Rules of Civil Procedure's applicability in federal court.'" *Oliva*, 2019 WL 7756355, at *9 (quoting *Magna Equities II, L.L.C. v. Heartland Bank*, Civ. A. No. H-17-1479, 2018 WL 1135482, at *5 (S.D. Tex. Feb. 28, 2018)); *see, e.g. Morris v. Aircon Corp.*, No. 9:16-CV-35, 2017 WL 2927478, at *3 (E.D. Tex. June 15, 2017), *report and recommendation adopted,* No. 9:16-CV-35, 2017 WL 2911733 (E.D. Tex. July 6, 2017) ("Other courts [in the Fifth Circuit] have similarly struggled with the notion that in federal court, a Texas rule of discovery could play a determining role in the designation of responsible third parties."); *see also Spencer v. BMW of North America, LLC*, Civil Action No. 5:14–869–DAE, 2015 WL 1529773, at *2 n.3 (W.D. Tex. April 2, 2015) ("There is a reasonable argument that Texas Rules of Civil Procedure ceased to have any relevancy to the case once the action was removed to federal court."); *see also Webber, L.L.C. v. Symons Corp*., Civil Action No. 4:12–181–A, 2013 WL 3356291, at *3 (N.D. Tex. July 3, 2013) (reasoning that either the Texas Rules of Civil Procedure are inapplicable in federal court or apply only for § 33.004(b) and thus require the plaintiffs to request disclosure).

Another district court in the Fifth Circuit recently stated that "in the nearly 15 years since the revision of § 33.004, the Fifth Circuit Court of Appeals has not addressed this issue" and that there "exists some conflict regarding whether to apply § 33.004's 60–day deadline in a diversity action." *Argent Holdings, L.L.C. v. E. El Paso Physicians Med. Ctr., L.L.C.*, No. EP-17-CV-00199-ATB, 2018 WL 1915085, at *2 (W.D. Tex. Apr. 23, 2018) (citations omitted). The court noted the bulk of authority holds that § 33.004 is substantive law, which does not conflict with Federal Rule of

---

[12] *See, e.g. Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, No. CIV.A. H-08-1774, 2011 WL 5920930, at *2 & n. 2 (S.D. Tex. Nov. 28, 2011) (holding the statutory time limit on filing a motion for leave to designate responsible third parties—a procedural aspect of the Texas statute—is not binding on federal courts and stating the timeliness of the motion is governed by the scheduling order mandated by Federal Rule of Civil Procedure 16(b)).

Civil Procedure 16 as it pertains to scheduling orders. *Argent Holdings*, 2018 WL 1915085, at *2. Applying *Erie*, the court in *Argent Holdings* held likewise. *Id.* at *2-*3 (noting a responsible third party is "designated" rather than "joined" and concluding the deadlines for joinder do not conflict with § 33.004).[13]

Here, the Court finds § 33.004 does not conflict with Rule 14 of the Federal Rules of Civil Procedure – "the closest federal procedural counterpart." *Stabilis Fund II, LLC v. Compass Bank*, No. 3:18-CV-283-B, 2018 WL 4772411, at *2 (N.D. Tex. Oct. 3, 2018). Thus, § 33.004 applies to federal diversity cases under the *Erie* doctrine. *Id.*; *see also Sting Soccer Operations Grp. LP v. JPMorgan Chase Bank NA*, No. 4:15-CV-00127, 2016 WL 5234918, at *1 (E.D. Tex. Sept. 22, 2016) (noting most district courts have found § 33.004(a) is applicable in a diversity case). Plaintiff's first argument is without merit.

In the event the Court finds § 33.004(a) is applicable, Plaintiff agrees NPR Defendants can designate Douglas Wigdor as a responsible third party because "Plaintiff alleges in this action that Wigdor acted in concert with" the NPR Defendants. Docket Entry # 82 at p. 3, n. 5. The Court grants NPR Defendants leave to designate Douglas Wigdor as a responsible third party.  The Court now considers whether the remaining fifty persons and entities meet the definition of responsible third party.

---

[13] The court in *Argent Holdings* further explained the division among district courts appears to "stem from two issues." *Argent Holdings*, 2018 WL 1915085, at *4. First, it is the practice of some courts to schedule deadlines for the designation of third parties. *Id.* (citations omitted). Acknowledging the deadlines set by the court clearly govern, the court had set no such deadline in *Argent Holdings*. *Id.* "Second, prior to 2003, § 33.004 was a procedural statute governing the joinder of parties." *Id.* (citation omitted). According to the court, in 2003, the Texas legislature modified the statute to its current version, which provides for "designation." *Id.* The court noted many of the early decisions which find § 33.004 procedural were based on the pre-2003 version of the statute; thus, the division amount district courts "is less significant than it first appears." *Id.*

D.   **Whether the remaining fifty persons and entities meet the definition of "responsible third party"**

1.   **Parties' assertions**

Assuming § 33.004 applies, Plaintiff next asserts, with the exception of Wigdor, the remaining fifty persons and entities designated by NPR Defendants do not meet the definition of responsible third party. Plaintiff argues NPR Defendants fail to allege any facts concerning the specific responsibility of each putative "responsible" third party. Docket Entry # 82 at p. 3. Plaintiff points out he seeks damages for the harm caused by NPR Defendants' defamation. *Id*. at p. 3, n. 3 (thus acknowledging the designation of Wigdor is proper "because Plaintiff alleges in this action that Wigdor acted in concert with Folkenflik to cause Plaintiff harm").  Plaintiff further argues NPR Defendants' motion is untimely. *Id.* at p. 4. Specifically, Plaintiff asserts as follows:

> The NPR Defendants fail to show, for instance, how FNN *or* Zimmerman *or* Hersh *or* Assange *or* Ratner *or any of them* caused Folkenflik and NPR to publish the defamatory statements at issue in the second amended complaint. Assange and Ratner are not even mentioned in the NPR Defendants' answer to the second amended complaint. . . . Hersh is mentioned once. Zimmerman is mentioned a mere five times. Except for Wigdor, the same may be said of the remaining 46 alleged 'responsible' third parties. CPRC § 33.004 is not even among the 31 'Defenses' asserted by the NPR Defendants in this action. *Ramirez v. Abreo*, 2010 WL 11565455, at * 4 (N.D. Tex. 2010) ('As to the defamation claim, the Court agrees with Plaintiffs and finds that leave to designate must be denied. The Defendants have failed to show how Plaintiffs' criminal attorneys' ineffective assistance could have contributed to any harm caused by the allegedly defamatory statements spoken by Yarbrough years later'); *see Nels Cary, Inc. v. Day*, 2008 WL 631242, at * 2 (N.D. Tex. 2008) (stating that leave would be granted if defendant's answer and counterclaim sufficiently allege that the third party caused or contributed to causing in any way the harm for which recovery of damages was sought).

*Id.* at pp. 3-4 (emphasis in original).

In their reply, NPR Defendants refer to their motion, wherein they explain how the third parties, "under Butowsky's view of the world," are "responsible for the harm Butowsky claims in

this case." Docket Entry # 83 at p. 2 (citing Docket Entry # 81 at pp. 9-15). Regarding the forty-five

other defamation defendants, NPR Defendants assert "the facts about their alleged involvement come

directly from Butowsky's own pleadings." Docket Entry # 83 at p. 2. "As for the [five] others," NPR

Defendants assert Plaintiff has made allegations in his other complaints about their roles in providing

him information regarding Seth Rich. *Id*. Thus, NPR Defendants argue they have sufficiently shown

the third parties caused or contributed to causing the same alleged harm for which recovery is sought

in this case.

NPR Defendants further dispute Plaintiff's argument that because NPR Defendants' answer

does not sufficiently mention the persons or entities they cannot be designated responsible third

parties. *Id*. at p. 3. According to NPR Defendants, Plaintiff was aware of their involvement and

himself has set forth their involvement in his own pleadings. *Id*. at pp. 3-4.

## 2.    Applicable law

### a.    Section 33.004

As noted above, § 33.004 of the Texas Civil Practice and Remedies Code allows defendants

to "seek to designate a person as a responsible third party by filing a motion for leave to designate

. . . on or before the 60th day before the trial date."[14] *Ranolls v. Dewling*, No. 1:15-CV-111, 2016

WL 7356809, at *2 (E.D. Tex. Mar. 7, 2016) (quoting TEX. CIV. PRAC. & REM. CODE §

33.004(a);also citing *Axxiom Mfg., Inc. v. McCoy Inv., Inc.*, 846 F. Supp. 2d 732, 754 (S.D. Tex.

2012); also citing *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 405-06 (Tex. App.—El Paso 2010,

no pet.)).  Section 33.004(f) instructs courts to grant leave "unless another party files an objection

---

[14] NPR Defendants filed their current motion on December 13, 2019. The final pretrial conference is scheduled April 1, 2021 before District Judge Mazzant, with trial between May 3, 2021 and June 4, 2021. Docket Entry # 92 at p. 3.

to the motion for leave on or before the 15th day after the date the motion is served." *Ranolls*, 2016 WL 7356809, at *2 (quoting TEX. CIV. PRAC. & REM. CODE § 33.004(f)). When an objection is timely filed, courts may deny leave only if the objecting party establishes that the defendant failed to plead "sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." *Ranolls*, 2016 WL 7356809, at *2 (quoting TEX. CIV. PRAC. & REM. CODE § 33.004(g)(1)).

Here, Plaintiff does not contend the December 13, 2019 motion to designate did not provide him with "fair notice." *In re Manon*, 2018 WL 2943562, at *3. Thus, the Court addresses Plaintiff's substantive objection to the motion to designate, namely that NPR Defendants fail to plead sufficient facts concerning the alleged responsibility of each person or entity to satisfy the pleading requirements.

### b.    Pleading requirements

"The pleading requirements for designating a responsible third party at the outset of a case are not stringent." *In re Manon*, No. 04-18-00311-CV, 2018 WL 2943562, at *3 (Tex. App. – San Antonio June 13, 2018) (quoting *In re Greyhound Lines, Inc.*, 05–13–01646–CV, 2014 WL 1022329, at *2 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem. op.)). The standard for designating a potentially responsible third party is fair notice pleading under the Texas Rules of Civil Procedure. *In re VB Harlingen Holdings*, No. 13-19-00131-CV, 2019 WL 2707978, at *5 (Tex. App. – Corpus Christi-Edinburg June 27, 2019), *reh'g denied* (Nov. 23, 2019) (citing *In re Bustamante*, 510 S.W.3d at 737; also citing *In re CVR Energy, Inc.*, 500 S.W.3d 67, 80 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding)). A pleading is sufficient when "an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the

controversy." *In re VB Harlingen Holdings*, 2019 WL 2707978, at *5 (quoting *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007)). In determining whether to grant a motion for leave to designate, the trial court is "restricted to evaluating the sufficiency of the facts" pleaded by the movant and is "not permitted to engage in an analysis of the truth of the allegations or consider evidence on [the third party's] ultimate liability." *In re VB Harlingen Holdings*, 2019 WL 2707978, at *5 (quoting *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding)). To determine whether a defendant has pled sufficient facts, federal courts may "look at allegations in a defendant's answer and/or counterclaim[,] ... [and] allegations in a plaintiff's pleading that demonstrate responsibility of a third party."[15] *Magna Equities II, LLC v. Heartland Bank*, No. CV H-17-1479, 2018 WL 1135482, at *3 (S.D. Tex. Feb. 28, 2018) (quoting *Eisenstadt v. Telephone Electronics Corp.*, Civil Action No. 3:06–1196–0, 2008 WL 4452999, at *2 (N.D. Tex. Sept. 30, 2008); also citing *In re CVR Energy, Inc.*, 500 S.W.3d 67, 80 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[Defendant] satisfied this low threshold. Its motion for leave to designate [the third party] quoted from Plaintiffs' own allegations against [the third party].")).

### c.   Definition of responsible third party

A responsible third party is defined as follows:

---

[15] Under Texas law, if a pleading regarding designation of a responsible third party is deficient, the trial court lacks discretion to deny the motion to designate without affording the movant an opportunity to replead. *In re VB Harlingen Holdings*, 2019 WL 2707978, at *6 (citing *In re Coppola*, 535 S.W.3d 506, 508 (Tex. 2017); also citing TEX. CIV. PRAC. & REM. CODE § 33.004(g); *In re Smith*, 366 S.W.3d 282, 288 (Tex. App.—Dallas 2012, orig. proceeding)). The movant need not make a specific request for time to replead. *In re VB Harlingen Holdings*, 2019 WL 2707978, at *6 (citing *In re Smith*, 366 S.W.3d at 288). Further, "section 33.004 does not contain a futility exception to its rule that the movant must be given an opportunity to replead." *In re VB Harlingen Holdings*, 2019 WL 2707978, at *6 (citing *In re Smith*, 366 S.W.3d at 286). Thus, the objecting party bears the burden of showing that the designating party was given leave to replead before the trial court has discretion to deny the motion for leave to designate. *In re VB Harlingen Holdings*, 2019 WL 2707978, at *6 (citing *In re Smith*, 366 S.W.3d at 287; also citing TEX. CIV. PRAC. & REM. CODE § 33.004(g)(2)).

> [A]ny person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these. The term 'responsible third party' does not include a seller eligible for indemnity under Section 82.002.

TEX. CIV. PRAC. & REM. CODE § 33.011(6). Thus, the language requires a moving party to sufficiently show each person or entity caused or contributed to causing the harm for which recovery is sought by way of negligence or by violating an applicable legal standard with regards to the claims asserted in the case. In other words, a third party cannot be designated a responsible third party if that party's actions were not "negligent" or otherwise "violat[ed] an applicable legal standard." *Stabilis Fund II, LLC v. Compass Bank*, No. 3:18-CV-283-B, 2018 WL 4772411, at *4 (N.D. Tex. Oct. 3, 2018) (quoting § 33.011(6) and generally citing *Ellis v. United States*, 673 F.3d 367, 372 (5th Cir. 2012) (concluding "that the [defendant] failed to show that NE Methodist or the physicians treating [the plaintiff] there were negligent and thus failed to show that they are responsible third parties")).

### d.    Relevant case law

The Court finds instructive *In re Hurst Saturn, Ltd.*, No. 07-19-00278-CV, 2019 WL 6723403 (Tex. App. – Amarillo Nov. 8, 2019), *reh'g denied* (Dec. 9, 2019), and the cases discussed therein. The *Hurst* case arose from financial problems at three Metroplex-area car dealerships (relators). The relators alleged that between 2010 and 2015 Robinson prepared and reviewed financial statements and tax returns that tended to show that the dealerships were turning a profit. *Id*. at *1. The relators alleged they relied on the documents and representations from Robinson in making investment decisions and paying taxes. *Id.* In 2015-2016, the relators learned the dealerships were not in sound fiscal shape but were in fact near collapse. *Id.* When they investigated, the relators

"discovered mismanagement and theft by some of the dealerships' employees and their associates."
*Id*. These discoveries led the relators to file separate lawsuits against employees, lenders, and others.
*Id*.

In the case before the court, the relators sued Robinson, alleging professional negligence,
breach of contract, and negligent misrepresentation. *Id.* The relators alleged "Robinson's failures
caused them to pour money into failing businesses and pay taxes on nonexistent profits." *Id.*
"Robinson moved for leave to designate as responsible third parties several other entities and
individuals, including dealership employees and their affiliates, who Relators had alleged to be
involved in falsifying records, sales fraud, financing fraud, rebate fraud, audit fraud, and more." *Id.*
Over the relators' objection, the trial court granted Robinson leave to designate eighteen responsible
third parties. *Id.*

On appeal, the relators argued the persons and entities designated by Robinson did not meet
the definition of responsible third parties.  *Id.* at *2. According to the court, the "2003 change in
definition means that a responsible third party must have caused the same harm—not necessarily the
same damages—that the defendant caused." *Id.* at *3. The relators argued the harm caused by
Robinson differed from the harm caused by the third parties, "although there may be some overlap
between the damages they caused." *Id.*  According to the relators, because the two harms were
different, the trial court erred by allowing Robinson to designate the third parties as responsible third
parties. *Id.* "In their view, while the third parties might have satisfied the pre-2003 definition of
responsible third party, they [did] not fit the current version." *Id.*

The court noted that by changing the definition of responsible third party, the Texas
Legislature made status as a responsible third party depend not on whether one contributed to the

plaintiff's damages, but on whether one contributed to the harm for which damages are sought. *Id.* Therefore, the court determined the harm for which the relators sought to recover damages in their lawsuit. *Id.* Noting the word "harm" is not defined in the statute, the court noted the plain meaning of "harm" is consistent with a loss or injury. *Id.* (citation omitted).

On the one hand, the relators asserted "Robinson caused the harm of the loss [of] professional services and accurate accounting/tax records" *Id.* (emphasis removed). The relators' objection to Robinson's motion for leave focused on Robinson's alleged "failure to comply" with accounting standards, "which resulted in material misstatements on [Relators'] reviewed financial statements." *Id.* The relators did not dispute the third parties engaged in fraud or conduct that harmed them, but rather contended "the third parties caused a different and distinct harm, namely the deprivation 'of fiduciary/employee services or theft.'" *Id.* Specifically, the relators claimed the third parties "orchestrated a pattern of widespread financial abuse tantamount to criminal fraud." *Id.* According to the relators, Robinson failed to show how these actions had "anything to do with Robinson's failure to comply with applicable standards of care for accountants." *Id.*

On the other hand, Robinson maintained the claimed harm from Robinson's supposed failure to detect the fraud was the same as the harm caused by the third parties' alleged underlying fraud. *Id.* at *4. According to Robinson, even if the third parties did not cause Robinson's supposed negligent conduct, "the third parties indisputably contributed to the ultimate loss suffered by Relators." *Id.*

For support, the relators relied on *City Nat'l Bank v. Smith*, No. 06-15-00013-CV, 2016 WL 2586607 (Tex. App.—Texarkana May 4, 2016, pet. denied) (mem. op.). *Id.* at *3. *Smith* was a legal malpractice case in which an attorney missed a deadline, failing to file the plaintiff's malicious

prosecution claim against a bank within the statute of limitations. *Id.* (citing *Smith*, 2016 WL 2586607, at *1). The attorney sought to designate the bank as a responsible third party. *Id.* "Following a thorough analysis of the amended definition of 'responsible third party,'[16] the Sixth Court of Appeals determined that the harm or injury involved was the loss of the plaintiff's cause of action." *Id.* (citing *Smith*, 2016 WL 2586607,  at *6).

Therefore, the court in *Smith* concluded, to designate the bank as a responsible third party, the attorney was required to show that the bank contributed to the loss of the plaintiff's cause of action, e.g., by contributing to missing the filing deadline. *Id.* (citing *Smith*, 2016 WL 2586607, at *8) ("If Smith's harm or injury is the loss of his cause of action against the Bank caused by the missed statute of limitations, then only those persons who contributed in causing the loss of his cause of action against the Bank should be considered by the jury in the proportionate responsibility issue."). According to the court in *Smith*, "to establish the Bank as a responsible third party, Smith must have both alleged and proven that the Bank contributed to causing Smith to lose his cause of action against the Bank, e.g., by somehow contributing to missing the statute of limitations." *Smith*, 2016 WL 2586607, at *8. Because the attorney had not alleged or produced any evidence that the

---

[16] According to the court in *Smith*, when construing the relevant statutes and their differing formulations together, it appears the Texas Legislature intended "harm" to be somewhat synonymous with "injury" and "damage" (i.e., "personal injury, property damage, death, or other harm," as used in the definitions of claimant, percentage of responsibility and settling person). *Smith*, 2016 WL 2586607, at *7. "Thus, when 'harm' is used in the definition of responsible third person and in determining proportionate responsibility, it would include 'injury' and 'damage.' By the same token, when 'injury or damage' is used concerning when a responsible third party may be stricken, it includes 'harm.'" *Id.* (noting "this construction harmonizes and brings consistency to the different uses of these phrases throughout Chapter 33").

The court in *Smith* also noted that, in the 2003 amendments, the Texas Legislature made a clear distinction between "harm" and "damages." *Id.* In the amendments, the Legislature clarified the "harm" could be personal injury, property damage, death, or other harm. "Damages," on the other hand, are the compensation the claimant seeks to recover. *Id.* (citations omitted). "Thus, in determining if a person may be a responsible third party, the 2003 amendments mandate that we are no longer to determine whether the person is liable to the plaintiff for all or part of the damages claimed, as under the former definition, but rather whether the person contributed to cause the harm for which damages are sought." *Id*.

bank in any way contributed to the failure to timely file suit, the bank was not a responsible third party. *Id*. at *9.

The relators also relied on another legal malpractice case, *DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512 (Tex. App.—Eastland 2017, pet. denied). In that case, the state appellate court determined the harm for which damages were sought related to the failure to timely perfect the security interest in a note. *In re Hurst Saturn*, 2019 WL 6723403, at *3 (citing *DLA Piper*, 539 S.W.3d at 517). The law firm sought to designate two companies as responsible third parties. *Id*. Because DLA Piper had not asserted that those entities contributed to the untimely filing of the financing statement, the appellate court concluded they were not responsible third parties. *Id*.

Before ruling, the court in *Hurst* discussed one more case for the proposition that the fact that the third parties were not accountants did not necessarily mean they could not have contributed to the loss of accurate accounting information.   *In re Hurst Saturn*, 2019 WL 6723403, at *4 (discussing *In re Smith*, 366 S.W.3d 282, 284 (Tex. App.—Dallas 2012, orig. proceeding)). The court in *Hurst* concluded as follows:

> In this case, if the harm to Relators includes their alleged deprivation of accurate information about the dealerships' finances, then any person or entity who contributed to causing the deprivation of accurate information may properly be designated as a responsible third party. Robinson has alleged that the third parties falsified and manipulated dealership records, conspired to conceal losses, and engaged in other fraudulent schemes. Relators' own pleadings in other lawsuits against the third parties raise similar contentions. Because Robinson has presented pleadings and evidence indicating that the third parties' practices caused or contributed to causing Relators' claimed harm, i.e., the loss of accurate accounting information, we conclude that the trial court did not err in granting leave to designate them as responsible third parties.

*In re Hurst Saturn*, 2019 WL 6723403, at *4.

**3.**     **Whether NPR Defendants have pleaded sufficient facts that each person or entity allegedly caused or contributed to causing the harm for which recovery of damages is sought**

**a.**     **Harm for which recovery of damages is sought in this case**

The Court must first determine the harm alleged in this case for which recovery is sought. The defamation and business disparagement claims are relevant to this motion. A defamation claim involves four essential elements: (1) the publication of a false statement of fact to a third party without legal excuse, (2) that was defamatory concerning the plaintiff, (3) that was made with the requisite degree of fault, and (4) damages. *Durant v. Anderson*, No. 02-14-00283-CV, 2020 WL 1295058, at *20 (Tex. App. – Ft. Worth Mar. 19, 2020) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding)).

Business disparagement and defamation are similar in that both involve harm from the publication of false information. *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (citing *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014)). The respective torts, however, serve different interests. *Id.* Whereas "defamation actions chiefly serve to protect the personal reputation of an injured party, [ ] a business disparagement claim protects economic interests." *Id.* (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex.2003)). Business disparagement or "injurious falsehood applies to derogatory publications about the plaintiff's economic or commercial interests." *In re Lipsky*, 460 S.W.3d at 591 (quoting 3 DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS § 656, at 615 (2d ed.2011)). The tort does not seek to redress dignitary harms to the business owner, but rather redresses aspersions cast on the business's commercial product or activity that diminishes those

interests. *In re Lipsky*, 460 S.W.3d at 591 (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766–67 (Tex.1987)).

As characterized by Plaintiff throughout this case, he alleges he suffered harm as a result of NPR Defendants' alleged conspiracy with Wigdor to arrange the facts in a misleading way to misrepresent Plaintiff's role in the Seth Rich murder investigation and the Fox News story. *See Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 3712026, at *16 (E.D. Tex. Aug. 7, 2019). Plaintiff seeks money damages for alleged loss and injury to his business, insult, pain and mental suffering, humiliation, embarrassment, and injury to his reputation sustained as a result of NPR Defendants' publication of allegedly false and defamatory statements.  Docket Entry # 52 at p. 2.

The Court finds the harm for which recovery of damages is sought in this case, which involves defamation and business disparagement claims, is reputational harm and harm to commercial or economic interests from the publication of false information about Plaintiff online and via Twitter between August 2017 and March 2018 – statements Plaintiff alleges injured his business and reputation.

**b.      Alleged harm in Plaintiff's lawsuits regarding forty-five other defamation defendants**

As an initial matter, the Court notes Plaintiff's argument that NPR Defendants' answer does not contain allegations sufficient to put Plaintiff on notice of NPR Defendants' position regarding the third parties' alleged responsibility. In *Magna Equities II, LLC v. Heartland Bank*, No. CV H-17-1479, 2018 WL 1135482, at *4 (S.D. Tex. Feb. 28, 2018), the plaintiffs argued "Defendant's First Amended Answer and Counterclaim also does not contain any allegation sufficient to put Plaintiffs on notice of Defendant's position that Flemming or Roth somehow share legal responsibility for Plaintiffs' injuries." *Id.* According to the plaintiffs in that case, "[s]imply

31

regurgitating Plaintiffs' factual allegations that Roth and Flemming—unaware of Defendant's intentions and believing its representations to be true—passed along Defendant's false promises to Plaintiffs is insufficient to meet the pleading standard under Section 33.004 when those factual allegations do not give rise to any legal theory for liability." *Id*. The court was not persuaded by the plaintiffs' arguments. *Id*. Noting the defendant cited the plaintiffs' own complaint to support its claim that Roth and Flemming were responsible third parties, *id.* at * 3, the court concluded that because the plaintiffs' "own allegations name Roth Capital and Flemming as involved in the alleged representations, Plaintiffs [were] easily on fair notice of the claim involved." *Id.* at * 4.

Similarly here, NPR Defendants argue Plaintiff's "own allegations show he has, in fact, taken the position that both the NPR Defendants and the [45 other defamation defendants] caused him the same reputational and business harm." Docket Entry # 83 at p. 3. For example, NPR Defendants contend Plaintiff alleges NPR Defendants, the Wigdor LLP defendants, and the Schwab defendants are responsible for the termination and loss of Chapwood's agreement with Charles Schwab. *See* Docket Entry # 72, ¶ 11; Docket Entry # 81, Ex. N (*Wigdor* Am. Compl.), ¶ 6;2 Ex. U (*Schwab II* Compl.) at ¶¶ 3, 18-19.  According to NPR Defendants, Plaintiff alleges NPR Defendants, Susman Godfrey, LLP, *Gottlieb* defendants (and therefore, *CrowdStrike* defendants by extension), and *Schwab* defendants are all responsible for Chapwood losing clients. *See* Docket Entry # 72 at 11; Docket Entry # 81, Ex. B (Butowsky Decl.) at ¶ 17; Ex. T (*Gottlieb* Orig. Compl.), ¶ 6; Ex. C (*Gottlieb* Sec. Am. Compl.), ¶ 7; Ex. U (*Schwab II* Compl.) at ¶ 1. According to NPR Defendants, in several of the lawsuits, Butowsky is even more specific, claiming the loss of one third of Chapwood's business. Docket Entry # 81, Ex. B at ¶ 17; Ex. T, ¶ 6; Ex. C, ¶ 7. NPR Defendants assert these specific allegations show Plaintiff is claiming the same "harm" in this case that he claims

against forty-five other defamation defendants. Therefore, NPR Defendants argue these other defamation defendants are—according to Plaintiff—responsible for the harm "for which recovery of damages is sought" in this case and meet the definition of responsible third parties.

In *Hurst*, the court noted that if the harm to the relators included their alleged deprivation of accurate information about the dealerships' finances, "then any person or entity who contributed to causing the deprivation of accurate information may properly be designated as a responsible third party." *In re Hurst Saturn, Ltd.*, No. 07-19-00278-CV, 2019 WL 6723403, at *4 (Tex. App. – Amarillo Nov. 8, 2019), *reh'g denied* (Dec. 9, 2019). According to the court, Robinson alleged the third parties falsified and manipulated dealership records, conspired to conceal losses, and engaged in other fraudulent schemes. *Id.* Notably, the court looked to the relators' "own pleadings in other lawsuits against the third parties," and noted they "raise[d] similar contentions." *Id.* "Because Robinson ha[d] presented pleadings and evidence indicating that the third parties' practices caused or contributed to causing Relators' claimed harm, i.e., the loss of accurate accounting information," the appellate court in *Hurst* concluded the trial court did not err in granting leave to designate them as responsible third parties. *Id.*

Similarly here, the Court looks to Plaintiff's own pleadings in the other lawsuits against the other defamation defendants to see whether they raise similar contentions regarding the harm for which recovery of damages is sought in this case.

### *Schwab II* case (4:18-cv-548)

In the refiled *Schwab II* case, Plaintiff and Chapwood Capital Investment Management, LLC, a Texas limited liability company ("Chapwood") sued the following eleven persons and entities (all of which NPR Defendants seek leave to designate as responsible third parties): Charles Schwab

Corporation, Charles Schwab & Co., Inc., Schwab Institutional Enterprise, and individual Schwab officers and directors, Charles R. Schwab, Walter W. Bettinger, II, Bernard J. Clark, Johnathan M. Craig, Joseph R. Martinetto, Nigel J. Murtagh, William Bell and Kevin Lewis, jointly and severally. Docket Entry # 81, Ex. U (*Schwab II* Compl.). In that case, which has been referred to arbitration,[17] the plaintiffs seek compensatory damages and punitive damages in a sum not less than $100,000,000.00 "arising out of Schwab's defamation *per se*, business disparagement, tortious interference with contract and business expectancies, and breach of contract." *Id*. at p. 2.

In their *Schwab II* complaint, the plaintiffs allege Chapwood enjoyed an excellent working relationship with Schwab for over ten years, but that "all changed on August 30, 2017, when Schwab precipitously terminated the relationship without notice, without any cause, indeed without any written or verbal explanation."[18] *Id.* According to the plaintiffs, in "August 2017, Schwab informed Ed Butowsky – Chapwood's managing partner – that 'Senior Management' at Schwab wanted to have a conference call to discuss Butowsky's 'political views and Trump.'" *Id*. The plaintiffs allege Butowsky agreed to the call, but the call never took place. "Rather, Schwab and its apex officials proceeded post-haste and with reckless disregard for the truth to defame Chapwood and Butowsky,

---

[17] On October 29, 2019, Plaintiff and Chapwood, and the *Schwab* defendants filed a Joint Motion to Dismiss and Compel Arbitration, requesting the Court enter an Order dismissing without prejudice Defendants Charles Schwab Corporation, Schwab Institutional Enterprise, Charles R. Schwab, Bernard J. Clark, Johnathan M. Craig, Joseph R. Martinetto, Nigel J. Murtagh, and William Bell. (Cause No. 4:18-cv-548, Docket Entry # 14). The parties further requested the Court enter an Order compelling binding arbitration of all claims and causes of action that were or could have been asserted in the action against the remaining Defendants Charles Schwab & Co., Inc., Walter W. Bettinger, II, and Kevin Lewis and staying this civil action pending the outcome of arbitration.

On October 30, 2018, the Court entered an Order staying the *Schwab II* case pending binding arbitration, as agreed upon by the parties. (Cause No. 4:18-cv-548, Docket Entry # 15).

[18] According to the plaintiffs in *Schwab II*, on February 19, 2008, Chapwood and Schwab entered into an Investor Manager Services Agreement (the "Agreement"). Docket Entry # 81, Ex. U (*Schwab II* Compl.) at ¶ 7.

disparage Chapwood's business, and intentionally and maliciously interfere with Chapwood's client relationships." *Id*.

The plaintiffs seek "money damages for loss of business, income and clients, injury to good will, and the insult, embarrassment, humiliation and injury to reputation caused by Schwab's unwarranted and egregious actions." *Id.* at p. 3 (further alleging that because of Schwab's intentional wrongdoing, Chapwood's assets under management plunged by over $45,000,000.00 and Chapwood lost over 268 customer accounts and suffered a substantial loss of income). Specifically, the plaintiffs allege that following the publication of Folkenflik's August 1, 2017 article and the filing of Wheeler's lawsuit against Butowsky and others, the *Schwab* defendants made and published to third-parties, including clients and former clients of Chapwood, numerous false factual statements, of or concerning Chapwood and Butowsky. *Id*., ¶ 31. According to the plaintiffs, the *Schwab* defendants acted with actual malice and reckless disregard for the truth by, among other things, publishing letters to Chapwood's clients and former clients (beginning in late August 2017 and continuing through January 2018) that contained half-truths and concealed material information; concocting a story about Butowsky "running from the law" that was knowingly false; and promoting a false narrative that implied dishonesty, unethical behavior and breach of duty by Chapwood and Butowsky. *Id*., ¶ 34a-c; *see also id.*, ¶ 22 ("In the letters, Schwab told clients (and former clients) that if they wanted Chapwood or its representatives to continue to manage their brokerage account, 'you will need to transfer your account to a broker-dealer or custodian other than Schwab.' Clients who chose to maintain an account at Schwab were informed that '[y]our statements will no longer have Chapwood listed on them and copies will no longer be sent to Chapwood.' These statements made it appear that Chapwood was so untrustworthy and so dishonest that Schwab would have nothing

to do with Chapwood. . . .Defendants' motive was to steal Chapwood's clients and, thereby, injure Chapwood's business.").

The plaintiffs allege the *Schwab* defendants had a "predetermined agenda to get rid of Chapwood and Butowsky based on Folkenflik and Wigdor's false narrative and to poach Chapwood's clients, and they concealed that agenda from Chapwood's clients and former clients." *Id*., ¶ 34d. The plaintiffs further allege the *Schwab* defendants initiated the defamation and went out of their way to publish statements to clients and former clients; the defendants could have communicated termination of the Agreement privately to Chapwood; and the defendants chose to make a public spectacle of the matter, which was calculated to insult, embarrass, humiliate and cast aspersion on Chapwood and Butowsky. *Id*., ¶ 34f.

In the *Schwab II* lawsuit, Butowsky and Chapwood seek very specific damages related to their allegations against the *Schwab* defendants.  Among other things, they allege Chapwood diligently searched for another broker-dealer and custodian for its clients' assets; Schwab's unexplained termination caused "endless embarrassing and unanswerable questions;" Chapwood was rejected by numerous companies; and Chapwood finally secured a broker-dealer and custodian in early 2018. Docket Entry # 81, Ex. U (*Schwab II* Compl.), ¶ 28. "In addition to a $45,000,000.00 loss of business and injury to Chapwood's good will, substantial increased administrative costs and other economic loss and special damages, Chapwood and Butowsky endured insult, humiliation, embarrassment and injury to their names and reputations because of the Defendants' letters and published statements." *Id.*, ¶ 29.

The Court is not convinced the alleged harm caused by the *Schwab* defendants is the same harm for which recovery of damages is sought in this case, which is reputational harm and harm to

commercial or economic interests from the publication of false information about Plaintiff online and via Twitter between August 2017 and March 2018.  Although Butowsky generally alleges loss of business and injury to reputation in this case, Chapwood is not a party to this lawsuit nor is it seeking any damages in this case. The Court finds the *Schwab* defendants do not meet the definition of a responsible third party. Accordingly, this part of NPR Defendants' motion for leave to designate is denied.

### *Susman Godfrey* state court case

In the *Susman Godfrey* state court case, which has now been dismissed, Plaintiff asserted claims for malicious prosecution and defamation against Susman Godfrey, LLP,[19] its partner, its associates, their attorney co-defendants at Massey & Gail, political consulting firm The Pastorum Group, and one of its founding partners Brad Bauman.  Docket Entry # 81, Ex. A at pp. 10-11 ("Mr. Butowsy can bring defamation claims based on false statements in the *Rich v. FNN* complaint insofar as the entire litigation was indeed a sham. . . . [T]he false allegations in the press release and during Mr. Gail's televised interview meet the elements for defamation claim."); & Declaration of Edward Butowsky (attached as Appendix to Ex. A and also as Ex. B), ¶¶ 6-9 ("In press release dated March 14, 2018, Susman Godfrey and its coconspirators announced that the RICH COMPLAINT had been filed against me. . . .The opening sentence reads as follows: 'Massey Gail LLP, Susman Godfrey LLP and The Pastorum Group announced today that on behalf of Joel and Mary Rich, the grieving parents of murdered child, they have brought suit against Fox News, reporter Malia Zimmerman and contributor Ed Butowsky, seeking justice for the Riches for having become collateral damage in political war to which they are innocent bystanders.'").

---

[19] According to NPR Defendants' motion, "Susman represented Rich's parents in their suit against Butowsky (and others) for Butowsky's role in the conspiracies about Rich's death." Docket Entry # 81 at p. 11.

In his declaration in the *Susman Godfrey* lawsuit, Plaintiff stated he suffered significant injuries as result of the lawsuit filed by Susman Godfrey, as well as the related defamation campaign, including the alleged loss of approximately one-third of his business as result of the false allegations. Docket Entry # 81-3 at p. 4, ¶ 17.   Butowsky also claims that Susman's defamation caused Chapwood clients to send emails "indicating that they would no longer do business" with Butowsky. *Id*. Butowsky referenced the following paragraph of his federal *Gottlieb* lawsuit:

> As result of the lies fabricated and perpetuated by the Defendants, Mr. Butowsky and his family received death threats, he lost one third of his business clients, rocks were thrown through the windows of his home, his automobiles were burglarized, his computers were hacked, he lost friendships, and he lost the opportunity to host planned television program. Left—wing extremists even posted clock on the internet counting down the time until Mr. Wigdor's son would return for classes at Vanderbilt University, implying that Mr. Butowsky's son would be harmed when he returned. As result, Mr. Butowsky had to hire bodyguard for his son.

*Id.* at pp. 4-5, ¶ 17.

According to NPR Defendants, the allegations in the *Susman Godfrey* case "are very similar to those in footnote 4 of Butowsky's Second Amended Complaint, in which he cites an email from client Sally Davis and alleges she cancelled her Chapwood account, because Butowsky was involved in 'a false news story.'" Docket Entry # 81 at p. 11 (citing Docket Entry # 72 at ¶ 11, n.4). According to NPR Defendants, Butowsky also alleged in *Susman Godfrey* that, after Susman's alleged "smear campaign," Butowsky is no longer asked to appear as a TV financial analyst.  Docket Entry # 81, Ex. B (Butowsky Decl.) at p. 5.  NPR Defendants assert Butowsky made similar allegations here, that "[p]rior to Folkenflik and Wigdor's publications and republications, Butowsky was a frequent guest" on several news networks "discussing wealth management." Docket Entry # 81 at p. 11 (citing Docket Entry # 72 at ¶ 10).

Although there is some overlap in the allegations contained in paragraphs 10 and 11 in Plaintiff's complaint in this case, the Court is not convinced the alleged harm caused by the *Susman Godfrey* defendants is the same harm for which recovery of damages is sought in this case.  The Court finds the *Susman Godfrey* defendants do not meet the definition of a responsible third party. This part of NPR Defendants' motion for leave to designate is denied.

### *Gottlieb* (4:19-cv-180) and *CrowdStrike* (4:19-cv-582) cases

In the *Gottlieb* case, Plaintiff originally sued twenty-two defendants, several of which were also defendants in the *Susman Godfrey* state court case.  According to NPR Defendants, the *Gottlieb* defendants roughly fall into three categories: (1) individuals involved in prior litigation against Butowsky, including attorneys who represented Rich's parents and brother (law firm Boies Schiller Flexner LLP and associated attorneys Michael Gottlieb and Meryl Governski; Brad Bauman and The Pastorum Group; law firm Massey & Gail LLP and associated attorneys Leonard A. Gail, Eli J. Kay-Oliphant, and Suyash Agrawal; law partnership Bailey & Glasser LLP and associated attorneys Gregory Y. Porter and Michael L. Murphy); (2) media defendants Butowsky claims defamed him while reporting on Rich's death and/or lawsuits involving Butowsky (Turner Broadcasting System, Inc., Cooper, Tuchman, Darcy, Kludt, The New York Times Company, Feuer, Vox Media, Inc., and Coaston); and (3) the Democratic National Committee. Docket Entry # 81, Ex. C (*Gottlieb* Second Amended Complaint). However, the Court notes Plaintiff's Third Amended Complaint, which was filed on March 11, 2020 after NPR Defendants' motion was filed in this case, sues only the following twelve defendants: (1) Michael Gottlieb; (2) Meryl Governski; (3) Boies Schiller Flexner LLP; (4) Turner Broadcasting System, Inc. ("CNN"); (5) Anderson Cooper (host of CNN program); (6) Gary Tuchman (reporter for CNN); (7) Oliver Darcy (reporter for CNN); (8) Tom Kludt (reporter

for CNN); (9) The New York Times Company ("NYT"); (10) Alan Feuer (court reporter for *The New York Times*); (11) Vox Media, Inc.; and (12) Jane Coaston (reporter for Vox).

Plaintiff also separately sued the Democratic National Committee, CrowdStrike, Inc., and law firm Perkins Coie LLP in the *CrowdStrike* case.  In that suit, Plaintiff alleged the DNC hired Perkins Coie, which then hired CrowdStrike, to create "the false narrative that the Russian government had hacked the DNC's servers." Docket Entry # 81, Ex. O (*CrowdStrike* Original Complaint), ¶ 8.  According to the original complaint, "[t]he events in this case overlap with those in *Edward Butowsky v. Michael Gottlieb, et al.*, which is presently pending before this Court as Case No. 4:19-cv-180-ALM. The SECOND AMENDED COMPLAINT from Gottlieb is attached as Exhibit 1 and incorporated herein by reference." Docket Entry # 81, Ex. O (*CrowdStrike* Original Complaint), ¶ 1.  On December 20, 2019, following Plaintiff's notice of voluntary dismissal, District Judge Schroeder entered an Order of Dismissal. (Cause No. 4:19-cv-582, Docket Entry # 11). Thus, this case is no longer pending.

In NPR Defendants' motion, NPR Defendants acknowledge Plaintiff's claims against certain defendants in the *Gottlieb* case had been dismissed. Docket Entry # 81 at p. 12, n. 12. Nevertheless, NPR Defendants argue Plaintiff previously claims the dismissed defendants "caused damages that NPR Defendants are alleged to have caused," and thus are still "responsible third parties." *Id.* The Court disagrees.

According to Plaintiff's *Gottlieb* complaint, the case "is the consequence of a conspiracy theory, namely that President Trump 'colluded' with the Russian government to swing the 2016 Presidential election in his favor. That conspiracy theory will hereinafter be referred to as the 'Russia Collusion Hoax' or just the 'RCH.'" Cause No. 4:19-cv-180, Docket Entry # 207, ¶ 23. The Third

Amended Complaint in *Gottlieb* initially focuses on a different set of facts than those contained in this case, although former DNC employee Seth Rich, the leaked DNC emails, and Plaintiff's interactions with the Rich family are interwoven into those facts. *See e.g., id.*, ¶¶ 30-33.  For example, in *Gottlieb* Plaintiff alleges as follows:

> Mr. Butowsky stumbled into the RCH crosshairs after Ellen Ratner, a news analyst for Fox News and the White House correspondent for Talk Media News, contacted him in the Fall of 2016 about a meeting she had with Mr. Assange. . . . Ms. Ratner said Mr. Assange told her that Seth Rich was responsible for releasing the DNC emails to Wikileaks. Ms. Ratner said Mr. Assange wanted the information relayed to Seth's parents, as it might explain the motive for Seth's murder.

*Id.*, ¶ 34.

Plaintiff alleges Ms. Ratner asked him "to contact the Rich family and relay the information from Mr. Assange, apparently because Ms. Ratner did not want her involvement to be made public. In the two months that followed, Mr. Butowsky did not attempt to contact the Rich family, but he grew increasingly frustrated as the DNC and #Resistance 'journalists' blamed the Russian government for the email leak." *Id.*, ¶ 35.  According to Plaintiff, on December 17, 2016, "at the instigation of Ms. Ratner, Mr. Butowsky finally contacted Joel and Mary Rich, the parents of Seth, and he relayed the information about Ms. Ratner's meeting with Mr. Assange. During that conversation, Mr. Rich told Mr. Butowsky that he already knew that his 'sons' were involved in the DNC email leak, but he and his wife just wanted to know who murdered Seth."  *Id.*, ¶ 36. Plaintiff alleges Mr. Rich said he did not have enough money to hire a private investigator, so Butowsky offered to pay for one. Mr. Rich accepted the offer and thanked Butowsky in an email. *Id.*

Plaintiff alleges he later referred the Rich family to Rod Wheeler. *Id.*, ¶ 38. According to the Third Amended Complaint in *Gottlieb*, "Aaron Rich's wife, Molly Rich, drafted a retainer contract

for Mr. Wheeler, and he began working directly for the Rich family. Mr. Butowsky agreed to pay

from Mr. Wheeler's services, but he had no control over Mr. Wheeler's work for the Rich family."

*Id.*

Plaintiff alleges in early March of 2017, Joel Rich informed Butowsky that he had received

a call from Brad Bauman, a Democratic political operative, and that Mr. Bauman said he had been

"assigned" to the Rich family by the DNC. *Id.*, ¶ 48. Plaintiff alleges Bauman knew Seth Rich leaked

emails to Wikileaks, but "Bauman's assignment was to divert attention away from Seth Rich in order

to keep the RCH alive." *Id.* "In an attempt to meet that objective, Mr. Bauman designed and

organized a 'shock and awe' litigation campaign that was designed to discredit and silence anyone

who questioned the DNC narrative about Seth Rich." *Id.* Plaintiff alleges the BSF Defendants (law

firm Boies Schiller Flexner and associated attorneys Gottlieb and Governski) knowingly and

intentionally joined Bauman's campaign. *Id.*

According to Plaintiff,  Bauman recruited the BSF Defendants to sue Butowsky into silence.

*Id.*, ¶ 50. "Under coercion from Mr. Bauman, Joel Rich stopped speaking with Mr. Butowsky and

the Rich family started attacking Mr. Butowsky publicly (albeit not by name)." *Id.*, ¶ 49. Plaintiff

alleges as follows about this "litigation campaign:"

> After Mr. Wigdor filed suit in New York on behalf of Mr. Wheeler, Mr. Bauman
> seized on the opportunity to smear and defame anyone involved suggesting that Seth
> Rich was involved in leaking DNC emails. He recruited the law firm Massey & Gail,
> LLP to file a March 13, 2018 lawsuit on behalf of Joel and Mary Rich. Premised on
> the bogus Wheeler lawsuit, the Riches' lawsuit fabricated a wild tale about Mr.
> Butowsky, Ms. Zimmerman, and Fox News conspiring to harm them by
> manufacturing a conspiracy theory about the murder of Seth Rich. Shortly thereafter,
> Mr. Bauman recruited the BSF Defendants to file the baseless lawsuit against Mr.

Butowsky (and others) on behalf of Aaron Rich.[20] Around the same time, Mr. Bauman filed his own frivolous lawsuit against Mr. Butowsky (and others), alleging that Mr. Butowsky had somehow defamed him by stating that Defendant Bauman had been 'assigned' by the DNC.

*Id.*, ¶ 54.

Plaintiff alleges Bauman's strategy "was at least partially successful, because American journalists launched a full frontal assault on Mr. Butowsky, falsely portraying him as a con man who fabricated a false story about Seth Rich. Defendants such as CNN, Vox, and The New York Times alleged that there was 'no evidence' to support the 'conspiracy theory' that Seth Rich leaked emails from the DNC." *Id.*, ¶ 55. For example, Plaintiff alleges a March 14, 2018 story attributed to Defendant Darcy states that Mr. Butowsky and his co-defendants had been sued for "their roles in the publication of a baseless conspiracy theory about Rich's 2016 death." *Id.*, ¶ 80 (further alleging an October 2018 article impugned Butowsky for "peddling a conspiracy theory" without "real evidence"). According to Plaintiff, in a March 27, 2018 story on Anderson Cooper 360 about Aaron Rich's lawsuit against Butowsky, "Defendant Tuchman flatly stated that there was no evidence whatsoever that Seth Rich leaked DNC emails to Wikileaks," even though "Defendant Tuchman and Defendant Cooper knew that there was considerable evidence that Mr. Rich was involved in the email leak, and they knew that Mr. Butowsky had not 'made up' or 'concocted' anything." *Id.*, ¶ 82. Plaintiff alleges Cooper and Tuchman conspired with Gottlieb to smear Butowsky with false allegations. *Id.*

---

[20] On March 26, 2018, the BSF Defendants filed *Aaron Rich v. Edward Butowsky, et al.*, Case No. 1:18-cv-00681, on behalf of Aaron Rich in the U.S. District Court for the District of Columbia. (Cause No. 4:19-cv-180, Docket Entry # 207, ¶ 64). According to the lawsuit, Butowsky and others defamed Aaron Rich by alleging that he helped his brother leak DNC emails to Wikileaks. *Id.*

Plaintiff alleges in *Gottlieb* he does not bring claims against the BSF defendants for the litigation portion of the conspiracy, i.e., the fact that the BSF defendants filed suit against him, "but he does bring claims against the BSF Defendants for the smear campaign that they conducted against him in national media." *Id.*

Plaintiff alleges on April 19, 2018 and October 1, 2018, Defendant Vox published defamatory articles written by Defendant Coaston, "a left-wing extremist who masquerades as a journalist." *Id.*, ¶ 87. According to Plaintiff, both of Coaston's "articles conveyed the false overall impression that Mr. Butowsky had lied repeatedly and abused the trust of the Rich family for purposes of advancing a fraudulent narrative." *Id.* Regarding the NYT and Fauer defendants, Plaintiff alleges in "an August 2, 2018 article written by Defendant Fauer and published in Defendant NYT, Defendant Fauer cherry-picked quotes from a court order for the purpose of creating a false impression." *Id.*, ¶ 94. Plaintiff alleges Fauer wrote that "[i]n his dismissal of the lawsuit [filed by Joel and Mary Rich], Judge George B. Daniels said he sympathized with Mr. Rich's parents, but added that they had not been personally defamed by the story – despite the fact that it included 'false statements or misrepresentations.'" *Id.* (alleging Judge Daniels never made such a factual finding and made it "very clear that he was merely restating the allegations in the Rich's complaint").

Based on the specific allegations contained in the *Gottlieb* Third Amended Complaint, Plaintiff brings defamation claims against all the twelve remaining defendants "because they or their agents published or conspired with others to publish false and defamatory statements about Mr. Butowsky as described above. Mr. Butowsky does not assert defamation claims based on allegations made in *Aaron Rich v. Edward Butowsky, et al.*" *Id.*, ¶ 99. Plaintiff also asserts claims for business disparagement against the remaining defendants "because they or their agents published or conspired with others to publish false and defamatory statements that caused harm to Mr. Butowsky's business and profession." *Id.*, ¶ 101.  According to the complaint, "[a]s set forth in the attached *Folkenflik* complaint, Mr. Butowsky's work is regulated by the Securities and Exchange Commission, and

allegations of fraud or dishonesty can cost him his professional licenses. Likewise, the Defendants allegations of fraud and dishonesty have cost him the trust (and business) of approximately one third of his clients." *Id*.

NPR Defendants generally argue the allegations contained in *Gottlieb* (and the now-dismissed *CrowdStrike* "because it incorporates the *Gottlieb* Complaint") "overlap with Butowsky's claims here—that NPR Defendants caused him to lose clients and TV appearances and have therefore harmed his investment management business." Docket Entry 3 81 at pp. 12-13. The Court is not persuaded Butowsky alleges the defendants in *Gottlieb* and *CrowdStrike* caused the same harm for which recovery is sought in this case.  In addition to the factual distinctions set forth above, the Court notes the time frame of the publications is different (August 2017 - March 2018 in this case versus post-March 2018 in *Gottlieb*).  The Court finds the *Gottlieb* and *CrowdStrike* defendants do not meet the definition of responsible third party. This part of NPR Defendants' motion for leave to designate is denied.

### *Wigdor* **case (4:19-cv-577)**

Plaintiff also filed a lawsuit against Douglas H. Wigdor, Jeanne M. Christensen, Michael J. Willemin, David E. Gottlieb, Lawrence M. Pearson, Rod Wheeler, and Wigdor, LLP, seeking compensatory damages, treble damages, and punitive damages in the sum of $118,000,000.00 "arising out of the Defendants' defamation, malicious prosecution, business disparagement, civil conspiracy, and racketeering." Docket Entry # 81, Ex. N (*Wigdor* First Amended Complaint). According to Plaintiff's complaint in *Wigdor*, Wigdor, Christensen, Willemin, Gottlieb, and Pearson are partners in Wigdor, LLP, a law firm founded by Wigdor, which Plaintiff alleges "is a

racketeering enterprise" engaged in activity prohibited by Title 18 U.S.C. §§ 1962(b) and 1962(c). *Id.*, ¶ 10.

Plaintiff incorporated his complaint from *Gottlieb* and attached a copy of that complaint as Exhibit 1 to his complaint in *Wigdor*. *Id.*, ¶ 3. Plaintiff focuses on paragraphs 50-58 of the *Gottlieb* complaint, wherein Plaintiff alleges the Wigdor defendants "conspired with Defendant Rod Wheeler to file a bogus lawsuit that would impede Fox's attempts to purchase Sky News. The lawsuit would (and ultimately did) accuse the Plaintiff and Fox reporter Malia Zimmerman of fabricating a news story for the purpose of helping President Trump. Even before the lawsuit was drafted, all of the Defendants knew that its allegations would be (and ultimately were) false." *Id.*

However, upon careful review of the *Wigdor* complaint, these specific allegations, and numerous others contained in the *Wigdor* complaint, are similar to allegations contained in this case, especially as they pertain to the so-called Wigdor defendants. *See id.*, ¶¶ 135-159 ("The Leaks to Folkenflik and NPR"); ¶¶ 160-170 ("Wigdor Wehrmacht"); ¶ 171 (allegations about Jeanne Christensen appearing with Wheeler on CNN with Chris Cuomo); ¶¶ 172-188 (additional allegations regarding Wigdor and his alleged false and defamatory statements about Plaintiff). In addition to his racketeering claims, Plaintiff alleges "Defendants Wigdor, Christensen, Willemin and Wheeler made and published to numerous third-parties – including Folkenflik, NPR, main stream media, print media, Wigdor's Twitter followers and subscribers to Wigdor's YouTube channel – false factual statements, which are detailed verbatim above, of or concerning the Plaintiff." *Id.*, ¶ 195. Plaintiff alleges "Defendants Gottlieb and Pearson were complicit in the overarching scheme to use defamation as a tool for extortion." *Id.*

46

Plaintiff alleges "Defendants are liable for the millions of republications of the false and defamatory statements by third parties;" "Defendants' false statements caused the Plaintiff to suffer loss and injury to his business, insult, pain, embarrassment, humiliation, and mental suffering, harm to the Plaintiff's name and reputation, and out-of-pocket loss;" and " Defendants acted with actual malice and reckless disregard for the truth." *Id.*, ¶¶ 196-199.  According to Plaintiff, "[a]s a direct result of the Defendants' defamation, the Plaintiff suffered substantial damage and loss, including, but not limited to, pain and suffering, emotional distress and trauma, insult, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to his personal and professional reputations, attorney's fees, costs, and other out-of-pocket expenses in the sum of $118,000,000.00 or such greater amount as is determined by the Jury." *Id.*, ¶ 200. Plaintiff also brings business disparagement claims against the Wigdor defendants, focusing on Wigdor, Christensen, Willemin, Wheeler, and Wigdor LLP. *Id.*, ¶ 201.  According to Plaintiff, as a result of the false allegations against Plaintiff "the implicated [him] in fraud and deception," Plaintiff "lost one third of his clients."  *Id.*, ¶ 202.

Considering the Court has granted NPR Defendants leave to designate Wigdor as a responsible third party, and further considering the overlap of the allegations contained in this case and those raised in *Wigdor* with regard to Christensen, Wigdor LLP, and Wheeler, the Court finds Jeanne Christensen, Wigdor LLP, and Rod Wheeler meet the definition of responsible third party.[21] However, the Court denies NPR Defendants' motion for lack of sufficient evidence showing that Michael Willemin, David Gottlieb, and Lawrence Pearson caused or contributed to the harm for which recovery is sought by way of violating an applicable legal standard with regard to the claims

---

[21] With regard to Christensen, Wigdor LLP, and Wheeler, the Court addresses Plaintiff's timeliness argument below.

in this lawsuit. The Court does not find Plaintiff's own pleadings sufficiently support the alleged responsibility of other "defamation" defendants in the *Wigdor* case (Michael Willemin, David Gottlieb, and Lawrence Pearson). However, the Court is of the opinion NPR Defendants should be given the opportunity, if warranted, to replead facts sufficient to support the alleged responsibility of Michael Willemin, David Gottlieb, and Lawrence Pearson.

**c.     Five persons or entities who allegedly "enabled" Plaintiff's involvement in the Rich controversy**

In addition to their attempts to show through Plaintiff's own pleadings in other lawsuits that the other "defamation" defendants' actions caused or contributed to causing Plaintiff's claimed harm for which recovery is sought in this case, *see In re Hurst Saturn*, 2019 WL 6723403, at *4, NPR Defendants also seek leave to designate as responsible third parties five persons or entities who Plaintiff has not separately sued for defamation (Fox News, Zimmerman, Hersh, Assange, and Ratner).  NPR Defendants allege these five entities or persons "enabled" Plaintiff's involvement in the Rich controversy. To the extent Plaintiff appears to argue NPR Defendants have pleaded insufficient facts to put Plaintiff on notice of these third parties' alleged responsibility, NPR Defendants argue "NPR Defendants gave Butowsky notice of Zimmerman, Fox News, Hersh, Assange, and Ratner's role in perpetuating the article NPR reported on."[22] Docket Entry # 83 at p. 3. According to NPR Defendants' reply, they explained in their motion, "both at a high level, and

---

[22] In addition to arguing NPR Defendants failed to mention § 33.004 in their answer and initial disclosures, Plaintiff further argues "Assange and Ratner are not even mentioned in the NPR Defendants' answer to the second amended complaint. . . . Hersh is mentioned once. Zimmerman is mentioned a mere five times." Docket Entry # 82 at p. 3. As noted above, however, to determine whether a defendant has pled sufficient facts, federal courts may "look at allegations in a defendant's answer and/or counterclaim[,] ... [and] allegations in a plaintiff's pleading that demonstrate responsibility of a third party." *Magna Equities II, LLC v. Heartland Bank*, No. CV H-17-1479, 2018 WL 1135482, at *3 (S.D. Tex. Feb. 28, 2018) (quoting *Eisenstadt v. Telephone Electronics Corp.*, Civil Action No. 3:06–1196–0, 2008 WL 4452999, at *2 (N.D. Tex. Sept. 30, 2008); also citing *In re CVR Energy, Inc.*, 500 S.W.3d 67, 80 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[Defendant] satisfied this low threshold. Its motion for leave to designate [the third party] quoted from Plaintiffs' own allegations against [the third party].")).

as to each specific third party, facts relating to Zimmerman, Fox News, Hersh, Assange, and Ratner

– all of whom are referenced in Butowsky's own pleadings in the myriad of cases he has filed arising

out of this same controversy." *Id*. at p. 4. NPR Defendants further argue as follows:

> According to Butowsky, each encouraged Butowsky's involvement in the conspiracy
> theory: Zimmerman and Fox News by reporting, publishing, and then retracting the
> article speculating that Seth Rich was murdered for leaking hacked DNC emails to
> Wikileaks; and Hersh, Assange, and Ratner by providing Butowsky with the
> 'evidence' he used to provide information to Fox News for that article. Butowsky
> recounts that 'evidence' in his complaints in this case and others, like Wigdor and
> Gottlieb. . . . Butowsky need not agree that Zimmerman, Fox News, Hersh, Assange,
> and Ratner's role in perpetuating Butowsky's conspiracy theory led to the retracted
> article, which in turn led to the *Wheeler* lawsuit, which then led to NPR's allegedly
> defamatory publications. He is free to argue his version of the facts. But his
> disagreement with NPR Defendants' interpretation of his own allegations in his
> complaints does not constitute a valid objection to NPR Defendants' request.

*Id.* at pp. 4-5.

In his objection to NPR Defendants' motion to designate, Plaintiff asserts, among other

things, NPR Defendants fail to show how Fox News, Zimmerman, Hersh, Assange, Ratner caused

or contributed to the harm for which recovery is sought in this case. The Court agrees. NPR

Defendants have failed to demonstrate which alleged actions constitute a "negligent act or omission

[or] other conduct or activity that violates an applicable legal standard[,]" and that resulted in

Plaintiff's harm incurred from NPR Defendants' alleged defamation. *Stabilis Fund II, LLC v.

Compass Bank*, No. 3:18-CV-283-B, 2018 WL 4772411, at *4 (N.D. Tex. Oct. 3, 2018) (quoting §

33.011(6)). In other words, a third party cannot be designated a responsible third party if that party's

actions were not "negligent" or otherwise "violat[ed] an applicable legal standard." *Id.*; also citing

*Ellis v. United States*, 673 F.3d 367, 372 (5th Cir. 2012) (concluding "that the [defendant] failed to

show that NE Methodist or the physicians treating [the plaintiff] there were negligent and thus failed to show that they are responsible third parties")).

This part of NPR Defendants' motion for leave to designate is denied.

**E.   Whether NPR Defendants' motion for leave to designate Jeanne Christensen, Wigdor LLP, and Rod Wheeler as responsible third parties was timely filed**

Even though the Court is satisfied for purposes of § 33.004 NPR Defendants have pleaded sufficient facts to designate Jeanne Christensen, Wigdor LLP, and Rod Wheeler as responsible third parties, the Court must address whether NPR Defendants are nonetheless precluded from designating a responsible third party for those claims for which the statute of limitations has expired. *Howard v. Lowe's Home Centers, LLC*, No. 1:16-CV-1279-RP, 2017 WL 10729622, at *2 (W.D. Tex. Oct. 23, 2017) (citing TEX. CIV. PRAC. & REM. CODE § 33.004(d)).  As noted above, under TEX. CIV. PRAC. & REM. CODE § 33.004(a), "a defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate . . . on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date."[23] A defendant, however, may not designate a person as a responsible third party with respect to a claimant's cause of action after the expiration of the applicable limitations period with respect to the responsible third party, "if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE § 33.004(d).

Texas courts read § 33.004(d) to "require a defendant to disclose a potential responsible third party before the expiration of the statute of limitations, if that is possible." *Id.* (quoting *In re*

---

[23] NPR Defendants filed their motion for leave to designate more than sixty days prior to the 2021 trial date.

*Bustamante*, 510 S.W.3d 732, 737 (Tex. App.—San Antonio 2016, no pet.)). The key consideration is whether a defendant complied with the obligations required by the Texas Rules of Civil Procedure, not whether the plaintiff had reason to know of the third party. *Howard*, 2017 WL 10729622, at *2 (citing *Jacquez v. Compass Bank*, No. EP-15-CV-26-RFC, 2016 WL 4367599, at *2 (W.D. Tex. Mar. 11, 2016) (barring a defendant from designating a responsible third party because the statute of limitations had run on the plaintiff's claims and the defendant failed to identify the third party in its Texas Rule of Civil Procedure § 192.4 disclosure, even though the plaintiff knew of the third party before the limitations period expired)).[24]

In his objection, Plaintiff argues NPR Defendants' motion is untimely. Docket Entry # 82 at p. 4. Plaintiff asserts without opposition that NPR Defendant's Rule 26(a)(1) disclosures did not mention § 33.004 or indicate NPR Defendant might designate Christensen, Wigdor LLP, or Wheeler as responsible third parties. *See Howard*, 2017 WL 10729622, at *3. Plaintiff argues NPR Defendants cannot designate them as responsible third parties after the limitations period has run.

The Texas Civil Practice & Remedies Code does not define the term "timely" for § 33.004(d). *Oliva v. USA Truck, Inc*., No. 3:18-CV-2814-E, 2019 WL 7756355, at *2 (N.D. Tex. Nov. 15, 2019), *report and recommendation adopted*, No. 3:18-CV-02814-E, 2020 WL 418890 (N.D. Tex. Jan. 27, 2020). In *Withers*, Chief Judge Gilstrap analyzed what constitutes "timely" disclosure under § 33.004(d), "particularly, whether a disclosure made after the statute of limitations has run can nevertheless be deemed 'timely.'"[25] *Withers v. Schneider Nat'l Carriers, Inc.,* 13 F.

---

[24]There is no indication Plaintiff requested disclosure of potential responsible third parties.

[25] In *Withers*, a wreck occurred, and the plaintiff filed suit seven months before the statute of limitations expired. *Oliva*, 2019 WL 7756355, at *3 (citing *Withers*, 13 F. Supp. 3d at 687). Nine months later (two months after the statute of limitations expired), the defendant attempted to designate a construction company as a responsible third party. *Oliva*, 2019 WL 7756355, at *3 (citing *Withers*, 13 F. Supp. 3d at 689). The defendant argued its designation was timely

Supp. 3d 686, 690 (E.D. Tex. 2014). In construing the "timely disclosure" requirement of §

33.004(d), Chief Judge Gilstrap presumed the Texas Legislature intended "a just and reasonable

result." *Id.* After applying § 33.004(d) to the facts of the *Withers* case, Chief Judge Gilstrap found

that designation of a responsible third party after the statute of limitations had run constituted

untimely designation.

Chief Judge Gilstrap reasoned that despite a lack of disclosure obligations under the Texas

or Federal Rules of Civil Procedure, the defendants had the duty to disclose the existence of any

potential responsible third parties as soon as reasonably possible so the plaintiff had the opportunity

to join those parties before they were time barred.  *Id.*   Specifically, Chief Judge Gilstrap stated as

follows:

> Defendant had ample information available since the day of the accident which
> clearly suggests Knife River's potential responsibility. A diligent investigation on
> Defendant's part would have led to an earlier designation, giving Plaintiff an
> opportunity to join Knife River before limitations ran. This Court finds no difference
> in a situation where Defendant's counsel failed to diligently investigate this accident
> and only found out about Knife River after October 4, 2013 or whether it knew it and
> knowingly delayed seeking to designate them as a responsible third party until after
> October 4, 2013. In either case, such a belated disclosure fails to meet the 'timely'
> requirement of § 33.004(d).

*Id.*

Chief Judge Gilstrap did not announce a general rule that all disclosures made after the

applicable statute of limitations had expired must be deemed untimely for purpose of § 33.004(d)

and emphasized the importance of determining timeliness on a case-by-case basis.  *Id*. at 691.

---

because, unlike the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure do not require them to disclose
potential responsible third parties. *Oliva*, 2019 WL 7756355, at *3 (citing *Withers*, 13 F. Supp. 3d at 690). However,
the *Withers* court ultimately held the designation was untimely because the plaintiffs had filed suit well before the statute
of limitations, and the defendant failed to designate the responsible third party until two months after the statute of
limitations expired. *Id.*

Here, the Court is not convinced NPR Defendants' designation should be denied as untimely. Because Plaintiff knew about Christensen, Wigdor LLP, and Wheeler before he filed his complaint, NPR Defendants' "duty to disclose the existence of any potential responsible third parties as soon as reasonably possible, so a plaintiff may have an opportunity to join such parties before they are time barred" was fulfilled. *Magna Equities II, LLC v. Heartland Bank*, No. CV H-17-1479, 2018 WL 1135482, at *8 (S.D. Tex. Feb. 28, 2018) (quoting *Withers*, 13 F. Supp. 3d at 691). NPR Defendants did not violate disclosure requirements because the existence of potential third parties was known to Plaintiff. *Magna Equities II, LLC*, 2018 WL 1135482, at *8 (citing *Curlee v. United Parcel Service, Inc.*, No. 3:13-cv-00344-P, 2014 WL 11516541, at *2 (N.D. Tex. Dec. 12, 2014) ("Plaintiffs' own complaint shows that they had notice of these parties."); also citing *In re CVR Energy, Inc.*, 500 S.W.3d 67, 80 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding that the defendant provided sufficient notice because the plaintiffs "include[d] allegations in their amended petition of [the third party's] allegedly intentional misconduct")). Considering Plaintiff agrees his pleadings support NPR Defendants' designation of Douglas Wigdor as a responsible third party, the "just and reasonable" result under the unique circumstances of this case is to allow NPR Defendants to also designate Wigdor LLP, Christensen, and Wheeler (all of which are referenced in the complaint in this case) as responsible third parties.

Finally, the Court notes Texas law provides that "[a]fter adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage." TEX. CIV. PRAC. & REM. CODE § 33.004(l). Thus, nothing in this order should be construed to prohibit Plaintiff from attacking the designation of responsible third parties at a later

date, based upon the evidence produced in discovery.  *See Vasquez v. Tristar Prod., Inc.*, No. CV

B: 15-108, 2017 WL 7038196, at *2 (S.D. Tex. May 22, 2017).

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendants' Motion for Leave to Designate Responsible Third Parties

(Docket Entry # 81) is **GRANTED IN PART and DENIED IN PART.**  Specifically, it is

**ORDERED** that NPR Defendants' motion for leave to designate Douglas Wigdor, Jeanne

Christensen, Wigdor LLP, and Rod Wheeler as responsible third parties is **granted**, but NPR

Defendants' motion for leave to designate the remaining defendants in the *Wigdor* case as

responsible third parties is **denied at this time**. The Court does not find Plaintiff's own pleadings

sufficiently support the alleged responsibility of other "defamation" defendants in the *Wigdor* case

(Michael Willemin, David Gottlieb, and Lawrence Pearson). However, the Court is of the opinion

NPR Defendants should be given the opportunity, if warranted, to replead facts sufficient to support

the alleged responsibility of other "defamation" defendants in the *Wigdor* case Michael Willemin,

David Gottlieb, and Lawrence Pearson.   It is further

**ORDERED** that NPR Defendants' motion for leave to designate the remaining "defamation"

defendants as responsible third parties is **denied**.  Finally, it is

**ORDERED** that NPR Defendants' motion for leave to designate the five persons or entities

who allegedly "enabled" Plaintiff's involvement in the Seth Rich controversy (Fox News Network,

Malia Zimmerman, Seymour Hersh, Julian Assange, and Ellen Ratner) is **denied**.

**SIGNED this 28th day of April, 2020.**

54

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE