# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **ED BUTOWSKY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:18CV442** |
| | § | **Judge Mazzant/Magistrate Judge Craven** |
| **DAVID FOLKENFLIK, ET AL.,** | § | **SEALED** |
| **Defendants.** | § | |

---

## <u>ORDER</u>

---

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following are before the Court:

> **Defendants' Motion to Compel Discovery (Docket Entry # 85); and**

> **Notice of Supplemental Evidence in Support of Motion to Compel (Docket Entry # 132).**

The Court, having carefully considered the relevant briefing, is of the opinion the motion should be **GRANTED IN PART and DEFERRED IN PART** as set forth herein.

### I. BACKGROUND

This is an action for defamation *per se*, business disparagement, and civil conspiracy filed by Plaintiff Ed Butowsky ("Plaintiff" or "Butowsky"), a Dallas investment advisor, against National Public Radio, Inc. ("NPR"), its senior media correspondent, David Folkenflik ("Folkenflik"), and certain former and current executive editors at NPR (Edith Chapin, Leslie Cook, and Pallavi Gogoi, jointly and severally) (collectively, "Defendants" or "NPR"). According to Plaintiff, Defendants published false and defamatory statements about Plaintiff online and via Twitter between August

2017 and March 2018 — statements Plaintiff alleges injured his business and reputation. Docket Entry # 72, ¶ 5.  Defendants contend Plaintiff filed suit against them for accurately reporting on a publicly filed lawsuit on a matter of public concern. Specifically, Defendants assert Plaintiff filed suit following NPR's reporting on a 2017 lawsuit filed by Fox News contributor Rod Wheeler against Fox News. *See* Complaint, *Wheeler v. Twenty-First Century Fox, Inc., et al.*, Case No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017).  Docket Entry # 65 at p. 2, n. 3.

The Second Amended Complaint alleges as follows.[1]  In early 2017, Plaintiff contacted the family of Seth Rich to help the family investigate their son's unsolved murder.[2]  Docket Entry # 72, ¶ 70.  Plaintiff offered to pay for a private investigator. *Id.* On February 23, 2017, Plaintiff contacted Rod Wheeler via text message to see if Wheeler would be interested in investigating the murder. *Id.*, ¶ 71.  Plaintiff did not know Wheeler, but he had seen him on television and Wheeler appeared to be a competent investigator. *Id.*

Plaintiff alleges the family of Seth Rich entered into a contract with Wheeler to investigate the murder of Seth Rich. *Id.*, ¶ 72. Plaintiff was not a party to the contract between Wheeler and the Rich family, and his role and involvement in the investigation of Seth's murder were limited. *Id.*, ¶¶ 73-75. According to Plaintiff, Wheeler investigated the matter and came up with the theory that Seth's murder was not the result of a botched robbery. *Id.* at p. 20, n. 7.

On March 31, 2017, Wheeler appeared on Fox 5 DC and claimed he had been investigating Seth's murder over the "past three weeks." *Id.*, ¶¶ 79-81. According to the Second Amended

---

[1] The Court notes Plaintiff has filed a Motion for Leave to File Third Amended Complaint (Docket Entry # 98), which the Court has set for hearing in July, along with Defendants' Motion for Sanctions Pursuant to Rule 11 for Violations Committed by Plaintiff and His Counsel (Docket Entry # 96). *See* Docket Entry # 145.

[2] Seth Rich was a DNC staffer who was murdered on July 10, 2016.  Docket Entry # 72, ¶ 5.

Complaint, after Wheeler appeared on Fox 5 DC, he updated Malia Zimmerman, an "award-winning investigative reporter" employed by FoxNews.com, concerning his investigation. *Id.*, ¶¶ 83-85. In one of his texts to Zimmerman, Wheeler stated, "I'm ready to say that Seth's [sic] Death was not a botched robbery and there appears to be a coverup within the D.C. Govt related to his death." *Id.*, ¶ 86. Zimmerman expressed interest in doing a story on the murder investigation, if Wheeler was "up to it." *Id.*, ¶ 87.

As part of the murder investigation, Wheeler was also in direct contact with the "lead detective," Joseph Dellacamera, and information Wheeler obtained from Detective Dellacamera supported Wheeler's belief and his public statements to Zimmerman and others that Seth had been in contact with WikiLeaks and had sent emails to WikiLeaks. *Id.*, ¶¶ 95-96. On May 15, 2017, Wheeler told Fox 5 DC reporter, Marina Marraco, on camera that he had sources at the FBI who said there was information that could link Seth to WikiLeaks. ("Absolutely, yeah, and that's confirmed."). *Id.*, ¶¶ 99-103.

On May 15, 2017, Wheeler was in contact with Zimmerman multiple times about an article Zimmerman was writing. *Id.*, ¶ 106. Zimmerman provided Wheeler several "drafts" containing quotes attributed to Wheeler. *Id.*, ¶¶ 108-129. At no point in time did Wheeler ever deny making the statements quoted by Zimmerman; instead he offered further quotations. *Id.*

On May 16, 2017, in the early morning, Fox published Zimmerman's story entitled, "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources.*" *Id.*, ¶ 143. The article included statements Wheeler had made and approved. *Id.* On May 16, 2017, after publication of Zimmerman's article, Wheeler appeared on Fox News and was interviewed by Sean Hannity, where Wheeler again confirmed Seth had communicated with WikiLeaks. *Id.*, ¶¶ 145-148. On May 16,

2017, Wheeler appeared on Fox Business with Lou Dobbs to discuss the Seth Rich murder investigation. *Id.*, ¶ 151.

On May 16 or May 17, 2017, one or more members of the Rich family, or a spokesman for the Rich family, threatened to sue Wheeler for violating the terms of his contract with the Rich family by speaking with Marraco, Zimmerman, Hannity, and Dobbs. *Id.*, ¶ 153. According to Plaintiff, the threats from the Rich family provided Wheeler with a motive to lie, backtrack, and distance himself from the quotes and statements he had made to Marraco, Zimmerman, Hannity, and Dobbs. *Id.*, ¶ 156. Wheeler then "flip-flopped on virtually all the essential facts." *Id.*, ¶ 161.

On May 23, 2017, Fox retracted Zimmerman's article with the following explanation:

> On May 16, a story was posted on the Fox News website on the investigation into the 2016 murder of DNC Staffer Seth Rich. The article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed.

> We will continue to investigate this story and will provide updates as warranted.

*Id.*, ¶ 170.

Between August 2017 and March 2018, Folkenflik and NPR published and republished the following online articles: (1) *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*, NPR.ORG (Aug. 1, 2017); (2) *Fox News' Seth Rich Story Echoes Previous Problems For Owner Rupert Murdoch*, NPR.ORG (Aug. 7, 2017); (3) *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story*, NPR.ORG (Aug. 16, 2017); (4) *No Apology, No Explanation: Fox News And The Seth Rich Story*, NPR.ORG (Sept. 15, 2017); and (5) *Fox News Fights Back On Lawsuit Filled Over Seth Rich Story*, NPR.ORG (Sept. 19, 2017). Among other things, Plaintiff alleges Folkenflik and NPR relied on a primary source – Wheeler – that Folkenflik and NPR knew

to be wholly debunked and unreliable. Docket Entry # 72, ¶ 181. According to Plaintiff, based on information known and available to Folkenflik, Folkenflik "harbored serious doubt as to the veracity of Wheeler's statements about Butowsky. Indeed, the statements were knowingly false, with not a shred of supporting evidence, and Folkenflik knew that before he wrote the Articles published by NPR." *Id.*

According to the Second Amended Complaint, in the articles Folkenflik misrepresented Plaintiff's involvement in the murder investigation; misrepresented Wheeler's contracts with Zimmerman; knew the President was not involved in any way; knew Wheeler had interviewed Detective Dellacamera; disregarded Wheeler's public statements to Marraco; knew Fox had accurately quoted Wheeler; disregarded Seymour Hersh's July 11, 2017 recorded statement; knew about Wheeler's appearances on Hannity and Dobbs when Wheeler again confirmed Seth Rich had communicated with WikiLeaks; knew about Wheeler's motive to lie (the Rich family's threats to sue Wheeler for violating the terms of his contract by speaking with Marraco, Zimmerman, Hannity and Dobbs); and knew about Wheeler's statement to FetchYourNews. *Id.*, ¶¶ 68-172.

Plaintiff seeks money damages for alleged loss and injury to his business, insult, pain and mental suffering, humiliation, embarrassment, and injury to his reputation sustained as a result of Defendants' publication of allegedly false and defamatory statements. *Id.*, ¶ 196.

## II. MOTION TO COMPEL

Defendants move, pursuant to Federal Rule of Civil Procedure 37, to compel the following discovery: (1) Documents responsive to the requests that Plaintiff has already agreed to, either in his responses or in meet-and-confers: Request Nos. 1-9, 11-13, 19-21, 26, 28, 30, 35-37, and 39-41 in Defendants' First Requests for Production ("1st RFP"); Request Nos. 1, 3, 4, 6-8, 22, 25, 30, 32-35,

37, 39 and 44 in Defendants' Second Requests for Production ("2nd RFP"); and Request Nos. 2-4

in Defendants' Third Requests for Production ("3rd RFP"); (2) Unaltered, unredacted copies of

documents Plaintiff has already produced; and (3) Documents responsive to requests to which

Plaintiff has lodged unfounded objections: 2nd RFP Nos. 10 and 21 and responses to Interrogatories

7, 12 and 14. Docket Entry # 85 at p. 1. Defendants also seek payment of their "reasonable expenses

incurred in making the motion, including attorney's fees," pursuant to FED. R. CIV. P. 37(a)(5)(A),

and such other relief as the Court deems appropriate. *Id.*

Defendants assert Plaintiff and his counsel have obstructed Defendants' efforts to obtain

discovery and had not produced a single document until December 2019. According to Defendants,

when Plaintiff finally "transmitted a tiny fraction of the discoverable documents known to exist,

declaring their work 'completed,' Plaintiff and his counsel produced redacted and manipulated

versions of documents to conceal relevant information and admissions that would undermine their

case." *Id.* at pp. 1-2. Defendants assert "these are not tangential matters: they go to the very heart of

Plaintiff's claims and NPR's defenses." *Id.* at p. 2. Defendants further assert as follows:

> Butowsky and his counsel in another federal case arising out of the same controversy
> admitted locating 'more than six thousand potentially responsive documents that had
> not yet been produced.' *See* Ex. 2 at 4 (*Aaron Rich v. Butowsky, et al.*, Civil Action
> No. 1:18-cv-00681-RJL ('*Aaron Rich* lawsuit'). Indeed, Butowsky and his counsel
> in that case conceded that they located over 6,000 documents without even searching
> 'a number of . . . Butowsky's devices and accounts.' *Id.* These revelations in the
> District Columbia come only after Butowsky had been ordered to produce documents
> months ago, and in the context of a pending sanctions motion. While Butowsky has
> different lawyers in the case at bar, Plaintiff, through his counsel here, has declared
> a document production consisting of approximately 300 documents complete without
> producing any material, or a paucity at best, from several of Butowsky's known email
> accounts *See* Ex. 1 at ¶ 10. The consequences of Plaintiff's and his counsel's
> discovery delinquencies have been prejudicial to NPR and harmful to the judicial
> process.

*Id.*

Defendants contend the attempts by Plaintiff and his counsel "to thwart discovery extend to Plaintiff's active interference with NPR's efforts to subpoena third parties, including an entity owned by Butowsky."[3] *Id.* at pp. 2-3. Accordingly, Defendants argue "it is essential that Plaintiff and his counsel be ordered to produce documents (in native format, where possible), answer interrogatories and be held to account for their actions, all pursuant to Rule 37." *Id.* at p. 3.

In his response dated February 3, 2020, Plaintiff asserted Defendants "served multiple discovery requests and issued multiple third-party subpoenas that are grossly overbroad, disproportionate to the needs of this case, and patently unreasonable." Docket Entry 3 90 at p. 1. Plaintiff states he responded to "each and every discovery request, duly noting appropriate objections," and upon request and after conferring with Defendants' counsel, he "supplemented his discovery responses several times." *Id.* Plaintiff represented he had "produced all responsive documents in his possession and control," further noting he had not objected to "a single third-party subpoena, allowing the Defendants to seek and obtain documents from third-parties that are not in Plaintiff's possession."[4] *Id.* at pp. 1-2.

---

[3] The Court notes two additional motions to compel have been referred to the undersigned for consideration (both of which were originally filed in the Northern District of Texas on January 16, 2020 and January 24, 2020, respectively, and were subsequently transferred to the Eastern District of Texas): (1) Motion to Compel Chapwood filed on March 16, 2020 in Case No. 4:20-mc-361; and (2) Motion to Compel Kim Sams filed on March 27, 2020 in Case No. 4:20-mc-38. Contemporaneously with this Order, the Court enters an Order granting the two additional motions to compel.

[4] Plaintiff asserts, among other things, he "has produced all text and email communications with Wheeler, with employees of Fox News Network (FNN), with public officials regarding the death of Seth Rich, and/or relating to Wheeler's investigation and the Fox News story that are in his possession and control." Docket Entry # 90 at p. 4. According to Plaintiff, the fact that Defendants received from third-parties additional emails (some of which are admittedly duplicative) on which Plaintiff was copied does not change the fact that Plaintiff has produced his entire file. *Id.*

Plaintiff explained he has been unable to identify the names of all clients/customers whose business he lost as a result of Defendants' publication of alleged false and defamatory statements in response to Defendants' Second Interrogatory No. 14 because he "fell gravely ill, almost died, and has been in and out of the hospital for months." *Id*. at p. 3.  In his response, Plaintiff stated he had been recently released from the hospital and would complete the list within seven days.

Regarding the documents in the *Aaron Rich* lawsuit, Plaintiff's counsel in this action has agreed to produce those documents, regardless of whether they are relevant to the claims in this case. *Id*. "To the extent that there are any documents that were produced by Plaintiff in the *Aaron Rich* Lawsuit and to the extent that additional documents will be produced in that case, Plaintiff agrees to instruct his counsel in that matter to make all non-privileged documents available." *Id.* Finally, Plaintiff substantively addressed three requests (2nd RFP No. 21, 1st Roggs No. 12, and 2nd RFP No. 10), arguing the information requested in those requests is marginally relevant or disproportionate to the needs of this case. *Id.* at pp. 5-6.

In their reply, Defendants assert Plaintiff's response "fails to justify Plaintiff's ongoing refusal to produce documents and provide discovery responses 'without court action.' Fed. R. Civ. P. 37(a)(1)," and "underscores the necessity of judicial action to compel Plaintiff to do what he should have done many months ago, and what he promises but fails to do as recently as in his Response itself." Docket Entry # 97 at p. 1. At the time of filing of the reply, Plaintiff still had not produced any of the documents produced in the *Aaron Rich* lawsuit. *Id*. at p. 2. Nor had Defendants received the names of all lost "clients/customers" and responses to subpoenas issued to Chapwood and Sams as indicated  by Plaintiff's counsel.  *Id.*

Defendants contend they are entitled to additional discovery from Plaintiff; Plaintiff has

8

waived his responses to Defendants' discovery requests because his objections are merely generic, boilerplate responses that do not respond with the "specificity" required by the Rules; and Plaintiff's relevance objections fail anyway. *Id.* at pp. 4-5. Defendants request the Court "overrule Plaintiff's objections, compel production of documents and supplementation of interrogatory answers, order a forensic examination of Plaintiff's devices, and award Defendants their reasonable attorneys' fees incurred in bringing this Motion to Compel." *Id.* at p. 5.

In their supplemental evidence filed May 8, 2020 in further support of their motion to compel, Defendants advise the Court of Plaintiff's production in the *Aaron Rich* lawsuit. Specifically, Defendants assert as follows:

> Butowsky identified those 6,000 documents—only after losing a motion to compel in the *Aaron Rich Case*—by hiring a vendor to search only his primary email account using a list of search terms from Aaron Rich. Even then, the search conducted was only a partial one and did not include any of his other seven email accounts, his personal devices, his hard drives, or the various messaging platforms that he uses. In its motion to compel, NPR requested an order compelling Butowsky to hire a vendor to conduct a similar search to identify responsive documents in this case. Due to different defendants and varying issues in the instant case, such a search here necessarily includes using search terms additional to those used in the *Aaron Rich Case*, to find, for example, communications about (1) NPR and its employees, (2) customers Butowsky allegedly lost due to NPR's reporting, and (3) his alleged reputational harm.
>
> After briefing on its motion to compel closed, NPR received the documents Butowsky produced in the *Aaron Rich Case* through its subpoena to Aaron Rich. Those documents—and a comparison between those documents and the documents Butowsky produced in this case—show that Butowsky has failed utterly to comply with his discovery obligations here and reinforce the need for an order compelling Butowsky to hire a vendor to conduct a comprehensive search across all his devices, email accounts, and messaging platforms. Thus, NPR submits this supplemental evidence and respectfully requests that the Court consider this additional evidence when ruling on NPR's motion to compel.

Docket Entry # 132 at pp. 1-2. Defendants state Plaintiff has produced only 299 documents in this

case. Declaration of Laura Lee Prather ("Prather Decl."), ¶ 3. According to Defendants, documents NPR obtained through third-party subpoenas illustrate Plaintiff's production here has been "woefully deficient." Docket Entry # 132 at p. 3.

Defendants assert Plaintiff, after agreeing to hire an outside vendor to search for responsive documents in the *Aaron Rich* lawsuit, "eventually produced 1,842 documents from that partial search, presumably determining that the other search term hits were either irrelevant or privileged." *Id.* at p. 3 (citing Prather Decl., ¶ 5). Prather attaches numerous exhibits to her declaration. Exhibits 1-6 are copies of documents originally produced in the *Aaron Rich* lawsuit which Defendants rely on as specific examples of documents Plaintiff failed to produce in this case.

Prather also attaches Exhibits 7-10 to her declaration, asserting Plaintiff failed to produce call and text records. Defendants pursued records from third-party AT&T, Plaintiff's cell phone provider. Prather Decl., ¶ 11. According to Defendants, AT&T's records show Plaintiff exchanged 480 text messages with Malia Zimmerman, the reporter whose byline accompanied the retracted Fox News article, between December 2016 and June 2017. *Id.*, ¶ 12, Ex. 8. Defendants state Plaintiff produced only a handful of text messages from Zimmerman in either this case or the *Aaron Rich* lawsuit— "either in the form of cherry-picked screen shots or the results of word searches which display her texts completely out of context." Docket Entry # 132 at p. 4 (citing Prather Decl., Exs. 9, 10 (results of search for "WikiLeaks")). "In other words, he has not produced his entire text conversation chain with Zimmerman in either lawsuit, demonstrating his continued failure to comply with his discovery obligations." *Id.*

Defendants argue these phone records are critical and "show an extremely high call volume between Butowsky and Zimmerman, Wheeler, and Adam Housley, a now-former Fox News

employee who was involved in the early stages of the retracted Fox News article." *Id*. at p. 5 (citing Prather Decl., ¶ 11, Ex. 7). Defendants assert that between December 2016 and June 2017, Plaintiff spoke with Zimmerman 571 times, Wheeler 424 times, and Housley 23 times. *Id.* According to Defendants, "[d]espite the more than 1,000 calls, Plaintiff continues to claim that he had only 'limited' involvement in the investigation and publication of the Fox News article." *Id.* (citing Docket Entry # 100 at p. 5).

Defendants argue this additional evidence—the documents produced in the *Aaron Rich* lawsuit and the recently-obtained cell phone records—further establish the need for a forensic examination of Plaintiff's devices.[5] Docket Entry # 132 at p. 5. Asserting Defendants' receipt of Plaintiff's production in the *Aaron Rich* lawsuit does not moot Defendants' motion to compel in this case, Defendants contend Plaintiff has not performed a search of all relevant accounts in either this case or the *Aaron Rich* lawsuit. *Id.*

According to Prather, through reviewing documents produced by third parties, NPR has identified the following email addresses used by Plaintiff to transmit relevant communications:

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████. Prather Decl., ¶ 14. Defendants state

---

[5] Defendants state this search will not obviate the need for Plaintiff to perform a good faith search for documents that are responsive to NPR's RFPs, but which will not be located through an ESI search. For example, Defendants assert Plaintiff should still be required to locate any documents that support his claim that he lost customers as a result of NPR's reporting, to the extent those documents exist. Docket Entry # 132 at p. 5, n. 4.

[6] Attached Exhibits 11 and 12 are copies of examples of emails Plaintiff produced from his chapwoodinvestments.com email address. Prather Decl., ¶ 15.

11

Plaintiff only searched one — ██████████████████ — for his production in the *Aaron Rich* lawsuit.[7]

Docket Entry # 132 at p. 6. Defendants note that any court-ordered search conducted for this case

should include a search of each of the eight identified email accounts, plus Plaintiff's social media

messages, text messages, phone, ipad, and personal computer hard drive. *Id.* According to

Defendants, the search should also include communications Plaintiff has conducted on any encrypted

messaging apps. *Id.* In her declaration, Prather asserts "[t]hrough third-party documents and filings

made in the *Aaron Rich Case*, NPR has identified at least four third-party messaging applications

that Butowsky used to communicate—Signal, Wickr, Gizmo, and Telegraph." Prather Decl., ¶ 18.

In Plaintiff's response to Defendants' notice of supplemental evidence, Plaintiff states only

the following:

> Rather than waste the Court's time, the Plaintiff will concede that his earlier record
> productions were very inadequate. The Plaintiff apologizes to the Court and to the
> Defendants. Since 2017, the Plaintiff has had ten surgeries plus 33 other medical
> procedures because of a defective hip implant (and resulting infections), spending
> weeks at a time in a Dallas-area hospital. *See* Declaration of Edward Butowsky
> (Exhibit 1). Even when he was out of the hospital, the Plaintiff was often unable to
> assist with discovery because he was incapacitated. *Id.* The undersigned has taken
> over the duties of lead counsel, and he has committed himself to insuring that
> discovery is handled correctly in the future. The undersigned believes that he is
> capable of insuring that all of the Plaintiff's accounts and devices are thoroughly

---

[7] As for the others, which Plaintiff's counsel represented were no longer used or "have almost no documents," Defendants argue "even the limited documents produce show otherwise." Docket Entry # 132 at p. 6. Examples include the following:
  • With respect to his professional address, ████████████████, Plaintiff's counsel represented that the email account "are strictly professional." However, according to Defendants, even Plaintiff's sparse production in this case shows relevant documents are in this email account. For example, Plaintiff produced six emails from his ████████████ address in which he "railed against media figures whom he perceived as wronging him." Prather Decl., Exs. 11, 12.
  • With respect to his icloud.com account, Plaintiff produced sixteen email strings sent to or from that account, including communications from Zimmerman and Wheeler. Prather Decl., ¶ 16, Exs. 13, 14. Nine of those icloud.com emails are with the Rich family. *Id.*
  • While Plaintiff failed to produce any emails from the addresses listed as 4-8 above, NPR has verified from third-party documents that Plaintiff used those email addresses to send relevant and responsive communications. Prather Decl., ¶ 17.

12

searched, but the Plaintiff will, of course, follow any further directions from the Court.

Docket Entry # 140 at p. 1.

In their reply, Defendants state that while they appreciate "Plaintiff's newfound candor," the response does not resolve Defendants' request for adequate responses to Interrogatories 7, 12, and 14 nor does it address "the significant expense Defendants incurred seeking discovery from Plaintiff or the months of delay that resulted from Plaintiff's repeated refusal to honor his discovery obligations." Docket Entry # 143 at pp. 1-2. "Nor does it allay Defendants' well-founded concerns that, if left unchecked, Plaintiff may yet again prove either unable or unwilling to conduct a comprehensive search of his devices, documents, email accounts, and cloud storage accounts." *Id.* at p. 2.

### III.  APPLICABLE LAW

Federal Rule of Civil Procedure 26(b) provides that the permissible scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Matter of AET, Inc., Ltd.*, No. 1:10-CV-51, 2018 WL 4201264, at *2 (E.D. Tex. June 8, 2018) (quoting FED. R. CIV. P. 26(b)(1)). In the Eastern District of Texas, Local Rule CV-26 also provides guidance in considering whether information is relevant for discovery. The rule provides information is relevant if:

13

(1) it includes information that would not support the disclosing parties' contentions;

(2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

(3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;

(4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and

(5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

*Matter of AET*, 2018 WL 4201264, at *2 (quoting E.D. Tex. Local Rule CV-26(d)). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Matter of AET*, 2018 WL 4201264, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947))).

Federal Rule of Civil Procedure 37 allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." *Star Creek Ctr., L.L.C. v. Seneca Ins. Co., Inc.*, No. 4:17-CV-00607, 2018 WL 1934084, at *1 (E.D. Tex. Apr. 23, 2018) (quoting FED. R. CIV. P. 37(a)(1)). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Star Creek*, 2018 WL 1934084, at *1 (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

14

The federal rules follow a proportionality standard for discovery. *Van Dyke v. Retzlaff*, No. 4:18-CV-247, 2020 WL 1866075, at *1 (E.D. Tex. Apr. 14, 2020) (citing FED. R. CIV. P. 26(b)(1)). Under this requirement, the burden falls on both parties and the Court to consider the proportionality of all discovery in resolving discovery disputes. *Id.* (citing FED. R. CIV. P. 26(b)(1), advisory committee note (2015)). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## IV. ANALYSIS

### A.     Defendants' motion to compel

*Request to compel production of responsive documents and supplemental interrogatory responses*

On January 19, 2019, the Court issued the Amended Order Governing Proceedings (Docket Entry # 45). In the Order, the Court instructed the parties to produce "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" *Id.* at p. 4. Such production was to be accomplished not later than ten days after the deadline for the Rule 26(f) conference. *Id.* at pp. 3-4. The Order, by reference to Local Rule CV-26(d), defined "relevant" as including:

> (1) information that would not support the disclosing parties' contentions; (2) those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) information that is likely to have an influence on or affect the outcome of a claim or defense; (4)

information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and (5) information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

*Id.* at p. 4.

The Court then entered its Scheduling Order (Docket Entry # 57) on March 21, 2019. In the Scheduling Order, the Court reminded the parties of the requirement to have already disclosed, without awaiting a discovery request, information in addition to that required by Federal Rule of Civil Procedure 26, including names of persons likely to have, and documents containing, information "relevant to the claim or defense of any party" as further defined in Local Rule CV-26. Docket Entry # 57 at p. 4. The Court further stated "[e]lectronically stored information will be produced in hard copy form or multi-page TIFF format, unless the parties agree otherwise. The parties agree that electronically stored information subject to discovery may be produced electronically in Adobe PDF format ('PDF')." *Id.*

Even though Plaintiff was required by the Court's scheduling order to have produced documents containing information relevant to the claim or defense of any party, on July 5, 2019, NPR served its 1st RFP. In his responses, Plaintiff agreed to produce documents. Plaintiff's counsel, Steven Biss, represented Plaintiff had given him documents on a mobile drive, and that he would produce the documents to NPR via HighTail, a file-sharing program. According to Defendants, Plaintiff's counsel failed to deliver the documents to NPR.

On September 13, 2019, NPR identified deficiencies in Plaintiff's discovery responses and requested an update on the promised production. On September 30, 2019, NPR served its 2nd RFP and its First Set of Interrogatories ("1st Roggs"). On October 18, 2019, NPR served its 3rd RFP and its Second Set of Interrogatories ("2nd Roggs"). Plaintiff again assured NPR he would produce

documents, this time by October 23, 2019, but Plaintiff failed to produce the requested documents.

On November 21, 2019, NPR sent another letter demanding the "requested and long-promised documents and identifying several additional deficiencies in Plaintiff's responses to Defendants' 2nd RFP." Docket Entry # 85 at p. 4. On December 4, 2019, the parties met and conferred telephonically to discuss the pending discovery disputes. Plaintiff represented he would produce the requested documents on December 5, 2019 and would supplement Plaintiff's responses to written discovery by December 8, 2019. Plaintiff failed to produce documents.

NPR sent a third letter to Plaintiff on December 9, 2019 regarding Plaintiff's continued discovery deficiencies and his insufficient responses to Defendants' 2nd Roggs and 3rd RFP. On December 13, 2019, the parties met and conferred telephonically to discuss the discovery issues addressed in NPR's December 9, 2019 letter. According to Plaintiff's counsel, Butowsky had uploaded all documents to a thumb drive and sent them to Biss via FedEx. *Id.* at pp.4-5.

On December 16, 2019, over five months after NPR's first request for documents (and four months after the Amended Scheduling Order was filed),"Plaintiff finally produced a tiny fraction (characterized by Plaintiff as a 'grouping') of the long-promised documents – a total of 115 pages, consisting almost entirely of NPR corporate filings, including its 2017 annual report and 2016 Form 990." *Id*. at p. 5. According to Defendants, by the time Plaintiff notified NPR on December 8, 2019 that "Plaintiff's document production was completed," Plaintiff had produced only 200 emails (many of which contain only a subject line or a single hyperlink), 78 screenshots of text messages (many incomplete and not in native format) and social media posts, 9 audio recordings (4 of which were duplicates), and 161 pages of other documents. *Id*. Defendants assert "Plaintiff's production is replete with selected excerpts of responsive communications and documents that have been redacted

17

or otherwise manipulated." *Id.*

As an initial matter, NPR has met its burden to show the requested information is relevant. As urged by Defendants, Plaintiff's acknowledgment that his prior production was insufficient does not obviate the need for the Court to grant Defendants' motion to compel. Docket Entry # 143 at p. 2. The Court is not convinced Plaintiff has even completed the full production of promised relevant documents, much less searched for documents responsive to those requests for production to which he objected. To avoid discovery, Plaintiff needed to "show specifically how . . . each [request] is not relevant . . . or overly broad." *Dortch v. Wells Fargo Bank, N.A.*, No. 4:18-CV-00452, 2020 WL 1289431, at *5 (E.D. Tex. Mar. 18, 2020) (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Having failed to do that, the Court overrules Plaintiff's objections to Defendants' discovery requests.[8]

The Court, having carefully considered the parties' briefing, grants Defendants' motion to compel in part, deferring any ruling on the request for expenses as set out in further detail below, and

---

[8] As noted above, Plaintiff substantively addressed three requests (1st Roggs No. 12, 2nd RFP No. 10, and 2nd RFP No. 21) in his response, arguing the information requested in those requests is marginally relevant or disproportionate to the needs of this case. Docket Entry # 90 at pp. 5-6. In response to First Interrogatory No. 12, Plaintiff answered "Objection – relevance." *Id.* Plaintiff's objections are waived because they are general, boilerplate objections not made with the requisite specificity. *Apollo MedFlight, L.L.C. v. BlueCross BlueShield of Texas*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *12 (N.D. Tex. Jan. 13, 2020).

In response to 2nd RFP No. 10, which seeks "[a]ll documents, including correspondence, electronically stored information, emails, video and audio recordings, voicemail, and text messages, relating to any actual or proposed book publishing or movie deals to which You are a party from December 1987 to present," Plaintiff states the following: "Objection – relevance; overbroad." In response to 2nd RFP No. 21, which seeks "[a]ll FINRA documents, records, or communications related to your registration as a broker/dealer since December 1987," Plaintiff states as follows: "Objection – relevance and proportionality; overbroad; unduly burdensome. Subject to the foregoing objections, see FINRA Broker Check. . . ."

Plaintiff's objections to 2nd RFP Nos. 10 and 21 do not specifically show how such information is not relevant. Simply stating that such information is not relevant is not sufficient to make a proper objection. *Solis v. United Med. Clinic, P.A.*, No. EP-20-CV-2-KC, 2020 WL 2813127, at *5 (W.D. Tex. May 29, 2020) (citing *Quarles*, 894 F.2d at 1485 ("the 'party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.' ") (applying the standard to requests for production)). Furthermore, Plaintiff makes no argument to support its objections.

orders Plaintiff and his counsel, within thirty (30) days from the date of entry of this Order, to produce responsive documents and supplement interrogatory responses. Specifically, the Court **ORDERS** the following:

1. Plaintiff must certify to the Court within thirty (30) days of the date of entry of this Order that he has produced to Defendants—and will continue to produce on a rolling basis as required by Rule 26(e)—all documents and communications that Plaintiff has produced or received in connection with any of the following lawsuits and/or arbitrations arising therefrom, including deposition transcripts with exhibits, declarations, other testimony, and copies of unredacted pleadings and exhibits to pleadings:

a. *Wheeler v. Twenty-First Century Fox, Inc., et. al.*, Case No. 1:17-CV-05087, filed in the United States District Court for the Southern District of New York.

b. *Rich v. Butowsky et al.*, Case No. 1:18-cv-681-RJL filed in the United States District Court for the District of Columbia.

c. *Rich v. Fox News Network, L.L.C., et al.*, Case No. 1:18-cv-2223 filed in the United States District Court for Southern District of New York.

d. *Butowsky v. Democratic National Committee*, Case No. 4:19-cv-00582, filed in the Eastern District of Texas on August 1, 2019.

e. *Butowsky v. Gottlieb, et al.*, Case No. 4:19-cv-00180, filed in the Eastern District of Texas on March 12, 2019.

f. *Butowsky v. Susman & Godfrey, L.L.P.*, Cause No. 416-01222-2019, filed in Collin County, Texas on March 6, 2019.

g. *Butowsky v. Wigdor*, Case No. 4:19-cv-00577, filed in the Eastern District of Texas on July 31, 2019.

h. *Chapwood Capital Investment Mgmt., L.L.C. v. Charles Schwab Corp.*, Case No. 4:18-cv-00287, filed in the Eastern District of Texas on April 23, 2018.

i. *Chapwood Capital Investment Mgmt., L.L.C. v. Charles Schwab Corp.*, Case No.

19

4:18-cv-00548, filed in the Eastern District of Texas on August 3, 2018.

j. *Clevenger v. U.S. Dep't of Justice*, Case No. 1:18-cv-01568, filed in the Eastern District of New York on March 14, 2018.

2. Plaintiff and his counsel shall provide declarations to the Court within thirty (30) days from the date of entry of this Order describing the search they have conducted for all documents and communications responsive to NPR's requests for production and certify that they have produced all responsive, non-privileged documents and communications within Plaintiffs possession, custody, or control to Defendants.

3. Plaintiff shall produce unaltered, unredacted versions of the documents already produced or provide a declaration to the Court within thirty (30) days from the date of entry of this Order describing why certain redactions are warranted.

4. Plaintiff shall provide, within thirty (30) days from the date of entry of this Order, full responses to First Interrogatory No. 7 ("Identify all mobile phone numbers and mobile phone service providers with which You had an account during the relevant time period and the date ranges in which you had those accounts."),[9] First Interrogatory No. 12 ("Identify all lawsuits in which [he has] been a party since January 1, 2010"), and Second Interrogatory No. 14 ("Identify all special damages, including any realized or liquidated direct pecuniary loss, that you incurred as a result of the Defendants' alleged business disparagement.").[10] Plaintiff shall have seven days from the date of this

---

[9] In his answer to First Interrogatory No. 7, Plaintiff did not lodge a specific objection. His answer was as follows: "What is the 'relevant time period?' Plaintiff's mobile number is [ ]." Docket Entry # 85-18. The Court orders the parties to meet and confer regarding the appropriate time frame. Plaintiff shall supplement his response accordingly within the time provided herein.

[10] In response to Second Interrogatory No. 14, Plaintiff responded with inexact statements claiming Defendants' alleged business disparagement caused loss or specific clients and loss of income and profits (noting Plaintiff would identify specific clients/customers and determine "sum certain[s]"). Docket Entry # 85-19. Defendants assert Plaintiff failed to provide this information.

supplementation, to provide Defendants a verified statement that he has fully and completely answered First Interrogatory No. 7, First Interrogatory No. 12, and Second Interrogatory No. 14.

Any future motion to compel before this Court regarding the sufficiency and timeliness of Plaintiff's responses may result in sanctions to Plaintiff or Plaintiff's counsel, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure. *See Solis v. United Med. Clinic, P.A.*, No. EP-20-CV-2-KC, 2020 WL 2813127, at *4 (W.D. Tex. May 29, 2020).

### *Request for attorneys' fees*

As noted above, Defendants request the Court order Plaintiff to pay reasonable attorney's fees incurred by Defendants pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Docket Entry #85 at p. 2. This rule provides two grounds, stating that where (1) the motion to compel is granted[11] or (2) the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Crow v. ProPetro Servs., Inc.*, No. MO:15-CV-00149-RAJ-DC, 2016 WL 9776368, at *3 (W.D. Tex. June 6, 2016) (quoting FED. R. CIV. P. 37(a)(5)(A)). Specifically, a "motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *Van*

---

[11] When the motion is granted in part and denied in part, the court "may . . . apportion the reasonable expenses for the motion." *Janvey v. Proskauer Rose L.L.P.*, No. 3:13-CV-0477-N-BQ, 2018 WL 10418492, at *5 (N.D. Tex. Mar. 6, 2018) (quoting FED. R. CIV. P. 37(a)(5)(C)).

*Dyke*, 2020 WL 1866075, at *3 (quoting *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018) (citing *De Angelis v. City of El Paso*, 265 Fed. Appx. 390, 398 (5th Cir. 2008) (internal quotations omitted in *Zenith*))). A United States Magistrate Judge has authority to enter nondispositive discovery orders, including the award of attorney's fees as sanctions, under Federal Rule of Civil Procedure 37. *Janvey v. Proskauer Rose L.L.P.*, No. 3:13-CV-0477-N-BQ, 2018 WL 10418492, at *6 (N.D. Tex. Mar. 6, 2018) (citing 28 U.S.C. § 636(b); also citing *Merritt v. Int'l Bd. of Boilermakers*, 649 F.2d 1013, 1016–17 (5th Cir. Unit A June 1981) (per curiam)).

The Court finds the present circumstances may warrant an award to Defendants of expenses, including attorney's fees, that they incurred in drafting and filing the motion to compel and briefing related thereto. However, the Court defers ruling on any award of expenses under Rule 37(a)(5) pending further briefing by the parties. The Court orders Plaintiff's counsel and Defendants' counsel to meet and confer about the reasonable amount of attorneys' fees and costs sought to be awarded under Rule 37(a)(5)(A). Within fifteen (15) days from the date of entry of this Order, the parties shall file a joint report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees and costs to be likely awarded to Defendants have been resolved, Defendants' counsel must also filed a proposed agreed order by that date.

If the parties do not reach an agreement as to the amount of attorneys' fees and costs to be awarded (or Plaintiff's payment thereof), Defendants must, by no later than June 24, 2020, file an application for attorneys' fees and costs that is accompanied by supporting evidence establishing the amount of the reasonable attorneys' fees and costs to be awarded under Rules 37(a)(5)(A). The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the

itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *Liberty Ins. Underwriters Inc. v. First Mercury Ins. Co.*, No. 3:17-CV-3029-M, 2019 WL 7900687, at *1 (N.D. Tex. Mar. 11, 2019) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002)). If an application is filed, Plaintiff must file a response by July 8, 2020, and Defendants must file a reply by July 15, 2020.

## B. Defendants' request for forensic examination

Although not requested in the original motion to compel, Defendants request in their reply that a forensic examination of Plaintiff's devices should be ordered to enhance the likelihood of compliance with the Court's order. Docket Entry # 97 at p. 2. In Defendants' notice of supplemental evidence and reply in further support, Defendants request the Court order Plaintiff to retain a third-party vendor mutually acceptable to Defendants to conduct a forensic examination, at Plaintiff's expense, of each of his e-mail addresses (including but not limited to:

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████; shared email accounts, cloud storage accounts, apps, messaging platforms (including at least Signal, Wickr, Gizmo, and Telegraph), hard document files, and devices, including but not limited to computers, mobile phones, iPads, and tablets. Docket Entry # 143 at p. 3. Defendants further request the Court order the parties to establish appropriate search terms within fifteen days of the date of this Order and that the forensic examination be completed within thirty days of the search terms being agreed upon, and the documents produced within thirty days of the completion of the forensic exam. *Id.* at pp. 3-4.

Other than indicating the parties in the *Aaron Rich* lawsuit agreed to retain an outside vendor

to assist with electronic discovery, Defendants cite no law in their briefing to support their request for the Court to order Plaintiff to retain a vendor and conduct a forensic examination at his expense. In Plaintiff's response to Defendants' notice of supplemental evidence, Plaintiff's counsel represents to the Court that he "believes that he is capable of insuring that all of the Plaintiff's accounts and devices are thoroughly searched, but the Plaintiff will, of course, follow any further directions from the Court." Docket Entry # 140 at p. 1. According to Defendants, Plaintiff's recent response "serves to underscore the importance of Court intervention to ensure Plaintiff's compliance with his discovery obligations." Docket Entry # 143 at p. 2.

Because Plaintiff seems to acknowledge there is relevant information contained on Plaintiff's email accounts, personal devices, hard drives, and messaging platforms (regarding, for example, communications about (1) NPR and its employees, (2) customers Plaintiff allegedly lost due to NPR's reporting, and (3) his alleged reputational harm), the Court orders the parties to meet and confer to formulate a draft ESI protocol to govern discovery/examination of these items.[12] An Order Regarding E-Discovery would supplement other discovery rules and orders and would help streamline the production of ESI going forward. *John Crane Grp. Corp. v. Energy Devices of Texas, Inc.*, No. 6:14-CV-178, 2015 WL 11089486, at *3 (E.D. Tex. Feb. 2, 2015) ("With regard to forensic examination, the ESI Order provides for the parties to meet and confer regarding a forensic examination protocol if it is determined that a forensic examination is necessary."). As part of their conference regarding an Order Regarding E-Discovery, the parties are to develop a forensic examination protocol that contemplates key word searches so as to control costs and to keep discovery proportional to the needs of this case. *See Brand Servs., L.L.C. v. Irex Corp.*, No. CV

---

[12] Although the Court entered the parties' Stipulated Protective Order (Docket Entry # 67), the  parties have not submitted to the Court an agreed Order Regarding E-Discovery in this case.

15-5712, 2017 WL 67517, at *3 (E.D. La. Jan. 6, 2017).

Within twenty (20) days from the date of entry of this Order, the parties shall file a joint report notifying the Court of the results of the conference. If all disputed issues as to the proposed E-Discovery Order have been resolved, Defendants' counsel must also filed a proposed agreed order by that date. If there are disputed issues, each party may inform the Court by separate letters of any concerns they might have with the draft ESI protocol. Thereafter, the Court will resolve any remaining disputes concerning the ESI protocol.

It is the Court's expectation that following the Court's entry of an Order Regarding E-Discovery, Plaintiff will conduct a forensic examination using the specific forensic examination protocol agreed to by the parties.

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendants' Motion to Compel Discovery (Docket Entry # 85) is **GRANTED IN PART and DEFERRED IN PART** as set forth herein.

**SIGNED this 5th day of June, 2020.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE