# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ED BUTOWSKY, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | **Civil Action No.  4:18CV442** |
| | § | **Judge Mazzant/Magistrate Judge Craven** |
| DAVID FOLKENFLIK, ET AL., | § | |
| Defendants. | § | **SEALED** |

## ORDER ON RULE 37 SANCTIONS ISSUES

The above-referenced cause of action was referred to the undersigned United States

Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636.  The following are before

the Court:

> **(1) Defendants' Application for Attorney's Fees (Docket Entry # 164); and**

> **(2) Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (Docket Entry # 161).**

The Court, having carefully considered the relevant briefing and hearing arguments of counsel

August 18, 2020 regarding Defendants' Rule 37 motion for sanctions, is of the opinion the

application and the motion should be **GRANTED, as modified herein**.[1]

## I. FACTUAL BACKGROUND

This is an action for defamation *per se*, business disparagement, and civil conspiracy filed

by Plaintiff Ed Butowsky ("Plaintiff" or "Butowsky"), a Dallas investment advisor, against National

---

[1] A United States Magistrate Judge has authority to enter nondispositive discovery orders, including the award of attorney's fees as sanctions, under Federal Rule of Civil Procedure 37. *Janvey v. Proskauer Rose L.L.P.*, No. 3:13-CV-0477-N-BQ, 2018 WL 10418492, at *6 (N.D. Tex. Mar. 6, 2018) (citing 28 U.S.C. § 636(b); also citing *Merritt v. Int'l Bd. of Boilermakers*, 649 F.2d 1013, 1016–17 (5th Cir. Unit A June 1981) (per curiam)).

Public Radio, Inc. ("NPR"), its senior media correspondent, David Folkenflik ("Folkenflik"), and certain former and current executive editors at NPR (Edith Chapin, Leslie Cook, and Pallavi Gogoi, jointly and severally) (collectively, "Defendants" or "NPR"). According to Plaintiff, Defendants published false and defamatory statements about Plaintiff online and via Twitter between August 2017 and March 2018 – statements Plaintiff alleges injured his business and reputation. Docket Entry # 72, ¶ 5.  As a general matter, Defendants contend Plaintiff filed suit against them for accurately reporting on a publicly filed lawsuit on a matter of public concern. Specifically, Defendants assert Plaintiff filed suit following NPR's reporting on a 2017 lawsuit filed by Fox News contributor Rod Wheeler against Fox News.[2] *See* Complaint, *Wheeler v. Twenty-First Century Fox, Inc., et al.*, Case No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017).  Docket Entry # 65 at p. 2, n. 3.

The 98-page Second Amended Complaint ("SAC") alleges as follows. In early 2017, Plaintiff contacted the family of Seth Rich to help the family investigate their son's unsolved murder.[3] Docket Entry # 72,  ¶ 70.  Plaintiff offered to pay for a private investigator.  *Id.* On February 23, 2017, Plaintiff contacted Rod Wheeler via text message to see if Wheeler would be interested in investigating the murder.  *Id.*, ¶ 71.  Plaintiff did not know Wheeler, but he had seen him on television and Wheeler appeared to be a competent investigator. *Id.*

Plaintiff alleges the family of Seth Rich entered into a contract with Wheeler to investigate the murder of Seth Rich.  *Id.*, ¶ 72. Plaintiff was not a party to the contract between Wheeler and the

---

[2] According to Plaintiff, this action is not a critique of NPR's reporting of the Wheeler lawsuit. Docket Entry # 32 at p. 3, n. 3; *see also* Docket Entry # 41 at p. 5. Plaintiff asserts this case is about collusion: that Folkenflik knew Plaintiff, a "Dallas investment manager," was part of Wigdor's "press strategy" and he willingly assumed the role of "firecracker" in the scheme to extort money from Fox News. Docket Entry # 41 at p. 5. Plaintiff asserts he suffered "permanent harm to his name, reputation and business as a registered investment advisor because of a false and vile narrative published with actual malice by David Folkenflik and Douglas Wigdor, acting in concert." *Id*. at p. 1.

[3] Seth Rich was a Democratic National Committee ("DNC") staffer who was murdered on July 10, 2016. Docket Entry # 72, ¶ 5.

Rich family; he has never seen the contract; and his role and involvement in the investigation of Seth's murder were limited.[4] *Id.*, ¶¶ 73-75. According to Plaintiff, Wheeler investigated the matter and came up with the theory that Seth's murder was not the result of a botched robbery. *Id.* at p. 20, n. 7.

On March 31, 2017, Wheeler appeared on Fox 5 DC and claimed he had been investigating Seth's murder over the "past three weeks." *Id.*, ¶¶ 79-81. According to the SAC, after Wheeler appeared on Fox 5 DC, he updated Malia Zimmerman, an "award-winning investigative reporter" employed by FoxNews.com, concerning his investigation. *Id.*, ¶¶ 83-85. In one of his texts to Zimmerman, Wheeler stated, "I'm ready to say that Seth's [sic] Death was not a botched robbery and there appears to be a coverup within the D.C. Govt related to his death." *Id.*, ¶ 86. Zimmerman expressed interest in doing a story on the murder investigation, if Wheeler was "up to it." *Id.*, ¶ 87.

As part of the murder investigation, Wheeler was also in direct contact with the "lead detective," Joseph Dellacamera, and information Wheeler obtained from Detective Dellacamera supported Wheeler's belief and his public statements to Zimmerman and others that Seth had been in contact with WikiLeaks and had sent emails to WikiLeaks. *Id.*, ¶¶ 95-96. On May 15, 2017, Wheeler told Fox 5 DC reporter, Marina Marraco, on camera that he had sources at the FBI who said there was information that could link Seth to WikiLeaks. ("Absolutely, yeah, and that's confirmed."). *Id.*, ¶¶ 99-103.

On May 15, 2017, Wheeler was in contact with Zimmerman multiple times about an article

---

[4] Plaintiff alleges Wheeler publicly confirmed Butowsky's limited involvement in the investigation. Docket Entry # 72, ¶ 5. According to the SAC, on May 16, 2017, Wheeler represented to Sean Hannity that "I was hired by the family, Joel and Mary Rich. They signed the contract. Now, the financial benefit, if there were any financial benefit and by the way there wasn't much, that was actually paid for by **a third party [Butowsky] that I have had very little communication with at all, Sean**." *Id.* (citing https://www.youtube.com/watch?v=CuRJDKEVxHY (emphasis added in SAC)).

3

Zimmerman was writing.  *Id.*, ¶ 106. Zimmerman provided Wheeler several "drafts" containing quotes attributed to Wheeler. *Id.*, ¶¶ 108-129. At no point in time did Wheeler ever deny making the statements quoted by Zimmerman; instead he offered further quotations.  *Id.*

On May 16, 2017, in the early morning, Fox published Zimmerman's story entitled, "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources.*" *Id.*, ¶ 143.  The article included statements Wheeler had made and approved.  *Id.*  On May 16, 2017, after publication of Zimmerman's article, Wheeler appeared on Fox News and was interviewed by Sean Hannity, where Wheeler again confirmed Seth had communicated with WikiLeaks. *Id.*, ¶¶ 145-148.  On May 16, 2017, Wheeler appeared on Fox Business with Lou Dobbs to discuss the Seth Rich murder investigation. *Id.*, ¶ 151.

On May 16 or May 17, 2017, one or more members of the Rich family, or a spokesman for the Rich family, threatened to sue Wheeler for violating the terms of his contract with the Rich family by speaking with Marraco, Zimmerman, Hannity, and Dobbs. *Id.*, ¶ 153.  According to Plaintiff, the threats from the Rich family provided Wheeler with a motive to lie, backtrack, and distance himself from the quotes and statements he had made to Marraco, Zimmerman, Hannity, and Dobbs. *Id.*, ¶ 156.  Wheeler then "flip-flopped on virtually all the essential facts." *Id.*, ¶ 161.

> On May 23, 2017, Fox retracted Zimmerman's article with the following explanation: On May 16, a story was posted on the Fox News website on the investigation into the 2016 murder of DNC Staffer Seth Rich.  The article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting.  Upon appropriate review, the article was found not to meet those standards and has since been removed.
>
> We will continue to investigate this story and will provide updates as warranted.

*Id.*, ¶ 170.

Between August 2017 and March 2018, Folkenflik and NPR published and republished the

4

following online articles: (1) *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*, NPR.ORG (Aug. 1, 2017); (2) *Fox News' Seth Rich Story Echoes Previous Problems For Owner Rupert Murdoch*, NPR.ORG (Aug. 7, 2017); (3) *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story*, NPR.ORG (Aug. 16, 2017); (4) *No Apology, No Explanation: Fox News And The Seth Rich Story*, NPR.ORG (Sept. 15, 2017); and (5) *Fox News Fights Back On Lawsuit Filled Over Seth Rich Story*, NPR.ORG (Sept. 19, 2017).  Among other things, Plaintiff alleges Folkenflik and NPR relied on a primary source – Wheeler – that Folkenflik and NPR knew to be wholly debunked and unreliable. Docket Entry # 72, ¶ 181. According to Plaintiff, based on information known and available to Folkenflik, Folkenflik "harbored serious doubt as to the veracity of Wheeler's statements about Butowsky. Indeed, the statements were knowingly false, with not a shred of supporting evidence, and Folkenflik knew that before he wrote the Articles published by NPR." *Id.*

According to the SAC, in the articles Folkenflik misrepresented Plaintiff's involvement in the murder investigation;[5] misrepresented Wheeler's contracts with Zimmerman; knew the President was not involved in any way; knew Wheeler had interviewed Detective Dellacamera; disregarded Wheeler's public statements to Marraco; knew Fox had accurately quoted Wheeler; disregarded Seymour Hersh's July 11, 2017 recorded statement; knew about Wheeler's appearances on Hannity and Dobbs when Wheeler again confirmed Seth Rich had communicated with WikiLeaks; knew

---

[5] Plaintiff alleges Butowsky was not trying to solve the murder of Seth Rich. Docket Entry # 72 at p. 20, n. 7. According to Plaintiff, the Rich family engaged Wheeler – not Butowsky or Fox – to help solve the murder, and Wheeler was the one who investigated the matter and came up with the theory that Seth Rich's murder was not the result of a botched robbery. *Id.* (emphasis removed). Plaintiff alleges "Folkenflik misrepresented Butowsky's role to make it appear that Butowsky – the wealthy Dallas investment advisor – orchestrated a deception on the American people, including his own advisory clients." *Id.*, ¶ 69. Plaintiff alleges he "did not participate in Wheeler's investigation and had very little communication with Wheeler." *Id.*, ¶ 74.

5

about Wheeler's motive to lie (the Rich family's threats to sue Wheeler for violating the terms of his contract by speaking with Marraco, Zimmerman, Hannity and Dobbs); and knew about Wheeler's statement to FetchYourNews.  *Id.*, ¶¶ 68-172. Plaintiff further alleges Folkenflik knew, before he wrote his first article, that Plaintiff's role and involvement in the investigation of Seth Rich's murder was limited.[6] *Id.*, ¶ 68.

Relevant to the Rule 37 motion for sanctions, the SAC alleges the true facts were known to Folkenflik through Wheeler's text messages and emails in Folkenflik's possession, from public records, and on and through the website, "http://www.debunkingrodwheelersclaims.com/ (now http://debunkingrodwheelersclaims.net/)." *Id.*, ¶ 26.  According to Plaintiff, on or before July 28, 2017 Wheeler's texts were available to Folkenflik on the Internet and via Twitter. *Id.*, ¶ 78 (citing h t t p : / / w w w . d e b u n k i n g r o d w h e e l e r s c l a i m s . c o m / ; a l s o   c i t i n g https://twitter.com/debunkrwheeler?lang=en) (referred to herein as the "Debunking Websites"). The SAC references the Debunking Websites two additional times to demonstrate that evidence allegedly supporting Plaintiff's version of events—including Wheeler's emails, texts, recorded telephone calls, and interview notes, and audio recordings of Plaintiff's alleged sources—was publicly available. *See id.*, ¶ 98 (quoting from Wheeler's notes of his April 25, 2017 interview with Detective Dellacamera, published on the website www.debunkingrodwheelerclaims.com), ¶ 107 (alleging Folkenflik had copies of all the email and text message communications between Wheeler and Zimmerman, which he obtained from Wigdor and which were also published and available on the Internet at www.debunkingrodwheelerclaims.com); *see also* ¶ 181d (alleging Folkenflik and NPR acted with

---

[6] According to Plaintiff, "Folkenflik misrepresented Butowsky's actual involvement in Wheeler's investigation. Folkenflik made it appear as of Butowsky was at the center of the investigation, directing Wheeler, feeding him 'tips', and telling him what to do. Folkenflik falsely portrayed Butowsky as a puppet master 'behind the scenes', feeding 'tips' to Wheeler and telling Fox what to do. Far from the truth."  Docket Entry # 72, ¶ 76.

actual malice and reckless disregard for the truth, generally alleging they "were in possession of Wheeler's email communications and text messages with Zimmerman and other information that demonstrated the falsity of Wigdor and Wheeler's information" and yet "consciously and intentionally ignored known and available contradictory evidence. . . ."). The SAC also links to videos on the "DeBunking Rod Wheeler" YouTube channel, including edited audio compilations of Wheeler's phone calls. *See id.* at nn. 21, 22, 23; ¶¶ 140, 158, 159.

Plaintiff seeks money damages in a sum not less than $60,000,000.00 for alleged loss and injury to his business, insult, pain and mental suffering, humiliation, embarrassment, and injury to his reputation sustained as a result of  Defendants' publication of allegedly false and defamatory statements. *Id.*, ¶ 196.

## II. PROCEDURAL BACKGROUND

### A.    Defendants' Rule 12(b)(6) motion to dismiss

On October 16, 2018, Defendants filed their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim. Docket Entry # 25. Defendants argued Plaintiff's original complaint failed to state a plausible claim for relief for two primary reasons. First, Defendants claimed that both Texas law and the First Amendment to the United States Constitution protect Defendants' reporting on judicial proceedings and about matters of public concern. Second, Defendants argued many of the statements are not "of and concerning" Plaintiff, are not defamatory or capable of a defamatory meaning, or are protected expressions of opinion and should be dismissed for these reasons as well.

The undersigned heard oral argument on Defendants' motion to dismiss on February 7, 2019. Docket Entry # 49. Following the hearing but before entry of the undersigned's Report and

Recommendation, Plaintiff filed on March 5, 2019 an opposed motion for leave to file an amended complaint. Docket Entry # 53.

On April 17, 2019, the Magistrate Judge entered a 98-page Report and Recommendation ("R&R") regarding proposed findings of fact and recommendations that Defendants' motion to dismiss be denied.[7] Docket Entry # 58. The Magistrate Judge first found Defendants did not establish the common law and statutory privileges barred Plaintiff's claims. *Id*. at 49. Additionally, she found Plaintiff sufficiently alleged the publications at issue were not substantially true, and the third-party allegation rule did not bar Plaintiff's claims as a matter of law at this stage of the proceeding. *Id.* at 51. She next concluded Plaintiff adequately pleaded facts sufficient to allege a defamation claim. Specifically, she found, at this stage of the proceedings, accepting the allegations in Plaintiff's complaint as true, Plaintiff plausibly alleged the statements at issue were "of and concerning" Plaintiff. She also found the statements at issue were not expressions of opinion and were capable of a defamatory meaning. *Id.* at 74, 78. She then considered whether the Defamation Mitigation Act ("DMA") barred Plaintiff's defamation claim. She concluded Plaintiff's failure to follow the DMA did not require dismissal of the action, and the issue of recovery of exemplary damages was more appropriate for consideration in the context of summary judgment. *Id.* at 95. Lastly, the Magistrate Judge found Plaintiff pleaded facts sufficient to state a claim for civil conspiracy. *Id.* at 97.

On August 7, 2019, District Judge Mazzant entered an Order Adopting the Report and

---

[7] The analysis in the R&R used only the operative pleading, Plaintiff's original complaint, but the R&R did note in various footnotes differences between the original complaint and the proposed amended complaint. The R&R specifically stated as follows: "Prior to the filing of Plaintiff's motion for leave to amend, there had been extensive briefing on Defendants' motion to dismiss Plaintiff's original complaint, and the Magistrate Judge had heard oral argument on the fully ripe motion to dismiss. Considering this, and further considering the proposed amended complaint would not alter the analysis in a meaningful way, the Magistrate Judge advised the parties during a telephone conference that she would consider the motion to dismiss the original complaint before ruling on Plaintiff's motion for leave to amend." Docket Entry # 58 at p. 2, n. 1.

Recommendation, finding Defendants' objections without merit as to the ultimate findings of the undersigned and adopting the R&R as the findings and conclusions of the Court.  Docket Entry # 65. In the Order Adopting, Judge Mazzant granted Plaintiff's motion for leave to file his amended complaint. *Id*. at p. 37.

Thereafter, on September 30, 2019, Plaintiff filed his current Second Amended Complaint.[8] Docket Entry # 72.

## B.    Defendants' discovery requests

On July 8, 2019, Defendants served their first set of Requests for Admissions ("RFAs") and Requests for Production of Documents ("RFPs"). Docket Entry # 85-2, Declaration of Wesley D. Lewis in Support of Defendants' Motion to Compel Discovery Pursuant to FED. R. CIV. P. 37 ("Lewis Decl."), ¶ 4. Defendants served additional discovery requests on September 30, 2019 and October 18, 2019. *Id.*  On December 16, 2019, almost six months after Defendants' initial requests, Plaintiff produced, for the first time, a small group of documents. *Id*., ¶ 5.

## 1.    Plaintiff's response to Defendants' RFAs

As relevant to the motion for sanctions before the Court, Defendants served RFAs on Butowsky relating to the Debunking Websites. On August 5, 2019, Plaintiff's former counsel Steven Biss certified that Plaintiff's Objections, Answers, and Responses to Defendants' Discovery Requests was emailed to counsel for Defendants. Docket Entry # 161, Ex. 1. On November 9, 2019, Biss certified that Plaintiff's Objections, Answers, and Responses to Defendants' Second Discovery Requests was emailed to counsel for Defendants. Docket Entry # 161, Ex. 2. Plaintiff's current

---

[8] The Court notes Plaintiff has filed a Motion for Leave to File Third Amended Complaint (Docket Entry # 98), on which the Court heard oral argument at the August 18, 2020 hearing, along with Defendants' Motion for Sanctions Pursuant to Rule 11 for Violations Committed by Plaintiff and His Counsel (Docket Entry # 96).

counsel, Ty Clevenger, was also listed on each response.

 In response to the following RFAs, Plaintiff answered "denied:"

• Admit that Plaintiff controls, operates, and/or maintains the website located at the URL: www.debunkingrodwheelersclaims.net. Docket Entry # 161, Ex. 1, First RFAs, No. 42.

• Admit that Plaintiff controls, operates and/or maintains the YouTube account "DeBunking Rod Wheeler," available at the following URL: https://https://www.youtube.com/channel/UCBIpN1cdt9MDoBFyPlwBtdA." *Id*., First RFAs, No. 49.

• Admit that you have been involved in the creation, operation, and/or maintenance of the Debunking Rod Wheeler Sites. Docket Entry # 161, Ex. 2, Second RFAs, No. 6.

• Admit that you have contributed material or information that subsequently appeared on the Debunking Rod Wheeler Sites. *Id*., Second RFAs, No. 7.

In response to the following RFAs, Plaintiff answered "Unknown":

• Admit that you know who controls, operates, and/or maintains the website "Debunking Rod Wheeler's Claims," located at the domains w w w . d e b u n k i n g r o d w h e e l e r s c l a i m s . c o m  a n d / o r www.debunkingrodwheelersclaims.net (the "Debunking Rod Wheeler Sites."). Docket Entry # 161, Ex. 2, Response to Second RFAs, No. 5.

• Admit that you have communicated with the person or persons responsible for the creation, operation and/or maintenance of the Debunking Rod Wheeler Sites. *Id*., Response to Second RFAs, No. 8.

**2.      Plaintiff's response to Defendants' RFPs**

On December 16-18, 2019, Plaintiff's counsel made a "limited production of documents."

Lewis Decl., ¶ 6. "In total, Plaintiff's entire production consist[ed] of a mere 200 emails (many of

which contain only a subject line or a single hyperlink), 78 screenshots of text messages and social

media posts (none of which are in native format and virtually all of which show just a portion of a

conversation), 9 recordings ( 4 of which are duplicates) and 161 pages of other documents over 100

pages of which are publicly available NPR documents, such as NPR's 2017 annual report and 2016

Form 990." *Id.*

On December 18, 2019, Plaintiff's counsel notified Defendants via email that "Plaintiff's document production was completed," and that with the exception of "a few documents" that Plaintiff had withheld under a claim of privilege (without producing a privilege log), Defendants "now have all of Plaintiff's documents." *Id.*, ¶ 7.

**C.     Defendants' motion to compel regarding Plaintiff's deficient document production**

**1.     The parties' briefing**

On January 13, 2020, Defendants filed a motion to compel which addressed deficiencies in Plaintiff's production of documents in response to Defendants' requests for production of documents. Specifically, Defendants moved, pursuant to Federal Rule of Civil Procedure 37, to compel the following discovery: (1) Documents responsive to the requests that Plaintiff had already agreed to, either in his responses or in meet-and-confers: Request Nos. 1-9, 11-13, 19-21, 26, 28, 30, 35-37, and 39-41 in Defendants' First Requests for Production ("1st RFP"); Request Nos. 1, 3, 4, 6-8, 22, 25, 30, 32-35, 37, 39 and 44 in Defendants' Second Requests for Production ("2nd RFP"); and Request Nos. 2-4 in Defendants' Third Requests for Production ("3rd RFP"); (2) Unaltered, unredacted copies of documents Plaintiff has already produced; and (3) Documents responsive to requests to which Plaintiff had lodged unfounded objections: 2nd RFP Nos. 10 and 21 and responses to Interrogatories 7, 12 and 14. Docket Entry # 85 at p. 1. Defendants also sought payment of their "reasonable expenses incurred in making the motion, including attorney's fees," pursuant to FED. R. CIV. P. 37(a)(5)(A), and such other relief as the Court deemed appropriate. *Id.*

Among other things, Defendants argued the attempts by Plaintiff and his counsel "to thwart

discovery extend[ed] to Plaintiff's active interference with NPR's efforts to subpoena third parties, including an entity owned by Butowsky."[9] *Id.* at pp. 2-3. Accordingly, Defendants argued "it is essential that Plaintiff and his counsel be ordered to produce documents (in native format, where possible), answer interrogatories and be held to account for their actions, all pursuant to Rule 37." *Id.* at p. 3.

In his response dated February 3, 2020, Plaintiff asserted Defendants "served multiple discovery requests and issued multiple third-party subpoenas that are grossly overbroad, disproportionate to the needs of this case, and patently unreasonable." Docket Entry # 90 at p. 1. Plaintiff stated he responded to "each and every discovery request, duly noting appropriate objections," and upon request and after conferring with Defendants' counsel, he "supplemented his discovery responses several times." *Id.* Plaintiff represented he had "produced all responsive documents in his possession and control," further noting he had not objected to "a single third-party subpoena, allowing the Defendants to seek and obtain documents from third-parties that are not in Plaintiff's possession." *Id.* at pp. 1-2.

In their reply, Defendants asserted Plaintiff's response "fail[ed] to justify Plaintiff's ongoing refusal to produce documents and provide discovery responses 'without court action.' Fed. R. Civ. P. 37(a)(1)," and "underscore[d] the necessity of judicial action to compel Plaintiff to do what he should have done many months ago, and what he promises but fails to do as recently as in his

---

[9] In its June 5, 2020 Order granting in part and deferring in part Defendants' motion to compel, the Court noted two additional motions to compel had been referred to the undersigned for consideration (both of which were originally filed in the Northern District of Texas on January 16, 2020 and January 24, 2020, respectively, and were subsequently transferred to the Eastern District of Texas): (1) Motion to Compel Chapwood filed on March 16, 2020 in Case No. 4:20-mc-361; and (2) Motion to Compel Kim Sams filed on March 27, 2020 in Case No. 4:20-mc-38. Contemporaneously with the Court's June 5 Order, the Court entered an Order granting the two additional motions to compel. *See* Docket Entry #s 147, 149.

Response itself." Docket Entry # 97 at p. 1. At the time of filing of the reply, Plaintiff still had not produced any of the documents produced in the *Aaron Rich* lawsuit as represented. *Id.* at p. 2. Nor had Defendants received the names of all lost "clients/customers" and responses to subpoenas issued to Chapwood and Sams as indicated  by Plaintiff's counsel.  *Id.*

Defendants argued they were entitled to additional discovery from Plaintiff; Plaintiff had waived his responses to Defendants' discovery requests because his objections were merely generic, boilerplate responses that did not respond with the "specificity" required by the Rules; and Plaintiff's relevance objections failed anyway. *Id.* at pp. 4-5. Defendants requested the Court "overrule Plaintiff's objections, compel production of documents and supplementation of interrogatory answers, order a forensic examination of Plaintiff's devices, and award Defendants their reasonable attorneys' fees incurred in bringing this Motion to Compel." *Id.* at p. 5.

In their supplemental evidence filed May 8, 2020 in further support of their motion to compel, Defendants advised the Court of Plaintiff's production in the *Aaron Rich* lawsuit. Specifically, Defendants asserted as follows:

> Butowsky identified those 6,000 documents—only after losing a motion to compel in the *Aaron Rich Case*—by hiring a vendor to search only his primary email account using a list of search terms from Aaron Rich. Even then, the search conducted was only a partial one and did not include any of his other seven email accounts, his personal devices, his hard drives, or the various messaging platforms that he uses. In its motion to compel, NPR requested an order compelling Butowsky to hire a vendor to conduct a similar search to identify responsive documents in this case. Due to different defendants and varying issues in the instant case, such a search here necessarily includes using search terms additional to those used in the *Aaron Rich Case*, to find, for example, communications about (1) NPR and its employees, (2) customers Butowsky allegedly lost due to NPR's reporting, and (3) his alleged reputational harm.
>
> After briefing on its motion to compel closed, NPR received the documents Butowsky produced in the *Aaron Rich Case* through its subpoena to Aaron Rich.

> Those documents—and a comparison between those documents and the documents Butowsky produced in this case—show that Butowsky has failed utterly to comply with his discovery obligations here and reinforce the need for an order compelling Butowsky to hire a vendor to conduct a comprehensive search across all his devices, email accounts, and messaging platforms. Thus, NPR submits this supplemental evidence and respectfully requests that the Court consider this additional evidence when ruling on NPR's motion to compel.

Docket Entry # 132 at pp. 1-2. Defendants stated Plaintiff had produced only 299 documents in this case. Docket Entry # 132-1, Declaration of Laura Lee Prather ("Prather Decl."), ¶ 3. According to Defendants, documents NPR obtained through third-party subpoenas illustrated Plaintiff's production here had been "woefully deficient."[10] Docket Entry # 132 at p. 3.

In Plaintiff's response to Defendants' notice of supplemental evidence, Plaintiff stated only the following:

> Rather than waste the Court's time, the Plaintiff will concede that his earlier record productions were very inadequate. The Plaintiff apologizes to the Court and to the Defendants. Since 2017, the Plaintiff has had ten surgeries plus 33 other medical procedures because of a defective hip implant (and resulting infections), spending weeks at a time in a Dallas-area hospital. *See* Declaration of Edward Butowsky (Exhibit 1). Even when he was out of the hospital, the Plaintiff was often unable to assist with discovery because he was incapacitated. *Id*. The undersigned has taken over the duties of lead counsel, and he has committed himself to insuring that discovery is handled correctly in the future. The undersigned believes that he is capable of insuring that all of the Plaintiff's accounts and devices are thoroughly searched, but the Plaintiff will, of course, follow any further directions from the Court.

---

[10] Prather attached numerous exhibits to her declaration. Exhibits 1-6 were copies of documents originally produced in the *Aaron Rich* lawsuit which Defendants relied on as specific examples of documents Plaintiff failed to produce in this case. Prather also attached Exhibits 7-10 to her declaration, asserting Plaintiff failed to produce call and text records. Defendants argued this additional evidence—the documents produced in the *Aaron Rich* lawsuit and the recently-obtained cell phone records—further established the need for a forensic examination of Plaintiff's devices. Docket Entry # 132 at p. 5.

Defendants stated this search would not obviate the need for Plaintiff to perform a good faith search for documents that are responsive to NPR's RFPs, but which would not be located through an ESI search. For example, Defendants asserted Plaintiff should still be required to locate any documents that support his claim that he lost customers as a result of NPR's reporting, to the extent those documents exist. Docket Entry # 132 at p. 5, n. 4.

Docket Entry # 140 at p. 1.

In their reply, Defendants stated that while they appreciated "Plaintiff's newfound candor," the response did not resolve Defendants' request for adequate responses to Interrogatories 7, 12, and 14 nor did it address "the significant expense Defendants incurred seeking discovery from Plaintiff or the months of delay that resulted from Plaintiff's repeated refusal to honor his discovery obligations." Docket Entry # 143 at pp. 1-2. "Nor d[id] it allay Defendants' well-founded concerns that, if left unchecked, Plaintiff may yet again prove either unable or unwilling to conduct a comprehensive search of his devices, documents, email accounts, and cloud storage accounts." *Id.* at p. 2.

**2.     The Court's June 5, 2020 Order**

**a.     Granting in part Defendants' motion to compel**

On June 5, 2020, the undersigned entered an order granting Defendants' motion to compel in part, deferring any ruling on the request for expenses pursuant to Federal Rule of Civil Procedure 37(a)(5)(a).[11] Docket Entry # 147. The Court ordered Plaintiff and his counsel, within thirty days from the date of entry of the Order, to produce responsive documents and supplement interrogatory responses as follows:

> 1. Plaintiff must certify to the Court within thirty (30) days of the date of entry of this Order that he has produced to Defendants—and will continue to produce on a rolling basis as required by Rule 26(e)—all documents and communications that Plaintiff has produced or received in connection with any of the following lawsuits and/or arbitrations arising therefrom, including deposition transcripts with exhibits, declarations, other testimony, and copies of unredacted pleadings and exhibits to

---

[11] That same day, Plaintiff served a response to Defendants' Third Set of Interrogatories. Docket Entry # 161, Ex. 3.

pleadings:

a. *Wheeler v. Twenty-First Century Fox, Inc., et. al.*, Case No. 1:17-CV-05087, filed in the United States District Court for the Southern District of New York.

b. *Rich v. Butowsky et al.*, Case No. 1:18-cv-681-RJL filed in the United States District Court for the District of Columbia.

c. *Rich v. Fox News Network, L.L.C., et al.*, Case No. 1:18-cv-2223 filed in the United States District Court for Southern District of New York.

d. *Butowsky v. Democratic National Committee*, Case No. 4:19-cv-00582, filed in the Eastern District of Texas on August 1, 2019.

e. *Butowsky v. Gottlieb, et al.*, Case No. 4:19-cv-00180, filed in the Eastern District of Texas on March 12, 2019.

f. *Butowsky v. Susman & Godfrey, L.L.P.*, Cause No. 416-01222-2019, filed in Collin County, Texas on March 6, 2019.

g. *Butowsky v. Wigdor*, Case No. 4:19-cv-00577, filed in the Eastern District of Texas on July 31, 2019.

h. *Chapwood Capital Investment Mgmt., L.L.C. v. Charles Schwab Corp.*, Case No. 4:18-cv-00287, filed in the Eastern District of Texas on April 23, 2018.

i. *Chapwood Capital Investment Mgmt., L.L.C. v. Charles Schwab Corp.*, Case No. 4:18-cv-00548, filed in the Eastern District of Texas on August 3, 2018.

j. *Clevenger v. U.S. Dep't of Justice*, Case No. 1:18-cv-01568, filed in the Eastern District of New York on March 14, 2018.


2. Plaintiff and his counsel shall provide declarations to the Court within thirty (30) days from the date of entry of this Order describing the search they have conducted for all documents and communications responsive to NPR's requests for production and certify that they have produced all responsive, non-privileged documents and communications within Plaintiff's possession, custody, or control to Defendants.

3. Plaintiff shall produce unaltered, unredacted versions of the documents already produced or provide a declaration to the Court within thirty (30) days from the date of entry of this Order describing why certain redactions are warranted.

4. Plaintiff shall provide, within thirty (30) days from the date of entry of this Order, full responses to First Interrogatory No. 7 ("Identify all mobile phone numbers and mobile phone service providers with which You had an account during the relevant time period and the date ranges in which you had those accounts."), First Interrogatory No. 12 ("Identify all lawsuits in which [he has] been a party since

January 1, 2010"), and Second Interrogatory No. 14 ("Identify all special damages, including any realized or liquidated direct pecuniary loss, that you incurred as a result of the Defendants' alleged business disparagement."). Plaintiff shall have seven days from the date of this supplementation, to provide Defendants a verified statement that he has fully and completely answered First Interrogatory No. 7, First Interrogatory No. 12, and Second Interrogatory No. 14.

Docket Entry # 147 at pp. 19-21.[12]

The Court also ordered the parties to meet and confer to formulate a draft ESI protocol to govern discovery/examination of  information contained on Plaintiff's email accounts, personal devices, hard drives, and messaging platforms. *Id.* at p. 24 (stating that as part of their conference regarding an Order Regarding E-Discovery, the parties were to develop a forensic examination protocol that contemplates key word searches so as to control costs and to keep discovery proportional to the needs of this case).  The Court ordered the parties to file, within twenty days, a joint report notifying the Court of the results of the conference, including a proposed agreed E-Discovery Order if all disputed issues as to the proposal were resolved during the conference.[13] *Id.* at p. 25. The Court further noted its expectation was that "following the Court's entry of an Order Regarding E-Discovery, Plaintiff [would] conduct a forensic examination using the specific forensic examination protocol agreed to by the parties." *Id.*

**b.     Deferring ruling on Defendants' request for expenses pursuant to Rule 37(a)(5)(a)**

Regarding Defendants' request for attorney's fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), the Court ordered as follows:

---

[12] The Court advised that any future motion to compel before the Court regarding the sufficiency and timeliness of Plaintiff's responses may result in sanctions to Plaintiff or Plaintiff's counsel, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure. Docket Entry # 147 at p. 21 (citing *Solis v. United Med. Clinic, P.A.*, No. EP-20-CV-2-KC, 2020 WL 2813127, at *4 (W.D. Tex. May 29, 2020)).

[13] On June 26, 2020, the Court entered an Agreed Order Regarding the Production of Electronically Stored Information and Hard Copy Documents. Docket Entry # 166.

The Court finds the present circumstances may warrant an award to Defendants of expenses, including attorney's fees, that they incurred in drafting and filing the motion to compel and briefing related thereto. However, the Court defers ruling on any award of expenses under Rule 37(a)(5) pending further briefing by the parties. The Court orders Plaintiff's counsel and Defendants' counsel to meet and confer about the reasonable amount of attorneys' fees and costs sought to be awarded under Rule 37(a)(5)(A). Within fifteen (15) days from the date of entry of this Order, the parties shall file a joint report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees and costs to be likely awarded to Defendants have been resolved, Defendants' counsel must also filed a proposed agreed order by that date.

If the parties do not reach an agreement as to the amount of attorneys' fees and costs to be awarded (or Plaintiff's payment thereof), Defendants must, by no later than June 24, 2020, file an application for attorneys' fees and costs that is accompanied by supporting evidence establishing the amount of the reasonable attorneys' fees and costs to be awarded under Rules 37(a)(5)(A). The fee application must be supported by documentation evidencing the 'lodestar' calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *Liberty Ins. Underwriters Inc. v. First Mercury Ins. Co.*, No. 3:17-CV-3029-M, 2019 WL 7900687, at *1 (N.D. Tex. Mar. 11, 2019) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002)). If an application is filed, Plaintiff must file a response by July 8, 2020, and Defendants must file a reply by July 15, 2020.

*Id.* at pp. 22-23.

## D.     Defendants' application for attorneys' fees pursuant to Rule 37(a)(5)(A)

On June 19, 2020, the parties filed their Joint Report on Parties' Conference Regarding Attorneys' Fees Sought by Defendants' Motion to Compel Discovery. Docket Entry # 159. According to the joint report, prior to the parties' June 18, 2020 teleconference, Defendants' counsel, Ms. Prather, sent Plaintiff's counsel, Mr. Clevenger, spreadsheets documenting the contemporaneous time entries and corresponding amounts of attorneys' fees incurred in preparing Defendants' motion to compel and its supporting papers. *Id.* at p. 2. Following their unsuccessful efforts to explore an informal resolution of the attorneys' fees issue, the parties informed the Court that the parties agree

that NPR is entitled to recover attorneys' fees. However, the parties had been unable to agree as to

the reasonable amount of attorneys' fees to be awarded to NPR pursuant to Rule 37(a)(5)(A) in

connection with Defendants' motion to compel. *Id*. (further informing the Court Defendants would

be filing an application for attorneys' fees accompanied by supporting evidence).

On June 24, 2020, Defendants filed their Application for Attorney's Fees, seeking $69,493.50

as the reasonable attorneys' fees Defendants incurred in making their "omnibus Motion to Compel

along with the hundreds of pages of supporting evidence and supporting briefing." Docket Entry #

164 at p. 1.

### E.    Defendants' motion for sanctions pursuant to Rule 37(c)(2)

On June 19, 2020, along with the parties' update regarding the deferred Rule 37(a)(5)(A)

attorneys' fees issue related to Defendants' motion to compel, Defendants also filed their current

motion for sanctions pursuant to Rule 37(c)(2). Whereas Defendants' motion to compel had raised

deficiencies regarding Plaintiff's document production and certain interrogatory responses, the recent

Rule 37 motion for sanctions addresses Plaintiff's answers to six RFAs asking about Plaintiff's

creation, control, operation, contributions to, and maintenance of the Debunking Websites and to one

interrogatory asking Plaintiff to list websites he controls.

Based on Defendants' discovery received from third parties (set out in detail below),

Defendants assert Plaintiff's answers to Defendants' discovery requests are "demonstrably false."

Docket Entry # 161 at p. 4. According to Defendants' motion, at a minimum, contrary to his denials:

(i) Plaintiff was "involved in the creation, operation, and/or maintenance of the Debunking Rod

Wheeler Sites" and (ii) "contributed material or information that subsequently appeared on the

Debunking Rod Wheeler Sites." *Id.* at p. 7. Defendants state they were able to disprove Plaintiff's

19

"deceitful discovery responses only after expending considerable time and effort in third-party discovery." *Id.* at p. 4. Therefore, pursuant to Federal Rule of Civil Procedure 37, Defendants seek an award of their costs, including attorneys' fees, associated with uncovering Plaintiff's lies regarding his involvement in the Debunking Websites. *Id.*

### III. FEDERAL RULE OF CIVIL PROCEDURE 37

**A.      Rule 37(a)(5)(A)**

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Crow v. ProPetro Servs., Inc.*, No. MO:15-CV-00149-RAJ-DC, 2016 WL 9776368, at *3 (W.D. Tex. June 6, 2016) (quoting FED. R. CIV. P. 37(a)(5)(A)). Specifically, a "motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *Van Dyke v. Retzlaff*, No. 4:18-CV-247, 2020 WL 1866075, at *3 (E.D. Tex. Apr. 14, 2020) (quoting *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018) (citing *De Angelis v. City of El Paso*, 265 Fed. Appx. 390, 398 (5th Cir. 2008) (internal quotations omitted in *Zenith*))).

20

**B.      Rule 37(b)(2)**

Rule 37(b)(2) provides a court may sanction a party who fails to comply with a court order to provide or permit discovery, and provides as follows:

> [T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

*In re Oracle Oil, L.L.C.*, No. CV 18-3674, 2019 WL 4209369, at *6 (E.D. La. Sept. 5, 2019).

Federal Rule of Civil Procedure 37(b)(2) authorizes the court to issue sanctions for a party's failure to comply with discovery orders. *Innovation Sciences, L.L.C. v. Amazon.com, Inc., et al*, No. 4:18-CV-474-ALM, 2020 WL 4431875, at *1 (E.D. Tex. July 31, 2020) (citing FED. R. CIV. P. 37(b)(2)(A), (C)). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (alteration in original) (citation omitted in *Innovation Sciences*)). Further, "[the] decision to sanction a litigant pursuant to [Rule] 37 is one that is not unique to patent law," so regional circuit law applies to the dispute. *Id.* (quoting *ClearValue, Inc. v. Pearl Polymers, Inc.*, 560 F.3d 1291, 1304 (Fed. Cir. 2009)).

Under Fifth Circuit law, sanctions under Rule 37 must be just and fair. *Id.* at *2 (citing *Chilcutt v. U.S.*, 4 F.3d 1313, 1321 (5th Cir. 1993)). "The sanctions available under Rule 37 are flexible, and the Court has the authority to apply them in varied forms, depending on the facts of each case. 'Rule 37 only requires the sanction the Court imposes hold the scales of justice even.'" *Id.* (quoting *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, 259 F. Supp. 3d 530, 552 (E.D. Tex. 2017) (quoting *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981)), *aff'd*

21

*in part, rev'd in part on other grounds by* 757 F. App'x 974 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 242 (2019)). "To impose sanctions against a party, a court must make a specific finding that the party acted in bad faith." *Id.* (quoting *Tech Pharmacy Servs., L.L.C. v. Alixa RX L.L.C.*, No. 4:15-CV-00766-ALM, 2017 WL 3394118 at *3 (E.D. Tex. Aug. 7, 2017) (citations omitted in *Innovation Sciences*); also citing *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2001) (holding that the penalized party's discovery misconduct must be willful to support sanctions)).

## C.   Rule 37(c)

Rule 37(c)(1) allows for sanctions for failure to comply with the disclosure requirements of Rule 26(a) or (e). *In re Oracle Oil, L.L.C.*, No. CV 18-3674, 2019 WL 4209369, at *5 (E.D. La. Sept. 5, 2019). Of relevance here, Federal Rule of Civil Procedure 37(c)(2) provides that if a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. FED. R. CIV. P. 37(c)(2). Upon motion, the Court must award the requesting party reasonable fees and expenses incurred in proving up those matters "unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit." *Sparks v. Reneau Pub. Inc.*, 245 F.R.D. 583, 588 (E.D. Tex. 2007) (quoting FED. R. CIV. P. 37(c)(2)).

## IV. DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES
## PURSUANT TO RULE 37(a)(5)(A)

**A.      Parties' assertions**

As noted above, Defendants' Application for Attorney's Fees seeks $69,493.50 as the reasonable attorneys' fees Defendants incurred in making their motion to compel. Docket Entry # 164 at p. 1. According to Defendants, this number does not include the time that has yet to be billed to NPR, fees for which Defendants' counsel does not seek to recover at this time.[14] *Id*. at p. 3, n. 2. In support of their application, Defendants rely on the Declaration of Laura Lee Prather ("Prather Decl.") and the Declaration of David J. Bodney ("Bodney Decl."). According to Defendants, the "lodestar" calculation is based on the 173.1 hours Defendants' counsel spent making the motion to compel—reviewing hundreds of pages of documents produced in related litigation and by third parties, comparing those productions to Plaintiff's production in this case, and reviewing the pleadings filed in related litigation to understand Plaintiff's "overarching discovery failures in addition to the typical research, drafting, and revising required to brief a motion." *Id.* at p. 3. Those hours were then multiplied by the applicable hourly rates which range from $325-$485. Prather Decl., ¶¶ 8, 9, 15.

Defendants assert the number of hours spent working on the motion to compel was reasonable. Those hours break down as follows:

> • Preparing to draft the Motion to Compel, including conferring with Butowsky's counsel: 12.5 hours. *Id.* at ¶ 16;

---

[14] Defendants estimate counsel spent thirty-two (32) hours negotiating the reasonable fee amount with Plaintiff's counsel, preparing and filing the joint report on those negotiations, and drafting the application and its accompanying declarations. Docket Entry # 164 at p. 3, n. 2. Defendants further stated they would also incur additional fees filing a reply in support of the application. *Id*.

- Drafting and revising the Motion to Compel: 82.8 hours. *Id.* at ¶ 17;

- Reviewing Butowsky's response to the Motion to Compel and outlining, drafting, and revising the Reply in support of the Motion to Compel: 61 hours. *Id.* at ¶ 19; and

- Drafting the Notice of Supplemental Evidence: 11.8 hours. *Id.* at ¶ 20.

Docket Entry # 164 at pp. 3-4.

According to Defendants, the rates Defendants' counsel charged—either $485 or $475 for partners and either $395 or $325 for associates—were also reasonable when compared to other rates charged by attorneys in the state of Texas. *Id.* at p. 4 (citing Prather Decl., ¶ 25). For several of the attorneys who worked on this matter, the rates charged to Defendants represent a significant discount from the attorneys' standard market rates, which range from $1,000 to $630. Prather Decl, ¶ 26; Bodney Decl., ¶ 6.

In his response, Plaintiff does not dispute whether Defendants are entitled to an award of attorney fees, nor does he dispute the reasonableness of the rates charged by counsel. Docket Entry # 173 at p. 1. "He does, however, dispute the reasonableness of spending 173.1 hours on what should have been an off-the-shelf motion to compel." *Id.* Arguing the amount of time spent on the motion to compel was "grossly excessive," Plaintiff asserts there is nothing unique about this case or the motion that would require such an expenditure of time and effort. *Id.* at pp. 2-3. Plaintiff's counsel further asserts as follows:

> Ironically, the strongest argument against the amount of time that counsel spent on the Defendants' Motion to Compel . . . is set forth in that very motion. On pages 3-5 of the Motion to Compel, the Defendants established that the Plaintiff's former attorney, Steven Biss, repeatedly promised to provide documents and yet did not provide those documents. That by itself was more than sufficient to support the Motion to Compel, and it would have been more than sufficient to support the exact order that this Court entered on June 5, 2020 in response to the Motion to Compel. Defendants' Counsel did not need to review thousands of documents from other

24

cases or all of the Plaintiff's phone records in order to prove the obvious, i.e., that the Plaintiff's former attorney had not provided the documents that he said he would produce (and that the Plaintiff was indeed obligated to produce).

The Defendants undertook extremely broad third-party discovery in this case and, contrary to the representations of their attorneys, the Plaintiff has never impeded their efforts to subpoena whomever or whatever they wished. The Defendants even subpoenaed all of the Plaintiff's personal cell phone and text records. If the Defendants wanted to go on a fishing expedition, then that was their prerogative (at least to some extent), and the Plaintiff did not get in their way. Now, however, the Defendants want to bill the Plaintiff for that fishing expedition by claiming that it was somehow related to the Motion to Compel.

The Defendants are trying to shift tens of thousands of dollars worth of general discovery costs to the Plaintiff by portraying their efforts as necessary to the Motion to Compel. In reality, the Defendants would have reviewed all of the records from the *Aaron Rich* case regardless of whether they filed their Motion to Compel. Likewise, they would have reviewed all of the Plaintiff's phone records regardless of whether they filed their Motion to Compel (because otherwise they would have limited the phone numbers and dates covered by the subpoena). It is therefore disingenuous to suggest that these costs were necessarily incurred in support of the Motion to Compel.

*Id.* at p. 4. Plaintiff contends that twelve to fifteen hours would have been a reasonable amount of time to spend on the motion to compel and the reply. *Id.* at p. 5 (citing Declaration of Ty Clevenger ("Clevenger Decl.")).

In their reply, Defendants state that because Plaintiff continued to assert he had produced all responsive documents, even after the motion to compel was filed, Defendants "had to demonstrate through hundreds of pages of evidence that responsive documents did exist, and Butowsky was withholding them;" thus, according to Defendants, Plaintiff and his counsel's misrepresentations necessitated Defendants' engaging in substantial additional work, and the attorney's fees of which Plaintiff "complains are wholly self-inflicted." Docket Entry # 177 at p. 1. Defendants contend the time their counsel worked was "reasonable and necessary for these numerous, complicated, and long-standing disputes." *Id.*

B.      **The lodestar method**

The Supreme Court has specified that the "lodestar" calculation is the "most useful starting point" for determining the award for attorneys' fees. *Salman v. Balderas*, No. CV 18-10966, 2019 WL 4521872, at *1 (E.D. La. Sept. 19, 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The lodestar calculation ". . . provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id*. To determine the lodestar, the court must determine the reasonable number of hours expended by the attorney and the reasonable hourly rate for the attorney. *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17CV546, 2020 WL 1902530, at *5 (E.D. Tex. Jan. 13, 2020), *report and recommendation adopted*, No. 4:17CV546, 2020 WL 896674 (E.D. Tex. Feb. 25, 2020). The court then multiplies the number of hours by the hourly rate. *Id*. (citing *Hacienda Records, L.P. v. Ramos*, No. 2:14-CV-19, 2019 WL 93306, at *3 (S.D. Tex. Jan. 3, 2019) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995))).

The lodestar is intended to reflect "the prevailing market rates in the relevant community." *Id*. (quoting *Hacienda Records*, 2019 WL 93306, at *3 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010))). It "roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id*. A reasonable fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious case, but is not intended to produce windfalls to attorneys. *Id*. (citing *Hacienda Records*, 2019 WL 93306, at *3 (citing *Perdue*, 559 U.S. at 552)). An attorney's requested hourly rate is *prima facie* reasonable when he or she requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing

26

market rates, and the rate is not contested. *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *3 (citing *Kellstrom*, 50 F.3d at 328)). There is a strong presumption in favor of the lodestar amount, but it may be adjusted up or down based on twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *3 (citing *Saizan v. Delta Concrete Prod. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006))).

Once the lodestar has been determined, the district court must consider the weight and applicability of the twelve factors delineated in *Johnson*. *Salman*, 2019 WL 4521872, at *1 (citing *Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993)). The factors considered in *Johnson* include: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Virtual Chart*, 2020 WL 1902530, at *5 (citing *Hacienda Records*, 2019 WL 93306, at *3 (citing *Johnson*, 488 F.2d at 717–19)).

"[T]he lodestar figure includes most, if not all, of the 'relevant factors' constituting a reasonable attorney's fee." *Virtual Chart*, 2020 WL 1902530, at *6 (quoting *Hacienda Records*, 2019 WL 93306, at *3 (quoting *Perdue*, 559 U.S. at 553)). Accordingly, enhancements based on the *Johnson* factors are rare but may be awarded in exceptional circumstances. *Id.* (citing *Hacienda*

*Records*, 2019 WL 93306, at *3 (citing *Perdue*, 559 U.S. at 552)). An enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *3 (citing *Perdue*, 559 U.S. at 553)). Thus, the novelty and complexity of a case generally may not be used as a ground for enhancement because those factors presumably are reflected in the number of billable hours recorded by the attorney. *Id.* In addition, time limitations and the preclusion of other employment by the attorney generally are subsumed in the lodestar calculation. *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *3 (citing *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043–44 (5th Cir. 1999))).

**C.      Discussion**

**1.      Entitlement to attorneys' fees and reasonableness of the hourly rates**

In his response, Plaintiff concedes Defendants are entitled to a fee award under Federal Rule of Civil Procedure 37. Plaintiff does not dispute the reasonableness of the rates charged by counsel. The Court finds Defendants are entitled to a fee award. The Court also finds the rates of the billing attorneys are deemed reasonable as the rates are not contested by Plaintiff. Thus, the only disputed issue before the Court is the number of hours to be included in the lodestar calculation.

**2.      Applicable law**

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941. "'[T]he burden is on the applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Virtual Chart*, 2020 WL 1902530, at *15 (quoting

*Hacienda Records*, 2019 WL 93306, at *4 (quoting *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (2011)))). Courts further require applicants to provide contemporaneous billing records or other documents, which are examined to determine which hours are compensable and which are not. *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *4 (citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008))).

"The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* (quoting *Hacienda Records*, 2019 WL 93306, at *4 (quoting *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993))). Parties seeking attorneys' fees have the burden of showing the reasonableness of the hours billed and also of proving that they exercised "billing judgment." *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *4 (citing *Hensley*, 461 U.S. at 433–34)). Counsel exercises "billing judgment" when he or she documents hours charged and the hours written off as unproductive, excessive, or redundant. *Id.* (citing *Hacienda Records*, 2019 WL 93306, at *4 (citing *Hensley*, 461 U.S. at 434)).

The remedy for failing to exercise "billing judgment" is to exclude hours that were not reasonably expended. *Salman*, 2019 WL 4521872, at *3 (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; also citing *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)) ("If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.'")). Alternatively, the court can conduct a line-by-line analysis of the time report. *Id.* (citing *Green v. Administrators of the Tulane*

*Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002) *overruled on other grounds by Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

When the motion for attorneys' fees is in connection to a Rule 37(a) motion to compel, the reasonable hours are further limited to only those hours directly connected to the motion to compel. *Salman*, 2019 WL 4521872, at *3 (citing *Stagner v. W. Kentucky Navigation, Inc.*, No. 02-1418, 2004 WL 253453, *6 (E.D. La. Feb. 10, 2004) ("However, Rule 37(a) does not contemplate costs incurred by the party in the normal course of litigation, absent a direct relation to the motion to compel.")).

### 3.    Determining the reasonable hours expended

Defendants seek $69,493.50 in attorneys' fees, comprised of $42,210.00 in attorneys' fees due to Haynes and Boone, LLP ("Haynes and Boone") and $27,283.50 in attorneys' fees due to co-counsel Ballard Spahr LLP ("Ballard"). Laura Lee Prather, a partner at Haynes and Boone, is lead counsel for Defendants in the above-captioned lawsuit. Prather Decl., ¶ 1. Prather was assisted in this matter primarily by Haynes and Boone partners David Harper and Stephanie Sivinski, and associate Wesley Lewis. *Id.*, ¶ 4. Each of these attorneys assisted in drafting, reviewing, and revising the motion to compel pleadings. *Id.* Prather supervised the work performed by each of these attorneys. *Id.*

According to Prather, the nature of the services these attorneys provided is described in the contemporaneous time records kept by the firm in connection with this matter and in the periodic bills for those services that were sent to Defendants. *Id.*, ¶ 5. Time entry records were kept by the firm in the regular course of business, and it was the regular course of business of the firm for each

time keeper to make the time-entry records or transmit information thereof to be included in such records. *Id.* The time-entry records were made at or near the time that the hours were worked or reasonably soon thereafter. The firm then generated invoices containing the time-entry records. *Id.*

Attached to the declaration of Laura Prather are copies of invoices for work performed in November and December 2019, and January, February, and April 2020.  *Id.*, ¶ 6 (and attached Exs. E, F, G, H, and I). For ease of reference, a summary of the relevant billing entries including billing attorney, date worked, description of work, applicable billing rate, and time worked is contained in attached Exhibit J. A summary of the time Haynes and Boone attorneys worked on the motion to compel is set forth in the table below, which reflects actual amounts billed to Defendants and which has been or will be paid:

| Time Keeper | Title | Rate | Total Hours | Fee Amount |
|---|---|---|---|---|
| Laura Prather | Partner | $475 | 32.1 | $15,247.50 |
| David Harper | Partner | $475 | 1.9 | $902.50 |
| Stephanie Sivinski | Partner | $325-$475 | 16.6 | $7,015.00 |
| Wesley Lewis | Associate | $325 | 58.6 | $19,045.00 |
| Total | | | 109.2 | $42,210.00 |

Prather, Decl., ¶ 8.

Prather has also considered records provided by co-counsel in this case, including the Declaration of David Bodney and the exhibits attached thereto (the "Ballard Records"). Based on the Ballard Records, Prather provides the following summary of the time worked by the Ballard attorneys:

| Time Keeper | Title | Rate | Total Hours | Fee Amount |
|---|---|---|---|---|
| David Bodney | Partner | $485 | 22.7 | $11,009.50 |
| Ian Bucon | Associate | $395 | 41.2 | $16,274.00 |
| Total | | | 63.9 | $27,283.50 |

Prather, Decl., ¶ 9. According to Prather, the tasks performed included legal and factual research in preparation for drafting the motion to compel and associated briefing, conferring with opposing counsel regarding Plaintiff's deficient discovery, reviewing documents that Plaintiff produced in related litigation and third-party discovery to identify deficiencies in Plaintiff's document production in this case, and drafting, revising, and filing the motion to compel and associated briefing. *Id.*, ¶ 10.

Prather states the Haynes and Boone team spent 12.5 hours preparing to draft the motion to compel, including meeting and conferring with Plaintiff's counsel and drafting chronologies of the many months of meet and confers and correspondence sent alerting Plaintiff's counsel of the alleged deficiencies in his production. *Id.*, ¶ 16. Counsel spend an additional five hours reviewing Plaintiff's productions in other, related litigation to identify deficiencies in production in this litigation. *Id.* Prather further states significant time (40.6 hours by the Haynes and Boone team and 42.2 hours by the Ballard team) was spent drafting and revising the motion to compel, which was supported by a declaration and over 450 pages of evidence. *Id.*, ¶ 17. Counsel had to, among other things, analyze documents from third parties. *Id.*, ¶ 18. Counsel spend an additional 61 hours (39.3 hours by the Haynes and Boone team and 21.7 hours by the Ballard team) outlining, drafting, and revising the reply in support of the motion to compel, which was supported by an additional declaration and thirty additional pages of evidence. *Id.*, ¶ 19. Defendants also drafted two supplemental briefs to present additional third-party discovery evidence to the Court. *Id.*, ¶ 20. The Notice of Supplemental

Evidence required an additional 11.8 hours of work. *Id*. According to Prather, the 109.2 hours of time expended by the Haynes and Boone team on the motion to compel "represents only a fraction of the total fees worked on this matter over the course of five months." *Id*., ¶ 23.

In his declaration, Bodney, a partner at Ballard, asserts Defendants' application for attorneys' fees does not seek recovery of the many time charges incurred endeavoring to obtain discovery before the motion to compel became necessary. Bodney Decl., ¶ 9. According to Bodney, billable tasks were assigned to and completed by the attorney or qualified professional with the lowest hourly rate, as much as ethically possible. *Id.*

As noted above, the party seeking fees has "the burden of showing . . . that the attorneys exercised billing judgment." *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, No. 4:18-CV-792, 2020 WL 4583464, at *7 (E.D. Tex. Aug. 10, 2020) (quoting *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006))). Billing judgment is defined as "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* (quoting *Saizan*, 448 F.3d at 799). Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. *Warder v. Shaw Grp., Inc.*, No. CV 09-4191, 2016 WL 3447950, at *4 (E.D. La. June 23, 2016) (quoting *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)). The fee seeker's attorneys "are charged with proving that they exercised billing judgment." *Id.* (quoting *Walker*, 99 F.3d at 770). When billing judgment is lacking, the court should exclude from the lodestar calculation the hours that were not reasonably expended. *Id.*; *see also Domain Prot.*, 2020 WL 4583464, at *7 (Any "'excessive, duplicative, or inadequately documented time should be eliminated from an attorney's fee award.'") (quoting *Montano v. Orange Cty., Tex.*, 2015

33

WL 11110631, at *4 (E.D. Tex. Apr. 24, 2015) (quoting *Leonard v. La*, 2013 WL 3558291, at *3 (W.D. La. July 10, 2013))).

Here, neither Prather nor Bodney state they exercised billing judgment. Neither reference "a single minute that was written off as unproductive, excessive, or redundant." *Id.* (quoting *Champion v. ADT Sec. Servs., Inc*., 2010 WL 4736908, at *6 (E.D. Tex. Nov. 16, 2010)). Further, the bills themselves do not show that any reduction was made. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc*., No. 1:15-CV-348, 2016 WL 7757267, at *6 (E.D. Tex. Mar. 28, 2016) (quoting *Hensley*, 461 U.S. at 433).  The Court now considers the amount of billing judgment reduction.

In *Domain Protection*, District Judge Mazzant could not accept that counsel exercised billing judgment and thus reduced Domain Protection's hours by ten percent to account for a lack of billing judgment. *Domain Prot.,* 2020 WL 4583464, at *7. In another recent case, Judge Mazzant reduced the number of hours billed by twelve percent (six percent from Potter Minton's hours and six percent from Hogan Lovells's hours) to account for the failure to provide evidence of billing judgment. *Tech Pharmacy Servs., L.L.C. v. Alixa Rx L.L.C.*, 298 F. Supp. 3d 892, 906 (E.D. Tex. 2017) (citations omitted).

While the Court finds *Domain Protection* and *Tech Pharmacy* persuasive, it believes that a larger reduction is warranted in this case. Here, there were several partners from two different law firms working on overlapping aspects of the same discovery issue. What is more, courts have reduced fees up to 50% for billing judgment in light of factors such as nature and extent of the work involved, the issues involved, and the complexity of the work. *Preston Expl. Co., LP v. GSP, L.L.C.*,

No. CIV.A. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (citing *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, L.L.C.*, No. H–10–1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug.6, 2012) (Rosenthal, L) (determining that an award of 50% of the fees sought was "reasonable in relationship to the [*Andersen* ] factors. . ., including the issues involved, the work required, and the result achieved")) (other citations omitted).

Considering the failure to provide evidence of billing judgment, and further considering the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly, the Court is of the opinion a reduction in recoverable hours of 20 percent is warranted. The Court finds the appropriate lodestar to be calculated for Haynes and Boone as follows: (1) 25.68 hours (32.1 billed hours - 6.42 hours) for partner Laura Prather at $475.00 an hour ($12,198.00); (2) 1.52 hours (1.9 billed hours - 0.38 hour) for partner David Harper at $475.00 an hour ($722.00); (3) 13.3 hours (16.6 billed hours - 3.3 hours) for partner Stephanie Sivinski at an average of $423.00 an hour ($5,625.90);[15] and (4) 46.88 hours (58.6 billed hours - 11.72 hours) for associate Wesley Lewis at $325.00 an hour ($15,236.00) (totaling $33,781.90). The Court finds the appropriate lodestar to be calculated for Ballard as follows: (1) 18.16 hours (22.7 billed hours - 4.54 hours) for partner David Bodney at $485.00 an hour ($8,807.60); and (2) 32.96 hours (41.2 billed hours - 8.24 hours) for associate Ian Bucon at $395.00 an hour ($13,019.20) (totaling $21,826.80).

The Court, in adjusting the appropriate lodestar, has already accounted for billing judgment as part of the lodestar amount and the *Johnson* factors of the time and labor required, the novelty and

---

[15] Stephanie Sivinski claims a rate between $325 and $475 per hour. Rather than go through the billing entries line-by-line, the Court instead uses the average rate as reflected in the original summary table.

difficulty of the issues, and the requisite skill to perform the legal services properly.  Considering the remaining *Johnson* factors, the Court does not find further adjustment warranted.

**D.      Award of attorneys' fees**

Combining the attorneys' fees ($33,781.90 for Haynes and Boone and $21,826.80 for Ballard), Plaintiff is therefore ordered to pay Defendants' attorneys' fees incurred in the making of their motion to compel in the amount of $55,608.70. Full payment must be made by October 24, 2020.

## V. DEFENDANTS' MOTION FOR SANCTIONS
## PURSUANT TO RULE 37

**A.      Parties' assertions**

In their separate motion for sanctions pursuant to Federal Rule of Civil Procedure 37, Defendants address Plaintiff's answers to six RFAs asking about Plaintiff's creation, control, operation, contributions to, and maintenance of the Debunking Websites and to one interrogatory asking Plaintiff to list websites he controls. According to Defendants' motion, although Plaintiff "repeatedly represented in discovery responses that he was not associated with the Debunking Websites, third-party discovery served on his IT consultant, Orone Laizerovich, and the domain-hosting service GoDaddy proves that Butowsky is, in fact, the person responsible for the Debunking Websites." Docket Entry # 161 at p. 2. Defendants attached as Exhibit 4 to their motion for sanctions the Declaration of Orone Laizerovich ("Laizerovich Decl."), wherein Laizerovich states he met Plaintiff at the end of 2009 through a mutual friend.  Laizerovich Decl., ¶ 3. According to Laizerovich, Plaintiff's business, Chapwood Capital Investment Management, LLC (Chapwood)

and Laizerovich's business, ILI Solutions, LLC ("ILI Solutions") entered into an agreement whereby ILI Solutions would provide Chapwood with website development services. *Id.*, ¶ 4.

Laizerovich states that from 2010 until mid-2017 ILI Solutions managed various websites for Plaintiff and, when needed, "promoted items offered by Chapwood through social media and professional social platforms to reach potential new customers." *Id.*, ¶¶ 4-5.  However, in the middle of 2017, Plaintiff shut off his personal and professional websites and social media accounts and contracted with Thomas Schoenberger and his company ShadowBox to rebuild the websites for Chapwood and Plaintiff's "personal brand," which included expunging negative tweets and having offending Twitter accounts suspended. *Id.*, ¶¶ 6, 8.

Plaintiff requested that Laizerovich help Schoenberger with his work. *Id.*, ¶ 8. In addition to acquiring hundreds of domains to create websites that leveraged content from Chapwood's and Plaintiff's website, Plaintiff requested around the same time that Laizerovich "procure the domain debunkingrodwheelersclaims.com [the ".com Site"], and [he] did so." *Id.*, ¶¶ 8, 9. Laizerovich registered the .com Site from the hosting company GoDaddy "on behalf of Butowsky." *Id.*, ¶ 9; *see also* attached Ex. D; *see also* Docket Entry # 61, Ex. 5, GD000065, GD000069. According to Laizerovich, "it was Butowsky who provided content to upload to this website." *Id.*, ¶ 9; *see also* Docket Entry # 161, Ex. 4. Information posted on the .com Site included a July 10, 2017 summary of a defamation claim prepared by Plaintiff's attorney; two emails from August 19, 2017 with Rod Wheeler's investigative notes; and a summary prepared by Malia Zimmerman. *Id.*, ¶ 9; *see also* attached Exs. F, G, H. "Some of the content Butowsky asked [Laizerovich] to post to the [.com Site] were edited video and audio tapes of Rod Wheeler speaking," including a spliced video Plaintiff

asked Laizerovich to prepare for him to include on the debunking site.  *Id.*, ¶ 9; *see also* attached Ex. I.

Sometime in 2018, the .com Site was hacked and then taken down. *Id.*, ¶ 12. As a result, the domain name could not be renewed. *Id.* Once that happened, Plaintiff instructed Laizerovich to procure the domain name debunkingrodwheelersclaims.net (the ".net Site"). *Id.* This time, Plaintiff asked Laizerovich "to make sure not to have the registration trace back to him or [Laizerovich]." *Id.* So, Laizerovich registered the .net Site with Rod Wheeler's name and a fake address as a "way of following Butowsky's instructions not to have anything traceable back to him or me." *Id.* On August 28, 2018, Laizerovich registered the domain name for the .net Site. The "customer" listed was Rod Wheeler with a fake Washington D.C. address. *Id.*; *see also* attached Exs. L, M; *see also* Docket Entry # 161, Ex. 5, GD000065 (reflecting a change from Laizerovich to "John Belushi" as the domain registrant).

"At Butowsky's instruction, [Laizerovich] populated [the .net Site] with the content that had previously been available on the .com version of the site." *Id.* Laizerovich summarizes his involvement as follows:

> The procurement and management of both debunkingrodwheelersclaims websites was done at Butowsky's request. Butowsky generated the content for those sites. He also instructed me to pay for the domain name in a way that would not be traceable to him. Some of the payments for the debunkingrodwheelersclaims sites were made in Rod Wheeler's name. Rod Wheeler was not involved in procuring or managing those sites or in any other way as to the sites.

*Id.*, ¶ 14.

Defendants also sought third-party discovery from the sites' domain registrar, GoDaddy. GoDaddy produced documents showing that Orone Laizerovich originally registered the Debunking

Websites' domain names and purchased them with his credit card. Docket Entry # 161, Ex. 5, GD000065, GD000069. This "owner" information was later changed to "John Belushi." *Id*., Ex. 5, GD000065.

Based on Defendants' discovery served on Laizerovich and GoDaddy, Defendants assert Plaintiff's answers to Defendants' discovery requests are "demonstrably false." Docket Entry # 161 at p. 4. According to Defendants' motion, at a minimum, contrary to his denials: (i) Butowsky was "involved in the creation, operation, and/or maintenance of the Debunking Rod Wheeler Sites" and (ii) "contributed material or information that subsequently appeared on the Debunking Rod Wheeler Sites." *Id.* at p. 7. Defendants further assert Plaintiff clearly knew, contrary to his professions of ignorance, that he had hired Laizerovich to assist in the "operat[ion] and mainte[nance]" of the Debunking Websites. *Id.* (further stating Plaintiff's motive in "lying is transparent: he relied on the supposed independent Debunking Websites for his contention that the 'true facts' were available to Folkenflik through the Debunking Websites").

Defendants state they were able to disprove Plaintiff's "deceitful discovery responses only after expending considerable time and effort in third-party discovery." *Id.* at p. 4. Therefore, pursuant to Federal Rule of Civil Procedure 37(c)(2), Defendants seek an award of their costs, including attorneys' fees, associated with uncovering Plaintiff's lies regarding his involvement in the Debunking Websites. *Id.* Defendants argue Rule 37 sanctions are mandatory here because none of the exceptions apply. *Id.* at pp. 8-11.

In his response, Plaintiff does not dispute that he lied in response to the RFAs seeking information on the source of the contents posted on the Debunking Websites.[16] He also acknowledges that Rule 37 requires sanctions unless one of four exceptions apply. According to Defendants' reply, his only "argument to avoid sanctions is that the six falsely-denied RFAs fall within the Rule 37(c)(2)(B) exception for admissions that were not 'substantially important' to the litigation." Docket Entry # 187 at p. 2. Specifically, Plaintiff argues that for purposes of this litigation, it does not matter who controlled the websites or who uploaded the evidence; what matters is whether the evidence was real, and whether the Defendants were aware of it (for purposes of establishing actual malice). Docket Entry # 185 at p. 3.

Defendants disagree, arguing the source of the information on the Debunking Websites is critical for evaluating Plaintiff's alleged evidence of actual malice and also to whether Plaintiff is a limited-purpose public figure. Docket Entry # 187 at p. 2.  Defendants argue the Court should order Plaintiff to pay Defendants' expenses and attorneys' fees incurred in proving his involvement in the Debunking Websites. Defendants further request the case be stayed until the sanctions award is paid.

## B.     Applicable law

Federal Rule of Civil Procedure 37(c)(2) provides that if a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. FED. R. CIV. P. 37(c)(2). Upon

---

[16] Plaintiff's current counsel states that if he had prepared and submitted Plaintiff's answers to the six RFAs, he would have objected to all of them, "because the ownership or control of the websites is utterly irrelevant to this litigation." Docket Entry # 185 at p. 2.

motion, the Court must award the requesting party reasonable fees and expenses incurred in proving

up those matters "unless it finds that (A) the request was held objectionable pursuant to Rule 36(a),

or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had

reasonable ground to believe that the party might prevail on the matter, or (D) there was other good

reason for the failure to admit." *Sparks v. Reneau Pub. Inc*., 245 F.R.D. 583, 588 (E.D. Tex. 2007)

(quoting FED. R. CIV. P. 37(c)(2)). This rule leaves the Court with no discretion. *Id.*

## C.   Discussion

After reviewing the record and applying the Federal Rules, the Court is left with no choice

but to award Defendants sanctions under Rule 37(c)(2). As urged by Defendants, Plaintiff does not

dispute his discovery responses are demonstrably false. Defendants assert the RFAs are substantially

important to the actual malice issue and the public figure analysis in this case. The Court agrees.

Because Plaintiff has not shown that the exception in Rule 37(c)(2)(B) applies, sanctions are

mandatory.

Having considered the nature of the issues and efforts needlessly undertaken, the Court

determines that Defendants are entitled to reasonable fees and expenses in the amount of $10,000.00

associated with proving Plaintiff's involvement in the Debunking Websites.  This is in addition to

the attorneys' fees awarded under Rule 37(a)(5)(A). This amount shall also be paid in full on or

before October 24, 2020.

## VI. CONCLUSION

Based on the foregoing, it is

**ORDERED** that Defendants' Application for Attorney's Fees (Docket Entry # 164) is **GRANTED, as modified herein**. On or before October 24, 2020, Plaintiff shall pay Defendants' attorneys' fees incurred in the making of Defendants' motion to compel in the amount of **$55,608.70**. It is further

**ORDERED** that Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (Docket Entry # 161) is **GRANTED, as modified herein**. On or before October 24, 2020, Plaintiff shall also pay Defendants reasonable fees and expenses in the amount of **$10,000.00** associated with proving Plaintiff's involvement in the Debunking Websites.

Defendants' request for a stay pending full payment is denied.

**SIGNED this 25th day of August, 2020.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE